Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohshlaw.com
**ORBACH HUFF SUAREZ & HENDERSON LLP**
1901 Harrison Street, Suite 1630
Oakland, CA 94612
Telephone: 510.999.7908/Facsimile: 510.999.7918

Attorney for Defendants
DETECTIVES MICHAEL ARTEAGA, JEFF CORTINA,
JOHN MOTTO and JULIAN PERE

Susan E. Coleman, Esq. (SBN 171832)
scoleman@bwslaw.com
**BURKE, WILLIAMS & SORENSEN, LLP**
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Telephone: 213.236.0600/Facsimile: 213.236.2700

Attorney for Defendants
CITY OF LOS ANGELES, SERGEANT JOSEPH SANCHEZ
OFFICERS DORA BORN and MARSHALL COOLEY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART TOBIAS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES; SGT. SANCHEZ, #25339; DETECTIVE MICHAEL ARTEAGA, #32722; DETECTIVE JEFF CORTINA, #35632; DETECTIVE J. MOTTO, #25429; DETECTIVE JULIAN PERE, #27434; OFFICER MARSHALL COOLEY, #38940; OFFICER BORN, #38351; L.A. SCHOOL POLICE OFFICER DANIEL EAST, #959; and UNIDENTIFIED EMPLOYEES of the CITY OF LOS ANGELES,<br><br>Defendants. | Case No. 17-cv-01076-DSF-AS<br><br>**DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:     July 10, 2017<br>TIME:     1:30 p.m.<br>DEPT:     Courtroom 7D<br>JUDGE:   Hon. Dale S. Fischer |

ORBACH HUFF SUAREZ & HENDERSON LLP

Defs' Joint Notice of Motion and Motion to Dismiss; Memo of P&A [17-cv-01076-DSF-AS]

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION ............................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 2

I.    STATEMENT OF FACTS AND SUMMARY OF ARGUMENT ....................... 2

II.   LEGAL ARGUMENT ............................................................................... 4

    A.    Legal Standard ............................................................................. 6

    B.    Plaintiff's Federal Claims Are Unsupported and Impermissibly Vague ........ 7

    C.    The Remedy for Violation of Right to Counsel is Suppression of Information, Not Civil Lawsuit ........................................................ 8

    D.    Plaintiff Cannot Base a Claim of Failure to Intervene on an Alleged Failure to Stop an Interrogation ................................................... 9

    E.    Plaintiff's Conspiracy Claims Fail as a Matter of Law ............................. 10

    F.    Plaintiff's Redundant Claims Should be Dismissed .................................. 11

    G.    Plaintiff's State Law Claims Are Precluded Due to His Failure to File Suit Within 6 Months of Denial of the Tort Claim (Counts IX – XIV) ....... 12

    H.    Plaintiff's State Law Claims Fail as a Matter of Law ................................ 15

    I.    Probable Cause to Arrest/Hold ............................................................. 17

    J.    Indemnification and Respondeat Superior are Not Proper Claims .............. 17

III.  CONCLUSION ..................................................................................... 18

ORBACH HUFF SUAREZ & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

## <u>CASES</u>

*Abdullahi v. City of Madison,*
   423 F.3d 763 (7th Cir. 2005) ................................................................. 10

*Albright v. Oliver,*
   510 U.S. 266 (1994) ................................................................................. 8

*Amylou R. v. County of Riverside,*
   28 Cal.App.4th 1205 (1994) ................................................................. 16

*Artukovich v. Astendorf,*
   21 Cal.2d 329 (1942) ............................................................................ 14

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................. 6

*Award Metals, Inc. v. Super. Ct.,*
   228 Cal.App.3d 1128 (1991) ................................................................. 11

*Balisteri v. Pacifica Police Dept.,*
   901 F.2d 696 (1988) ................................................................................. 7

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................. 6

*Bionghi v. Metro. Water Dist. of So. Cal.,*
   70 Cal.App.4th 1358 (1999) ................................................................. 12

*Brew v. City of Emeryville,*
   138 F.Supp.2d 1217 (N.D. Cal. 2001) .................................................... 8

*Burns v. County of King,*
   883 F.2d 819 (9th Cir. 1989) ................................................................. 10

*Cabrera v. City of Huntington Park,*
   159 F.3d 374 (9th Cir. 1998) ................................................................. 17

ORBACH HUFF SUAREZ & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Caldwell v. Montoya,*
  10 Cal.4th 972 (1995) .................................................................16

*Chavez v. Martinez,*
  538 U.S. 760 (2003) ....................................................................9

*Devereaux v. Abbey,*
  263 F.3d 1070 (9th Cir. 2001) ....................................................5

*Gantt v. City of L.A.,*
  717 F.3d 702 (9th Cir. 2013) ......................................................5

*Graham v. Connor,*
  490 U.S. 386 (1989) ....................................................................8

*Intri-Plex Techs., Inc. v. Crest Group*, Inc.,
  499 F.3d 1048 (9th Cir. 2007) ....................................................7

*Ivey v. Board of Regents,*
  673 F.2d 266 (9th Cir. 1982) ......................................................7

*Karim-Panahi v. Los Angeles Police Dept.*,
  839 F.2d 621 (9th Cir 1988) ......................................................12

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001) ......................................................7

*Manson v. Brathwaite,*
  432 U.S. 98 (1977) ......................................................................5

*Michigan v. Jackson,*
  475 U.S. 625 (1986) ....................................................................9

*Monell v Department of Social Services of the City of New York,*
  436 U.S. 658 (1978) ....................................................................5

