1  David B. Owens, Cal. Bar No. 275030
   david@loevy.com
2  *Attorney for Plaintiff, Art Tobias*
   LOEVY & LOEVY
3  311 N. Aberdeen Street, 3rd Floor
   Chicago, Illinois 60607
4  (312) 243-5900

5

6

7

8

9

10            **IN THE UNITED STATES DISTRICT COURT**
          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11

12  ART TOBIAS,                          Case No. 2:17-cv-1076-DSF-AS

13        Plaintiff,                     **PLAINTIFF'S RESPONSE TO**
                                         **MOTION TO DISMISS FILED BY**
14        v.                             **DEFENDANTS CITY OF LOS**
                                         **ANGELES, SANCHEZ, BORN,**
15  CITY OF LOS ANGELES, et al.          **COOLEY, ARTEAGA, CORTINA,**
                                         **MOTTO, AND PERE**
16        Defendants.

17

18                                       DATE:    July 10, 2017
                                         TIME:    1:30 p.m.
19                                       DEPT:    Courtroom 7D
                                         JUDGE:   Hon. Dale S. Fischer
20

21

22

23

24

25

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

# TABLE OF CONTENTS

Table of Authorities ...................................................................................... iii

Introduction .................................................................................................... 1

I.    Legal Standard ....................................................................................... 2

II.   The First Amended Complaint ............................................................... 3

III.  Plaintiff's Substantive Federal Claims are Adequately Plead ...................... 4

      A.    The FAC Advances Distinct Claims ............................................. 4

      B.    Counts I, II, and III Embody Established Legal "Theories" .............. 4

            1.    Count I States a Fifth Amendment Claim ............................ 5

            2.    Count II States a Substantive Due Process Claim ................. 6

            3.    Count III States Claims Defendants Concede
                  Are Appropriate ............................................................... 8

      C.    Defendants' Arguments Are Factually and Legally Incorrect ......... 10

IV.   Criminal Suppression Remedies Do Not Foreclose Denial of Counsel

      Claims Under § 1983 ........................................................................... 11

      A.    Section 1983 Created an Independent Damages Remedy .............. 12

      B.    Plaintiff Alleges A Fifth Amendment Violation By State Actors;
            All That Is Required ....................................................................... 13

      C.    *Chavez* Is Irrelevant, as the Confession was
            Used Against Plaintiff ................................................................... 15

V.    Plaintiff's Failure To Intervene Claims Are Sufficient ............................. 17

      A.    Failure To Intervene Claims are Not Confined to the
            Excessive Force Context ............................................................... 17

      B.    The FAC Alleges Myriad Facts Illustrating Defendants'
            Failure to Intervene ...................................................................... 19

i

VI.     Plaintiff's Conspiracy Allegations are Beyond Sufficient .......................... 22

Conclusion ........................................................................... 24

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

# TABLE OF AUTHORITIES

*Abdullahi v. City of Madison,*
   423 F.3d 763 (7th Cir. 2005) ............................................................ 17, 18

*Alvarez v. Hill,*
   518 F.3d 1152 (9th Cir. 2008) ........................................................... 3, 9

*Am. Timber & Trading Co. v. First Nat'l Bank,*
   690 F.2d 781 (9th Cir.1982) ............................................................. 3

*Arista Records, LLC v. Doe 3,*
    604 F.3d 110 (2d Cir. 2010) ............................................................ 22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................... 2, 3, 10, 19

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ....................................................................... 3

*Bockari v. Ca. Victim Comp.& Gov't Claims Bd.,*
   672 F. App'x 632 (9th Cir. 2016) .................................................... 9

*Bravo v. City of Santa Maria,*
   665 F.3d 1076 (9th Cir. 2011) ......................................................... 15

*Broam v. Bogan,*
   320 F.3d 1023 (9th Cir. 2003) ......................................................... 13

*Brown v. Mississippi,*
   297 U.S. 278 (1936) ........................................................................ 5

*Carey v. Piphus,*
   435 U.S. 247 (1978) ...................................................................... 12, 13

*Carrillo v. County of Los Angeles,*
   2012 WL 12850128 (C.D. Cal. Nov. 14, 2012) ............................... 15

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

*Castellano v. Fragozo,*
   352 F.3d 939 (5th Cir. 2003) ................................................................. 13

*Chatman v. City of Chicago,*
   2015 WL 1090965 (N.D. Ill. Mar. 10, 2015) ...................................18-19

*Chavez v. Martinez,*
538 U.S. 760 (2003) ...............................................................................15-16

*County of Sacramento v. Lewis,*
   523 U.S. 833 (1998)................................................................................. 6

*Crowe v. County of San Diego,*
   608 F.3d 406 (9th Cir. 2010) .......................................................6, 7, 11

*Cunningham v. Gates,*
   229 F.3d 1271 (9th Cir. 2000) ............................................................. 17

*Devereaux v. Abbey,*
   263 F.3d 1070 (9th Cir. 2001) ............................................................. 11

*Fare v. Michael C.,*
   442 U.S. 707 (1979)............................................................................5, 14

*Farrow v. Lipetzky,*
   637 F. App'x 986 (9th Cir. 2016) ........................................................ 15

*Franklin v. Fox,*
   312 F.3d 423 (9th. Cir. 2002) .............................................................. 22

*Franks v. Delaware,*
   438 U.S. 154 (1978)............................................................................... 15

*Gallegos v. State of Colorado,*
   370 U.S. 49 (1962)................................................................................. 7

*Graham v. Connor,*
   490 U.S. 386 (1989)............................................................................... 11

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

*Heffernan v. City of Paterson, N.J.,*
    136 S. Ct. 1412 (2016)...........................................................................13

*Hollis v. York,*
    2011 WL 3740811 (E.D. Cal. Aug. 24, 2011) ...........................19

*Hurt v. Vantlin,*
    2017 WL 1021396 (S.D. Ind. Mar. 16, 2017) ...........................18

*Imbler v. Pachtman,*
    424 U.S. 409 (1976)...........................................................................12

