Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohshlaw.com
**ORBACH HUFF SUAREZ & HENDERSON LLP**
1901 Harrison Street, Suite 1630
Oakland, CA 94612
Telephone: 510.999.7908/Facsimile: 510.999.7918

Attorney for Defendants
DETECTIVES MICHAEL ARTEAGA, JEFF CORTINA,
JOHN MOTTO and JULIAN PERE

Susan E. Coleman, Esq. (SBN 171832)
scoleman@bwslaw.com
**BURKE, WILLIAMS & SORENSEN, LLP**
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Telephone: 213.236.0600/Facsimile: 213.236.2700

Attorney for Defendants
CITY OF LOS ANGELES, SERGEANT JOSEPH SANCHEZ
OFFICERS DORA BORN and MARSHALL COOLEY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART TOBIAS,<br><br>                   Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES; SGT. SANCHEZ, #25339; DETECTIVE MICHAEL ARTEAGA, #32722; DETECTIVE JEFF CORTINA, #35632; DETECTIVE J. MOTTO, #25429; DETECTIVE JULIAN PERE, #27434; OFFICER MARSHALL COOLEY, #38940; OFFICER BORN, #38351; L.A. SCHOOL POLICE OFFICER DANIEL EAST, #959; and UNIDENTIFIED EMPLOYEES of the CITY OF LOS ANGELES,<br><br>                   Defendants. | Case No.  17-cv-01076-DSF-AS<br><br>**DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P. RULES 12(b)(6) AND 12(c); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:     March 26, 2018<br>TIME:     1:30 p.m.<br>DEPT:     Courtroom 7D<br>JUDGE:   Hon. Dale S. Fischer |

Defs' Joint Notice of Motion and Motion to Dismiss; Memo of P&A [17-cv-01076-DSF-AS]

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION ..................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................2

I. STATEMENT OF FACTS ...............................................................................2

II. LEGAL ARGUMENT ......................................................................................4

    A. Legal Standard.........................................................................................5

    B. The Individual Defendants Are Entitled to Qualified Immunity ....................6

III. CONCLUSION ................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Anderson v. Creighton,*
  483 U.S. 635 (1987) ............................................................................................ 6, 11

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ............................................................................................ 6, 11

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................................. 5

*Beherens v. Pelletier,*
  516 U.S. 299 (1996) ................................................................................................ 11

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) .................................................................................................. 5

*Case v. Kitsap County Sheriff's Dept.,*
  249 F.3d 921 (9th Cir. 2001) .................................................................................... 7

*Clark v. Murphy,*
  331 F.3d 1062 (9th Cir. 2003) .................................................................................. 8

*Cunningham v. City of Wenatchee,*
  345 F.3d 802 (9th Cir. 2003) .................................................................................. 10

*Davis v. Scherer,*
  468 U.S. 183 (1984) .............................................................................................. 7, 9

*Davis v. United States,*
  512 U.S. 452 (1994) .............................................................................................. 7, 8

*Doody v. Ryan,*
  649 F.3d 986 (9th Cir. 2011) .................................................................................. 10

*Groh v. Ramirez,*
  540 U.S. 551 (2004) .................................................................................................. 6

# TABLE OF AUTHORITIES

**Page(s)**

*Hope v. Pelzer*,
   536 U.S. 730 (2002) ...................................................................................... 6

*Hunter v. Bryant*,
   502 U.S. 224 (1991) .................................................................................... 11

*Malley v. Briggs*,
   475 U.S. 335 (1986) ...................................................................................... 6

*Norman v. Ducharme*,
   871 F.2d 1483 (9th Cir. 1989) ...................................................................... 8

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ................................................................................ 6, 11

*Sorrels v. McKee*,
   290 F.3d 965 (2002) .................................................................................... 11

*Stanton v. Sims*,
   ____U.S. ____, 134 S.Ct. 3 (2013) ............................................................... 6

*U.S. v. Coleman*,
   208 F.3d 786 (9th Cir. 2000) ...................................................................... 10

*U.S. v. Preston*,
   751 F.3d 1008 (9th Cir. 2014) .................................................................... 10

