1   David B. Owens, Cal. Bar No. 275030
    Anand Swaminathan, *pro hac vice*
2   david@loevy.com
    anand@loevy.com
3   LOEVY & LOEVY
    311 N. Aberdeen Street, 3rd Floor
4   Chicago, Illinois 60607
    (312) 243-5900
5
6   Charles J. Snyder, Cal Bar No. 287246
7   csnyder@cohen-williams.com
    Cohen Williams Williams LLP
8   724 S. Spring St., 9th Floor
    Los Angeles, CA 90014
9   (213) 232-5164
10
11  *Attorneys  for Plaintiff, Art Tobias*
12
13              **IN THE UNITED STATES DISTRICT COURT
                FOR THE CENTRAL DISTRICT OF CALIFORNIA**
14

| | |
|---|---|
| ART TOBIAS, | Case No. 2:17-cv-1076-DSF-AS |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO MOTION TO DISMISS FILED BY DEFENDANTS CITY OF LOS ANGELES, BORNE, COOLEY, SANCHEZ, ARTEAGA, CORTINA, MOTTO, AND PERE** |
| v. | |
| CITY OF LOS ANGELES, et al. | |
| Defendants. | |
| | DATE:     March 26, 2018 |
| | TIME:     1:30 p.m. |
| | DEPT:     Courtroom 7D |
| | JUDGE:    Hon. Dale S. Fischer |

# TABLE OF CONTENTS

Table of Authorities ................................................................ ii

Introduction ......................................................................... 1

    I.    Legal Standard ........................................................ 2

    II.   The Second Amended Complaint ..................................... 3

    III.  Defendants Have Again Misconstrued the Complaint ....................... 4

    IV.  Defendants Are Not Entitled to Any Relief Concerning Plaintiff's
          Coercion Claim ....................................................... 8

          A.   It Was Clearly Established in 2012 That Defendants
               Were Prohibited from Coercing Plaintiff's Confession
               and that They Were Required to Consider His Age
               During the Interrogation ............................................ 8

          B.   Defendants' Attempt to Ignore the Totality of the
               Circumstances Should Be Rejected .............................. 10

    V.   Defendants Are Not Entitled to Qualified Immunity
         on the Right to Counsel Claim ...................................... 12

          A.   It Was Clearly Established in 2012 that Defendants
               Were Required to Cease Questioning When
               Plaintiff Invoked His Right to Counsel .......................... 12

          B.   Defendants' Remaining Arguments Fail Entirely ................ 15

Conclusion ......................................................................... 17

1

# TABLE OF AUTHORITIES

2

*Alvarez v. Gomez*, 185 F.3d 995 (9th Cir. 1999) ................................................... 14

3

4

*Am. Timber & Trading Co. v. First Nat'l Bank*,
    690 F.2d 781 (9th Cir. 1982) ........................................................................... 2

5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................2

6

*Barker v. Fleming*, 423 F.3d 1085 (9th Cir. 2005) ............................................... 7

7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................... 2

8

*Blackburn v. Alabama*, 361 U.S. 199 (1960) .................................................. 5, 8

9

*Brown v. Mississippi*, 297 U.S. 278 (1936) ....................................................... 11

10

*Case v. Kitsap County Sheriff's Dept.*, 249 F.3d 921 (9th Cir. 2001) ................. 16

11

*Cf. Tolan v. Cotton*, 134 S. Ct. 1861 (2014) ............................................... 12, 15

12

13

*Christian Legal Soc. Chapter of Univ. of California v. Wu*,
    626 F.3d 483 (9th Cir. 2010) ........................................................................... 6

14

*Crowe v. County of San Diego*, 608 F.3d 406 (9th Cir. 2010) ................. 6, 7, 9, 13

15

*Culombe v. Connecticut*, 367 U.S. 568 (1961) .................................................... 8

16

*Davis v. United States*, 512 U.S. 452 (1994) ............................................... 13, 15

17

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ........................................... 7

18

*Fare v. Michael C.*, 442 U.S. 707 (1979) ................................................... 12, 13

19

*Fikes v. Alabama*, 352 U.S. 191 (1957) ............................................................. 8

20

*Gallegos v. Colorado*, 370 U.S. 49 (1962) .................................................. 9, 13

21

*Greenwood v. F.A.A.*, 28 F.3d 971 (9th Cir. 1994) ............................................. 4

22

*Haley v. Ohio*, 332 U.S. 596 (1948) .................................................................. 9

23

*Hope v. Pelzer*, 536 U.S. 730 (2002) ................................................................. 3

