David B. Owens, Cal. Bar No. 275030
david@loevy.com
Anand Swaminathan*
*Attorney for Plaintiff, Art Tobias*
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
*admitted pro hac vice

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA IN THE UNITED

| | |
|---|---|
| ART TOBIAS,<br><br>        Plaintiff,<br>    v.<br><br>CITY OF LOS ANGELES, et al.<br><br>        Defendants. | Case No. 2:17-cv-1076-DSF-AS<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY ORDER FOR APPEAL PURSUANT TO 28 U.S.C. § 1292(b).**<br><br>DATE:      June 25, 2018<br>TIME:      1:30 p.m.<br>DEPT:      Courtroom 7D<br>JUDGE:    Hon. Dale S. Fischer |

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

MEMORANDUM AND POINTS OF AUTHORITIES ........................................... 1

I.   Applicable Legal Standard ...................................................... 2

II.  The Right To Counsel Issue is Not a Controlling Question of Law .......... 3

     A. The Counsel Issue is Only One *Part* of One Count ........................ 4

     B. The Motion to Dismiss Stage Is Particularly Inappropriate For
        Consideration of the Right-to Counsel Issue In an Interlocutory
        Appeal While the Remainder of the Case Moves Forward ................. 7

III. There is No Substantial Ground for a Difference of Opinion ................ 9

     A. There Should be No Debate That "Could I have an attorney" is an
        Unequivocal Invocation of the Right to Counsel ............................ 10

     B. Defendants Understood Plaintiff's Invocation to Be a Request ......... 15

     C. Subsequent Authorities Confirm, There is No Substantial Grounds
        for a Difference of Opinion. ............................................ 16

     D. Defendants Claims About the Law Being "Unsettled" Are
        Exaggerated ......................................................... 18

IV.  Certifying an Interlocutory Appeal on this Motion Cannot Advance
     the Litigation ........................................................... 21

CONCLUSION .............................................................. 23

i

# TABLE OF AUTHORITIES

*Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004) ...................................................... 16

*Alvarez v. Gomez*, 185 F.3d 995 (9th Cir. 1999) ...............................................10, 12

*Ashcroft v. al-Kid*, 563 U.S. 731 (2011) ..............................................................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................7

*Bates v. Bankers Life & Cas. Co.*, 848 F.3d 1236 (9th Cir. 2017) ........................2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) .........................................7

*Blackburn v. Alabama*, 361 U.S. 199 (1960) .......................................................4

*Brown v. Rowland*, 215 F.3d 1332 (9th Cir. 2000) ............................................14

*Crowe v. County of San Diego*, 608 F.3d 406 (9th Cir. 2010) ............................5

*Culombe v. Connecticut*, 367 U.S. 568 (1961) ...................................................5

*Davis v. United States*, 512 U.S. 452 (1994) ...........................................9, 11, 20

*Favell v. United States*, 22 Cl. Ct. 132 (1990) ................................................3, 6

*Fikes v. Alabama*, 352 U.S. 191 (1957) ..............................................................4

*Ford v. City of Yakima*, 706 F.3d 1188 (9th Cir. 2013) ....................................20

*Gallegos v. Colorado*, 370 U.S. 49 (1962) .......................................................10

*Haley v. State of Ohio*, 332 U.S. 596 (1948) ....................................................10

*Hope v. Pelzer*, 536 U.S. 730 (2002) ................................................................20

*Hurd v. Terhune*, 619 F.3d 1080 (9th Cir. 2010) ..............................................15

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of
Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

*Hurt v. Wise*, 880 F.3d 831 (7th Cir. 2018) ...................................................8

*In re Cement Antitrust Litigation*, 673 F.2d 1020 (9th Cir. 1982) ........................2, 3

*Jackson v. Placer Cty.*, 2007 WL 2127528 (E.D. Cal. July 24, 2007).....................4

*Kelley v. Borg*, 60 F.3d 664 (9th Cir. 1995) ...................................................20

*Krysinski v. Rowland*, 89 F.3d 845 (9th Cir. 1996) ...........................................14

*Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002) ..........................................2

*Luna v. Lamarque*, 400 F. App'x 169 (9th Cir. 2010) ........................................12

*Marks v. Clarke*, 102 F.3d 1012 (9th Cir. 1996) ..............................................19

*Mays v. Clark*, 807 F.3d 968 (9th Cir. 2015) .................................................17

*McWilliams v. Dunn*, 137 S. Ct. 1790 (2017) .................................................19

*Minnick v. Mississippi*, 498 U.S. 146 (1990) .................................................11

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...................................................3

*Ortiz v. Uribe*, 671 F.3d 863 (9th Cir. 2011) ...............................................5