*Moss v. U.S. Secret Service,*
  572 F.3d 962 (9th Cir. 2009) ......................................................6

ORBACH HUFF SUAREZ & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Neil v. Biggers,*
  409 U.S. 189 (1972) .................................................................................. 5

*Price v. County of San Diego*
  990 F.Supp. 1230 (1998) ......................................................................... 15

*Reynolds v. County of San Diego,*
  858 F.Supp. 1064 (1984) ......................................................................... 15

*Ridley v. City & County of San Francisco,*
  272 Cal.App.2d 290 (1969) ..................................................................... 14

*Rodrigues v. Campbell Industries,*
  87 Cal.App.3d 494 (1978) ....................................................................... 12

*Saucier v. Katz,*
  533 U.S. 194 (2001) ................................................................................ 17

*Schertz v. Waupaca County,*
  875 F.2d 578 (7th Cir. 1989) ................................................................... 17

*Selleck v. Globe Int'l, Inc.,*
  166 Cal.App.3d 1123 (1985) ................................................................... 12

*Sherman v. Yaki,*
  549 F.2d 1287 (9th Cir. 1977) ................................................................... 7

*Shoemaker v. Myers,*
  52 Cal.3d 1 (1990) .................................................................................. 11

*Smile Care Dental Group v. Delta Dental Plan of Cal., Inc.,*
  88 F.3d 780 (9th Cir. 1996) ....................................................................... 7

*St. Clare v. Gilead Scis., Inc.,*
  536 F.3d 1049 (9th Cir. 2008) ................................................................... 6

*St. Louis Baptist Temple, Inc. v. FDIC,*
  605 F.2d 1169 (10th Cir. 1979) ................................................................. 7

ORBACH HUFF SUAREZ & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Steven A. Chase v. The State of California,*
   67 Cal.App.3d 808 (1977) ....................................................................13, 14

*Strong v. State of California*
   201 Cal.App.4th 1439 (2011) .......................................................................16

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007) ........................................................................11

*Ting v. United States,*
   927 F.2d 1504 (9th Cir. 1991) ......................................................................10

*U.S. v. Buckner,*
   179 F.3d 834 (9th Cir. 1999) ........................................................................17

*U.S. v. Garza,*
   980 F.2d 546 (9th Cir. 1992) ........................................................................17

*United States v. Morrison,*
   449 U.S. 361 (1981) ........................................................................................9

*Vieux v. East Bay Regional Park District,*
   906 F.2d 1330 (9th Cir. 1990) ......................................................................11

*Wadley v. County of Los Angeles,*
   205 Cal.App.2d 668 (1962) ...........................................................................14

*Watts v. County of Sacramento,*
   136 Cal.App.3d 232 (1982) ....................................................................15, 16

*Woodrum v. Woodwater Co.,*
   866 F.2d 1121 (9th Cir. 1989) ......................................................................10

*Yang v. Hardin,*
   37 F.3d 282 (7th Cir. 1994) ..........................................................................10

ORBACH HUFF SUAREZ & HENDERSON LLP

Defs' Joint Notice of Motion and Motion to Dismiss; Memo of P&A [17-cv-01076-DSF-AS]

# TABLE OF AUTHORITIES

Page(s)

## STATUTES

42 U.S.C. Section:
   1983 ...................................................................................................5, 9, 10, 17

California Government Code Section:
   815.2(b)........................................................................................................15
   820.2 ............................................................................................................15
   821.6 ............................................................................................................16
   945.6 .................................................................................................12, 13, 14
   945.6(a)(1) ....................................................................................................13

## RULES

Federal Rules of Civil Procedure, Rule:
   8(a)................................................................................................................8
   8(a)(1) ...........................................................................................................7
   12(b)(6).........................................................................................................1

Federal Rules of Evidence, Rule:
   201(b)...........................................................................................................7

Central District Local Rule:
   7-3 ................................................................................................................1

ORBACH HUFF SUAREZ & HENDERSON LLP

Defs' Joint Notice of Motion and Motion to Dismiss; Memo of P&A [17-cv-01076-DSF-AS]

# NOTICE OF MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 10, 2017, at 1:30 p.m. in Courtroom 7D of the above-captioned Court, Defendants CITY OF LOS ANGELES, SANCHEZ, BORN COOLEY, ARTEAGA, CORTINA, MOTTO and PERE (hereinafter "Defendants") will move this Court for an Order dismissing the First Amended Complaint filed by Plaintiff due to his failure to plead sufficient facts to constitute a valid claim against Defendants.

In advance of filing this Motion, the parties engaged in an extensive meet-and-confer session in compliance with Local Rule 7-3, which occurred on May 25, 2017 and has continued thereafter. Despite those discussions, the parties were unable to resolve the pending disputes, thereby requiring the Court to adjudicate the outstanding issues. Said Motion will be based upon this Notice, the Memorandum of Points and Authorities, the Request for Judicial Notice, and Plaintiff's First Amended Complaint, together with such other oral and documentary evidence as may be submitted to the Court.