*In re Gault,*
    387 U.S. 1 (1967)................................................................................7

*Jackson v. Barnes,*
    749 F.3d 755 (9th Cir. 2014) ..............................................14, 16

*Jackson v. City of Peoria,*
    2017 WL 1224526 (Mar. 31, 2017)...........................................18

*Koh v. Graf,*
    2013 WL 5348326 (N.D. Ill. Sept. 24, 2013).....................19-20

*Lacey v. Maricopa County,*
    693 F.3d 896 (9th Cir. 2012) ......................................................10

*Leer v. Murphy,*
    844 F.2d 628 (9th Cir. 1988) ......................................................13

*Lu Hang v. County of Alameda,*
    2011 WL 5024641 (N.D. Cal. 2011) ........................................18

*Memphis Community School Dist. v. Stachura,*
    477 U.S. 299 (1986)...........................................................................12

*Motley v. Parks,*
    383 F .3d 1058 (9th Cir.2004) ...................................................18

*Ney v. State of California,*
439 F.2d 1285 (9th Cir. 1971) ................................................................. 15

*O'Brien v. Welty,*
818 F.3d 920 (9th Cir. 2016) ..................................................................... 2

*Ortiz v. Uribe,*
671 F.3d 863 (9th Cir. 2011) ................................................................... 11

*Rochin v. California,*
342 U.S. 165 (1952) .................................................................................. 6

*Sagana v. Tenorio,*
384 F.3d 731 (9th Cir.2004) ...................................................................... 3

*Smith v. Burge,*
2016 WL 6948387 (N.D. Ill. Nov. 28, 2016) ........................................... 18

*Smith v. Illinois,*
469 U.S. 91 (1984)............................................................................... 5, 14

*Soo Park v. Thompson,*
851 F.3d 910 (9th Cir. 2017) ................................................................... 22

*Sornberger v. City of Knoxville,*
434 F.3d 1006 (7th Cir. 2006) ........................................................... 14, 17

*Stoot v. City of Everett,*
582 F.3d 910 (9th Cir. 2009) .................................................... 6, 14, 16-17

*United States v. Grubbs,*
547 U.S. 90 (2006).................................................................................. 13

*United States v. United Healthcare Ins. Co.,*
832 F.3d 1084 (9th Cir. 2016) ................................................................. 10

*Ward v. EEOC,*
719 F.2d 311 (9th Cir. 1983) ................................................................... 22

1

*Willis v. Mullins*,
 809 F.Supp.2d 1227 (E.D. Cal. 2011) .......................................................... 15

2

*Yang v. Hardin*,
 37 F.3d 282 (7th Cir. 1994) ....................................................................... 18

3

4

## **Other Authorities**

5

42 U.S.C. § 1983 ........................................................................................... passim

6

Fed. R. Civ. P. 8(a)(2) ..................................................................................... 2, 3

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff ART TOBIAS, by his attorneys, in response and opposition to the Motion to Dismiss Filed by Defendants City of Los Angeles, Sanchez, Born, Cooley, Arteaga, Cortina, Motto, and Pere (Dkt. 26), states:

### Introduction

This civil rights suit seeks redress for the violation of Plaintiff Art Tobias's constitutional rights which resulted in his wrongful conviction. Due to Defendants' misconduct, Plaintiff spent more than three-and-a-half years incarcerated during his formative years for a murder he did not commit. Dkt. 19 ¶¶1-6. Just 13 at the time of the crime, was framed by Defendants despite the fact they knew he was innocent. *Id.* ¶¶3, 30. To secure Plaintiff's wrongful conviction, among other things, Defendants fabricated "identifications" of Plaintiff, wrote false police reports, and suppressed exculpatory information. Without probable cause, Defendants arrested Plaintiff based upon pretext and their own fabrications. If that were not enough, Defendants unconstitutionally interrogated Plaintiff in order to produce a false, fabricated, and coerced "confession" to the crime. The interrogation of Plaintiff was inhumane and shocks the conscience. Eventually, Plaintiff's conviction was overturned when the court of appeals found that Plaintiff's rights were violated during the interrogation. This suit followed.

Defendants City of Los Angeles, Sanchez, Born, Cooley, Arteaga, Cortina, Motto, and Pere ("Defendants") have filed a partial motion to dismiss. The current motion should not affect commencing discovery without delay, as Defendants do not seek dismissal Plaintiff's Fourth Amendment malicious prosecution claim (Count IV) or his *Monell* claim (Count VII). Defendants seek dismissal of the

1

following federal counts: Count I, which asserts Fifth Amendment claims; Count II, which asserts a substantive due process claim; Count III, which asserts Sixth Amendment fabrication and fair trial claims; Count VI, a failure to intervene claim; and Count VII, a civil conspiracy claim. The motion should be denied.

Defendants concede that Plaintiff can bring claims for fabricating evidence and for violating his right to a fair trial. Dkt. 26, at 5. Nonetheless, they seek dismissal of Count III, which pleads these very claims. *See* Dkt. 19, at ¶¶156-62. This troublesome position is indicative of a fundamental failure throughout the entire motion—Defendants have ignored the substance of the First Amended Complaint ("FAC"). Accordingly, Plaintiff asks the motion be swiftly denied.[1]

## I.    Legal Standard

Under Rule 8, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). When considering a motion to dismiss, courts determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotes omitted)). "A

---

[1] For judicial economy, and without conceding any argument advanced by Defendants, Plaintiff agrees to voluntarily dismissal of his state-law claims. Like Defendants, Plaintiff hopes to move "this case forward as expeditiously as possible." Mot., Dkt. 29, at 5. Their motion does not serve that end. Defendants seek dismissal of a claim (Count III) they concede can be advanced as well as dismissal of claims that, during the meet-and-confer, Plaintiff was amenable to dropping (Counts XIII and XIV). For the remainder, Plaintiff was unaware Defendants believed the parties were at impasse and "unable to reach resolution." L.R. 7-3. Instead, after asking Defendants their position on several issues, and in the midst of discussions, Defendants simply failed to respond. Plaintiff's counsel heeded this Standing Court's order to "carefully evaluate defendant's contentions as to the deficiencies in the complaint" and acted in good-faith to assess raised by Defendants. To counsel's surprise, rather than a response, the motion to dismiss followed.