*United States v. Doe*,
   60 F.3d 544 (9th Cir. 1995) .......................................................................... 8

*United States v. Fouche*,
   776 F.2d 1398 (9th Cir. 1985) ...................................................................... 8

*United states v. Ogbuehi*,
   18 F.3d 807 (9th Cir. 1994) .......................................................................... 8

*United States v. Younger*,
   398 F.3d 1179 (9th Cir. 2005) ...................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

*Hope v. Pelzer*,
   536 U.S. 730 (2002) ...................................................................................... 6

*Hunter v. Bryant*,
   502 U.S. 224 (1991) .................................................................................... 11

*Malley v. Briggs*,
   475 U.S. 335 (1986) ...................................................................................... 6

*Norman v. Ducharme*,
   871 F.2d 1483 (9th Cir. 1989) ...................................................................... 8

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ................................................................................ 6, 11

*Sorrels v. McKee*,
   290 F.3d 965 (2002) .................................................................................... 11

*Stanton v. Sims*,
   ____U.S. ____, 134 S.Ct. 3 (2013) ............................................................... 6

*U.S. v. Coleman*,
   208 F.3d 786 (9th Cir. 2000) ...................................................................... 10

*U.S. v. Preston*,
   751 F.3d 1008 (9th Cir. 2014) .................................................................... 10

*United States v. Doe*,
   60 F.3d 544 (9th Cir. 1995) .......................................................................... 8

*United States v. Fouche*,
   776 F.2d 1398 (9th Cir. 1985) ...................................................................... 8

*United states v. Ogbuehi*,
   18 F.3d 807 (9th Cir. 1994) .......................................................................... 8

*United States v. Younger*,
   398 F.3d 1179 (9th Cir. 2005) ...................................................................... 8

ORBACH HUFF SUAREZ & HENDERSON LLP

# TABLE OF AUTHORITIES

Page(s)

*White v. Pauly,*
  \_\_\_\_\_U.S. \_\_\_\_\_, 137 S.Ct. 548 (2017) ......................................................................... 6

**State Cases**

*People v. Art T,*
  234 Cal.App.4th 335 (2015) ............................................................................................ 9

*People v. Bacon,*
  50 Cal.4th 1082 (2010) ................................................................................................... 8

*People v. Buskirk,*
  175 Cal.App.4th 1436 (2009) ......................................................................................... 8

*People v. Gonzalez,*
  34 Cal.4th 1111 (2005) ................................................................................................... 8

*People v. Lessie,*
  47 Cal.4th 1152 (2010) ................................................................................................... 8

*People v. Nelson,*
  53 Cal.4th 367 (2012) ............................................................................................ 8, 9, 10

*People v. Sauceda-Contreras,*
  55 Cal.4th 203 (2012) ..................................................................................................... 8

*People v. Roquemore,*
  131 Cal.App.4th 11 (2005) ............................................................................................. 8

*People v. Scaffidi,*
  11 Cal.App.4th 145 (1992) ............................................................................................. 8

*People v. Simons,*
  155 Cal.App.4th 948 (2007) ........................................................................................... 8

ORBACH HUFF SUAREZ & HENDERSON LLP

# TABLE OF AUTHORITIES

Page(s)

**Statutes**

42 U.S.C. § 1983 ...................................................................................................... 6

California Welfare & Institutions Code § 625.6 ..................................................... 9

**Rules**

Federal Rules of Civil Procedure, Rule:
   8(a)(2) .................................................................................................................. 5

Central District Local Rules, Rule:
   7-3 ....................................................................................................................... 1

California Rules of Court, Rule:
   8.1105 .................................................................................................................. 9

# NOTICE OF MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 26, 2018, at 1:30 p.m. in Courtroom 7D of the above-captioned Court, Defendants CITY OF LOS ANGELES, SANCHEZ, BORN COOLEY, ARTEAGA, CORTINA, MOTTO and PERE (hereinafter "Defendants" or "Defendant officers") will move this Court for an Order dismissing Plaintiff's claims of violation of his rights related to his custodial interrogation, as pled within his First, Second and Third claim within the Second Amended Complaint. Defendants' Motion requests the Court decide whether the Defendants are entitled to qualified immunity related to Plaintiff's custodial interrogation.