24

*In re Gault*, 387 U.S. 1 (1967) .................................................................. 9, 13

25

Plaintiff's Memorandum in Opposition to Defendants' Second Motion to Dismiss
2:17-cv-1076-DSF-AS

*J.D.B. v. North Carolina*, 564 U.S. 261 (2011) ........................................ 9, 13

*Mattos v. Agarano*, 661 F.3d 433 (9th Cir.2011) ...................................... 3

*McWilliams v. Dunn*, 137 S. Ct. 1790 (2017) ........................................... 17

*Miller v. Fenton*, 474 U.S. 104 (1984) ..................................................... 9, 13

*O'Brien v. Welty*, 818 F.3d 920 (9th Cir. 2016) ....................................... 2

*Rodriguez v. McDonald*, 872 F.3d 908 (9th Cir. 2017) .............. 6, 11, 13, 15, 17

*Sagana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004) ..................................... 2

*Salazar v. City of Maywood*, 414 F. App'x 73 (9th Cir. 2011) ............... 6

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) .................................... 5, 8

*Smith v. Endell*, 860 F.2d 1528 (9th Cir.1988) ....................................... 14

*Smith v. Illinois*, 469 U.S. 91 (1984) ...................................................... 12

*Stoot v. City of Everett*, 582 F.3d 910 (9th Cir. 2009) .......................... 6-7, 9

*Tennison v. City & Cnty. of San Francisco*,
   570 F.3d 1078 (9th Cir. 2009) ...........................................................

*United States v. De La Jara*, 973 F.2d 746 (9th Cir.1992) ..................... 14

*United States v. Washington*, 462 F.3d 1124 (9th Cir. 2006) ............... 14

*Williams v. Rodriguez*, 2017 WL 511858 (E.D. Cal. Feb. 8, 2017) ....... 6

Plaintiff's Memorandum in Opposition to Defendants' Second Motion to Dismiss
2:17-cv-1076-DSF-AS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff ART TOBIAS, by his attorneys, in response and opposition to the Motion to Dismiss Filed by Defendants City of Los Angeles, Sanchez, Arteaga, Cortina, Cooley, Borne, Motto, and Pere ("Defendants") (Dkt. 68), states:

### Introduction

This Court granted Plaintiff leave to file a Second Amended Complaint ("SAC") to add allegations concerning his due process claims under *Brady* and its progeny. Dkt. 66. Defendants' current motion has nothing to do with the new facts in the SAC. Instead, and despite the fact that this Court already rejected their first attempt to dismiss the interrogation-related claims at the core of this suit, Defendant have attempted a second bite at the apple. What is lacking is any justification for a new result, or for why Defendants chose not to raise qualified immunity when they asked the Court to consider their previous motion to dismiss. Indeed, though nothing has changed about the clearly established law in 2012, Defendants now claim they are entitled to qualified immunity for their brazen misconduct. This second bite is telling; Defendants know that their objectively documented (and recorded) misconduct during Plaintiff's interrogation is completely damning. Thus, Defendants' motion must be seen for what it is: a desperate "Hail Mary" without any merit whatsoever.

Defendants' second motion to dismiss is as doomed as their first, and repeats the same mistakes—they have ignored the totality of the allegations in the operative complaint; they have failed to accept Plaintiff's facts, and the reasonable inferences drawn from them, as true; and they have simply ignored clearly established law. Because Plaintiff has well pleaded the denial of clearly established

Plaintiff's Memorandum in Opposition to Defendants' Second Motion to Dismiss
2:17-cv-1076-DSF-AS

constitutional rights, Plaintiff respectfully requests that the motion be swiftly denied.[1]

## I.      Legal Standard

Under Rule 8, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). When considering a motion to dismiss, courts determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotes omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Under this standard, a complaint need not identify every possible fact; "the pleading standard Rule 8 announces does not require 'detailed factual allegations.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And, "'[a] party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case.'" *Sagana v. Tenorio*, 384 F.3d 731, 736-37 (9th Cir. 2004) (quoting *Am. Timber & Trading Co. v. First Nat'l Bank*, 690 F.2d 781, 786 (9th Cir. 1982)).