*Parrish v. Carroll*, 17 F.3d 395 (9th Cir. 1994) ...........................................14

*Robinson v. Borg*, 918 F.2d 1387 (9th Cir. 1990) ...........................................9

*Rodriguez v. McDonald*, 872 F.3d 908 (9th Cir. 2017).....................................13, 17

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)...........................................4

*Sessoms v. Grounds*, 776 F.3d 615 (9th Cir. 2015) .....................................16, 17

*Shedelbower v. Estelle*, 885 F.2d 570 (9th Cir. 1989).....................................12

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of
Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

*Smith v. Endell*, 860 F.2d 1528 (9th Cir. 1988) ............................................12, 13

*Smith v. Illinois*, 469 U.S. 91 (1984) ...........................................................11

*Stoot v. City of Everett*, 582 F.3d 910 (9th Cir. 2009) ...............................5

*Tolan v. Cotton*, 134 S.Ct. 1861 (2014) ......................................................19

*U.S. Rubber Co. v. Wright*, 359 F.2d 784 (9th Cir. 1966) ...........................2

*United States v Woodbury*, 263 F.2d 784 (9th Cir. 1959) ..........................2

*United States v. Adam Bros. Farming, Inc.*, 369 F.Supp.2d 1180
       (C.D. Cal. 2004) .................................................................................21

*United States v. Cheely*, 36 F.3d 1439 (9th Cir.1994) ...............................13

*United States v. De la Jara*, 973 F.3d 746 (9th Cir. 1992) ...............10, 12

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962) ...................................8

*United States v. Escobedo-Gomez*, 715 Fed. App'x 743, 2018 WL 1406672
       (9th Cir. Mar. 21, 2018) ....................................................................13

United States v. Lee, 413 F.3d 622 (7th Cir. 2005) ....................................14

*United States v. Rodriguez*, 518 F.3d 1072 (9th Cir.2008) ................. 12-13

*United States v. Washington*, 462 F.3d 1124 (9th Cir. 2006) .....................9

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ..............................................20

*Wood v. Ercole*, 644 F.3d 83 (2d Cir. 2011) .............................................14

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of
Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

1

## STATUTES AND OTHER AUTHORITIES

2

Cal. Rules of Court, Rule 8.1105(c)(6)–(7) .......................................................18

3

28 U.S.C. § 1292(B) ...............................................................................................3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of
Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

## MEMORANDUM AND POINTS OF AUTHORITIES

This Court properly denied Defendants' motion to dismiss part of Plaintiff's claim concerning his false confession—the violation of his right to counsel after Plaintiff alleged that he specifically asked for an attorney during his interrogation and that his interrogators told him "No." And, with the myriad authorities before the Court at the time it ruled, there is no doubt that the Court's ruling was correct. Indeed, one of the most telling things about Defendants' motion to certify this is the fact that they have essentially filed the same motion that this Court denied. In so doing, Defendants have entirely ignored the authorities in the Court's decision, and those before the Court via Plaintiff's supplemental briefing. Under these authorities there is no room for debate that in 2012—and in fact long before—a reasonable officer would have known that saying "Can I have an attorney" is asking for an attorney.  The fact that plaintiff then said "Because that's not me," only reinforces this conclusion. As does the fact that the Defendants told him: No. The invocation was unequivocal.

In addition, none of the factors under 1292(b) support certifying an interlocutory appeal on one aspect of one claim—this case is still going to trial, and that trial will still involve a jury considering the totality of the circumstances of the interrogation of Plaintiff.  The motion should be denied.

1

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

## I.       Applicable Legal Standard

In federal courts, interlocutory appeals over orders that do not resolve matters are the great exception, not the rule. In the Ninth Circuit, "[a] judgment is generally final and appealable under § 1292 when it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Bates v. Bankers Life & Cas. Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017) (quoting *Lovell v. Chandler*, 303 F.3d 1039, 1047 (9th Cir. 2002)).

Accordingly, interlocutory appeals are reserved for rare circumstances warranting "departure from the basic policy of postponing appellate review until after the entry of final judgment," *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982). Such appeals are only appropriate in "extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation." *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966).

As a consequence, certification should be granted "sparingly and only in exceptional cases." *United States v Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959). Pursuant to § 1292(b), three requirements must be met: (1) the order involves a controlling question of law; (2) there is substantial ground for difference

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

of opinion as to that question; and (3) an immediate appeal may materially advance the ultimate termination of litigation. *See* 28 U.S.C. § 1292(b).

This case is not exceptional, and none of the § 1292 factors have been satisfied.