Dated: May 31, 2017          ORBACH HUFF SUAREZ & HENDERSON LLP

By:      /s/  Kevin E. Gilbert
     Kevin E. Gilbert
     Attorney for Defendants
     DETECTIVES MICHAEL ARTEAGA,
     JEFF CORTINA, JOHN MOTTO
     and JULIAN PERE

Dated: May 31, 2017          BURKE, WILLIAMS & SORENSEN, LLP

By:      /s/  Susan E. Coleman
     Susan E. Coleman
     Attorney for Defendants
     CITY OF LOS ANGELES, SERGEANT
     JOSEPH SANCHEZ, OFFICERS DORA
     BORN and MARSHALL COOLEY

ORBACH HUFF SUAREZ & HENDERSON LLP

Defs' Joint Notice of Motion and Motion to Dismiss; Memo of P&A [17-cv-01076-DSF-AS]

ORBACH HUFF SUAREZ & HENDERSON LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

COMES NOW Defendants CITY OF LOS ANGELES, SANCHEZ, BORN COOLEY, ARTEAGA, CORTINA, MOTTO and PERE (hereinafter "Defendants") and submit the following memorandum in support of their Motion to Dismiss Plaintiff's First Amended Complaint.

## I.   STATEMENT OF FACTS AND SUMMARY OF ARGUMENT[1]

The current matter arises secondary to the murder of Alex Castaneda in Los Angeles on August 18, 2012.  In summary, Plaintiff Art Tobias claims that the Defendant officers improperly focused their investigation on him and denied his request for legal counsel prior to his confession that he was, in fact, the individual who shot and killed Castaneda.  After initially being convicted of murder, the California Court of Appeal set aside the conviction and ordered that Plaintiff's confession be suppressed.  Plaintiff thereafter commenced this litigation, claiming that the Defendant officers are liable to him based upon alleged violations of his right to counsel, denial of his due process rights, conspiracy and false arrest.  Defendants contend that Plaintiff's First Amended Complaint is woefully deficient as currently pled.  However, Defendants acknowledge that Plaintiff could potentially state valid claims, albeit under different legal theories; while it is admittedly unorthodox for a Defendant to propose the proper legal theories for a Plaintiff's claims, Defendants are desirous of moving this case forward as expeditiously as possible and assuring that only the appropriate claims are litigated.  This will allow the parties to assure that any discovery and briefing addresses the proper and relevant issues rather than inapplicable or precluded claims.

With that understanding, a brief discussion of the facts asserted by Plaintiff is necessary.  As stated above, the incident giving rise to this litigation occurred on August 18, 2012 when two suspects approached a group of individuals on the street.  As the two suspects approached, one of them pulled out a gun and began shooting, ultimately

---

[1] These facts are based on the allegations in Plaintiff's First Amended Complaint and are disputed by Defendants, except for purposes of this Motion.

striking three individuals.  Mr. Alex Castaneda was one of those individuals and died as a result of the gunshots; two other individuals were also shot, although they ultimately survived the attack.  (FAC ¶¶ 12-13.)

Following the LAPD being notified of the incident, Detectives Pere and Motto were dispatched to the crime scene where they retrieved and reviewed surveillance video of the shooting.  (FAC ¶¶ 18, 21-22.)  The Detectives also interviewed the surviving victims, who provided descriptions of the suspects.  The victims and bystanders identified one of the shooters as wearing a white shirt and on foot, with the other shooter in a dark shirt across the street followed by a third person picking them up in a red Hyundai after the shooting.  (*Id*. ¶¶ 14-15.)

After retrieving the video, it was reviewed with various officers including Officer Cooley, who stated that he believed Plaintiff Art Tobias was the shooter in the white shirt depicted in the video.  (FAC ¶ 37.)  Officer Born also identified Plaintiff from the video footage.[2]  (*Id*. ¶ 40.)  Plaintiff contends that the identifications by the officers were false and that the Defendant officers had agreed to assist the detectives in their efforts to prosecute Plaintiff for the Castaneda homicide, despite his proclaimed innocence.  (*Id*. ¶¶ 27-30.)

Plaintiff was ultimately arrested following several witnesses identifying him as the shooter.  Once in custody, Plaintiff was interrogated by Detectives Pere, Motto and Arteaga, with Sergeant Sanchez serving as the detective supervisor.  (FAC ¶¶ 57-60, 61.)  Plaintiff contends that he repeatedly asked to see his mother, to speak to an attorney and that he was coerced into a "false" confession.  (*Id*. ¶¶ 68-82, 99-100.)  Plaintiff also alleges that a Miranda admonition was belatedly provided, although he did not understand the advisement.  (*Id*. ¶¶ 83-90.)  Plaintiff additionally asserts that Detective Arteaga physically intimidated him, threatened him, lied to him and used other improper

[2] Plaintiff contends that Officer Born had never met or interacted with plaintiff; however, this is incorrect as Born worked in the Olympic division as a gang officer.

tactics to obtain a confession (*id*. ¶¶ 108-111), which were allegedly observed by the other Defendant officers, who refused to intervene.  (*Id*. ¶ 112.)

Plaintiff Art Tobias was ultimately convicted of first degree murder, two counts of attempted murder along with firearm enhancements which resulted in a sentence of 25-years to life[3] in a juvenile court delinquency proceeding.  (FAC ¶¶ 2, 118, 120.)  Plaintiff spent three-and-a-half years in custody before his conviction was overturned (*id*. ¶ 2), based upon the California Court of Appeals concluding that Plaintiff invoked his right to counsel during the interrogation and that the statements made by him thereafter – including his admission to killing Castaneda – should have been excluded.  (*Id*. ¶¶ 125-126.)