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Under this standard, a complaint need not identify every possible fact; "the pleading standard Rule 8 announces does not require 'detailed factual allegations.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And, "'[a] party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case.'" *Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004) (quoting *Am. Timber & Trading Co. v. First Nat'l Bank*, 690 F.2d 781, 786 (9th Cir. 1982)). Complaints need not identify legal "theories" because Rule 8, and cases interpreting it, speaks in terms of *claims*, not *theories. See* FED. R. CIV. P. 8(a)(2); *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556; *Alvarez v. Hill,* 518 F.3d 1152, 1154, & 1158-59 (9th Cir. 2008) (addressing "the longstanding principle that federal complaints plead claims, not causes of action or statutes or legal theories").

## II.    The First Amended Complaint

Defendants argue that Plaintiff's federal claims are "unsupported" and "impermissibly vague." Dkt. 26, at 7. The argument is baseless. Defendants' gripes and grumbles about the level of specificity in the FAC are complete non-starters. In over 125 paragraphs and 40 pages of factual allegations, the FAC sets out in rich detail how Defendants' misconduct violated Plaintiff's constitutional rights and caused his wrongful conviction. *See* Dkt. 19, ¶¶12-127. Rather than reiterating that extensive narrative here, Plaintiff incorporates his allegations by reference; particular allegations are discussed as necessary to respond to specific arguments.

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

### III.    Plaintiff's Substantive Federal Claims are Adequately Plead
### A. The FAC Advances Distinct Claims

Defendants allege that "Plaintiff's first seven claims are all variations of the same claim—namely, whether he was denied a right to legal counsel during his criminal prosecution." Dkt. 26 at 7. They are wrong. Any commonsense reading of the FAC shows that the claims are distinct, and are not entirely premised on the denial of counsel. Discussed further below, Count I for example asserts a Fifth Amendment claim not just related to the right to counsel, but also on the separate basis that the confession was coerced. Dkt. 19, ¶¶145, 148. Not even Count I is entirely based upon denial of counsel. Likewise, Count III asserts Sixth Amendment due process and fair trial claims related to fabricating evidence— including false police reports, bogus "identifications," and the confession itself— none of which is a "variation" of the right to counsel claim. *Id.*, ¶¶156-62. Last, Count IV alleges that Plaintiff was detained without probable cause and maliciously prosecuted—certainly is not a "variant" of denial of counsel. In short, this argument is frivolous.[2]

### B. Counts I, II, and III Embody Established Legal "Theories"

Related to the first, Defendants' next allegation is that Plaintiff's federal claims are not "supported by the currently asserted legal theories." The argument is also baseless. Dkt. 26 at 7. Plaintiff was not required to plead legal *theories*, only *claims*. But, even if "theories" were required, they are abundantly clear in the FAC.

---

[2] Plaintiff cannot see what good-faith basis Defendant could have for urging such an obviously incorrect reading of the FAC. Even if they were entitled to have it construed in their favor (which they are not), their claim is unsupported by any reasonable view of the document. Plaintiff should not be forced to address such arguments.

4

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

### 1.  Count I States a Fifth Amendment Claim

Count I encompasses at least two distinct and well-established Fifth Amendment theories—(1) that the Defendants coerced Plaintiff's confession in violation of the Fifth Amendment, *see Brown v. Mississippi*, 297 U.S. 278, 286 (1936) (statements compelled by police interrogations may not be used against a defendant at trial); and (2) that the Defendants obtained Plaintiff's confession after violating his right to counsel under the Fifth Amendment by continuing to interrogate Plaintiff after he invoked his rights. *See Smith v. Illinois*, 469 U.S. 91, 98 (1984) (describing the "rule that *all* questioning must cease after an accused requests counsel" (emphasis in original, cite omitted); *Fare v. Michael C.*, 442 U.S. 707, 719 (1979) ("[A]n accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease."). By its text, the FAC encompasses both theories:  Paragraph 145 provides that "the Defendant Officers conducted an unconstitutional interrogation of Plaintiff, which caused Plaintiff to make involuntary statements implicating himself in the murder of Alex Casteneda, and attempted murder of two others." Dkt. 19,¶145. Paragraph 156 alleges that the Defendant Officers "refused to provide Plaintiff with . . . an attorney … when he invoked his right to an attorney while being interrogated. In doing so, the Defendants violated their clearly established duty to terminate an interrogation once an individual subject to a custodial interrogation invokes their right to counsel." *Id.* ¶145.

The FAC lays out ample factual support for each of these theories. *See generally id.*, ¶¶57-122 (describing the interrogation, Plaintiff's invocation of his right to counsel, how Plaintiff was coerced, and describing the criminal case).

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

## 2. Count II States a Substantive Due Process Claim

Count II alleges that, Defendants' treatment of Plaintiff violated the Fourteenth Amendment and "shocks the conscience." The FAC provides: "[T]he Defendant Officers unconstitutional interrogation of Plaintiff shocks the conscience and involved truly egregious and unreasonable actions by defendants," this conduct "caused Plaintiff to make involuntary statements implicating himself in the murder of Alex Castaneda." *Id.* ¶152.