In advance of filing this Motion, the parties engaged in a meet-and-confer session in compliance with Local Rule 7-3, which occurred on February 14, 2018 and has continued thereafter. Despite those discussions, the parties were unable to resolve the pending disputes, thereby requiring the Court to adjudicate the outstanding issues. Said Motion will be based upon this Notice, the Memorandum of Points and Authorities, the Request for Judicial Notice and the exhibits attached thereto and Plaintiff's Second Amended Complaint, together with such other oral and documentary evidence as may be submitted to the Court.

Dated: February 21, 2018        ORBACH HUFF SUAREZ & HENDERSON LLP

By:      /s/ Kevin E. Gilbert
Kevin E. Gilbert
Attorney for Defendants
DETECTIVES MICHAEL ARTEAGA,
JEFF CORTINA, JOHN MOTTO
and JULIAN PERE

Dated: February 21, 2018        BURKE, WILLIAMS & SORENSEN, LLP

By:      /s/ Susan E. Coleman
Susan E. Coleman
Attorney for Defendants
CITY OF LOS ANGELES, SERGEANT
JOSEPH SANCHEZ, OFFICERS DORA
BORN and MARSHALL COOLEY

- 1 -

Defs' Joint Notice of Motion and Motion to Dismiss; Memo of P&A [17-cv-01076-DSF-AS]

# MEMORANDUM OF POINTS AND AUTHORITIES

COMES NOW Defendants CITY OF LOS ANGELES, SANCHEZ, BORN COOLEY, ARTEAGA, CORTINA, MOTTO and PERE (hereinafter "Defendants") and submit the following memorandum in support of their Motion to Dismiss certain claims asserted within Plaintiff's Second Amended Complaint (hereinafter "SAC").

## I.  STATEMENT OF FACTS[1]

The current matter arises secondary to the murder of Alex Castaneda in Los Angeles on August 18, 2012. In summary, Plaintiff Art Tobias claims that the Defendant officers improperly focused their investigation on him and denied his request for legal counsel prior to his confession that he was, in fact, the individual who shot and killed Castaneda. After initially being convicted of murder, the California Court of Appeal set aside the conviction and ordered that Plaintiff's confession be suppressed. The Appellate Court's published decision focused upon whether Plaintiff's statement that "Could I have an attorney? Because that's not me" (SAC at ¶ 101) constituted an unequivocal request for counsel. Significantly, the criminal trial court determined that Plaintiff's vague comment was insufficient to constitute an unequivocal request for legal counsel, as necessary to cease Plaintiff's interrogation. Moreover, it is the only reference in the SAC or published opinion to any purported attempt by Plaintiff to request counsel after being advised of his Miranda rights.

The incident giving rise to this litigation occurred on August 18, 2012, when two suspects approached a group of individuals on the street. As the two suspects approached, one of them pulled out a gun and began shooting, ultimately striking three individuals. Alex Castaneda was one of those individuals and he died as a result of the gunshots; two other individuals were also shot, although they ultimately survived the attack. SAC ¶¶ 12-13.

///

---

[1] These facts are based on the allegations in Plaintiff's Second Amended Complaint and are disputed by Defendants, except for purposes of this Motion.

- 2 -

Defs' Joint Notice of Motion and Motion to Dismiss; Memo of P&A [17-cv-01076-DSF-AS]

Following the LAPD being notified of the incident, Detectives Pere and Motto were dispatched to the crime scene where they retrieved and reviewed surveillance video of the shooting. SAC ¶¶ 18, 21-22. The Detectives also interviewed the surviving victims, who provided descriptions of the suspects. The victims and bystanders identified one of the shooters as wearing a white shirt and being on foot, with the other shooter wearing a dark shirt standing across the street, and a third person who picked them up in a red Hyundai after the shooting. *Id*. ¶¶ 14-15.