Defendants have raised a defense of qualified immunity, which requires this court to determine whether the facts taken in the light most favorable to Plaintiff state a constitutional violation and whether that violation was clearly established at

---

[1] Defendants have asked this Court to take judicial notice of the appellate decision overturning Plaintiff's conviction as well as a state statute and the California Court rules. Plaintiff does not believe these are the sorts of things that require "judicial notice"—the Court is of course entitled to consider authorities, statutes, and rules. But the things Defendants ask the Court to take judicial notice of are completely irrelevant to the substance of their motion.

the time of the violation. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865-66 (2014). Regarding whether a right was "clearly established," the "'salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants "that their alleged [conduct] was unconstitutional.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730 (2002).

The Supreme Court has emphasized the "the importance of drawing inferences in favor of the nonmovant, even when . . . a court decides only the clearly-established prong of the standard." *Id.* at 1866. In addition, the inquiry is context-specific, and "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741; *cf.* *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir.2011) (en banc) (emphasizing that if "qualified immunity provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their unreasonable violations" of the constitution).

## II. The Second Amended Complaint

Plaintiff describes the process of his interrogation through the course of over 12 pages in the Second Amended Complaint ("SAC), involving over 50 different paragraphs. *See* SAC, Dkt. 67, ¶¶ 58-118. In short, the SAC sets out in rich detail how Defendants' misconduct violated Plaintiff's constitutional rights during his interrogation and caused his wrongful conviction. Rather than reiterating that extensive narrative here, Plaintiff incorporates his allegations by reference; particular allegations are discussed as necessary to respond to specific arguments.

Plaintiff's Memorandum in Opposition to Defendants' Second Motion to Dismiss
2:17-cv-1076-DSF-AS

### III.  Defendants Have Again Misconstrued The Complaint

Defendants' argument section begins with a confusing jumble. They first state that their motion is "very narrow" and focuses only on the actions during Plaintiff's interrogation. Dkt. 68, at 4. Defendants then claim: "Plaintiff's first three claims [*i.e.*, Counts] are all derived from his interrogation." Dkt. 68, at 4. This statement is extremely misleading, and in fact wrong: as discussed below, Plaintiff's first two counts relate to his interrogation, but his third count—due process claims for the fabrication and suppression of evidence—is focused primarily on other constitutional violations. Then to further confuse matters, Defendants' qualified immunity argument is focused only on one aspect of Count I: Plaintiff's claim stemming from his invocation of his right to counsel. *See* Dkt. 68, at 4-5 (arguing only that it was "not 'clearly established' [] that a reasonable officer would have understood Plaintiff's statement 'Could I have an attorney? Because that's not me' to constitute an unequivocal request for legal counsel"). Defendants' brief then goes on to discuss qualified immunity on this issue alone, *id.* at 6-11, yet ends with the claim that "the Defendant officers are entitled to qualified immunity for Plaintiff's first three claims," *id.* at 12. What Defendants argue and what they ask for are two different things, and the lack of clarity is itself

4

a basis for dismissal. *See, e.g.*, *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (argument waived for "failure to present a specific, cogent argument").[2]

To bring some clarity to the issue, Defendants are right that their motion to dismiss on the basis of qualified immunity is narrow—it focuses on one theory of one count—but it does not even come close providing any argument about the first three counts in their entirety.

For one, as explained in the prior Memorandum, Dkt. 27, at 5, Count I alleges two theories of liability: (1) that Defendants coerced his confession by overcoming his will in violation of the Fifth Amendment, *and* (2) that they denied his right to counsel after Plaintiff specifically asked for an attorney. SAC, Dkt. 67, ¶¶166-172; *compare also id.* at ¶¶ 100-04 (describing Plaintiff's invocation of his right to an attorney), *with id.* at ¶¶105-118 (describing coercive techniques). These two theories have entirely separate bodies of law that govern them. *E.g.*, *compare* *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973), *with* *Davis v. United States*, 512 U.S. 452, 458 (1994). Defendants' motion is focused on just one of these two theories—the invocation of the right to counsel. So, even assuming Defendants were somehow right that the law related to invocation of the right to counsel was not clearly established (they are not, as set forth below), they could at most knock out one of two standalone theories of liability under Count I.

---

[2] Further confusing matters, Defendants use occasional language suggesting their motion is one for failure to state a claim under Rule 12(b)(6). *See, e.g.*, Dkt. 68, at 4 (stating that Plaintiff's allegations related to the interrogation "are still insufficient to support any claims against Defendants, and characterizing qualified immunity argument as "in the alternative"), 5 (citing legal standard for failure to state a claim). But no such argument can be found in the brief. And in any event the Court previously denied Defendants' motion to dismiss Plaintiff's interrogation-related claims. Dkt. 33. The additions in the SAC to add a *Brady* claim related to the suppression of an alternate suspect do nothing to change the calculus, and indeed Defendants' motion makes no such argument.