## II. The Right To Counsel Issue is Not a Controlling Question of Law

Under § 1292(b), a question is controlling only if the resolution of that question "could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026-27 (9th Cir. 1982). In light of the fact that "the ultimate purpose of the statute is to avoid unnecessary proceedings at the trial level," a controlling question of law is one that "at minimum, . . . require[s] that reversal result in an immediate effect on the course of litigation and in some savings of resources either to the court system or the litigants." *Favell v. United States*, 22 Cl. Ct. 132, 144 (1990).

Qualified immunity appeals are certainly sometimes appropriate for interlocutory appeal. However, while such review *can* be appropriate following the denial of qualified immunity, this is only the case when the immunity would constitute an immunity from suit. *Cf. Mitchell v. Forsyth*, 472 U.S. 511, 526, 528 (1985) (finding that claims of qualified immunity may be pursued by immediate appeal, where qualified immunity "is an immunity from suit").

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

## A. The Counsel Issue is Only One *Part* of One Count

There is no dispute that Defendants' anticipated appeal concerns a narrow issue—whether the allegations in Plaintiff's currently-operative complaint are sufficient to state a clearly established claim concerning the violation of his right to counsel. Dkt. 86, at 18.

When an appellate ruling on the proposed question "will not materially affect the issues that remain to be litigated in [the] court," interlocutory appeal is inappropriate. *Jackson v. Placer Cty.*, 2007 WL 2127528, *2 (E.D. Cal. July 24, 2007). That is precisely the case here. Indeed, even assuming Defendants obtain certification *and* prevail on interlocutory appeal, an appellate ruling on the proposed question will not affect the outcome of the remaining claims in this case and would not remove any of the Defendants as parties.

Most significantly, Defendants have again ignored Plaintiff's Fifth Amendment coercion claim in their motion. Under this separate legal theory, the question of whether Plaintiff's confession involuntary turns on the *totality* of the circumstances. *See*, *e.g.*, *Blackburn v. Alabama*, 361 U.S. 199, 206 (1960) (consideration of voluntariness "be based upon consideration of the totality of the circumstances" (quoting *Fikes v. Alabama*, 352 U.S. 191, 197 (1957)); *Schneckloth v. Bustamonte*, 412 U.S. 218, 26 (1973) ("totality of all the surrounding

4

1    circumstances"); *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961) ("totality of

2    the relevant circumstances of a particular situation"); *Ortiz v. Uribe*, 671 F.3d 863,

3    869 (9th Cir. 2011). The circumstances concerning Plaintiff's interrogation start at

4    the beginning of Plaintiff's custody (his arrest at the middle school) to the end. As

5    a necessary consequence, the fact that, along the way, Plaintiff did ask for an

6    attorney—however one interprets it—will be relevant to and part of this claim

7    regardless of whether the outcome of the appeal.

8         Defendants have likewise ignored Plaintiff's Fourteenth Amendment due

9    process claim, which also examines the interrogation and asks whether Defendants

10   actions, in totality, "shock the conscience." Such a due process violation is of

11   course actionable under § 1983, and involves different legal standards

12   constitutional violations under the Fifth Amendment—a standard different than

13   those under the Fifth Amendment. *See, e.g.*, *Crowe v. County of San Diego*, 608

14   F.3d 406, 431-32 (9th Cir. 2010) (reversing grant of summary judgment on

15   "shocks the conscience" due process claims for juveniles who, like Plaintiff,

16   alleged in a § 1983 suit that police officers' conduct during their interrogations

17   violated due process and the Fifth Amendment); *Stoot v. City of Everett*, 582 F.3d

18   910, 924-25, 928-29 (9th Cir. 2009) (allowing § 1983 "shocks the conscience"

19

20

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of
Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

claim concerning interrogation where plaintiff stated separate Fifth Amendment claim).

In short, while Defendants have cited a *question of law* to be resolved by adjudicating Plaintiff's current iteration of the complaint, that question is not *controlling* in the sense required by authorities under § 1292. As cited by Defendants, to show a "controlling question," they must illustrate that the requested appeal will "'result in an immediate effect on the course of litigation and in some savings of resources either to the court system or the litigants.'" Dkt. 86, at 6-7 (quoting *Favell*, 22 Cl. Ct. at 144).

They cannot meet this standard. The proposed appeal does not even concern one entire Count, and would not eliminate the propriety of the circumstances of the interrogation from the jury's reach. Defendants are therefore completely incorrect in asserting that if "the question of qualified immunity is decided in favor of the Defendant officers, then Plaintiff's confession and the resulting conviction (to the extent based upon his confession) is not actionable." Dkt. 86, at 9. Defendants may wish that were the case, but it is simply untrue, as this Court already ruled in the order considering Defendants' first motion to dismiss.