Based upon the foregoing, Plaintiff initiated the current litigation on February 9, 2017 against the City, seven of its officers/detectives (SANCHEZ, BORN COOLEY, ARTEAGA, CORTINA, MOTTO and PERE) as well as an officer from the Los Angeles Unified School District Police Department.  Prior to commencing suit, Plaintiff presented a formal Government Claim to the City of Los Angeles, as required in support of his state law claims – that claim was presented on January 28, 2016 and denied on February 11, 2016.  (Defendants' Request for Judicial Notice, Exs. A and B.)  The operative pleading is Plaintiff's First Amended Complaint (hereinafter "FAC") which asserts thirteen claims (mis-numbered in the FAC as 14).  There is no clarification in the FAC as to which claims are asserted as against which Defendants, thereby suggesting that every one of the thirteen claims is asserted as against every one of the individual Defendants.

## II.  LEGAL ARGUMENT

Although Defendants dispute liability, they acknowledge that Plaintiff's FAC should not be dismissed in its entirety.  Instead, Defendants seek to have the FAC reflect the proper claims given the alleged facts.  This would allow both the parties and Court to focus their efforts in addressing and adjudicating only the relevant claims and issues,

---

[3] Although Plaintiff states the sentence was 25-years to life, juveniles are only held to the age of 25, so this commitment term appears incorrect for a minor adjudged delinquent.

Defs' Joint Notice of Motion and Motion to Dismiss; Memo of P&A [17-cv-01076-DSF-AS]

ORBACH HUFF SUAREZ & HENDERSON LLP

rather than duplicative, unsupported or time-barred claims. With this in mind, Defendants respectfully request this Court grant this Motion and authorize Plaintiff to file an amended complaint asserting claims of: (1) violation of section 1983 related to an alleged violation of Plaintiff's right to due process and a fair trial (*Manson v. Brathwaite*, 432 U.S. 98 (1977); *Neil v. Biggers*, 409 U.S. 189 (1972)); (2) violation of section 1983 for alleged fabrication of evidence (*Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc); see *Gantt v. City of L.A.*, 717 F.3d 702, 708 (9th Cir. 2013)); and (3) municipal liability as against the City of Los Angeles (*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)). These are the cognizable claims that arguably arise from the alleged facts.

Notwithstanding Defendants' concession, Plaintiff's FAC fails to adequately plead the necessary elements in support of his asserted claims. Moreover, most of the claims are precluded as a matter of law. Plaintiff's first three claims (Counts I, II and III) are all predicated upon an alleged violation of the Fifth and/or Fourteenth amendment related to Plaintiff's alleged denial of legal counsel. However, the remedy for such violations is suppression of any improperly obtained evidence, not a civil lawsuit. Count IV for failure to intervene is also deficient as there are no facts alleged to illustrate what Defendants were present or why they should have believed something inappropriate was underway. Plaintiff's conspiracy claim, Count VII, is similarly vague, omitting any facts regarding any alleged agreement or actions by any of the individual Defendants. Instead, Plaintiff simply lumps all officers together in an apparent attempt to employ team liability, which is inapplicable here. Finally, the entirety of Plaintiff's state law claims, Counts IX – XIV, are precluded for numerous reasons. First, Plaintiff failed to timely commence litigation within the mandatory statute of limitations following the denial of his Government Claim. Even if he had complied with the filing deadline, his state law claims are wholly redundant of the identical federal claims and are absolutely precluded by the immunities afforded the City and its officers through the Government Code. Each of these issues is addressed in turn.

## A.    Legal Standard

The standard of pleading that a complaint must meet has been raised dramatically by the United States Supreme Court in its *Twombly* and *Iqbal* decisions.  Conclusory or unwarranted deductions of fact, and unreasonable inferences, will not allow a complaint to stand.  The United States Supreme Court has made clear through a heightened standard that formulaic pleading alone will not allow a complaint to survive Rule 12(b)(6).  To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).)  In other words, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." (*Id*. at 555.)  Though a court is to assume plaintiff's allegations are true, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." (*St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008).)

In 2009, the Supreme Court clarified that this standard requires plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." (*Ashcroft v. Iqbal*, 556 U.S. 662, (2009).)  A claim is plausible only when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Id*. at 1949, citing *Twombly,* 550 U.S. at 556.)  The court is not obligated to accept as true "legal conclusions" contained in the complaint.  (*Id*.)  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief." (*Id*. at 1950.)  As the Ninth Circuit summarized after *Iqbal*, "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." (*Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ibqal*, at 1949).)

The basic pleading standard for civil rights complaints calls for inclusion of clear, factual allegations in support of each cause of action, and that such allegations are not

- 6 -

1  vague or based on mere conclusions.  (*Ivey v. Board of Regents,* 673 F.2d 266, 268 (9th

2  Cir. 1982); *Sherman v. Yaki*, 549 F.2d 1287, 1290 (9th Cir. 1977).)  Claims may be

3  dismissed because they fail to allege sufficient facts to support any cognizable legal

4  claim.  (*Smile Care Dental Group v. Delta Dental Plan of Cal., Inc*., 88 F.3d 780, 783

5  (9th Cir. 1996), *cert. denied*, 519 U.S. 1028, 117 S.Ct. 583, 136 L.Ed.2d 513 (1996).)

6  While the Federal Rules require merely that the complaint place defendants on notice of

7  what it is they are being sued for, a plaintiff's pleading obligations are not non-existent.

8  On the contrary, plaintiff must put forth a short, plain statement showing that they are

9  entitled to relief.  (FRCP Rule 8(a)(1).)  Dismissal is proper where there is either a "lack

10  of a cognizable legal theory" or "the absence of sufficient facts alleged under a

11  cognizable legal theory."  (*Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (1988).)