This claim derives from the Supreme Court's decision in *Rochin v. California*, which held that evidence based upon evidence obtained by methods "so brutal and so offensive to human dignity" that they "shock[] the conscience" violate the Due Process Clause of the Fourteenth Amendment. 342 U.S. 165, 174 (1952). Such a due process violation is of course actionable under § 1983, and involves different legal standards constitutional violations under the Fifth Amendment. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833 (1998) (§ 1983 claim can assert conduct shocks the conscience, though the allegations in that case did not suffice); *Crowe v. County of San Diego*, 608 F.3d 406, 431-32 (9th Cir. 2010) (reversing grant of summary judgment on "shocks the conscience" due process claims for juveniles who, like Plaintiff, alleged in a § 1983 suit that police officers' conduct during their interrogations violated due process and the Fifth Amendment); *Stoot v. City of Everett*, 582 F.3d 910, 924-25, 928-29 (9th Cir. 2009) (allowing § 1983 "shocks the conscience" claim concerning interrogation where plaintiff stated separate Fifth Amendment claim).[3]

---

[3] To the extent Defendants might suggest that Plaintiff was required to bring *either* a Fifth Amendment claim or 14th Amendment due process claim, the suggestion is meritless. *Crow* and *Stoot* illustrate that a plaintiff may advance both.

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

1   *Crowe* is directly on point. There, the Ninth Circuit found a substantive due

2   process violation where minors interrogated by police officers, as happened here.

3   The Ninth Circuit explained: "One need only read the transcripts of the boys'

4   interrogations, or watch the videotapes, to understand how thoroughly the

5   defendants' conduct in this case 'shocks the conscience.'" 608 F.3d at 432. *Crow*

6   reached this conclusion after separately reversing a grant of summary judgment on

7   a Fifth Amendment claim related to teenagers who were subjected to interrogations

8   "during which they were cajoled, threatened, lied to, and relentlessly pressured by

9   teams of police officers," of which "'Psychological torture'" was "not an inapt

10  description." *Id.* In finding that the conduct was not just a violation of the Fifth

11  Amendment but also "shocked the conscience," *Crowe* emphasized that it "has

12  also long been established that the constitutionality of interrogation techniques is

13  judged by a higher standard when police interrogate a minor." *Id.* at 431 (citing *In

14  re Gault*, 387 U.S. 1, 55 (1967)); *see also Gallegos v. Colorado*, 370 U.S. 49, 54

15  (1962) (noting that "a 14-year-old boy, no matter how sophisticated, is unlikely to

16  have any conception of what will confront him when he is made accessible only to

17  the police").

18         The facts found sufficient to warrant a reversal of summary judgment of a

19  Due Process violation in *Crowe* are analogous to those alleged in the FAC. Like

20  the plaintiffs in *Crowe*, Plaintiff was a young teenager; he was cajoled, threatened,

21  lied to, and relentlessly pressured by police officers; and Defendants deliberately

22  infringed upon his right to remain silent. *See, e.g.*, Dkt. 19, ¶5 ("The interrogation,

23  which is also captured on video, reveals the unconscionable misconduct of the

24  Defendant Officers who—with guns on their hips and Plaintiff handcuffed to a

25

7

chair—used blatantly unconstitutional and coercive tactics to produce a false, forced, and fabricated confession. Defendants made false promises, screamed and yelled, lied, refused Plaintiff's repeated pleas to see his mother, refused Plaintiff's request for an attorney, swore at Plaintiff, and one officer even put his hands on Plaintiff"); *id.* ¶¶ 63-64 (Defendants knew Plaintiff was a minor, but decided to "disregard completely the constitutional standards concerning the treatment of suspects" including those applicable to juvenile suspects); *id.* ¶¶ 69-75 (Plaintiff denied repeated request to see his mother); *id.* ¶¶96-98 (describing false evidence ploy and affirmative statements designed to get Plaintiff to confess); *id.* ¶¶99-103 (Plaintiff's invocation of his right to an attorney is disregarded instead of ending questioning); *id.* ¶¶104-05 (Plaintiff left in isolation and lied to); *id.* ¶¶106-111 (Detective Arteaga's unconscionable actions, including putting his hands on Plaintiff, repeatedly lying, yelling, pounding on the table, invoking promises of leniency, falsely claiming that it would "help" Plaintiff if he confessed; calling Plaintiff a "big fucking liar" and "cold blooded killer"; and the list goes on). The FAC alleges more than sufficient facts in support of this claim.

### 3. Count III States Claims Defendants Concede Are Appropriate

Count III advances Sixth Amendment fair trial and due process claims that support several "legal theories." Defendants concede that the facts of this case provide Plaintiff with valid claims concerning (1) the right to due process and a fair trial, and (2) evidence fabrication. Dkt. 26 at 5. Both are pleaded in Count III. Paragraph 157 provides that the Defendant Officers "deprived Plaintiff of his constitutional right to a fair trial." Dkt. 19, ¶157. The next paragraph is even more explicit, and alleges that the Defendant Officers "fabricated evidence—including

8

but not limited to reports concerning Defendants' false claims purporting to "identify" Plaintiff, the substance of Plaintiff's oral confession, reports purporting to memorialize Plaintiff's confession—and/or deliberately withheld exculpatory evidence." *Id.* ¶158.

Given their concession—these claims applicable in this suit—Defendants' motion to dismiss this Count is inexplicable, and inexcusable. Defendants have wasted the resources of this Court, and of counsel, in bringing their motion. To be sure, there can be no doubt that the facts alleged in the FAC are sufficient to state these claims. *See, e.g.*, Dkt. 19, ¶¶ 32-47. 49-56 (describing Defendants' actions in fabricating police reports and creating false "identifications," the falsity of which were never disclosed); *id.* ¶¶91, 114-17 (discussing fabrication of the confession). (This Count, with ample factual basis, also encompasses a theory of liability under *Brady v. Maryland*, 373 U.S. 83 (1963), which Defendants did not discuss.)

Thus, the assertion that Counts I, II, and III are "vague" or "unsupported" by the appropriate "legal theories" is entirely meritless.[4]

---

[4] Defendants also state that "the specific constitutional amendment at issue should be specified rather than generalizing." Dkt. 26, at 15. This statement is wrong—a complaint need not identify each constitutional provision. *See Alvarez*, 518 F.3d at 1157 (a "complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss" (cites omitted)); *see, e.g., Bockari v. Ca. Victim Comp.& Gov't Claims Bd.*, 672 F. App'x 632, 634 (9th Cir. 2016) (applying this rule). In addition, Counts I, II, and III, actually *do* identify the "specific constitutional amendment," as described above. *See* Dkt. 19, ¶¶144, 141, & 160. (There is a typo in the heading for Count II, which should say Sixth (rather than Fifth) Amendment, but the allegations are correct.) Last, Defendants may have misunderstood why Counts I and III refer to the Fourteenth Amendment; it is because the Fifth and Sixth Amendments are technically applicable here via Fourteenth Amendment incorporation, *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 846-47 (1992), not because Plaintiff is being redundant or "generalizing."