After retrieving the video, it was reviewed with various officers including Officer Cooley, who stated that he believed Plaintiff Art Tobias was the shooter in the white shirt depicted in the video. SAC ¶ 38. Officer Cooley had met Plaintiff's mother earlier in the evening, when she came to the station to file a missing person's report and she showed a photo of Plaintiff. SAC ¶¶ 23-25. Officer Born also identified Plaintiff from the video footage.[2] *Id*. ¶ 41. Plaintiff contends that the identifications by the officers were false and that the Defendant officers had agreed to assist the detectives in their efforts to prosecute Plaintiff for the Castaneda homicide, despite his proclaimed innocence. *Id*. ¶¶ 27-30.

Plaintiff was ultimately arrested after several witnesses identified him as the shooter. Once in custody, Plaintiff was interrogated by Detectives Pere, Motto and Arteaga, with Sergeant Sanchez serving as the detective supervisor. SAC ¶¶ 61-62. Plaintiff contends that he repeatedly asked to see his mother, to speak to an attorney and that he was coerced into a "false" confession. *Id*. ¶¶ 71-77, 100-104. Plaintiff also alleges that a *Miranda* admonition was belatedly provided, although he did not understand the advisement. *Id*. ¶¶ 84-91. Plaintiff additionally asserts that Detective Arteaga physically intimidated him, threatened him, lied to him and used other improper tactics to obtain a confession (*id*. ¶¶ 108-112); these tactics were allegedly observed by

---

[2] Plaintiff contends that Officer Born had never met or interacted with plaintiff; however, this is misleading. Officer Born worked in the Olympic division as a gang officer. She input field identification cards concerning Plaintiff into the CalGang system and was monitoring his online gang activity.

- 3 -

the other Defendant detectives, and Sergeant Sanchez, who refused to intervene. *Id*. ¶ 113.

Plaintiff Art Tobias was ultimately convicted of first degree murder, two counts of attempted murder along with firearm enhancements which resulted in a sentence of 25-years to life[3] in a juvenile court delinquency proceeding. SAC ¶¶ 2, 119, 121. Plaintiff spent three-and-a-half years in custody before his conviction was overturned (*id*. ¶ 2), based upon the California Court of Appeals concluding that because Plaintiff was only 13 years old, his equivocal invocation of the right to counsel during the interrogation should have been heeded and that the statements made by him thereafter – including his admission to killing Castaneda – should have been excluded. *Id*. ¶¶ 148-150.

Based upon the foregoing, Plaintiff initiated the current litigation on February 9, 2017 against the City, seven of its officers/detectives (SANCHEZ, BORN, COOLEY, ARTEAGA, CORTINA, MOTTO and PERE), and an officer from the Los Angeles Unified School District Police Department (EAST).

## II.   LEGAL ARGUMENT

The issues raised by this Motion to Dismiss are very narrow, focusing only on whether the individual Detectives' actions during their interrogation of Plaintiff (and alleged monitoring and/or failure to intervene in the interrogation) were appropriate or, in the alternative, whether they are entitled to qualified immunity regarding the alleged wrongful interrogation. Such challenges focus only upon Plaintiff's first three claims (1. Self-Incrimination/Right to Counsel, 2. Due Process, and 3. Due Process/Fair Trial).

Plaintiff's first three claims are all derived from his interrogation. In summary, Plaintiff contends that he was denied legal counsel, was denied access to his mother, and was lied to during his interrogation, all of which culminated in his murder confession. Even assuming Plaintiff's allegations were entirely true, they are still insufficient to support any claims against Defendants. First and foremost, the interrogation tactics

---

[3] Although Plaintiff states the sentence was 25-years to life, juveniles are only held to the age of 25, so this commitment term appears incorrect for a minor adjudged delinquent.

utilized by the Defendant officers were lawful and have been approved by the courts time and again.  Moreover, and related to Plaintiff's claims of being denied legal counsel, the facts asserted by Plaintiff and in the judicially noticeable documents confirm that the rights at issue were not "clearly established" such that a reasonable officer would have understood Plaintiff's statement "Could I have an attorney?  Because that's not me" to constitute an unequivocal request for legal counsel.  This position is buttressed by the fact that the California Court of Appeal issued a published opinion in this very matter, which clarified the actual issue of law upon which Plaintiff's claims are premised.