Plaintiff's Memorandum in Opposition to Defendants' Second Motion to Dismiss
2:17-cv-1076-DSF-AS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Indeed, Plaintiff's coerced confession theory in Count I turns on the *totality* of the circumstances. *See* Schneckloth, 412 U.S. at 225-26; *Blackburn v. Alabama, 361 U.S. 199, 206 (1960).* This includes the circumstances surrounding Plaintiff's interrogation, from beginning to end, and including Plaintiff's request for counsel (even if it were not, as it is, an invocation of counsel that constitutes a standalone constitutional tort); Plaintiff's requests to speak to his mother; the lies they told Plaintiff; screaming and cursing at Plaintiff; refusing to obtain a waiver; Arteaga putting his hands on Plaintiff; and the list goes on. In other words, even accepting Defendants' argument on the narrow issue in their renewed motion, the Second Amended Complaint would survive, as would Count I; and even all of the same facts and circumstances related to the invocation would be relevant discovery.

Despite this being a second bite at the apple, Defendants fail to cite any of this law, let alone explain why it was not clearly established at the time of the events at issue here. Dismissal on qualified immunity grounds is therefore unavailable. *See, e.g.*, *Williams v. Rodriguez, 2017 WL 511858, at \*9 (E.D. Cal. Feb. 8, 2017)* ("Undeveloped arguments that are only argued in passing or made through bare, unsupported assertions are deemed waived." (quoting *Christian Legal Soc. Chapter of Univ. of California v. Wu, 626 F.3d 483, 487 (9th Cir. 2010)*)); *accord* *Salazar v. City of Maywood, 414 F. App'x 73, 75 (9th Cir. 2011).* In short, given their failure to cite the law or make any sort of adequate argument concerning the coercion claim, and given the prior denial of a motion to dismiss this identical claim, Defendants' motion is a waste of resources for both the Court and the parties.

Plaintiff's Memorandum in Opposition to Defendants' Second Motion to Dismiss
2:17-cv-1076-DSF-AS

1      Count II, as a completely distinct claim, alleges that Defendants' actions

2   violated his Fourteenth Amendment due process rights because their tactics "shock

3   the conscience." *Id.* at ¶¶173-78. Again, this claim has its own set of governing

4   law, and that law is distinct from the two Fifth Amendment doctrines concerning

5   voluntariness and invocation of counsel that are at play in Count I. *See, e.g.*, *Crowe*

6   *v. County of San Diego*, 608 F.3d 406, 431-32 (9th Cir. 2010); *Stoot v. City of*

7   *Everett*, 582 F.3d 910, 924-25, 928-29 (9th Cir. 2009). The Court recognized this

8   as well in its prior ruling on the motion to dismiss. *See* Order, Dkt 33, at 7. Again,

9   Defendants have not cited any of the authorities that govern this Count, let alone

10  explained why they were not clearly established.

11     Finally, Count III —the due process claim that encompasses Plaintiff's

12  fabrication of evidence and *Brady* claims—is not about the *interrogation*

13  techniques being unlawful. Instead, it is about Defendants' fabrication and

14  suppression of evidence, including the "substance of Plaintiff's oral confession"

15  and "reports purporting to memorialize Plaintiff's confession." SAC, Dkt. 67, at ¶¶

16  36. Again, fabrication of evidence and suppression of evidence under *Brady* are

17  completely distinct from either of the two theories advanced in Count I. *See, e.g.*,

18  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc)). And, yet

19  again, Defendants invocation of qualified immunity does not cite or consider any

20  of this law, let alone explain why it was not clearly established at the time of

21  Plaintiff's trial.

22     In the end, Defendants have overstated their position, even while trying to

23  claim that their motion is "narrow." They have sought qualified immunity on one

24

25

Plaintiff's Memorandum in Opposition to Defendants' Second Motion to Dismiss
2:17-cv-1076-DSF-AS

theory of Count.[3] The confusion, and lack of clarity as to argument and purpose, is particularly bothersome given that Defendants are attempting a second motion to dismiss on an issue that could have been raised earlier and even after being handed a roadmap to Plaintiff's claims in the prior briefing and in this Court's order.