To be sure, the circumstances here are hardly those that satisfy § 1292's high bar because this issue would not affect fact discovery or even expert discovery—

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

those ships have sailed. The dispositive motion deadline is approaching, but, at

most, an appeal would deprive *Plaintiff* of a motion for summary judgment on the

right-to-counsel claim, should Plaintiff seek to file such a motion. Were

Defendants intent on seeking summary judgment, given the circumstances, the

interrogation would still be the subject of the coercion and due process claims.

Thus, an appeal of the right-to-counsel issue will not provide any of the defendants

with "immunity from suit," as is true in some qualified immunity cases that might

be properly immediately appealed. .

### B. The Motion to Dismiss Stage Is Particularly Inappropriate For Consideration of the Right-to Counsel Issue In an Interlocutory Appeal While the Remainder of the Case Moves Forward

All that is required of Plaintiff to survive a motion to dismiss is that the

complaint "contains sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 778 (citing *Twombly*, 550 U.S. 554). Plaintiff has exceeded this

burden. At the motion to dismiss stage, "courts are required to view the facts and

7

1  draw reasonable inferences "in the light most favorable to the party opposing the

2  motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

3      Defendants proposed appeal is particularly inappropriate because the

4  qualified immunity issue is made at the pleading stage, based upon the allegations

5  in the complaint, not the factual record. Indeed, the Complaint specifically points

6  out that certain context—the video—is not capable of reproduction on the cold

7  page. SAC, DKt. 67, at ¶¶58-61. As the Court pointed out at the hearing, that video

8  is not before the Court. Indeed, the entire verbatim interrogation leading up to

9  Plaintiff's request for an attorney is not before the Court either.[1]

10      This is a poor posture for addressing this issue because the Complaint, not

11  the entire factual record, is before the Court. The video-recording of the interview,

12  provides more fulsome context of what actually happened in the interrogation than

13  one could put into a complaint or read from a transcript. For example, in *Hurt v.*

14  *Wise*, a case where there was a dispute about what Plaintiff meant in a taped

15  interview, the court found that "[i]f instead the question is what a person meant in

16  a videotaped interview, we are back in the land of inferences that must be taken

17  favorably to the opponent." 880 F.3d 831, 840 (7th Cir. 2018).

18

19  [1] Defendants have cited part of the transcript of the interrogation that is included in the appellate
   decision. But, this only proves Plaintiff's point—the entirety of the interrogation is not before the

20  Court.

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of
Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

Because the entire factual circumstances concerning Plaintiff's request for an attorney are not before the Court, the issue is not controlling.

## III.   There is No Substantial Ground for a Difference of Opinion

Defendants core argument is that there are not sufficient authority to find that a reasonable officer would have understood "Can I have an Attorney" as a request for an attorney.  But, they are mistaken. In *Davis v. United States*, the Supreme Court made it abundantly clear that "if a suspect *requests counsel* at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." 512 U.S. 452, 458 (1994) (emphasis added). Under *Davis*, someone being interrogated need only "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459. Under this standard, a suspect "is required neither to use any magical formulation to invoke his rights nor to express his desire to obtain counsel with lawyer-like precision." *Robinson v. Borg*, 918 F.2d 1387, 1393 (9th Cir. 1990). Instead, the focus is on whether or not a suspect specifically "requests counsel" as opposed to making an "ambiguous reference" to an attorney. *United States v. Washington*, 462 F.3d 1124 (9th Cir. 2006).

As this Court properly found, the legal principle espoused in *Davis* was established in 2012. Dkt. 78. And, the specific circumstances confronted by Defendants were sufficient to inform a reasonable officer that Plaintiff's "statement was an expression of his desire for an attorney, followed by a reason for

9

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

making his request." *Id.* (citing *United States v. De la Jara*, 973 F.3d 746 (9th Cir. 1992), and *Alvarez v. Gomez*, 185 F.3d 995, 998 (9th Cir. 1999)).

### A. There Should be No Debate That "Could I have an attorney" is an Unequivocal Invocation of the Right to Counsel[2]

By 2012, it was clearly established by Supreme Court and Ninth Circuit precedent that a reasonable officer would understand that asking "Could I have an attorney?" was a request for counsel, and not an "ambiguous reference." Put differently, asking "Could I have an attorney" is exactly what it is: an unequivocal invocation of the right to counsel.