12          Generally, a court may not consider material beyond the complaint in ruling on a

13  Rule 12(b)(6) motion.  (*See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.

14  2001).)  However, courts "'may take judicial notice of "matters of public record" without

15  converting a motion to dismiss into a motion for summary judgment, as long as the facts

16  noticed are not 'subject to reasonable dispute.'"  (*Intri-Plex Techs., Inc. v. Crest Group*,

17  Inc., 499 F.3d 1048, 1052 (9th Cir. 2007); *see also* Federal Rules of Evidence 201(b).)

18  Indeed, federal courts "may take notice of proceedings in other courts, both within and

19  without the federal judicial system, if those proceedings have a direct relation to matters

20  at issue."  (*St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1172 (10th Cir. 1979).)

21      **B.    Plaintiff's Federal Claims Are Unsupported and Impermissibly**

22             **Vague**

23          Plaintiff's first seven claims are all variations of the same claim – namely, whether

24  he was denied a right to legal counsel during his criminal prosecution.  Defendants

25  respectfully contend that Plaintiff's federal claims are inappropriately pled and not

26  supported by the currently asserted legal theories.  Initially, Plaintiff does not specify

27  which Defendants are responsible under each claim, expecting the parties and this Court

28  to discern from the 130+ paragraphs of "facts" which defendants are accountable under

ORBACH HUFF SUAREZ & HENDERSON LLP

each of his 14 separate legal theories.  This failure to specify violates Federal Rules of Civil Procedure 8(a).

Additionally, the specific constitutional amendment at issue should be specified rather than generalizing.  "The guarantees of the first Eight Amendments stake out reliable limits to the exercise of government authority in particular situations. Thus, "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"  (*Albright v. Oliver*, 510 U.S. 266, 273 (1994), quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989).)

The standard for evaluating all claims that a police officer improperly exercised his authority is the Fourth Amendment's reasonableness standard.  (*Graham*, 490 U.S. at 394-395.)  The Supreme Court reaffirmed the *Graham* rule in *Albright*, where the plaintiff alleged that the defendants violated his substantive due process rights by initiating a criminal prosecution without probable cause to believe he had violated state law.  (*Albright v Oliver,* 510 U.S. 266, 274 (1994).)  The Court counseled that "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."  (*Id.*; see also *Brew v. City of Emeryville*, 138 F.Supp.2d 1217 (N.D. Cal. 2001) (dismissing plaintiff's Fourteenth Amendment Due Process claim because "[t]here is no substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal arrest or prosecution except upon probable cause. Relief is only available under the Fourth Amendment").)  Accordingly, Plaintiff's claims under the Fifth and Fourteenth Amendments (Count I, II and III) are improper and should be dismissed.

## C.    The Remedy for Violation of Right to Counsel is Suppression of Information, Not Civil Lawsuit

Even assuming Plaintiff's claims were properly pled, they are nevertheless precluded as currently asserted.  Virtually all of Plaintiff's federal claims are based upon

ORBACH HUFF SUAREZ & HENDERSON LLP

theories of denial of his right to legal counsel.  However, such allegations do not support a civil claim.  Instead, the remedy for violation of an individual's right to counsel is exclusion from evidence of statements so obtained.  (*Michigan v. Jackson*, 475 U.S. 625 (1986).)  "Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."  (*United States v. Morrison*, 449 U.S. 361, 364 (1981).)  Thus, if the government obtains evidence illegally as a direct or indirect result of a constitutional violation, "the remedy characteristically imposed is …. to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted."  (*Morrison*, 449 U.S. at 365.)

This principle was further confirmed in *Chavez v. Martinez*, 538 U.S. 760 (2003), wherein the Court concluded that a police officer's failure to read Miranda warnings to Martinez could not be grounds for a § 1983 action.  (*Id.* at 772.)  The Court went on to state that, "[s]ection 1983 does not provide remedies for violations of judicially created prophylactic rules, such as the rule of *Miranda v. Arizona*, as the Court today holds."  (*Id.* at 780.)  A civil claim based on the failure to read Miranda warnings was rejected simply because a breach of the Miranda rule does not give rise to a § 1983 action.  (*Id.* at 772.)  That same holding is applicable here and necessarily precludes Plaintiff's first three causes of action.

### D.    Plaintiff Cannot Base a Claim of Failure to Intervene on an Alleged Failure to Stop an Interrogation

Next, Plaintiff asserts that the Defendant officers are liable for failure to intervene. However, such claims are inapplicable to the facts asserted by Plaintiff here.  Claims of failure to intervene primarily arise in use of force situations; an officer "who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) *that excessive force was being used*, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official;

ORBACH HUFF SUAREZ & HENDERSON LLP

and the officer had a realistic opportunity to intervene to prevent the harm from occurring." (*Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005), emphasis added, quoting *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994).)

This is not a use-of-force situation.  Nor does Plaintiff ever identify which Defendants were allegedly present and failed to intervene nor does it list any specific actions or inactions.  Instead, the allegations are simply that "one or more of the Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so."  (FAC ¶ 171.)  Plaintiff's anemic allegations are woefully deficient and fail to satisfy his pleading burden for a claim of failure to intervene.  (Count VI.)

This is particularly true for the non-detective Defendants.  Even accepting as true the facts as asserted in Plaintiff's Statement of Facts, the FAC fails to explain the basis for liability as against Officers Cooley (who spoke to Tobias' mother, took a missing person report, and identified Tobias in the video), Born (whose primary role was to identify Tobias in the video based on role as an Olympic gang officer) or Sgt. Sanchez (who is listed in paragraph 61 as the supervisor of the Detectives but is not specifically alleged to have watched the interrogation or the video).