9

## C. Defendants' Arguments Are Factually and Legally Incorrect

For completeness, two arguments made by Defendants bear mention. First, Defendants argue that Plaintiff does not specify which Defendants are responsible under each claim, claiming that "this failure to specify violates Federal Rules [sic] of Civil Procedure 8(a)." Dkt. 26, at 8. Not so. Rule 8's short plain statement requirement, even under *Iqbal*, does not require this sort of detail. Indeed, such a level of detail is not even necessary under Rule 9—which applies in fraud cases and requires more specific allegations than this civil rights suit. *See United States v. United Healthcare Ins. Co.*, 832 F.3d 1084, 1102 (9th Cir. 2016) (holding that, even in a False Claims Act case where a plaintiff has to plead fraud with specificity under Rule 9, "[t]here is no flaw in a pleading, … where, as here, collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct").

Defendants offer no authority for this supposition. Regardless, this argument fails to appreciate how, as a whole, the FAC provides for liability for all of the individually-named defendants for each violation of Plaintiff's constitutional rights in light of the conspiracy and failure-to-intervene claims. By conspiracy alone, each individual defendant can be liable for each substantive violation of Plaintiff's rights, as alleged in Counts I, II, III, and IV. *Cf. Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc) (noting that conspiracy claims may "enlarge the pool of responsible defendants by demonstrating their causal connections to the violation; the fact of the conspiracy may make a party liable for the unconstitutional actions of the party with whom he has conspired"). Thus, even if each Defendant did not do each specific act—a concession not made here—their

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

liability for conspiracy to violate each substantive right illustrates how and why each claim is stated against each Defendant.

Second, Defendants wrongly assert that the standard for "evaluating all claims that a police officer improperly exercised his authority is the Fourth Amendment's reasonableness standard." Dkt. 26 at 8. The law is to the contrary. *Graham v. Connor*, 490 U.S. 386, 397 (1989), which defendants cite, did not announce such a sweeping statement. Instead, coerced confession claims involve the Fifth Amendment's standard—determining whether a statement was knowingly and voluntarily made under the totality of the circumstances—the voluntariness of a confession is not judged by whether the conduct was "reasonable." *Ortiz v. Uribe*, 671 F.3d 863, 869 (9th Cir. 2011). Fourteenth Amendment due process claims are treated under the "shocks the conscience" standard, not *Graham*. *See Crowe*, 608 F.3d at 431-32. Likewise, a fabrication claim is assessed under the standards outlined in the authority Defendants themselves have cited, not under the Fourth Amendment standard. *See* Dkt. 26 at 5 (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc)).

## IV.    Criminal Suppression Remedies Do Not Foreclose Denial of Counsel Claims Under § 1983

Defendants next argue that Plaintiff cannot assert a claim for the violation of his right to counsel under the Fifth Amendment because the remedy is suppression of information, not a civil suit. Dkt. 26 at 8-9. Tellingly, Defendants have cited no authority for the proposition that the availability of a criminal remedy (suppression of evidence) somehow precludes a separate action or claim under § 1983 in the future. (They have only cited cases concerning the criminal remedies for violating a defendant's right to counsel, not any authorities under § 1983.) The reason is

11

clear: the notion that the existence of a possible criminal suppression remedy could preclude a § 1983 remedy completely lacks legal support and is at odds with the plain text of the statute and the holdings of the Supreme Court.

### A. Section 1983 Created an Independent Damages Remedy

In unequivocal terms, § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected . . . any citizen of the United States ... to the deprivation of *any* rights, privileges, or immunities secured by Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983 (emphasis added). By its use of the term "any," the statute does not distinguish between rights violations that result in the suppression of evidence in the criminal context, and those that do not. Instead, the Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates "'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 306 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 253, (1978), which was quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976) ).

Put differently, it is well-established that § 1983 *created* civil/tort liability for the violation of constitutional rights that has absolutely nothing to do with the availability of criminal remedies. Instead, "over the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights. These rules, defining the elements of damages and the prerequisites for their recovery,

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

provide the appropriate starting point for the inquiry under § 1983." *Carey*, 435 U.S. at 257-58.

Consistent with the understanding that the availability of a criminal suppression remedy does not preclude a subsequent § 1983 suit, the Supreme Court has specifically noted that there are multiple *ex post* remedies for wrongfully obtained evidence including both "a right to suppress evidence improperly obtained *and* a cause of action for damages." *United States v. Grubbs*, 547 U.S. 90, 99 (2006) (emphasis added). Thus, the Supreme Court has never imposed the rule Defendants ask this Court to invent. Indeed, adopting Defendants' position would mean contradicting not just the Court's precedents about § 1983 damages remedies but would require this Court to "somehow sidestep[] . . . the congressional command of § 1983." *Castellano v. Fragozo*, 352 F.3d 939, 956 (5th Cir. 2003) (en banc). Such an argument must be rejected. *Cf. id.* (holding similarly).

### B. Plaintiff Alleges A Fifth Amendment Violation By State Actors; All That Is Required

To proceed on a § 1983 claim, a plaintiff need only allege "a state actor … deprived him of a constitutional right." *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1420 (2016). The Ninth Circuit has explained: "Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988); *see also Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) ("In order to allege a claim upon which relief may be granted under § 1983, a plaintiff must show that

13

he or she has been deprived of a right secured by the Constitution and that the deprivation was under color of state law.") (cites omitted)).