### A.     Legal Standard

In order to state a claim, the non-conclusory factual content of a complaint, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling a plaintiff to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Raw conclusions are not entitled to any assumption of the truth.  *Id*. at 679.  "A claim has facial plausibility … when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*., quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id*., quoting *Twombly*, 550 U.S. at 557 (Parallel business conduct consistent with unlawful conspiracy, but also compatible with, and more likely explained by, lawful free market behavior, was therefore merely consistent with liability.).

"Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has failed to show "the pleader is entitled to relief" as required by Fed. R. Civ. P. 8(a)(2).  *Id*.

### B. The Individual Defendants Are Entitled to Qualified Immunity

In the context of 42 U.S.C. § 1983 claims, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stanton v. Sims*, _____ U.S. _____, 134 S.Ct. 3, 4-5 (2013), quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011), quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004). The linchpin of qualified immunity is the reasonableness of the official's conduct evaluated in the particularized circumstances with which the official is confronted. *See Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987). Significantly, the U.S. Supreme Court has consistently reiterated that "clearly established law" must not be defined "at a high level of generality." *White v. Pauly*, _____ U.S. _____, 137 S.Ct. 548, 552 (2017). In fact, officials are entitled to "fair notice" or "fair warning" that their conduct violates a federally protected right. *See Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). Given this requirement, existing precedent must place the constitutional issue with respect to the official's conduct "beyond debate" in order to overcome application of the qualified immunity protections. *Ashcroft*, 563 U.S. at 741.

///

///

Moreover, "[w]hether [the government official] violated a state law or an internal department policy is not the focus of the [qualified immunity] inquiry." *Case v. Kitsap County Sheriff's Dept.*, 249 F.3d 921, 929 (9th Cir. 2001). Rather, the qualified immunity inquiry focuses on "whether a reasonable [government official] would have known that [the defendant's] conduct violated [plaintiffs'] federal statutory or constitutional rights rather than merely a state law or policy provision." *Id.* See also *Davis v. Scherer*, 468 U.S. 183, 193-196 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.").

In *Davis v. United States* (1994) 512 U.S. 452, the United States Supreme Court held that once a suspect has waived his *Miranda* rights, any subsequent assertion of the right to counsel must be articulated "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Thus, the fundamental question is whether Plaintiff's comments to the Defendant officers that "Could I have an attorney? Because that's not me" (SAC at ¶ 101) constituted an unequivocal request for counsel. The Court of Appeals' opinion overturning Plaintiff's conviction focused heavily upon the fact that Plaintiff was a minor in determining that his vague request should have triggered a halt of the interrogation.

The below table outlines numerous cases that were decided prior to Plaintiff's interrogation and defined the specific contours of his rights in light of his requirement to submit an unequivocal request for counsel. In every one of the below-referenced matters, the Court concluded that the suspect's statement and request for legal counsel was equivocal, such that **no right to legal counsel was invoked**.