## IV. Defendants Are Not Entitled To Any Relief Concerning Plaintiff's Coercion Claim

### A. It Was Clearly Established in 2012 That Defendants Were Prohibited from Coercing Plaintiff's Confession and That They Were Required To Consider His Age During the Interrogation

The Supreme Court and Ninth Circuit have repeatedly reiterated the clearly established and decades-old rule that interrogations that are coercive or overbear the will of the suspect violate the Fifth Amendment, and that whether such a violation occurred is measured from the totality of the circumstances. *See Blackburn v. Alabama*, 361 U.S. 199, 206 (1960) (emphasizing that the inquiry "must be broad," and emphasizing that the consideration of voluntariness "be based upon consideration of the totality of the circumstances" (quoting *Fikes v. Alabama*, 352 U.S. 191, 197 (1957)); *Schneckloth v. Bustamonte,* 412 U.S. 218, 225-26 (1973) (confession is not "'the product of an essentially free and

---

[3] Nevertheless, out of an abundance of caution, Plaintiff will address the other theory in Count I—that the Defendants overbore Plaintiff's will. But, given the lack of argument about the allegations in the complaint and the underlying law relevant to Counts II and III, those counts are not discussed herein. Suffice it to say, it was beyond clearly established in 2012 that Defendants could not use interrogation techniques that "shock the conscience," or fabricate police reports concerning Plaintiff's identification and interrogation, or suppress evidence of alternate suspects and impeachment. *See, e.g., Crowe*, 608 F.3d at 432-33; *Devereaux*, 263 F.3d at 1074-76 ("[C]onstitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government . . . is virtually self-evident"); *Tennison v. City & Cnty. of San Francisco*, 570 F.3d 1078, 1093 (9th Cir. 2009) (failure to disclose information concerning alternative suspect clearly violates *Brady*); *Barker v. Fleming,* 423 F.3d 1085, 1095 (9th Cir. 2005).

8

1   unconstrained choice by its maker'" and "'if his will has been overborne and his

2   capacity for self-determination critically impaired, the use of his confession

3   offends due process.'" (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602

4   (1961)). Defendants have not cited any of these cases.

5       It was also beyond well-established in 2012, when Defendants committed

6   their misconduct here, that interrogators were required to consider the unique

7   characteristics of the person they were interrogating, and that such characteristics

8   absolutely—and unequivocally—include the suspect's age and other juvenile

9   factors. *See, e.g. J.D.B. v. North Carolina*, 564 U.S. 261, 275-76, 277 (2011) (in

10  evaluating custodial interrogation, "[n]either officers nor courts can reasonably

11  evaluate the effect of objective circumstances that . . . are specific to children

12  without accounting for the age of the child subjected to those circumstances"); *In

13  re Gault*, 387 U.S. 1, 55 (1967) (stating that "special problems may arise with

14  respect to waiver of the privilege by or on behalf of children" and that "the greatest

15  care must be taken to assure that the admission was voluntary, in the sense not only

16  that it was not coerced or suggested, but also that it was not the product of

17  ignorance of rights or of adolescent fantasy, fright or despair"); *Miller v. Fenton*,

18  474 U.S. 104, 109-10 (1984) (whether conduct is "coercive" must be evaluated

19  under the "particular circumstances of the case," including the "unique

20  characteristics of [the] particular suspect"); *Gallegos v. Colorado*, 370 U.S. 49, 54

21  (1962) (it would be a "callous disregard of … constitutional rights" to treat every

22  suspect like "an adult in full possession of his senses and knowledgeable of the

23  consequences of his admissions"); *Haley v. Ohio*, 332 U.S. 596, 599-600 (1948)

24  (plurality opinion) ("What transpired would make us pause for careful inquiry if a

25

9

mature man were involved[, a]nd when, as here, a mere child—an easy victim of the law—is before us, special care in scrutinizing the record must be used").

Put differently, it has "long been established that the constitutionality of interrogation techniques is judged by a higher standard when police interrogate a minor." *Crowe*, 608 F.3d at 431 (citing *In re Gault*, 387 U.S. at 55); *see also Gallegos*, 370 U.S. at 54 (noting that "a 14-year-old boy, no matter how sophisticated, is unlikely to have any conception of what will confront him when he is made accessible only to the police"). Indeed, in *Stoot v. City of Everett*, as it concerned an interrogation almost a decade before the one in this case, the Ninth Circuit held: "At the time of the interrogation, [the officer] was on notice under clearly established law that if he failed to provide [plaintiff] with appropriate *Miranda* warnings or physically or psychologically coerced a statement from [plaintiff], the use of the confessions could ripen into a Fifth Amendment violation." 582 F.3d 910, 927 (9th Cir. 2009). That is precisely what happened here.