Defendant's argument that it was not clearly established in 2012 that the statement "Could I have an attorney?" was an unequivocal request for counsel is

_____

[2] That Plaintiff's invocation of his right to counsel was unequivocal in light of his age cannot be doubted; it was beyond clearly established in 2012 that interrogators must consider the age of the suspects they are interrogating when determining whether their rights have been preserved. This Court held that an *invocation* is separate from a *waiver*, Dkt. 78, at 4 n.7. But, Plaintiff has alleged that he never waived his rights. SAC, Dkt. 67, at ¶¶88, 90 ("Defendants never asked Plaintiff whether he wished to waive his *Miranda* rights or to sign the standard waiver form. . . . Plaintiff did not ever knowingly and voluntarily waive his constitutional right to silence, to an attorney, or any of the other rights protected under the constitution."). Accordingly, Plaintiff believes that the Supreme Court's clear guidance that "youth" must be considered should be part of the analysis for Plaintiff's right-to-counsel invocation issue as well. *See Schneckloth*, 412 U.S. at 226 (totality of the circumstances includes, "youth," "lack of education," and "low intelligence"); *Gallegos v. Colorado*, 370 U.S. 49, 54 (1962) (it would be a "callous disregard of … constitutional rights" to treat every suspect like "an adult in full possession of his senses and knowledgeable of the consequences of his admissions"). *In re Gault*, 387 U.S. 1, 45, (1967) ("Th[e Supreme] Court has emphasized that admissions and confessions of juveniles require special caution."); *Haley v. State of Ohio*, 332 U.S. 596, 599-600 (1948) (discussing the interrogation of a 15-year-old, comparing it to an inquisition and writing, "we cannot believe that a lad of tender years is a match for the police in such a contest. He needs counsel and support if he is not to become the victim first of fear, then of panic.").

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

foreclosed by longstanding precedent. The Supreme Court has long found statements of the kind at issue here to be unequivocal invocations of the right to counsel. In *Smith v. Illinois*, the Court found the following to be an unequivocal invocation of the right to counsel: "Q. You have a right to consult with a lawyer and to have a lawyer present with you when you're being questioned. Do you understand that? A. Uh, yeah, I'd like to do that." 469 U.S. 91, 93 (1984). Additionally, in *Minnick v. Mississippi*, the Supreme Court found the following to be unequivocal: "Come back Monday when I have a lawyer." 498 U.S. 146, 148.

Defendants have seized upon one of the Court's comments at the hearing, but the problem, at that juncture, was Plaintiff's counsel failed to bring sufficient authorities to the Court's attention in advance. Trans., 18:8-9; Dkt. 86, 3:25. Indeed, at the very same hearing this Court expressed a desire for more Ninth Circuit precedent, Trans. 7:9-16, which Plaintiff agreed to provide in a supplement. Trans. 7:17–8:3. Plaintiff produced additional precedent, and this Court subsequently denied Defendants' Motion to Dismiss. Order, Dkt. 78.

Accordingly, at the time the Court ruled, a wealth of precedent was before the Court. All of these authorities, with the Supreme Court's guidance in *Davis, Smith,* and *Minnick*, put defendants on notice that Plaintiff's invocation of his right to counsel was unequivocal. Those authorities were:

11

- *Smith v. Endell*, 860 F.2d 1528, 1529, 1531 (9th Cir. 1988) (holding that "Can I talk to a lawyer?" was not ambiguous or equivocal)

- *Shedelbower v. Estelle*, 885 F.2d 570, 571–73 (9th Cir. 1989), which held that "You know, I'm scared now. I think I should call an attorney" was a clear invocation of the right to counsel)

- *Robinson v. Borg*, 918 F.2d 1387, 1389 (9th Cir. 1990), which held "I have to get me a good lawyer, man. Can I make a phone call?" was a clear invocation of the right to counsel.

- *United States v. De La Jara*, 973 F.2d 746, 750 (9th Cir. 1992) (holding that "Can I call my attorney?" was an invocation of right to counsel);

- *Alvarez v. Gomez*, 185 F.3d 995, 998 (9th Cir. 1999) ("'Can I get an attorney right now, man?'... " "... 'You can have attorney right now?" is an unequivocal invocation");

- *Luna v. Lamarque*, 400 F. App'x 169, 172 (9th Cir. 2010) ("We hold that in the circumstances of this interrogation, Luna's final statement—"[I]t sounds like I need a lawyer. And I need help"—was a sufficient invocation of his right to counsel. We have repeatedly recognized that the circumstances in *Davis* included the suspect's explicit waiver of his right to counsel at the beginning of the interrogation." (citing *United States v.*

12

*Rodriguez*, 518 F.3d 1072, 1078 (9th Cir.2008); and *United States v. Cheely*, 36 F.3d 1439, 1447–48 (9th Cir.1994));

- *Rodriguez v. McDonald*, 872 F.3d 908, 922 (9th Cir. 2017) (holding the following to be unequivocal: "Rodriguez: Can I speak to an attorney? Officer: Whatever you want. Rodriguez: Can I speak to an attorney? Officer: You tell me what you want. Rodriguez: That is what I want.").