**E.    Plaintiff's Conspiracy Claims Fail as a Matter of Law**

To allege a conspiracy under § 1983, Plaintiff must show specific facts to support the existence of the claimed conspiracy.  (See, *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989).)  The elements to establish a cause of action for conspiracy under section 1983 are:  (1) the existence of an express or implied agreement among defendants to deprive plaintiff of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement.  (See, *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991).)  Further, there must be evidence of an agreement or meeting of the minds to violate Plaintiff's constitutional rights.  (See, *Woodrum v. Woodwater Co.*, 866 F.2d 1121, 1126 (9th Cir. 1989).)  However, bare allegations of conspiracy will not suffice.  (*See* Schwartz, Martin, § 1983 Litigation, Volume 4: Jury Instructions, Second

ORBACH HUFF SUAREZ & HENDERSON LLP

ORBACH HUFF SUAREZ & HENDERSON LLP

1  Edition § 8.01; Arrest and Stops, 2012; *Vieux v. East Bay Regional Park District*, 906

2  F.2d 1330, 1343 (9th Cir. 1990).)

3      Turning to Plaintiff's FAC, the only allegations in support of his conspiracy claim

4  is that the "Defendant Officers … agreed among themselves and with other individuals to

5  act in concert in order to deprive Plaintiff of his constitutional rights…" and that the

6  "Defendant Officers further conspired to deprive Plaintiff of exculpatory information…."

7  (FAC ¶¶ 176-176.)  While the operative complaint does contain broad allegations and

8  disparaging statements, there are no actual "facts" as to which Defendants conspired, the

9  overt acts of each, what the actual agreement was or how they came to such agreements.

10 Absent such specific facts, Plaintiff's conspiracy claim (Count VII) is deficient as a

11 matter of law.

12     **F.    Plaintiff's Redundant Claims Should be Dismissed**

13     Plaintiff's FAC asserts 14 individual causes of action, most of which appear to be

14 redundant and simply assertion of the identical claims under state and federal law.  For

15 example, Plaintiff asserts claims for conspiracy (Counts VII and XII), Due Process/False

16 Imprisonment (Counts I, II, III & XI) and Malicious Prosecution (Counts IV & IX) under

17 both state and federal law.  Defendants contend that the duplicative claims are improper

18 and must be dismissed.  (*Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007)

19 (affirming dismissal of cause of action as duplicative).)  Each of the duplicative claims

20 are wholly redundant and seek identical damages.  They involve the very same conduct

21 and facts.  Indeed, any eventual special verdict would likely combine the duplicative

22 claims into a single question for the jury.

23     California law is in accord, confirming that a plaintiff may not bring multiple

24 claims or causes of action based on the same underlying wrong.  (*See Shoemaker v.*

25 *Myers*, 52 Cal.3d 1, 24 (1990) (dismissing "wrongful termination" cause of action

26 "because it merely duplicate[d] the additional claims based upon the alleged wrongful

27 termination"); *Award Metals, Inc. v. Super. Ct.*, 228 Cal.App.3d 1128, 1135–36 (1991)

28 (repeating a claim in multiple causes of action "is merely duplicative pleading which

Defs' Joint Notice of Motion and Motion to Dismiss; Memo of P&A [17-cv-01076-DSF-AS]

adds nothing to the complaint").)  Indeed, even if a cause of action presents a different underlying theory of recovery, it is nonetheless considered duplicative "surplusage" if it seeks the same remedy for the same injury.  (*See Bionghi v. Metro. Water Dist. of So. Cal.*, 70 Cal.App.4th 1358, 1370 (1999) ("disregard[ing]" cause of action as duplicative even though it was based on a different theory of recovery because it "relie[d] on the same acts, and s[ought] the same damages"); *Selleck v. Globe Int'l, Inc.*, 166 Cal.App.3d 1123, 1136 (1985) (dismissing second cause of action as duplicative because it did not seek any additional remedy beyond what plaintiff sought in first cause of action); *Rodrigues v. Campbell Industries*, 87 Cal.App.3d 494, 501, 151 Cal.Rptr. 90 (1978) (sustaining demurrer as to one cause of action because it contained "all of the allegations of the preceding four alleged causes of action and thus add[ed] nothing to the complaint by way of fact or theory of recovery").)  Indeed, dismissing duplicative claims properly narrows the pleadings, avoids confusion, and does not prejudice the Plaintiff.  Here, all of Plaintiff's state law claims are duplicative of the identical federal claims and should therefore be dismissed.

## G.  Plaintiff's State Law Claims Are Precluded Due to His Failure to File Suit Within 6 Months of Denial of the Tort Claim (Counts IX – XIV)

The federal claims are not subject to a tort claim requirement.  However, Plaintiff's state law tort claims are subject to dismissal unless the claims filing requirements of the California Tort Claims Act have been complied with concerning those causes of action. (See *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 627 (9th Cir 1988).)