Here, there is no doubt that Count I alleges (1) that Defendants acted under color of law, Dkt. 19, ¶144, and (2) that they violated Plaintiff's Fifth Amendment rights, Dkt. 19, ¶¶143-49. (*See* *Smith*, 469 U.S. at 95, and *Fare*, 442 U.S. at 719). That should end the matter altogether.

Indeed, in further illustrating that Defendants' argument lacks merit, federal courts routinely entertain § 1983 suits, as here, where the constitutional violation could have led to the suppression of evidence as a criminal remedy, including cases involving claims under the Fifth Amendment. In *Jackson v. Barnes*, for example, the Ninth Circuit reversed the dismissal of a § 1983 suit advancing a Fifth Amendment claim where a statement obtained in the absence of *Miranda* warnings was introduced against the plaintiff to obtain his conviction. 749 F.3d 755, 758-60 (9th Cir. 2014). The *Jackson* plaintiff's conviction was later overturned, the statement was suppressed, and he later commenced a § 1983 suit based upon the Fifth Amendment violation in the criminal case, of which the court approved. *Id.* The suppression remedy was no bar. In the same vein, *Stoot v. City of Everett*, 582 F.3d 910, 924-25 (9th Cir. 2009), held that a plaintiff stated a Fifth Amendment violation where a confession was used against him in a pre-trial proceeding and allowed him to proceed with his § 1983 suit. In so doing, *Stoot* cited favorably a Seventh Circuit decision for the proposition that pretrial use of a plaintiff's "'confession, if the confession is indeed found to have been elicited without *Miranda* warnings, allows a suit for damages under § 1983.'" *Id.* (quoting *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1027 (7th Cir. 2006)).

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

Additional examples are myriad. *See, e.g.*, *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083-84 (9th Cir. 2011) (Fourth Amendment claim in a § 1983 suit alleging that police officers falsified a warrant application under *Franks v. Delaware*, 438 U.S. 154 (1978), where criminal remedy for a *Franks* violation is suppression); *Ney v. State of California*, 439 F.2d 1285, 1287-88 (9th Cir. 1971) (allowing § 1983 claim based upon interrogation that occurred after suspect invoked right to counsel); *Farrow v. Lipetzky*, 637 F. App'x 986, 988 (9th Cir. 2016) (reversing dismissal of Sixth Amendment right-to-counsel claim in § 1983 suit where violation of right to counsel in a criminal case requires suppression of evidence); *Carrillo v. County of Los Angeles*, 2012 WL 12850128, at *5 (C.D. Cal. Nov. 14, 2012) (noting the claim that identification was "the product of unconstitutionally suggestive techniques" was required to be excluded in a criminal case and that a "plaintiff convicted on the basis of such identifications can bring an action under Section 1983." (cites omitted)); *Willis v. Mullins*, 809 F.Supp.2d 1227, 1229-30 (E.D. Cal. 2011) (denying summary judgment on Fourth Amendment § 1983 claim following a criminal court's determination that the evidence had to be suppressed).

### C. *Chavez* Is Irrelevant, as the Confession was Used Against Plaintiff

Defendants' citation to *Chavez v. Martinez*, 538 U.S. 760 (2003) (plurality), does not change any of the foregoing. As an initial matter, Defendants have neglected to mention that *Chavez* was a plurality decision, which must be read narrowly, and Defendants have failed to indicate that their citations to *Chavez* shift between different opinions with different weight.

More importantly, however, *Chavez* is inapposite. The issue in *Chavez* was whether a statement obtained by coercion could be actionable in a subsequent

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

§ 1983 suit alleging a Fifth Amendment violation where the statement was never used in a criminal case and the plaintiff was never even charged. The Ninth Circuit has described the holding of *Chavez* as follows: "[i]n a set of opinions, none of which commanded a majority on the Fifth Amendment issue, the Court held that coercive police questioning does not violate the Fifth Amendment, *absent use of the statements in a criminal case.*" *Stoot*, 582 F.3d at 923 (emphasis added). Following *Chavez*, Courts have dealt with the question about *when* a "criminal case" has begun—*e.g.* indictment, a preliminary hearing, or something else—to determine whether, in a particular case, the Fifth Amendment violation has become "ripe." That question is irrelevant here; Plaintiff's Fifth Amendment claims are based upon the introduction of the unlawfully obtained false confession introduced in his criminal case at trial and to secure his wrongful conviction. *See* Dkt. 19, ¶¶ 1-2, 2 n.1, 118-24, 145-47.

Thus, to the extent Defendants have read the FAC to allege a claim based upon the "failure to read *Miranda* warnings," they have missed the thrust of (1) the complaint, and (2) the plurality holding of *Chavez*. First, the thrust of the complaint is that Plaintiff's Fifth Amendment rights were violated because a confession obtained in violation of the Fifth Amendment was used against him in a criminal case. Plaintiff does not contend that the delayed and shabby *Miranda* warnings provided in this case, without more, serve as the basis for this count. Second, the only issue actually resolved by the *Chavez* plurality was that there was no Fifth Amendment violation in that case because the statements obtained through police misconduct were never used in a criminal case; a far cry from the situation here. Law subsequent to *Chavez* confirms this interpretation. For example, in *Stoot*,

16

following the Seventh Circuit in *Sornberger*, the Ninth Circuit recognized that even the failure to *Mirandize* (which is not the core allegation here) becomes actionable under § 1983 when it "ripens" into a violation by its use against the accused in a criminal case. *See Stoot*, 582 F.3d at 924-25 (citing *Sornberger*, 434 F.3d 1026-27); *accord Jackson*, 749 F.3d at 758-59 (§ 1983 claim for *Miranda* violations where statement used at trial). *Chavez* is inapplicable here.

## V.   Plaintiff's Failure To Intervene Claims Are Sufficient

### A. Failure To Intervene Claims are Not Confined to the Excessive Force Context

Defendants next assert that a claim of failure to intervene cannot be based on an alleged failure to stop an interrogation. Dkt. 26 at 9. The law is against them. Failure-to-intervene claims are not confined to excessive force situations; the premise is that a defendant had the opportunity to stop constitutional violation of but declined to intercede regardless of the right at being violated. Indeed, law enforcement officers have a general "duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (internal quotes and citations omitted).