///
///
///
///
///

| | |
|---|---|
| "I think I would like to talk to a lawyer." *Clark v. Murphy* 331 F.3d 1062, 1069, 1071 (9th Cir. 2003). | "Can I call a lawyer or my mom to talk to you?" *People v. Roquemore*, 131 Cal.App.4th 11 (2005). |
| "Maybe I should talk to a lawyer." *Davis v. United States*, 512 U.S. 452, 458-59 (1994). | "How long would it take to get a lawyer?" *People v. Simons*, 155 Cal.App.4th 948 (2007). |
| "I might want to talk to a lawyer." *United States v. Fouche*, 776 F.2d 1398, 1405 (9th Cir. 1985). | "There wouldn't be [an attorney] running around here now, would there? * * * I just don't know what to do." *People v. Scaffidi*, 11 Cal.App.4th 145 (1992). |
| "But, excuse me, if I am right, I can have a lawyer present through all of this, right?" *United States v. Younger,* 398 F.3d 1179, 1187-88 (9th Cir. 2005). | "I think it'd probably be a good idea for me to get an attorney." *People v. Bacon*, 50 Cal.4th 1082, 1104, 1105 (2010). |
| "Do you think I need a lawyer?" *Norman v. Ducharme,* 871 F.2d 1483, 1486 (9th Cir. 1989). | Request for parent, not unequivocal request for attorney. *People v. Nelson*, 53 Cal.4th 367 (2012); *People v. Lessie*, 47 Cal.4th 1152 (2010). "My family says I should not take a polygraph until my mom or a lawyer are here." *People v. Nelson*, 53 Cal.4th 367 (2012). |
| "Do I need a lawyer?" *United states v. Ogbuehi*, 18 F.3d 807, 814 (9th Cir. 1994). | |
| "Maybe I ought to see an attorney." *United States v. Doe,* 60 F.3d 544, 546 (9th Cir. 1995). | Right to counsel cannot be invoked during the arrest process, must be during interrogation. *People v. Buskirk*, 175 Cal.App.4th 1436 (2009). |
| "If for anything you guys are going to charge me I want to talk to a public defender too, for any little thing." *People v. Gonzalez*, 34 Cal.4th 1111, 1116 (2005) [conditional statement, equivocal]. | "What time will I see a lawyer?" *United States v. Doe*, 60 F.3d 544, 546 (9th Cir. 1995). |
| "If you can bring me a lawyer," then "that way I can tell you everything that I know and everything that I need to tell you and someone to represent me." *People v. Sauceda-Contreras*, 55 Cal.4th 203, 219 (2012). | |

In light of the foregoing, there is no question that the contours of Plaintiff's subject rights were not clearly and unambiguously defined. Even the most well-versed judicial officers could not come to an agreement on whether Plaintiff's statement was an invocation of his right to counsel. As discussed in detail within the published opinion in this very matter (*People v. Art T*, 234 Cal.App.4th 335 (2015)), the trial judge presiding over Plaintiff's murder trial concluded that Plaintiff's statement was ***not*** an unequivocal request for counsel. *Art T.*, 234 Cal.App.4th at 344.

Plaintiff challenged that decision, which ultimately led to the Court of Appeal overturning his murder conviction. In doing so, the Court elected to issue a *published* opinion which established a new legal standard for determining when a minor has invoked his right to counsel.[4] The fact that the opinion was published is significant as California Rules of Court, Rule 8.1105, allows decisions to be published only in very narrow situations, such as when an opinion establishes a new rule of law, applies an existing rule of law to significantly different facts or modifies an existing rule of law. If a trial judge is unable to clearly understand and decide these issues and a published opinion from the Appellate Court is necessary to provide clarification, how can the Defendant officers be deemed to have had "clear notice" of the contours of Plaintiff's right?

Given these circumstances, the Defendant officers are entitled to qualified immunity. "The qualified immunity doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated." *Davis v. Scherer*, 468 U.S. 183, 195 (1984).

Plaintiff's claims that the interrogation was improper due to his request for his mother are also unavailing, especially given the California Supreme Court's opinion in *People v. Nelson* (53 Cal.4th 367 (January 12, 2012)) on that issue only a few months

---

[4] The applicable legal standard for the custodial interrogation of minors was further clarified as of January 1, 2018, with the enactment of California Welfare & Institutions Code section 625.6. This change in the law further suggests that qualified immunity is appropriate, as the law was not clearly established in 2012.

- 9 -

prior to Plaintiff's interrogation. The facts presented in *Nelson* are similar to those here. Fifteen-year-old Nelson was appealing his murder conviction based upon his contention that he was denied legal counsel during a custodial interrogation. Nelson claimed that the officers violated his rights by not ceasing their interrogation when he requested to call his mother. Despite Nelson's requests to the contrary, the Supreme Court confirmed that a request to call a parent was insufficient to require investigators to cease a custodial interrogation.

Presumably, Plaintiff will also attempt to argue that his interrogation was somehow inappropriate, separate and apart from his purported request for legal counsel or his mother. However, all of the actions which he complains are approved and valid interrogation techniques. Indeed, police officers may employ tactics such as deception to induce a confession. *U.S. v. Coleman*, 208 F.3d 786, 791 (9th Cir. 2000) (agents' promise that they could "tell the prosecutor to give [the suspect] little or no time" did not establish involuntariness); *U.S. v. Preston*, 751 F.3d 1008, 1032 (9th Cir. 2014).