In short, this law is more than sufficient to provide Defendants with fair notice that they could not overbear Plaintiff's will and that they were required to consider his age when interrogating him.

## B. Defendants' Attempt to Ignore the Totality of the Circumstances Should Be Rejected

As explained above, the Defendants have not clearly articulated a basis for seeking qualified immunity concerning the Fifth Amendment coerced confession claim. The only place that appears to invoke law that could be applicable to this claim is in 3 paragraphs of their motion. Dkt. 68, at 10. There, Defendants state that "[p]resumably, Plaintiff will also argue that his interrogation was somehow

10

inappropriate, separate and apart from his purported request for legal counsel or his mother." *Id.* This statement is difficult to understand because Plaintiff has been beyond clear—in the original complaint, in the First Amended Complaint, in the memorandum concerning the prior motion to dismiss, and in the SAC—that he has alleged a coercion theory apart from his right to counsel claim, both of which are pleaded in Count I (Fifth Amendment claims). *See, e.g.*, Dkt. 27, at 5; SAC, Dkt. 67, ¶¶166-172. The Court noted this as well. *See* Order, Dkt. 33, at 6 ("The FAC alleges Defendants continued to question him after he requested an attorney *and* used coercive interrogation tactics to elicit a confession that was used against him in a criminal proceeding.") (emphasis added).

In those three paragraphs, Defendants argue: (1) police officers may lie to suspects to induce a confession; (2) the Defendants' use of suggestive questions was not improper; and (3) the Plaintiff's denial of some suggestions by detectives suggests "his will was not overcome by their strategy." Dkt. 68, at 10. But, as it concerns the first to arguments, even if Defendants are correct those specific tactics are not *per se* unlawful, that is not the relevant inquiry. What matters here is the totality of the circumstances, and the fact that the officers used deception and suggestive questions is certainly part of that totality, but not the whole. Defendants' argument is therefore misplaced because it seeks to isolate what must be considered in totality. It would be different, perhaps, if the only facts Plaintiff gave for alleging that his will was overborne were merely that the officers used deception or suggestive questions, but that is certainly not the case here. Instead, in 50 paragraphs of factual allegations, Plaintiff has set out a series of events and

Plaintiff's Memorandum in Opposition to Defendants' Second Motion to Dismiss
2:17-cv-1076-DSF-AS

circumstances that, in the end, overbore Plaintiff's will. *See* SAC, Dkt. 67, at ¶¶ 58-118.[4]

As a final matter, Defendants' argument that Plaintiff's denials "suggest[] that his will was not overcome by their strategy," Dkt. 68, at 10, can be quickly disregarded. The very use of the term *suggestion* reveals the impropriety of this argument on a motion to dismiss. Indeed, it contradicts the substance of the complaint and certainly the inferences that flow from the allegations. *Cf. Tolan,* 134 S. Ct. at 1866.

## V. Defendants Are Not Entitled to Qualified Immunity on the Right to Counsel Claim.

### A. It Was Clearly Established in 2012 That Defendants Were Required To Cease Questioning When Plaintiff Invoked His Right To Counsel

Defendants do not seem to quarrel with the proposition that, in 2012, it was clearly established that questioning should cease after a suspect invokes his right to an attorney. *See Smith v. Illinois,* 469 U.S. 91, 98 (1984) (describing the "rule that *all* questioning must cease after an accused requests counsel" (emphasis in original, cite omitted); *Fare v. Michael C.,* 442 U.S. 707, 719 (1979) ("[A]n accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease."). For present purposes, that should

---

[4] As a further note, it bears mentioning that Defendants are just simply wrong when they suggest that "all of the actions of which [Plaintiff] complains are approved and valid interrogation techniques." These are not *all* of the actions Plaintiff complains of; Plaintiff has alleged that Defendants made threats, made promises of leniency, and even made "physical contact to convince Plaintiff to confess." SAC, Dkt. 67, at ¶¶110. These are not "valid interrogation techniques." *See, e.g., Brown v. Mississippi,* 297 U.S. 278, 286 (1936) (physical force cannot be used to extract a confession); *Rodriguez v. McDonald,* 872 F.3d 908, 924 (9th Cir. 2017) (threats and promises of leniency made interrogation involuntary).

12

end the matter—Plaintiff has alleged that his invocation was unambiguous, as well as facts supporting that claim, and Defendants do not challenge these allegations in any way, nor could they at this stage.