- *United States v. Escobedo-Gomez*, 715 Fed. App'x 743, 2018 WL 1406672 (9th Cir. Mar. 21, 2018).

Defendants have not discussed, let alone cited, these authorities, illustrating the failure of their motion.

Indeed, this Court specifically pointed to *Smith v. Endell*, 860 F.2d 1528, 1530-31 (9th Cir. 1988), which involved a suspect who stated "Can I talk to a lawyer? At this point, I think maybe you're looking at me as a suspect, and I should talk to a lawyer. Are you looking at me as a suspect." Dkt. 78, at 5. In discussing *Smith* the Court noted that "Plaintiff's case is stronger than Smith's," because the statement there was conditional, while "Plaintiff's request was not conditional. He stated a specific reason that he wanted a lawyer." *Id.* at 5 n.5 (citing *Smith*, 860 F.2d at 1531). Defendants have not discussed *Smith* or the Court's analysis of that case, or even the more general proposition that requesting

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

an attorney and following that with a reason for the request (here, "Because that's not me") was anything but unequivocal. Their argument thus fails.

The foregoing do not exhaust the entirety of potential authorities for present purposes, and there are additional authorities from the Ninth Circuit indicating that Defendants' arguments miss the mark and there should not be a dispute that Plaintiff's invocation was unequivocal. *See, e.g.*, *Brown v. Rowland*, 215 F.3d 1332 (9th Cir. 2000) ("[C]an I have my lawyer here or something?" was an unequivocal invocation); *Krysinski v. Rowland*, 89 F.3d 845 (9th Cir. 1996) (finding that "a reasonable interrogating officer would have understood . . . that [Plaintiff] was requesting an attorney when he said, "Do I get to talk to a lawyer or something?"); *Parrish v. Carroll*, 17 F.3d 395 (9th Cir. 1994) (finding that the statement: "I would like to have me an attorney before, because I don't know what you all talking about on this" was a "clear, simple, [and] unequivocal]" request).

Unsurprisingly, case law from other circuits shows statements that are similar to, or that are certainly less unequivocal than Plaintiff's statement, "Could I have an attorney," are unequivocal requests for counsel. *See, e.g.*, *Wood v. Ercole*, 644 F.3d 83, 91 (2d Cir. 2011) (holding that the statement "'I think I should get a lawyer' evidences no internal debate whatsoever" and was an unequivocal request); United States v. Lee, 413 F.3d 622, 626 (7th Cir. 2005) (finding that

14

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

"[c]an I have a lawyer?" and "[c]an I talk to a lawyer," are unequivocal invocations of the right to counsel).

Moreover, Plaintiff's further statement "because that's not me," makes it clear that the statement was unequivocal—it was a *reason* for the request, and it's clear that an explanation can reinforced a request. *Cf. Hurd v. Terhune*, 619 F.3d 1080, 1089 (9th Cir. 2010) (explaining that a suspect can invoke his right to silence "through an explanatory refusal").

Given the present posture—a motion where inferences are taken in Plaintiff's favor—there should be no debate that "Plaintiff asked for a lawyer and should have been provided with one." Dkt. 78, at 7.

## B. Defendants Understood Plaintiff's Invocation to Be a Request

Not only would a reasonable officer understand Plaintiff's statement to be a request for counsel, plaintiff has alleged, consistent with additional evidence not before the Court, that Defendants *actually did* understand the statement to be an invocation of the right to counsel. Defendants did not ask Plaintiff to clarify his statement. They did not ask Plaintiff what he meant by his request. Instead, they responded to Plaintiffs request for an attorney by saying: "No." As this Court did, Dkt. 78 at 6-7, courts look to the immediate response of the interrogators in determining whether a reasonable officer would have understood the statement is

15

an unequivocal invocation of the right to counsel. *See, e.g.*, *Sessoms v. Grounds, 776 F.3d 615, 626 (9th Cir. 2015)* (finding that "the detectives understood that [Plaintiff] was requesting counsel, as [one detective's] response to a subsequent question illustrate[d].");  *Abela v. Martin, 380 F.3d 915, 926 (6th Cir. 2004)* (finding an officer's response to a request for an attorney "confirm[ed] that a reasonable officer would understand [Plaintiff's] statement to be a clear request for counsel"); *United States v. Escobedo-Gomez, 715 F. App'x 743, 2018 WL 1406672 (9th Cir. Mar. 21, 2018)* ("the agent's response—"All right, so, you don't—you don't wish to speak to us tonight?" indicates that he understood exactly what Escobedo was asserting");

Here, Plaintiff unambiguously requested an attorney when he asked "Could I have an attorney?" Defendants did not ask Plaintiff to clarify. Instead, they brazenly pushed ahead and specifically responded to Plaintiff's request by saying: "No." It is clear from this response to plaintiff's request that he was seeking counsel.