Here, Plaintiff admits to filing a Government Claim on January 28, 2016 (and amended on February 2, 2016), which was denied on February 11, 2006.  (Defendants' Request for Judicial Notice, Exs. A and B.)  However, Plaintiff failed to file his Complaint within the mandatory time period as necessary to preserve his claims. Following that denial, California Government Code Section 945.6 provides in relevant part as follows:

Defs' Joint Notice of Motion and Motion to Dismiss; Memo of P&A [17-cv-01076-DSF-AS]

(a) Except as provided in Sections 946.4 and 946.6 and subject to subdivision (b), ***any suit brought against a public entity*** on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division ***must be commenced***:

(1) If written notice is given in accordance with Section 913, ***not later than six months after the date such notice is personally delivered or deposited in the mail***. (emphasis added)

(Government Code § 945.6(a)(1).) This rule is more thoroughly explained in *Steven A. Chase v. The State of California*, 67 Cal.App.3d 808 (1977). In that case, the plaintiff brought a timely tort claim against the State of California for personal injuries he alleged were a result of the State's negligence. (*Id.* at 810.) Despite the timely tort claim, plaintiff failed to file suit against the public entity defendant within the mandatory six month period, instead adding the State as a defendant after the deadline established by Government Code Section 945.6 had expired. The State demurred on the grounds that plaintiff had not commenced his action within six (6) months as required under Government Code Section 945.6. (*Id.*) The demurrer was sustained without leave to amend and the plaintiff appealed. (*Id.*)

Ultimately, the Court of Appeal found that the Tort Claims Act governed "the time and manner of filing claims against the state, and the conditions under which it may be sued." (*Id.*) With respect to the statute of limitations prescribed by the Tort Claims Act, the Court of Appeal found that:

[t]he prescribed statutes of limitations for commencement of actions against the state 'are mandatory and must be strictly complied with . . . [Citations omitted.] And where, as in the statute here under consideration, an action against the state 'must be commenced within six months,' the requirement is mandatory. [Citations omitted.]

(*Id.* at 812.) Although the Court recognized that the Tort Claims Act indulged the late filing of claims, it noted that "[n]o similar liberality excuses the late commencement of actions." (*Id.*) Rather, the Court explained, "[w]e are governed here by the tort claims statute which does not indulge late suitors to the same extent it does late claimants." (*Id.*)

ORBACH HUFF SUAREZ & HENDERSON LLP

- 13 -

The Court further explained that "the act manifests a purpose that the time within which an action may be commenced under it is absolute, and will not be extended for any reason." (*Id.*)  The Court then concluded that the plaintiff's action against the public entity was barred because it was not brought within six (6) months as required under the Tort Claims Act. (*Id.* at 813-14.)

The *Chase* action is directly on point here.  Plaintiff Tobias, as in *Chase*, may have submitted his claim in a timely manner.  That claim was rejected on February 11, 2016, yet Plaintiff waited almost a full year, until February 9, 2017, before finally filing this litigation.  As in *Chase*, Plaintiff's Complaint must be dismissed for failure to comply with the mandatory six (6) month statute of limitations period provided for in Government Code Section 945.6.  The *Chase* Court made clear that this deadline could "not be extended for any reason."  As such, Plaintiff cannot cure this defect and Plaintiff's state law causes of action must be dismissed without leave to amend.

In hopes of attempting to salvage a clearly untimely state law claims, Plaintiff will likely argue that his status as a minor until December of 2016 somehow provides relief.  However, any such arguments are misplaced and incorrect.  In the matter of *Ridley v. City & County of San Francisco*, 272 Cal.App.2d 290 (1969), young Mr. Ridley found himself in a similar situation.  Mr. Ridley had commenced litigation without having timely satisfied the claim presentment requirements.  Despite the mandatory relief available to a minor for an untimely claim, the Court denied plaintiff's request.  In dismissing plaintiff's claims, the Court noted that "there is no constitutional ground to deny the applicability of the claims statutes." (*Ridley,* 272 Cal.App.2d at 290, citing with approval *Wadley v. County of Los Angeles*, 205 Cal.App.2d 668, 672-673 (1962).)  The Court further confirmed that "The claims statute is applicable to minors." (*Artukovich v. Astendorf*, 21 Cal.2d 329 (1942).)

Given the foregoing, there is no question that all of Plaintiff's claims under state law are either redundant or violate the applicable statute of limitations under the tort claim act and therefore must be dismissed.

ORBACH HUFF SUAREZ & HENDERSON LLP

ORBACH HUFF SUAREZ & HENDERSON LLP

### H.    Plaintiff's State Law Claims Fail as a Matter of Law

To the extent Plaintiff's state law claims are not otherwise dismissed due to
violation of the tort claim act statute of limitations or redundancy, they are precluded by
the immunities afforded by the California Government Code.  Turning first to the
applicable immunities, Government Code section 815.2(b) provides:

> "Except as otherwise provided by statute, a public entity is not liable for an
> injury resulting from an act or omission of an employee of the public entity
> where the employee is immune from liability."

Second, as Plaintiff alleges that each of the Defendant officers was acting within
the course and scope of their employment, they are shielded from liability based upon the
discretionary immunity provision under Government Code section 820.2, which
provides:

> "Except as otherwise provided by statute, a public employee is not liable for
> an injury resulting from his act or omission where the act or omission was
> the result of the exercise of the discretion vested in him, whether or not such
> discretion be abused."

Thus, whenever a public employee is called upon to exercise discretion, section 820.2
protects him/her from liability for the consequences of doing so, "whether or not such
discretion be abused."  A police officer who exercises discretion within the scope of his
or her duties cannot be held liable for damages resulting therefrom.  (See *Reynolds v.
County of San Diego*, 858 F.Supp. 1064, 1074 (1984) (remanded in part on other
grounds).)  Notably, California statutes granting public entities immunity apply to police
officers in detention and arrest situations.  (See *Price v. County of San Diego*, 990
F.Supp. 1230 (1998) (interpreting Government Code § 820.2).)  This statute applies to all
occasions when a police officer is required to make discretionary decisions and it applies
even when he makes bad ones.  (See *Watts v. County of Sacramento*, 136 Cal.App.3d 232
(1982).)