The authority Defendants cite, *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005), illustrates the failure of their argument. *Abdullahi* explained that an "'[a]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens" can be liable under three scenarios if that officer had reason to know: "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, *or* (3) *that any constitutional violation has been committed by a law enforcement official*; *and*

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Id.* (quoting *Yang v. Hardin*, 37 F.3d 282 [, 285] (7th Cir. 1994) (emphasis added)).

Defendants' motion invites this Court to completely ignore the third situation described in *Abdullahi* —that a failure to intervene claim can occur where an officer had reason to know ***any*** constitutional violation has been committed and had a realistic opportunity to intervene to prevent the harm from occurring. This invitation should be declined.

It also bears mentioning that plaintiffs are routinely permitted to bring claims alleging a failure to intervene outside of the excessive force context. *See, e.g.*, *Motley v. Parks*, 383 F .3d 1058, 1071 (9th Cir.2004) (denying summary judgment claim against officers who failed to intercede in harassment during a search); *Jackson v. City of Peoria*, 2017 WL 1224526, at *10 (C.D. Cal. Mar. 31, 2017) (denying motion to dismiss failure to intervene claim in a false confession suit); *Hurt v. Vantlin*, 2017 WL 1021396, at *20-21 (S.D. Ind. Mar. 16, 2017) (denying summary judgment to defendants on failure to intervene in an interrogation and for fabrication of evidence); *Smith v. Burge*, 2016 WL 6948387, at *10 (N.D. Ill. Nov. 28, 2016) (declining to dismiss intervention claim regarding a coerced confession and fabrication of evidence); *Lu Hang v. County of Alameda*, 2011 WL 5024641 (N.D. Cal. Oct. 20, 2011) (denying motion to dismiss where officers witnessed but failed to stop unconstitutional interrogation and detention).

*Chatman v. City of Chicago*, 2015 WL 1090965, at *8 (N.D. Ill. Mar. 10, 2015), is illustrative. There, the court denied a motion to dismiss a failure-to-intervene claim and rejected the type of argument advanced by Defendants here—

18

1  that there were not sufficient details in the complaint. *Chatman* explained

2  Defendants argued that "the complaint does not indicate the manner in which they

3  could have intervened," and rejected this argument because "the complaint alleges

4  that these Defendants worked together with the investigation team, knew that the

5  team was withholding exculpatory evidence, and did nothing to stop it." *Id.*

6      The situation here is analogous. The FAC alleges that the Defendants

7  worked together to violate Plaintiff's constitutional rights, including under the

8  Fifth Amendment (Count I), the Due Process Clause (Count II), the Sixth

9  Amendment (Count III), and the Fourth Amendment (Count IV). There are

10 sufficient facts to infer that each defendant had the opportunity, at one point or

11 another, to intervene. Defendants Cooley and Born, for example, could have

12 declined to go along with Defendants Pere and Motto in creating false

13 "identifications" and fabricating police reports. Defendants at the police station

14 following Plaintiff's false arrest—including Pere, Motto, Sanchez, Areteaga, and

15 Cortina—all had the opportunity to stop one another from violating Plaintiff's

16 constitutional rights. They declined to do so.

## B. The FAC Alleges Myriad Facts Illustrating Defendants' Failure to Intervene

19     Defendants argue that Plaintiff does not identify "which defendants were

20 allegedly present and failed to intervene nor does it list any specific actions or

21 inactions." Dkt. 26, at 10. Such a list is not required by Rule 8. *See. Iqbal*, 556 U.S.

22 at 678 (Rule 8 "does not require 'detailed factual allegations'"); *Hollis v. York*,

23 2011 WL 3740811, at *2 (E.D. Cal. Aug. 24, 2011) ("The function of the

24 complaint is  not to list every single fact relating to [a] Plaintiff's claims."); *Koh v.*

25 *Graf*, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013) ("Rule 8(a) is not so rigid

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer. Such a pleading standard would effectively allow police officers to violate constitutional rights with abandon as long as they ensured they could not be individually identified, even if liability for acting in concert (or for aiding and abetting each other) would otherwise apply.").

In addition, the FAC alleges that Defendants violated Plaintiff's Fifth Amendment Rights in securing his false confession; that the Defendants' conduct shocked the conscience; and that they fabricated evidence, including through their own bogus "identifications" and police reports that contained false and/or misleading information; and that they caused Plaintiff's detention without probable cause. Importantly, the FAC does not confine the failure to intervene to the constitutional torts related the unlawful interrogation; the Count covers all of the substantive constitutional violations alleged in Counts I, II, III, and IV.

For each Defendant, there are scores of facts alleged illustrating their liability. Defendants' contrary contention rests on a refusal to consider all of the facts in the complaint and the inferences that flow in Plaintiff's favor. Take, for example, the argument about Defendant Sanchez, whom Defendants argue is not sufficiently identified on a failure-to-train theory because he is "listed in paragraph 61 as the supervisor of the Detectives but is not specifically alleged to have watched the interrogation or the video." Dkt. 26, at 10. Defendants' argument rests upon a selective reading of the FAC; Paragraph 61 is not the only allegation concerning Defendant Sanchez. To begin, Paragraph 61 provides that "Sergeant Sanchez, as the supervisor of the Detectives and other officers who interrogated

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

Plaintiff and questioned his mother, approved the actions of the detectives and *was involved in coordinating their efforts to secure Plaintiff's false confession*. Dkt. 19, at ¶ 61 (emphasis added). Defendants have thus ignored the fact that the FAC alleges that Sanchez was directly "involved in coordinating their efforts to secure Plaintiff's false confession."