Further, Defendants' use of suggestive questions, if any, was not improper. It is not reasonable to expect a person suspected of perpetrating a serious crime to willingly provide a narrative of his criminal action. *Doody v. Ryan*, 649 F.3d 986, 1021 (9th Cir. 2011) ("We recognize and acknowledge that police officers are entitled to use, and do use, a variety of techniques to interrogate suspects."); *Cunningham v. City of Wenatchee*, 345 F.3d 802, 810 (9th Cir. 2003) (finding that "continuing to question a suspect after the suspect claims he is innocent does not constitute coercion and is often necessary to achieve the truth," and though the questions may have "unsettled" the suspect, "mere emotionalism and confusion do not invalidate confessions.").

Plaintiff's admission in the operative complaint that he denied some suggestions by detectives and he accepted others suggests that his will was not overcome by their strategy. SAC at ¶¶ 94-95. Regardless, each and every tactic or action during his interrogation which Plaintiff claims was unlawful has been expressly approved by the courts as appropriate and lawful.

1	A reasonable police officer – or even trial judge – would not have known that
2	Plaintiff's comments constituted an unequivocal request for counsel, thereby requiring
3	them to cease the interrogation.  Because no controlling authority or robust consensus of
4	cases of persuasive authority decided before August of 2012 settles those questions in
5	Plaintiff's favor, he cannot meet his burden of showing that pre-existing law had placed
6	the existence of the right at issue "beyond debate."  *See*, *Ashcroft*, 563 U.S. at 741
7	(requiring "existing precedent" to have placed the question "beyond debate"); *Sorrels v.*
8	*McKee*, 290 F.3d 965, 969 (2002) (noting that the plaintiff bears the burden of showing
9	that the right at issue was clearly established).  Instead, the fact that the California Court
10	of Appeal published its decision in this very matter confirms that the right at issue was
11	not clearly established.

12	Consistent with the Supreme Court's instruction that qualified immunity should be
13	decided at the earliest practicable opportunity, a government official can raise the defense
14	either before or after discovery.  *Beherens v. Pelletier*, 516 U.S. 299, 308 (1996).
15	"Immunity ordinarily should be handled by the court long before trial."  *Hunter v.*
16	*Bryant*, 502 U.S. 224, 228 (1991) (granting qualified immunity to Secret Service agents
17	who arrested person reasonably believed to have threatened President Reagan).  "[W]e
18	repeatedly have stressed the importance of resolving immunity questions at the earliest
19	possible stage in litigation."  *Id*. at 227.  The "driving force" behind qualified immunity is
20	to ensure that "'insubstantial claims' against government officials [will] be resolved prior
21	to discovery."  *Pearson*, 555 U.S. at 231, quoting *Anderson*, 483 U.S. at 640, n. 2.
22	Accordingly, qualified immunity bars Plaintiff's first three claims related to his
23	interrogation and this Motion to Dismiss should be granted.
24	///
25	///
26	///
27	///
28	///

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request this Motion to Dismiss be granted in its entirety, confirming that the Defendant officers are entitled to qualified immunity for Plaintiff's first three claims. As noted above, the law related to a minor's unequivocal request for counsel was not "clearly established" at the time of Plaintiff's interrogation, as confirmed by the published opinion in this very matter.

Dated: February 21, 2018  ORBACH HUFF SUAREZ & HENDERSON LLP

By: /s/ Kevin E. Gilbert
Kevin E. Gilbert
Attorney for Defendants
DETECTIVES MICHAEL ARTEAGA,
JEFF CORTINA, JOHN MOTTO
and JULIAN PERE

Dated: February 21, 2018  BURKE, WILLIAMS & SORENSEN, LLP

By: /s/ Susan E. Coleman
Susan E. Coleman
Attorney for Defendants
CITY OF LOS ANGELES, SERGEANT
JOSEPH SANCHEZ, OFFICERS DORA
BORN and MARSHALL COOLEY