Defendants nonetheless suggest that it was not clearly established that they needed to take into account the fact that they were interrogating a 13-year old. Dkt. 68 at 7. This, it appears, is why they have emphasized the portions of the Court of Appeals decision overturning Plaintiff's conviction that discuss Plaintiff's age. But this argument is foreclosed by the precedent cited above: it was beyond well established in 2012 that interrogators had to take account of the juvenile nature of their suspects, particularly those who were nowhere near the age of majority just as Plaintiff was. *See supra*, Part IV, at 8-10; (citing *J.D.B.*, 564 U.S. 261 (2011); *In re Gault*, 387 U.S. 1, 55 (1967); *Miller*, 474 U.S. 104, 109-10 (1984); *Gallegos*, 370 U.S. 49, 54 (1962); *Crowe*, 608 F.3d 406, 421-23 (9th Cir. 2010)); *see also* bam *Rodriguez v. McDonald*, 872 F.3d 908, 922 (9th Cir. 2017) ("Where the suspect is a minor, the analysis necessarily considers his 'age, experience, education, background, and intelligence, and ... whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.' (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

Defendants next suggest that Plaintiff's invocation was "equivocal." This argument fails. For one, Plaintiff's statement "Could I have an Attorney? Because that's not me" is exactly what it looks like—a request for an attorney. Indeed, *Davis v. United States*, which Defendants cite, is clear that "if a suspect *requests counsel* at any time during the interview, he is not subject to further questioning

1    until a lawyer has been made available or the suspect himself reinitiates

2    conversation." 512 U.S. 452, 458 (1994) (emphasis added). That is exactly what

3    Plaintiff did here. Plaintiff did not mention an attorney in the abstract or in passing.

4    Plaintiff did not ask the officers about *whether* he should get an attorney. Plaintiff

5    did not make his request conditional. Instead, he asked for an attorney directly.

6          The clearly established test, derived from *Davis*, is certainly satisfied by the

7    allegations in the complaint. Under *Davis* someone being interrogated need only

8    "articulate his desire to have counsel present sufficiently clearly that a reasonable

9    police officer in the circumstances would understand the statement to be a request

10   for an attorney." *Id*. at 459. Indeed, the focus is on whether or not a suspect

11   specifically "requests counsel" as opposed to making an "ambiguous reference" to

12   an attorney. *United States v. Washington*, 462 F.3d 1124 (9th Cir. 2006).

13         Here, the complaint alleges that Plaintiff "unambiguously invoked his right

14   to an attorney after being show[n] the video and subject to lengthy interrogation."

15   SAC, Dkt. 67, at ¶101. The SAC further alleges that Plaintiff specifically asked a

16   question: "Could I have an attorney? Because that's not me." *Id.* Then, "rather than

17   ceasing all questioning, the Defendants pressed on, telling Plaintiff "No, don't

18   worry." *Id.* at 102. There is nothing ambiguous about a request for counsel that

19   states "Could I have an attorney" because I'm being wrongly accused. Any

20   objectively reasonable officer would know that this was a request, and the law was

21   clearly established at the time. *See, e.g.*, *Alvarez v. Gomez*, 185 F.3d 995, 998 (9th

22   Cir. 1999) ("'Can I get an attorney right now, man?'... " "... 'You can have

23   attorney right now?" is an unequivocal invocation") "... 'Well, like right now you

24   got one?' "]; *United States v. De La Jara*, 973 F.2d 746, 750 (9th Cir.1992)

25

(holding that "Can I call my attorney?" was an invocation of right to counsel); *Smith v. Endell*, 860 F.2d 1528, 1529, 1531(9th Cir.1988) (holding that "Can I talk to a lawyer?" was not ambiguous or equivocal).

As must be emphasized, Defendants have ignored the other facts in the complaint, and the inferences that must flow in Plaintiff's favor at this juncture, in at least two ways. First, in their analysis, Defendants have completely ignored powerful evidence of how they *actually* responded to Plaintiff's request for an attorney. They did not ask Plaintiff to clarify. They did not ask Plaintiff what he meant by his request. Instead, they brazenly pushed ahead and specifically responded to Plaintiff's request by saying: "No." The fact that Plaintiff specifically asked for an attorney and was given a specific answer—no—is clear evidence that the invocation was unequivocal. Indeed, it is evidence not only that a reasonable officer would have seen the question as a request for an attorney, but that Defendants themselves did as well.[5] At a minimum, these facts are sufficient to show that a reasonable officer in 2012 interrogating a 13-year-old would have "understood the statement to be a request for an attorney." *Davis*, 512 U.S. at 459.