### C. Subsequent Authorities Confirm, There is No Substantial Grounds for a Difference of Opinion.

Cases decided after the interrogation of Plaintiff, even if they do not necessarily address the "clearly established" 2012, show no difference in authority today or conflict among decisions that might warrant an interlocutory appeal.

16

Instead, they only confirm that Plaintiff's has adequately pleaded an unequivocal right to an attorney claim. Those authorities include:

- *Rodriguez v. McDonald*, 872 F.3d 908, 922 (9th Cir. 2017) (holding the following to be unequivocal: "Can I speak to an attorney? is unequivocal)

- *Sessoms v. Grounds*, 776 F.3d 615, 626 (9th Cir. 2015) ("There wouldn't be any possible way that I could have a—a lawyer present while we do this?" was an unequivocal request for counsel);

- *Mays v. Clark*, 807 F.3d 968, 978, 981 (9th Cir. 2015) (finding that the statement "[m]y—my step-dad got a lawyer for me. . . . I'm going to—can—can you call him and have my lawyer come down here" was a clear invocation of the right to counsel).

Based on the foregoing precedent, there is no question that in 2012 a reasonable officer would have understood the statement "Could I have an attorney?" from to be an unequivocal request for counsel. And, Defendants have not pointed to any basis for a disputed question of authorities.

Instead, Defendants fundamentally misunderstand the difference between the cases they cite to support their contention that Plaintiff's request for a lawyer was equivocal, and the cases cited in this brief. The California cases are totally irrelevant. And, the statements in the cases cited by Defendants only emphasize the

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

difference between Plaintiff's request here and a statement deemed equivocal.

Defendants have cited the exact same cases; but this Court has already found that

"Plaintiff's question and its context were significantly different from the

statements and questions in the cases cited by Defendants." Dkt. 78, at 6. They

have provided no basis for any dispute of authority with respect to this claim.

### D. Defendants Claims About the Law Being "Unsettled" Are Exaggerated

Citing the California Rules of Court, Defendants suggest that the fact that

the California Court of Appeals published its decision in Plaintiff's case somehow

means that the decision "established a new legal standard for determining when a

minor has invoked his right to counsel." Dkt. 68, at 9. This argument holds no

water. For one, Defendants have no idea as to why the appellate court decided to

publish its decision; if they want to make this argument they need to depose the

jurists who decided the case. And, they have overlooked the myriad reasons why a

decision might be published; for example because a case "involves a legal issue of

continuing public interest" or because a decision "makes a significant contribution

to the legal literature." CAL. RULES OF COURT, RULE 8.1105(c)(6)–(7).

Defendants also claim that Plaintiff's own case created new law in the state

of California. That claim, even if true, is irrelevant here. For one, the state court's

do not control the clearly established inquiry, federal authorities do. And, state

18

1   courts are reviewed and reversed under even more exacting standards, those under

2   AEDPA, than the qualified immunity context, and still sometimes err. *See, e.g.*,

3   *McWilliams v. Dunn*, 137 S. Ct. 1790, 1799-1801 (2017) (granting habeas relief);

4   *Rodriguez*, 872 F.3d at 114 & 921-24 (granting habeas on coerced juvenile

5   confession).

6          The Supreme Court and the Ninth Circuit have reversed lower courts for

7   improperly applying the "clearly established" inquiry. In *Tolan v. Cotton*, the

8   Supreme Court vacated the Court of Appeals for the Fifth Circuit's determination

9   that police officer's actions in an excessive force case did not violate clearly

10  established law. 134 S.Ct. 1861, 1863 (2014). The Court found that "[i]n holding

11  that [the police officer's] actions did not violate clearly established law, the Fifth

12  Circuit failed to view the evidence at summary judgment in the light most

13  favorable to [the Plaintiff] with respect to the central facts of this case." *Id.* at

14  1866; *see also, e.g.*, *Marks v. Clarke*, 102 F.3d 1012, 1028 (9th Cir. 1996)

15  ("reject[ing] the conclusion of the district court that the officers were insulated by

16  qualified immunity" because, contrary to the district court's analysis, the right at

17  issue was clearly established).