As the *Watts* Court explained, "A decision to arrest, or to take some protective
action less drastic than arrest, is an exercise of discretion for which a peace officer may

- 15 -

ORBACH HUFF SUAREZ & HENDERSON LLP

not be held liable in tort." (*Watts*, 136 Cal.App.3d at 234.)  Similar to the officers in *Watts*, the officers and detectives here are immune from their investigation and actions such as identification.  This immunity is absolute, and protects the City and its officers notwithstanding the motives they are accused of having for the decisions made.  In *Caldwell v. Montoya,* 10 Cal.4th 972, 983, 984 (1995), immunity was found to apply even when the exercise of discretion was alleged to have been made for inappropriate and/or discriminatory motives.  As the Defendants exercised their discretion vested to them during the course and scope of their employment, they are cloaked with discretionary immunity.

Next, the Defendants are also immune from liability pursuant to Government Code section 821.6, which provides:

> "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."
> (Emphasis added.)

As this immunity was created to further "its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits," it is construed broadly.  (*Strong v. State of California*, 201 Cal.App.4th 1439, 1461 (2011) (quotation omitted).)  Accordingly, Defendants are cloaked in immunity when: (1) they are public employees; (2) plaintiff's injuries were caused by acts committed by the public employees "to institute or prosecute a judicial or administrative proceeding"; and (3) the conduct of the public employees "while instituting or prosecuting the proceeding was within the scope of their employment."  (*Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205, 1209 (1994).)  For purposes of this immunity, police officers and detectives are public employees within the meaning of the Government Code, and investigations are deemed to be part of judicial and administrative proceedings.  (*See Strong*, 201 Cal.App.4th at 1461.)

The foregoing immunities are absolute and shield the Defendants from Plaintiff's claims under state law.  Accordingly, Counts IX through XIV should be dismissed.

## I.     Probable Cause to Arrest/Hold

Plaintiff's state law claim for false imprisonment (Count XI) is further precluded
due to the presence of probable cause for his arrest and prosecution.  Probable cause bars
a § 1983 false arrest or false imprisonment claim in its entirety.  (*Cabrera v. City of
Huntington Park,* 159 F.3d 374, 380 (9th Cir. 1998); see also, *Schertz v. Waupaca
County*, 875 F.2d 578, 582 (7th Cir. 1989) ("the existence of probable cause for arrest is
an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or
malicious prosecution.").)  "Probable cause exists when, under the totality of the
circumstances known to the arresting officers, a prudent person would have concluded
that there was a fair probability that the defendant had committed a crime." (*U.S. v.
Buckner*, 179 F.3d 834, 837 (9th Cir. 1999), quoting *U.S. v. Garza*, 980 F.2d 546, 550
(9th Cir. 1992).)  Probable cause does not require overwhelmingly convincing evidence,
but only "reasonably trustworthy information." (*Saucier v. Katz*, 533 U.S. 194, 207
(2001).)  Moreover, the District Attorney and trial court's decision to charge, hold and try
Plaintiff for the original crimes further immunize the Defendants from Plaintiff's false
imprisonment claim, as discussed above.

The false imprisonment claim also ignores that there was probable cause to arrest
based on Plaintiff's admitted confession, his incriminating phone calls, and the
identification of him in the surveillance video of the shooting, all of which are alleged in
the FAC.  Once the case was presented to the District Attorney's office, they made an
independent determination of whether to prosecute.  The Court also bound Tobias over
for trial, and then found him "delinquent," validating his incarceration.  Legally, neither
claim is viable.

## J.     Indemnification and Respondeat Superior are Not Proper Claims

Respondeat superior and indemnification (Counts XIII and XIV) are not separate
legal claims.  While respondeat superior might be cited within a paragraph of a tort cause
of action, to support the tort being brought against the City of Los Angeles and explain
the legal theory for holding the City responsible, it is not a separate legal claim.

ORBACH HUFF SUAREZ & HENDERSON LLP

Additionally, indemnification is not a separate legal claim here, where the defendant-officers are already being provided a defense by the City of Los Angeles.  Accordingly, both claims must be dismissed.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request this Motion to Dismiss be granted in its entirety.  As noted above, there are certain claims that are cognizable based on the factual allegations, but many of the current causes of action are not legally viable.  Thus, Defendants request this Motion be granted in order to streamline the issues prior to discovery, dispositive motions and trial.


Dated:  May 31, 2017             ORBACH HUFF SUAREZ & HENDERSON LLP

                                 By:_____/s/  Kevin E. Gilbert_____
                                       Kevin E. Gilbert
                                       Attorney for Defendants
                                       DETECTIVES MICHAEL ARTEAGA,
                                       JEFF CORTINA, JOHN MOTTO
                                       and JULIAN PERE


Dated:  May 31, 2017             BURKE, WILLIAMS & SORENSEN, LLP

                                 By:_____/s/  Susan E. Coleman_____
                                       Susan E. Coleman
                                       Attorney for Defendants
                                       CITY OF LOS ANGELES, SERGEANT
                                       JOSEPH SANCHEZ, OFFICERS DORA
                                       BORN and MARSHALL COOLEY

ORBACH HUFF SUAREZ & HENDERSON LLP

Defs' Joint Notice of Motion and Motion to Dismiss; Memo of P&A [17-cv-01076-DSF-AS]