Defendants have also ignored Paragraph 60 in the FAC that provides further amplification of Paragraph 61, by alleging that Defendants not in the interrogation room—like Defendant Sanchez— "were able to observe the audio and video recording of the interrogation of Plaintiff as it was going, which allowed them to coordinate[] their efforts to secure Plaintiff's false conviction." *Id.* ¶60. The paragraph further provides that "Defendants also conferred before interrogating Plaintiff as to what their strategies would be for getting Plaintiff to confess." *Id.* Moreover, if there were any doubt that Defendant Sanchez was involved, the FAC further alleges that "[b]oth before and as the interrogation wore on, Defendant Sanchez coordinated with the Detective defendants, approved their actions, and did nothing to intervene in the unlawful interrogation even though he knew that the detectives were actively trampling Plaintiff's rights." *Id.* ¶82. These allegations are more than sufficient and support the fair inference that Defendant Sanchez observed the interrogation.

The FAC is similar for Defendants Born and Cooley—both of whom Plaintiff alleges actively chose to fabricate evidence with the others. *See id.* ¶¶32-47. Plainly, they could have intervened: they could have refused the Detective Defendants' request to provide false identifications of Plaintiff; they could have written accurate reports; and they could have reported the

21

1  detectives when they persisted in using the false identifications as a basis for
2  arresting Plaintiff without probable cause.

3  **VI.    Plaintiff's Conspiracy Allegations are Beyond Sufficient**

4          Defendants contend Plaintiff's conspiracy claim is deficient "as a matter of
5  law." Dkt. 26 at 11. As above, in making this argument Defendants have (1)
6  invoked the wrong legal standard and (2) ignored large swaths of the facts alleged
7  in the FAC with respect to the conspiracy claim.

8          As for the law, to prove a § 1983 conspiracy, a plaintiff must "show an
9  agreement or 'meeting of the minds' to violate [her] constitutional rights." *Ward v.*
10 *EEOC*, 719 F.2d 311, 314 (9th Cir. 1983). Such an agreement "may be inferred
11 from conduct and need not be proved by evidence of an express agreement"; a
12 plaintiff need only point to some "facts probative of a conspiracy." *Id.* And, while
13 each participant must "share the common objective" of the conspiracy, "each
14 participant in the conspiracy need not know the exact details of the plan. *Franklin*
15 *v. Fox*, 312 F.3d 423, 441 (9th. Cir. 2002). The Ninth Circuit has made clear that
16 the "plausibility standard ... does not prevent a plaintiff from pleading facts alleged
17 upon information and belief where the facts are peculiarly within the possession
18 and control of the defendant or where the belief is based on factual information
19 that makes the inference of culpability plausible.'" *Soo Park v. Thompson*, 851
20 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d
21 110, 120 (2d Cir. 2010)). Indeed, courts have recognized that for conspiracy
22 claims, like other claims known by defendants, courts must be wary of dismissing
23 claims on the basis of arguments like those put forth by Defendants here. *Id.* Thus,
24 the law provides that Plaintiff need not identify every single fact about the

25

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

conspiracy; only those sufficient, in light of the "entire factual context" to be "suggestive of an agreement to engage in illegal conduct." *Id.*

Turning to the facts, Defendants contend that there "are not actual 'facts' as to which Defendants conspire, the overt acts of each, what the actual agreement was or how they came to such agreements." Dkt. 26, at 10. As explained, this level of specificity is not required. More important, a fulsome reading of the FAC makes it clear that there are facts that illustrate an agreement, acts in furtherance of the agreement, and its purpose. Defendants have just ignored them. The aim of the conspiracy is clear: to secure Plaintiff's wrongful conviction by violating his constitutional rights, as set forth in Counts I, II, III, and IV.

In addition, there are many alleged facts that describe this conspiracy, contrary to Defendants' contention. To summarize, the FAC alleges that the Defendant Officers "rather than focusing on investigating" decided to pursue Plaintiff as the shooter, and used a missing persons report as pretext. Dkt. 119, ¶27. The FAC makes clear that this "began with Defendants Pere and Moto, who subsequently interacted with each of the individually-named Defendant Officers," who all "agreed to join and assist Defendants Pere and Moto in their efforts to prosecute Plaintiff for the Castaneda homicide, despite the fact that he was innocent." *Id.* ¶29. The FAC then goes along and describes how each of the individually-named defendants interacted with Defendants Pere and Moto to secure Plaintiff's wrongful conviction, in violation of his constitutional rights. Defendants Cooley, Born, and East agreed to generate false and fabricated "identifications" of Plaintiff, *see id.* ¶¶32-47 (Defendant Cooley and Born); *id.* ¶¶ 51-52 (Defendant

Plaintiff's Memorandum in Response to Motion to Dismiss
2:17-cv-1076-DSF-AS

East's "identification"); *see also id.* ¶ 55 (false police reports); *id.*, ¶¶ 60-62 (station officers including Defendants Pere, Motto, Sanchez, Cortina, and Arteaga).

Clearly, Plaintiff's brutal interrogation was a core part of the conspiracy, and the "who," "what," "when," and "how" of that process is alleged in exceptional detail over the course of more than 50 paragraphs spanning more than 10 pages. *See id.* at ¶¶63-117. The complaint, both in the "facts" section in each "count" then makes it clear that the conspiracy against Plaintiff worked—they were able to secure Plaintiff's wrongful conviction, on the basis of their misconduct and in violation of Plaintiff's constitutional rights. *Id.* ¶¶118-24 (Plaintiff's wrongful conviction); *see also id.* ¶¶143-49 (Count I); *id.* ¶¶150-55 (Count II); *id.* ¶¶156-62 (Count III); *id.* ¶¶163-59 (Count IV).

These allegations state a plausible conspiracy claim, especially given that Defendants are the ones with the details, not fully known to Plaintiff, of precisely how and why they chose to frame a 13-year-old for a crime he did not commit.

### Conclusion

Defendants' motion to dismiss Plaintiff's federal claims should be denied.

Respectfully submitted,

**ART TOBIAS**

Dated:   June 9, 2017        By:  /s/ David B. Owens
                                  *One of Plaintiff's attorneys*

David B. Owens, Cal. Bar No. 275030
david@loevy.com
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

24