Second, Defendants have ignored the fact that the complaint can only capture part of what actually occurred. As accurately alleged in the complaint, the video "provides context and information that goes beyond the cold transcript of the complaint," and shows that the interrogation was truly unconscionable. *See* SAC, Dkt. 67, at ¶58-60. This context too, and the inferences to be drawn from it in

---

[5] Defendants' table of cases involving statements deemed unequivocal is largely a distraction. For one, the state-law cases are irrelevant. And, the federal cases are actually telling for what they do not show. In none of those cases have Defendants pointed to an instance where someone, and in particular a minor, specifically asked for an attorney—Could I have an attorney?—as Plaintiff did here. Clear requests, like the one here abound in the case law, too. *See supra*, at 14; *see also, e.g.*, *Rodriguez*, 872 F.3d at 114 & 921-24.

15

Plaintiff's favor, further supports the well-pleaded allegations that the invocation was unambiguous, which is all that is required. *Cf. Tolan*, 134 S. Ct. at 1866.

### B. Defendants' Remaining Arguments Fail Entirely

As a last-ditch effort, Defendants advance a number of irrelevant arguments for qualified immunity that tellingly do not have to do with the status of federal constitutional law at the time of the interrogation. Perhaps Defendants make these arguments now to offer some justification for their failure to raise any purported qualified immunity defense in their original motion to dismiss. In any event, the arguments are baseless.

First, citing the California Rules of Court, Defendants suggest that the fact that the California Court of Appeals published its decision in Plaintiff's case somehow means that the decision "established a new legal standard for determining when a minor has invoked his right to counsel." Dkt. 68, at 9. This argument is frivolous. For one, Defendants have no idea as to why the appellate court decided to publish its decision; if they want to make this argument they need to depose the jurists who decided the case. And, they have overlooked the myriad reasons why a decision might be published; for example because a case "involves a legal issue of continuing public interest" or because a decision "makes a significant contribution to the legal literature." Cal. Rules of Court, Rule 8.1105(c)(6)-(7). This sort of speculation is not a basis for seeking qualified immunity.

Second, Defendants cite a new California statute concerning juvenile interrogations and state that this "suggests that qualified immunity is appropriate, as the law was not clearly established in 2012." Dkt. 68, at 9 n.4. This argument is also frivolous. Indeed, Defendants themselves have cited authorities illustrating

16

that "'whether the governmental official violated a state law or an internal department policy is not the focus of the qualified immunity inquiry.'" Dkt. 68, at 7 (quoting *Case v. Kitsap County Sheriff's Dept.*, 249 F.3d 921, 929 (9th Cir. 2001)) (alterations omitted).

Third, Defendants suggest that the mere fact that the trial court got it wrong and was reversed by the appellate court somehow implies that the law was unclear. But, this is not the appropriate standard. Qualified immunity does not turn on whether a state trial court made a mistake,[6] and we certainly do not know the subjective reasons *why* that happened.[7] Instead, the focus is on whether the conduct was unlawful at the time of the misconduct.

## Conclusion

For all of the reasons above, Defendants' motion to dismiss Counts I, II, and III on the basis of qualified immunity should be denied.

---

[6] Defendants have cited no authority for the proposition that the mere reversal of a decision means that the underlying right was not "clearly established" for the underlying police officers. For good reason: instances where the Ninth Circuit or Supreme Court have reversed lower courts for improperly applying the "clearly established" inquiry illustrate that Defendants theory lacks any basis in the law. Indeed, the entire idea of AEDPA review, which asks whether appellate courts have unreasonably applied clearly established law, suggests that even jurists can get it wrong, and do so in significant, "unreasonable" ways. 28 U.S.C. § 2254; *see, e.g.*, *McWilliams v. Dunn*, 137 S. Ct. 1790, 1799-1801 (2017) (granting habeas relief); *Rodriguez*, 872 F.3d at 114 & 921-24 (granting habeas on coerced juvenile confession).

[7] For example, the state trial court here was not presented with the video interrogation in making its determination.

17

Plaintiff's Memorandum in Opposition to Defendants' Second Motion to Dismiss
2:17-cv-1076-DSF-AS

Respectfully submitted,

**ART TOBIAS**

Dated:   March 5, 2018          By:  /s/ David B. Owens_____
                                     *One of Plaintiff's attorneys*

David B. Owens, Cal. Bar No. 275030
david@loevy.com
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

18

Plaintiff's Memorandum in Opposition to Defendants' Second Motion to Dismiss
2:17-cv-1076-DSF-AS