18         Finally, Defendants have attempted to ratchet-up the clearly established

19  requirement beyond that required by the Supreme Court, even under recent

20

19

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of
Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

authorities. In order to find a constitutional right clearly established for the purpose of qualified immunity, precedent must exist that defines the right "with enough specificity to put a reasonable officer on notice that his conduct is unlawful." *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013). While the precedent cannot define the right at a high level of generality, *Ashcroft v. al-Kid*, 563 U.S. 731, 742 (2011), "[a] right can be clearly established despite a lack of factually analogous preexisting law." *Ford*, 706 F.3d at 1195; *see White v. Lee*, 227 F.3d 1214, 1238 (9th Cir. 2000) ("Closely analogous preexisting case law is not required to show that a right was clearly established."). The relevant inquiry here is "whether the state of the law in [2012] gave [Defendants] fair warning that [Plaintiff's] alleged treatment was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 731 (2002).

To define the contours of the right in question too narrowly would be to allow defendants "to define away all potential claims." *Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995).

If a court were to accept Defendants' argument that it was not "clearly established" that Plaintiff's request was an unequivocal invocation of his right to counsel, the result would be that only requests identical to those litigated in prior cases could be unequivocal invocations. This cannot be correct. *See Davis*, 512 U.S. at 459 ("[A] suspect need not 'speak with the discrimination of an Oxford

20

1    don,'" but rather need only "articulate his desire to have counsel present

2    sufficiently clearly that a reasonable police officer in the circumstances would

3    understand the statement to be a request for an attorney." (citation omitted)). The

4    law on invocations of the right to counsel has been clearly established for years, in

5    the Supreme Court and the Ninth Circuit, and easily fulfills the "clearly

6    established" prong of the qualified immunity analysis.

7    **IV.    Certifying an Interlocutory Appeal on this Motion Cannot Advance the Litigation**

8

9            Granting Defendants an early, narrow appeal will do nothing to materially

10   advance the ultimate termination of the litigation. In fact, it will only crease the

11   work of the parties and of the judiciary writ large. Defendants would have the

12   parties simultaneously litigating an issue about allegations in the complaint (which

13   is necessarily incomplete and could, in fact, be changed), while preparing for trial

14   or litigating dispositive motions about the same interrogation before this Court.

15   This is plainly anathema to § 1292, the core purpose of which is to "save the courts

16   and litigants unnecessary trouble and expense." *United States v. Adam Bros.*

17   *Farming, Inc.,* 369 F.Supp.2d 1180, 1182 (C.D. Cal. 2004).

18           The certification of Defendants' interlocutory appeal would cause nothing

19   but trouble and expense.  Not a single defendant would be removed as a party if

20   they prevail. Nor would even an entire Count be dismissed. Nor would any

21

*substantive* issue about the interrogation be removed—Plaintiff's coercion and due process claims will still involve Plaintiff's request for counsel, which was blatantly ignored, during the interrogation.

No time or money would be saved by certifying Defendants' interlocutory appeal—it is quite the opposite. As such, there is no cogent argument to be made that an interlocutory appeal would materially advance the litigation in this case.

Finally, Defendants arguments to the contrary have no weight. Aside from general platitudes, Defendants make two arguments meriting brief responses. First, Defendants argue that the City would be "forced to appeal the Court's ruling denying qualified immunity," if Plaintiff prevails at trial and then, assuming the ruling is overturned, that the matter would proceed to trial again, entirely. But, this is simply not the case—the Court can issue jury instructions and a verdict form that sets apart the right-to-counsel issue from the other claims related to the confession. And, if the City is intent on appealing at all costs, there seems little reason to allow them two bites at the apple.

Second, Defendants claim that "certifying the Order for an immediate appeal will allow the parties an opportunity to have this issue resolved" prior to trial. But, there is absolutely no guarantee that an interlocutory appeal would be decided by then. And, most importantly, the only thing that would be decided would be the

22

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS

sufficiency of the *complaint* not the actual and entire factual record concerning the interrogation. The interlocutory appeal will only increase costs and litigation (as proved by the very fact of this brief being filed in the first place).

**CONCLUSION**

For the foregoing reasons, Defendants' motion to for certification of order for interlocutory appeal should be denied.

Respectfully submitted,
**ART TOBIAS**

By: /s/ David B. Owens_____
*One of Plaintiff's attorneys*

David B. Owens, Cal. Bar No. 275030
david@loevy.com
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
(312) 243-5902 (Fax)

Plaintiff's Memorandum in Response to Defendants' Motion for Certification of Order for Interlocutory Appeal
2:17-cv-1076-DSF-AS