1  Susan E. Coleman (SBN 171832)
   E-mail: scoleman@bwslaw.com
2  Lillian Kae Yoo (SBN 261239)
   E-mail: lyoo@bwslaw.com
3  BURKE, WILLIAMS & SORENSEN, LLP
   444 South Flower Street, Suite 2400
4  Los Angeles, CA 90071-2953
   Tel: 213.236.0600    Fax: 213.236.2700
5
6  Attorneys for Defendants
   CITY OF LOS ANGELES, BORN AND COOLEY
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 | ART TOBIAS,                          | Case No. 2:17-cv-01076-DSF-AS

12 |              Plaintiff,              | **DEFENDANTS CITY OF LOS ANGELES, BORN, AND COOLEY'S NOTICE OF MOTION AND**

13 | v.                                   | **MOTION FOR SUMMARY JUDGMENT, OR IN THE**

14 | CITY OF LOS ANGELES; SGT.            | **ALTERNATIVE, PARTIAL**
   | SANCHEZ, #25339; DETECTIVE           | **SUMMARY JUDGMENT;**
15 | MICHAEL ARTEAGA, #32722;             | **MEMORANDUM OF POINTS AND**
   | DETECTIVE JEFF CORTINA,              | **AUTHORITIES IN SUPPORT**
16 | #35632; DETECTIVE J. MOTTO,          | **THEREOF**
   | #25429; DETECTIVE JULIAN PERE,
17 | #27434; OFFICER MARSHALL             | [*Defendants' Separate Statement of*
   | COOLEY, #38940; OFFICER BORN,        | *Uncontroverted Facts and Conclusions*
18 | #38351; L.A. SCHOOL POLICE           | *of Law, Appendix of Evidence,*
   | OFFICER DANIEL EAST, #959; and       | *Evidentiary Support, and Proposed*
19 | UNIDENTIFIED EMPLOYEES of the        | *Order Filed Concurrently Herewith*]
   | CITY OF LOS ANGELES,
20 |                                      | Date:     August 6, 2018
   |              Defendants.             | Time:     1:30 p.m.
21 |                                      | Location: Courtroom 7D
22
23 |                                      | Judge:    Hon. Dale S. Fischer

24

25      **TO PLAINTIFF ART TOBIAS, AND HIS ATTORNEYS OF**

26 **RECORD:**

27      PLEASE TAKE NOTICE that on August 6, 2018 at 1:30 p.m., or as soon

28 thereafter as this matter may be heard in Courtroom 7D of the above-captioned

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-8051-6203 v1

2:17-CV-01076-DSF-AS
BORN, COOLEY, CITY MSJ

1  Court, Defendants CITY OF LOS ANGELES, BORN, and COOLEY (hereinafter

2  "Defendants") will and hereby do move this Court for summary judgment, or in the

3  alternative partial summary judgment, on the grounds that there are no genuine

4  issues as to any material fact and that the moving parties are entitled to judgment as

5  a matter of law for the reasons that:

6       1)    Plaintiff's due process and malicious prosecution claims fail because

7  Officers Born and Cooley did not violate Plaintiff's constitutional rights by making

8  an identification.  Even a mistaken identification does not rise to the level of a

9  constitutional violation.

10      2)    Plaintiff has no evidence that Officers Born and Cooley failed to

11  intervene in the alleged deprivation of Plaintiff's constitutional rights.

12      3)    Plaintiff has no evidence that Officers Born and Cooley conspired to

13  violate Plaintiff's constitutional rights.

14      4)    Officers Born and Cooley are entitled to qualified immunity as they

15  reasonably believed their actions were lawful, and would not have been on notice

16  that their actions in making an identification were unlawful.

17      5)    Plaintiff's claim for municipal liability under *Monell v. Dept. of Social*

18  *Services*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978) fails because there

19  is no evidence of an unconstitutional policy, practice, custom, lack of training, or

20  ratification.

21      This Motion is made following the conference of counsel pursuant to Local

22  Rule 7-3, which was commenced on June 11, 2018, when defense counsel sent a 5-

23  page letter detailing the factual and legal basis for this motion to Plaintiff's counsel.

24  The parties met and conferred several times, and Plaintiff agreed to voluntarily

25  dismiss Defendant Sanchez from this case.  However, the meet and confer process

26  was unsuccessful in resolving the claims against Officers Born, Cooley, and the

27  City of Los Angeles.

28      This Motion is based on this Notice of Motion and Motion, the

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

accompanying Memorandum of Points and Authorities, the attached Declarations

of Officer Born, Officer Cooley, Detective Jenks, Detective Castillo, and Susan

Coleman, with exhibits, the Separate Statement of Uncontroverted Facts and

Conclusions of Law, all papers and pleadings on file in this matter, and any

evidence and argument the Court may require or allow at the hearing on this

motion.

Dated:  June 28, 2018                    BURKE, WILLIAMS & SORENSEN, LLP


By:  /s/ Susan E. Coleman
        Susan E. Coleman

Attorneys for Defendants
CITY OF LOS ANGELES,
BORN AND COOLEY

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-8051-6203 v1                - 3 -                2:17-CV-01076-DSF-AS
                                                          BORN, COOLEY, CITY MSJ

1

**TABLE OF CONTENTS**

2

Page

3  I.    INTRODUCTION ...................................................................... 1

4  II.   STATEMENT OF FACTS .......................................................... 2

       A.   Officer Cooley's Identification ......................................... 2

5      B.   Officer Born's Identification ............................................ 3

6  III.  STANDARD FOR SUMMARY JUDGMENT ................................ 4

7  IV.   PLAINTIFF CANNOT ESTABLISH BORN OR COOLEY
       VIOLATED HIS CONSTITITUTIONAL RIGHTS ........................ 5

8      A.   Plaintiff Cannot Establish a Due Process  Violation ........... 5

       B.   Plaintiff Cannot Establish a Malicious Prosecution Claim ... 8
9
   V.   PLAINTIFF HAS NO EVIDENCE OF A FAILURE TO
10      INTERVENE  OR A CONSPIRACY ........................................ 10

11     A.   Plaintiff Cannot Establish a Failure to Intervene............... 10

       B.   Plaintiff Cannot Establish Born or Cooley Were involved in a
12          Conspiracy ................................................................... 11

13  VI.  OFFICERS BORN AND COOLEY ARE ENTITLED TO
       QUALIFIED IMMUNITY ....................................................... 13

14     A.   The Standard for Finding Qualified Immunity.................... 13

15     B.   Plaintiff Cannot Show Officers Born or Cooley Violated a
            Constitutional Right or Knew that Their Conduct was Unlawful ... 14

16  VII. PLAINTIFF CANNOT ESTABLISH MONELL LIABILITY .......... 15

17     A.   Legal Standard ............................................................. 16

18     B.   Plaintiff Does Not Have Evidence of an Unlawful Government
            Policy, Official Decision, Long-Standing Custom or Practice
            Which Led to the Alleged Violation of His Rights ............... 17
19
            1.   The City Has Policies, Practices, Customs, and Training
20               with Respect to Juveniles and Interrogations ........... 17

21          2.   The City Has Policies, Practices, Customs, and Training
                 with Respect to Brady Discovery Obligations ........... 20
22
            3.   Plaintiff Cannot Establish a Long-Standing Pattern or
                 Custom of Violation of Rights ................................. 21

23  VIII. CONCLUSION...................................................................... 23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...................................................................5

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011)..................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................17

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*,
  520 U.S. 397 (1997)..................................................................16

*Blankenhorn v. City of Orange*,
  485 F.3d 463 (9th Cir. 2007) ....................................................10

*Boyd v. Benton County*,
  374 F.3d 773 (9th Cir. 2004) ....................................................10

*Celotex Corporation v. Catrett*,
  477 U.S. 317 (1986)....................................................................5

*Chuman v. Wright*,
  76 F.3d 292, 294-295 (9th Cir.1996) ........................................11

*City and County of San Francisco, Calif. v. Sheehan*,
  135 S. Ct. 1765 (2015)..............................................................15

*City of Canton v. Harris*,
  489 U.S. 378 (1989)..................................................................16

*City of Oklahoma City v. Tuttle*,
  471 U.S. 808 (1985)..................................................................22

*Daniels v. Williams*,
  474 U.S. 327 (1981)...............................................................7, 15

*Davis v. City of Ellensburg*,
  869 F .2d 1230, 1233 (9th Cir. 1989) ........................................21

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

*Devereaux v. Abbey,*
   263 F.3d 1070 (9th Cir. 2001) ................................................................ 5, 6, 7

*Dougherty v. City of Covina,*
   654 F.3d 892 (9th Cir. 2011) ..................................................................... 16

*Eisenberg v. Insurance Company of North America,*
   815 F.2d 1285 (9th Cir. 1987) ..................................................................... 5

*Franklin v. Fox,*
   312 F. 3d 423 (9th Cir. 2001) .................................................................... 12

*Freeman v. City of Santa Ana,*
   68 F.3d 1180 (9th Cir. 1995) ....................................................................... 8

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982)............................................................................... 13, 14

*Hart v. Parks,*
   450 F.3d 1059 (9th Cir. 2006) .................................................................. 12

*Henkle v. City of Clarksburg,*
   81 F.3d 416 (4th Cir. 1996) ...................................................................... 12

*Hopkins v. Bonvicino,*
   573 F.3d 752 (9th Cir. 2009) .................................................................... 11

*Hunter v. Bryant,*
   502 U.S. 224 (1991)................................................................................... 13

*Monell v. Dept. of Social Services,*
   436 U.S. 658 (1978)........................................................................... 1, 16, 21

*Motley v. Parks,*
   432 F.3d 1072 (9th Cir.2005) (en banc) .................................................. 10

*Newman v. County of Orange,*
   457 F.3d 991 (9th Cir. 2006) ...................................................................... 9

*Pearson v. Callahan,*
   555 U.S. 223 (2009)............................................................................... 13, 14

*Radcliff v. Rainbow Constr. Co.,*
   254 F.3d 772 (9th Cir. 2001) .................................................................... 12

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-8051-6203 v1                          - 6 -                          2:17-CV-01076-DSF-AS
                                                                              BORN, COOLEY, CITY MSJ

*Saucier v. Katz,*
 533 U.S. 194 (2001) ................................................................ 14

*Sloman v. Tadlock,*
 21 F.3d 1462 (9th Cir. 1994) ................................................... 9

*Smiddy v. Varney,*
 665 F.2d 261 (9th Cir. 1981) ................................................... 9

*Smiddy v. Varney,*
 803 F.2d 1469, 1471 (9th Cir. 1986) ..................................... 9

*Tatum v. Moody,*
 768 F.3d 806 (9th Cir. 2014) ................................................... 8

*Trevino v. Gates,*
 99 F.3d 911 (9th Cir. 1996) ................................................... 21

*Webb v. Sloan,*
 330 F.3d 1158 (9th Cir. 2003) ............................................... 16

*Wilkinson v. Torres,*
 610 F.3d 546 (9th Cir. 2010) ................................................... 8

*Woodrum v. Woodward County, Oklahoma,*
 866 F.2d 1121 (9th Cir. 1989) ............................................... 12

**Federal Statutes**

42 U.S.C. §1983 ..................................................................... *passim*

**State Statutes**

California Welfare and Institutions Code Section 625 ........................ 18

Penal Code 186.22 .................................................................... 3

**Regulations**

Special Order 14 ...................................................................... 18

**Other Authorities**

Federal Rules of Civil Procedure Rule 56 ..................................... 4

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

Fourteenth Amendment ........................................................................ 8

Fourth Amendment .............................................................................. 15

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-8051-6203 v1

2:17-CV-01076-DSF-AS
BORN, COOLEY, CITY MSJ

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On August 18, 2012, at approximately 12:40 a.m., Alex Castaneda was shot and killed on the 1400 block of Alvarado Terrace. Plaintiff Art Tobias was arrested and tried for the Castaneda murder. During his criminal trial, Plaintiff moved to exclude his confession. The criminal court denied Plaintiff's motion, finding that his comment: "Could I have an attorney? Because that's not me," was insufficient to constitute an unequivocal request for legal counsel. Plaintiff was convicted. On appeal, the California Court of Appeal reversed, and set aside Plaintiff's conviction.

Plaintiff now brings suit against numerous officers—including Officers Born and Cooley,[1] who were not involved in the custodial interrogation and whose only involvement was giving their respective opinions that Plaintiff was the individual shown in the surveillance video of the Castaneda murder. Even assuming their identifications were mistaken, which Defendants do not concede, this fails to rise to the level of a constitutional violation. Plaintiff has no evidence Officer Born or Officer Cooley's identifications were knowingly false and negligence is insufficient to state a claim under Section 1983. Plaintiff also has no evidence that Officers Born or Cooley were part of a conspiracy, or that that they failed to intervene in any way. Further, Officers Born and Cooley are entitled to qualified immunity because they would not be on notice that their honest opinions identifying Plaintiff would be unlawful.

Plaintiff also brings claim for municipal liability against the City of Los Angeles under *Monell v. Dept. of Social Services*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). However, Plaintiff's claim fails because there is no evidence of an unconstitutional policy, practice, custom, lack of training, or ratification.

---

[1] Defendant Sanchez was voluntarily dismissed, and the remaining individual defendants are represented by separate counsel.

## II.    STATEMENT OF FACTS[2]

### A.    Officer Cooley's Identification

From 2011 to 2015, Officer Cooley was a gang enforcement officer assigned to Rampart division.  The primary street gang he was assigned to monitor was Mara Salvatrucha 13 ("MS-13").  The MS-13 gang operated in both Rampart and Olympic divisions of Los Angeles. (SUF #1.)

On August 17, 2012, at approximately 9:00 p.m., Officer Cooley spoke to Plaintiff Art Tobias' mother Helen Contreras when she came in to report Plaintiff missing. (SUF #2.)  Ms. Contreras showed Officer Cooley a few photos of her son on her cell phone and said that he was MS-13.  Officer Cooley had not heard of Plaintiff's name in connection with MS-13, so he used Department resources to verify his affiliation was documented and to see a photo of Plaintiff.  Based on the photos Officer Cooley saw, he observed that Plaintiff's hairline was slightly slanted and he wore thick glasses. He also had a distinct facial shape. (SUF #3.)  Ms. Contreras also showed Officer Cooley one of Plaintiff's Facebook posts in which he wrote, "I'm going to go on the most important mission of my life, don't know if I'm going to come back alive or dead or arrested."  Ms. Contreras said she was raising Plaintiff as a single mom and she said nothing she was doing was working, she could not control him.  She was worried that Plaintiff had been shot or killed earlier that night at a different shooting[3].  (SUF #4.)

Based on the information Officer Cooley received, he advised Ms. Contreras to make a missing person report so that any law enforcement officer who contacted Plaintiff would contact her. (SUF #5.)

A few hours later, at approximately 12:40 a.m. on August 18, 2012, there

---

[2] The facts pertaining to the City are contained in Section VII regarding Plaintiff's *Monell* claim.

[3] Ironically, Plaintiff later pled guilty to involuntary manslaughter for his involvement in the shooting on Leeward Avenue, the incident his mother had been concerned about.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-8051-6203 v1                    - 2 -                    2:17-CV-01076-DSF-AS
BORN, COOLEY, CITY MSJ

was a shooting on Alvarado Terrace. Dispatch asked for a MS gang officer to respond because the shooters had yelled things such as "fuck 18, this is MS." Officer Cooley responded to the scene and was told there was a possible surveillance video of the shooting. (SUF #6.) Officer Cooley went inside the apartment manager's office and viewed the surveillance video. He was not provided with any information about the potential suspect before he watched the surveillance video. (SUF #7.) Office Cooley saw a person that he thought uncannily resembled Plaintiff and he immediately believed it was the same person he had seen in the photos earlier, both from Plaintiff's mother and on the LAPD system. The person in the video also seemed to be a similar age to Plaintiff, namely in his early teens. (SUF #8.) Officer Cooley completed a statement form on August 18, 2012, to document his involvement. (SUF #11.)

Because Officer Cooley had not met Plaintiff in person, he contacted Officer Born (a gang officer in Olympic division) to have her review the surveillance video also. Officer Cooley requested Officer Born because she had input the Field Interview (FI) cards into the system for Plaintiff. Officer Cooley therefore believed that she may have met him in person. (SUF #9.) Officer Cooley did not tell Officer Born the name, moniker or any other information about the potential suspect. (SUF #10.)

Officer Cooley only testified at Plaintiff's criminal trial after Plaintiff was adjudicated guilty of the murder of Castaneda and related attempted murder charges. Officer Cooley testified during the Penal Code 186.22 gang enhancement phase. He did not testify regarding his identification of Plaintiff. (SUF #13.)

### B. Officer Born's Identification

From 2011 to 2014, Officer Born was a gang enforcement officer assigned to Olympic division. The primary street gang she was assigned to monitor was MS-13. (SUF #16.) In order to monitor the MS-13 gang, Officer Born patrolled the area to speak to gang affiliates and documented my field contacts, read Field Interview

(FI) cards collected by others, input FI cards into the computer, and monitored Facebook accounts of affiliates. (SUF #17.)

Officer Born had never encountered Plaintiff in person; however, she had seen his Facebook posts, where he was shown in baggy clothes throwing gang signs. She had also seen a photograph of Plaintiff that a patrol officer had taken of him. (SUF #18.) Officer Born was also aware, based on approximately 3 collected Olympic division FI cards, that Plaintiff was described as approximately five foot tall with a medium build, bushy hair, and dark framed reading glasses. He was a self-admitted MS-13 from Tiny Winos clique with the moniker of Casper. (SUF #19.)

At approximately 2:00 a.m. on August 18, 2012, Officer Cooley contacted Officer Born to determine if she could help identify a homicide suspect. (SUF #20.) Officer Cooley did not tell Officer Born the name, moniker or any other information about the potential suspect. (SUF #21.)

Initially when she arrived on scene, Officer Born was shown a still photo, which she immediately believed was Plaintiff because of his distinct features including bushy hair, a distinguished hairline, and thick round-shaped reading glasses. Officer Born then reviewed the surveillance video and it appeared to be Tobias. He appeared youthful and was holding the firearm nervously. Officer Born told Officer Cooley that she believed it was Plaintiff and provided him the moniker of Casper. (SUF #22.) After reviewing the still photo and surveillance video, Officer Born wrote up a statement form identifying Plaintiff before she went off duty that night. (SUF #23.)

Officer Born did not testify at Plaintiff's criminal trial. She had no involvement in his criminal case after completing her statement form on August 18, 2012. (SUF #24.)

## III.   STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure states that summary

Burke, Williams & Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-8051-6203 v1

- 4 -

2:17-CV-01076-DSF-AS
BORN, COOLEY, CITY MSJ

judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986), the Supreme Court stated that:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 322-323. The failure of the non-moving party to prove an essential element of its claim renders all other facts immaterial. *Id.* at 323.

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (decided on the same day as Celotex), the Supreme Court made it clear that a party opposing a motion for summary judgment must affirmatively show that a dispute about a material fact is genuine, such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. This standard requires that this Court grant this motion if the evidence produced against defendants' motion is "merely colorable" or "not significantly probative." *Id.* at 249; *Eisenberg v. Insurance Company of North America*, 815 F.2d 1285, 1288 (9th Cir. 1987).

## IV.   PLAINTIFF CANNOT ESTABLISH BORN OR COOLEY VIOLATED HIS CONSTITITUIONAL RIGHTS

Plaintiff brings a violation of due process claim (Count III) and malicious prosecution claim (Count IV) against Officers Born and Cooley based on their identifications of Plaintiff. Plaintiff cannot show that Officer Born or Cooley's actions were unconstitutional.

### A.   Plaintiff Cannot Establish a Due Process  Violation

A person has a due process right "not to be subject to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001). Under the two prong *Deveraux* test, a plaintiff must show that 1) the officer continued his investigation

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-8051-6203 v1                - 5 -                2:17-CV-01076-DSF-AS
BORN, COOLEY, CITY MSJ

1  "despite the fact [he] knew or should have known that [plaintiff] was innocent or

2  [2], [the officer] used investigative techniques that were so coercive and abusive

3  that [he] knew or should have known those techniques would yield false

4  information." *Id* at 1076.

5         Here, there is no evidence that Officer Born or Officer Cooley knew or

6  should have known that Plaintiff was innocent.  Indeed, to this day, neither Officer

7  Born nor Officer Cooley actually knows whether their identifications that they

8  made in 2012 were incorrect.  While Plaintiff denies that he is the shooter, there has

9  been no evidence exonerating him and no other suspect has confessed to this crime.

10 However, even assuming that these identifications were mistaken, this is not

11 enough to establish a constitutional violation because the courts have held that even

12 negligence is insufficient to state a constitutional claim.

13        Officer Cooley made his identification based on his belief that the person on

14 the surveillance video was the same person he had seen in the photos earlier, both

15 from Plaintiff's mother Ms. Contreras and on the LAPD system. (SUF #8.)  In these

16 photos, Officer Cooley noticed that Plaintiff' hairline was slanted, he wore thick

17 glasses, and he had a distinct facial shape. (SUF #3).  The person in the video also

18 seemed to be a similar age to Plaintiff, namely in his early teens. (SUF #8.)

19 Plaintiff has no evidence that Officer Cooley knowingly made a false identification

20 or that his actions were reckless.  Although Plaintiff now asserts that the person in

21 the surveillance video appears taller and heavier than he was in 2012, Plaintiff

22 called one of his friends named "Chucks" and said: "they showed me the video, I'm

23 busted, **they have a fool that has glasses that looks just like me**, what the fuck do

24 I tell them when they have that?" (Exh. I, Investigative Action/Statement Form,

25 emphasis added.)  Likewise, Plaintiff's mother originally agreed that the person the

26 surveillance video was Plaintiff until she looked at the picture more in depth and

27 questioned the clothes he was wearing. (Exh. K, Interview of Helen Contreras.)

28        Officer Cooley had no reason to know his identification was false, especially

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-8051-6203 v1                    - 6 -                    2:17-CV-01076-DSF-AS
BORN, COOLEY, CITY MSJ

given the context that Plaintiff's mother had recently reported Plaintiff missing, said he was MS-13, and showed Officer Cooley Plaintiff's Facebook post where he stated "I'm going to go on the most important mission of my life, don't know if I'm going to come back alive or dead or arrested." (SUF #4.)  All of this information was documented in Officer Cooley's statement form.

Likewise, there is no evidence that Officer Born knowingly made a false identification or that her actions were in reckless disregard to Plaintiff's rights. Officer Born also made an identification based on pictures she had seen on Facebook, a photo taken by a patrol officer, and three Field Identification cards which had physical descriptions of Plaintiff. (SUF #18-19.)  While it is true that Officer Born had never met Plaintiff in person, she never claimed that she did. Instead, Officer Born noted that she did not know Plaintiff in her Statement Form. (SUF #23.)

Plaintiff may argue Officers Born and Cooley should have done more to ensure that their identifications were correct, such as use six-pack identification procedures.  In addition to the fact that Plaintiff has no evidence that alternative procedures such as a six-pack would be more reliable than Officer Born and Cooley's identifications, Plaintiff's allegations at most only rise to negligence, which is insufficient to state a constitutional claim.  The courts have held that accusations that evidence was improperly or negligently collected do not support a § 1983 claim. *Devereaux,* 263 F.3d at 1076-77. "Failing to follow guidelines or carry out an investigation in a manner that will ensure an error-free result is one thing; intentionally fabricating false evidence is quite another." *Id.*, *see also Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1981) ("The Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property.").  Moreover, assuming arguendo that simply making an identification is considered "investigatory" for the purposes of the second prong of *Devereaux,* there is no evidence that Officer Born or Officer

1    Cooley used investigative techniques that were so improper, they should have

2    known those techniques would yield false information.  Therefore, simply asserting

3    that there *may* have been a more reliable way for Officer Born and Cooley to make

4    their identifications is insufficient for a constitutional claim against them.

5         Finally, due process violations under the Fourteenth Amendment occur only

6    when official conduct "shocks the conscience," *Wilkinson v. Torres*, 610 F.3d 546,

7    554 (9th Cir. 2010).  There is no evidence in this case that Officer Born or Cooley's

8    actions were unconscionable.  They made identifications based on information they

9    knew, and documented the basis of how they made their identification in their

10   statement forms.

11        In sum, even assuming Officers Born and Cooley made a mistake during an

12   investigation, such as a mistaken identification, this does not rise to a level of a

13   constitutional tort or constitute fabrication of evidence.  Plaintiff's due process

14   claim should be dismissed.

15        **B.    Plaintiff Cannot Establish a Malicious Prosecution Claim**

16        In order to prevail on his malicious prosecution claim under § 1983, the

17   plaintiff must prove that: (1) the defendants caused Plaintiff to be prosecuted; (2)

18   they did so with malice and without probable cause; (3) they did so for the purpose

19   of violating the plaintiff's constitutional rights; and (4) the criminal proceeding

20   terminated in the plaintiff's favor. *Tatum v. Moody*, 768 F.3d 806, 814 fn. 2 (9th

21   Cir. 2014); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

22   "Probable cause" exists when, under all of the circumstances known to the officers

23   at the time, an objectively reasonable police officer would conclude there is a fair

24   probability that the plaintiff has committed or was committing a crime. *Tatum*, 768

25   F.3d at 814 fn. 2.

26        The Ninth Circuit has long recognized that "[f]iling a criminal complaint

27   immunizes investigating officers . . . from damages suffered thereafter because it is

28   presumed that the prosecutor filing the complaint exercised independent judgment

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-8051-6203 v1                    - 8 -                    2:17-CV-01076-DSF-AS
                                                                 BORN, COOLEY, CITY MSJ

1  in determining that probable cause for an accused's arrest exists at that time."

2  *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981) ("*Smiddy I*"), *overruled on*

3  *other grounds by Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008). The

4  plaintiff bears the burden of producing evidence to rebut such presumption.

5  *Newman v. County of Orange*, 457 F.3d 991, 993-95 (9th Cir. 2006).  "The

6  presumption can be overcome, for example, by evidence that the officers knowingly

7  submitted false information or pressured the prosecutor to act contrary to her

8  independent judgment." *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986),

9  opinion modified on denial of reh'g, 811 F.2d 504 (9th Cir. 1987) ("*Smiddy II*").  In

10  contrast, the Ninth Circuit has clarified that a plaintiff's account of the incident in

11  question, by itself, does not overcome the presumption of independent judgment.

12  *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994).

13      Plaintiff cannot rebut the presumption in this case that the prosecutor

14  exercised independent judgment in determining that there was probable cause.  As

15  stated above, there is no evidence that Officer Born or Officer Cooley knowingly

16  submitted false information or acted with malice. Officer Born and Cooley made

17  identifications based on their good-faith beliefs and documented the circumstances

18  of their identifications in their statement forms.  Officer Cooley made it clear that

19  he did not recognize Plaintiff when Ms. Contreras showed him a picture of

20  Plaintiff, and that he had to look Plaintiff up in the computer database. (SUF #11.)

21  Likewise, Officer Born explicitly acknowledged that, "My partner and I have

22  personally never met the subject;" however, Officer Born explained she made an

23  identification based on physical descriptions other officers had conveyed and based

24  on her personal review of pictures she had reviewed.  It was up to the prosecutor to

25  determine if this information, along with other information that was presented by

26  the other detectives (such as Plaintiff's confession), was sufficient to establish

27  probable cause.

28      Plaintiff does not have any evidence that Officer Born or Cooley concealed

any information from the prosecutor or pressured the prosecutor in any way. Further, their identifications were not used to prosecute Plaintiff. Neither Officer Born nor Cooley testified regarding their identifications at trial (SUF #13, SUF #24), and Officer Cooley's only trial testimony came during the gang enhancement stage after Plaintiff was already convicted.

Therefore, Plaintiff's malicious prosecution claim should be dismissed because Plaintiff cannot establish that Officer Born or Cooley caused Plaintiff to be prosecuted with malice and without probable cause, or that they did so in order to violate Plaintiff's constitutional rights.

## V. PLAINTIFF HAS NO EVIDENCE OF A FAILURE TO INTERVENE OR A CONSPIRACY

Plaintiff brings a Failure to Intervene (Count V) and a Conspiracy (Count IV) claim against Officers Born and Cooley. These claims are not supported by any evidence and should be dismissed.

### A. Plaintiff Cannot Establish a Failure to Intervene

Plaintiff's Second Amended Complaint alleges "Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so." (SAC at ¶ 194.) These vague allegations are improper and insufficient to establish liability against Officers Born and Cooley.

To hold an officer liable for his participation as part of a team or group of officers, a plaintiff must show the officer "integrally participated" via "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481. N.12 (9th Cir. 2007); *Motley v. Parks*, 432 F.3d 1072, 1082 (9th Cir.2005) (en banc) (affirming grant of summary judgment in favor of government agent who did not participate in the allegedly unconstitutional search). Courts have interpreted the integral participation standard to require either physical interaction with a suspect, or some knowledge or control over the challenged conduct. *See Boyd v. Benton County*, 374 F.3d 773, 780 (9th

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-8051-6203 v1                    - 10 -                    2:17-CV-01076-DSF-AS
BORN, COOLEY, CITY MSJ

Cir. 2004).  Further, courts have rejected attempts by a plaintiff to "lump all defendant officers together," and have required that a finding of liability to a particular officer be based upon his own conduct. *Chuman v. Wright*, 76 F.3d 292, 294-295 (9th Cir.1996) (rejecting the "team effort" standard and holding that "[b]eing a mere bystander [to his colleagues' conduct] was insufficient" to support § 1983 liability.").

In this case, it is unclear what the basis of Plaintiff's failure to intervene claim is against Officers Born and Cooley.  Plaintiff has never made it clear what alleged misconduct Officers Born and Cooley "stood by" and allowed occur.  The only involvement these officers had in the case were making identifications on August 18, 2012, and neither officer testified in the guilt phase of Plaintiff's trial. Officer Cooley testified *after* Plaintiff was convicted during the gang enhancement portion of Plaintiff's trial. (SUF #13, 24.)  They were not otherwise involved in the investigation.  For example, there is no evidence that Officers Born or Cooley were in any way involved in the interrogation of Plaintiff, which occurred several days after Officers Born and Cooley made their identifications.  They were not present at the interrogation, they did not watch the interrogation, and there is no evidence that they knew when or where the interrogation was occurring, if at all.

Officers Born and Cooley were far from "integral participants," in any other part of the investigation, and therefore the failure to intervene claim should be dismissed. *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) (affirming summary judgment on behalf of an officer who was in the front yard interviewing a witness and did not participate in the unconstitutional search because he was not an "integral participant.")

## B.    **Plaintiff Cannot Establish Born or Cooley Were involved in a Conspiracy**

Plaintiff's Sixth Count is a boilerplate recitation of the elements of a conspiracy claim with no facts in support of it. (SAC at ¶¶ 197-203.)  This is

1    insufficient to maintain a claim against Officers Born and Cooley.

2         To establish a conspiracy under § 1983, plaintiff must prove two elements:

3    (1) that defendants had an "agreement or a meeting of the minds" during which

4    they agreed to violate his constitutional rights (*Franklin v. Fox*, 312 F. 3d 423, 441

5    (9th Cir. 2001)(internal citation omitted)); and (2) an actual deprivation of

6    constitutional rights.  *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006)( internal

7    citation omitted). For purposes of summary judgment, this requires plaintiff to

8    "produce concrete evidence" of any agreement or meeting of the minds to violate

9    the plaintiff's constitutional rights.  *Radcliff v. Rainbow Constr. Co*., 254 F.3d 772,

10   782 (9th Cir. 2001); s*ee also*, *Henkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th

11   Cir. 1996) (because a civil conspiracy is so easy to allege, plaintiffs have a weighty

12   burden to prove it; it is not enough that conspiring officers know of an intended

13   wrongful act, they had to agree to achieve it). "To be liable, each participant in the

14   conspiracy need not know the exact details of the plan, but each participant must at

15   least share the common objective of the conspiracy." *Franklin v. Fox*, 312 F.3d

16   423, 441 (9th Cir. 2001) (*quoting United Steel Workers of Am. v. Phelps Dodge
     Corp*., 865 F.2d 1539, 1540- 41 (9th Cir. 1989) (citation omitted)).

18        Plaintiff cannot demonstrate the elements of conspiracy are met here.  First,

19   Plaintiff's conspiracy claim is not actionable because he does not have evidence

20   that Officers Born or Cooley violated his constitutional rights. *Woodrum v.

21   Woodward County, Oklahoma,* 866 F.2d 1121, 1126 (9th Cir. 1989).

22        Second, Plaintiff does not have "concrete evidence" of any agreement or

23   meeting of the minds to violate Plaintiff's constitutional rights.  There is no

24   evidence that anyone told Officer Born or Officer Cooley whom to identify. Officer

25   Cooley indicated that when he arrived at the scene, no other officers or individuals

26   provided him with any information about the potential suspect before he watched

27   the surveillance video.  (SUF #7.)  Officer Cooley also testified that he did not tell

28   Officer Born the name, moniker or any other information about the potential

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-8051-6203 v1                    - 12 -                    2:17-CV-01076-DSF-AS
                                                                  BORN, COOLEY, CITY MSJ

1   suspect when he contacted her to see if she could make an identification. (SUF

2   #10.)   Officer Born verified that Officer Cooley did not provide her any

3   information about the potential suspect before she saw the video. (SUF #21.)

4        Further, there is no evidence that Officer Born or Officer Cooley were part of

5   an alleged conspiracy to violate Plaintiff's rights with respect to the interrogation.

6   As stated above, there is no evidence that Officer Born or Officer Cooley were

7   involved in any way in the custodial interrogation. Plaintiff's bald allegations that

8   the defendants conspired to falsely identify him are insufficient without evidence.

9        In sum, Plaintiff fails to demonstrate any facts to establish that Officer Born

10  or Officer Cooley were part of a conspiracy.  Therefore, Defendants are entitled to

11  summary judgment on the conspiracy allegations.

12  **VI.   OFFICERS BORN AND COOLEY ARE ENTITLED TO QUALIFIED**

13  **IMMUNITY**

14       Officers Born and Cooley have neither violated Plaintiff's constitutional

15  rights, nor could they have recognized that their actions violated Plaintiff's

16  constitutional rights based on the law.  Defendants are thus entitled to qualified

17  immunity because they reasonably believed their actions were lawful.

18       **A.   The Standard for Finding Qualified Immunity**

19       Qualified immunity shields an official from civil-damages liability unless his

20  or her conduct violated clearly established law, of which a reasonable official

21  would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus,

22  officials are afforded "ample room for mistaken judgments by protecting all but the

23  plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*,

24  502 U.S. 224, 229 (1991) (internal quotes and citation omitted).  Qualified

25  immunity applies to mistaken judgments, regardless of whether the officials make a

26  mistake of law, fact, or some combination. *Pearson v. Callahan*, 555 U.S. 223, 231

27  (2009).

28       Constitutional requirements are not always clear-cut at the time that action is

1   required by officials.  *Saucier v. Katz*, 533 U.S. 194, 205-06 (2001).  But qualified

2   immunity ensures that officials are on notice that their conduct is unlawful before

3   they are subjected to suit.  *Id.*  It, therefore, prevents officials from being distracted

4   from their governmental duties or inhibited from taking necessary discretionary

5   action.  *Harlow*, 457 U.S. 800 at 816.  It also prevents "deterrence of able people

6   from public service."  *Id.*

7        In *Saucier v. Katz*, the Supreme Court explained that an official is entitled to

8   qualified immunity unless:  (1) the plaintiff alleged facts showing a constitutional

9   violation and (2) it was clearly established, at the time, that the conduct was

10   unconstitutional.  *Saucier v. Katz*, 533 U.S. at 201.  "If no constitutional right

11   would have been violated were the allegations established, there is no necessity for

12   further inquiries concerning qualified immunity."  *Id.*  Under the second prong, the

13   inquiry is as to whether the right was clearly established, meaning that the contours

14   of the right were sufficiently clear that a reasonable official would understand that

15   what he is doing violates that right.  *Id.*  The dispositive inquiry is "whether it

16   would be clear to a reasonable officer that his conduct was unlawful in the situation

17   he confronted."  *Id.*  "If the officer's mistake as to what the law requires is

18   reasonable, ... the officer is entitled to the immunity defense."  *Id.* at 205.  Courts

19   have discretion to decide which prong of the qualified immunity analysis to address

20   first in light of the circumstances in each case.  *Pearson*, 555 U.S. at 236.

21        **B.    Plaintiff Cannot Show Officers Born or Cooley Violated a**

22             **Constitutional Right or Knew that Their Conduct was Unlawful**

23        As articulated more fully above, Defendants are entitled to qualified

24   immunity because they did not violate Plaintiff's constitutional rights.  Further,

25   Plaintiff's allegations that Officers Born and Cooley violated his due process rights

26   are unavailing given the specific circumstances of this case.   The Supreme Court

27   has held that courts should not define "clearly established law" at a high level of

28   generality. *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2084, 179 L.Ed.2d

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-8051-6203 v1                    - 14 -                    2:17-CV-01076-DSF-AS
                                                                   BORN, COOLEY, CITY MSJ

1149 (2011) (holding that "the general proposition, for example, that an

unreasonable search or seizure violates the Fourth Amendment is of little help in

determining whether the violative nature of particular conduct is clearly

established."). The Supreme Court stated that qualified immunity is no immunity at

all if 'clearly established' law is defined broadly. *See also City and County of San

Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 192 L. Ed. 2d 856 (2015) (holding

that the Fourth Amendment analysis under *Graham v. Connor* was a "nonstarter"

because a cursory glance at the facts of Graham confirm it was different than the

instant situation.) However, this is precisely what Plaintiff is trying to do in this

case.

Examining the specific contours of this case, neither Officer Born nor Officer

Cooley would be on notice that reviewing a surveillance video, making an

identification in good-faith, and preparing a statement form describing the context

of how they made the identification would be unlawful. There is no evidence that

Officer Born or Cooley knowingly made a false identification and it is well-

established that any purported negligence (such as a mistaken identification) is not

actionable pursuant to Section 1983. *See Daniels v. Williams*, 474 U.S. at 328.

A reasonable officer in Officer Born and Cooley's place would believe he or

she could use Department resources such as photographs and Field Identification

cards, and cross reference them with video evidence to assist in identifying a

suspect in a homicide case. There was, and still is currently no law, with any

circumstances similar to this case where the courts have held that this type of

conduct is unlawful.

Therefore, Officer Born and Cooley are entitled to qualified immunity.

## VII.  **PLAINTIFF CANNOT ESTABLISH *MONELL* LIABILITY**

Plaintiff's Seventh Cause of Action is a *Monell* claim brought under 42

U.S.C. §1983. Plaintiff has not presented any evidence to support his allegations

that the City caused any of his alleged constitutional violations. Further, Plaintiff

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-8051-6203 v1                - 15 -                2:17-CV-01076-DSF-AS
BORN, COOLEY, CITY MSJ

1    does not articulate any specifically deficient City policy, procedure, practice or

2    training that has that resulted in his alleged constitutional violations.  Therefore,

3    Plaintiff's *Monell* claim should be dismissed.

4        **A.    <u>Legal Standard</u>**

5        *Monell* liability of a local governing body lies only when an "action pursuant

6    to official municipal policy of some nature caused a constitutional tort," and not on

7    the basis of respondeat superior. *Monell v. Dept. of Social Services*, 436 U.S. 658,

8    691; *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397,

9    403 (1997). To establish liability for governmental entities under *Monell*, a plaintiff

10   must prove: (1) that the plaintiff possessed a constitutional right of which he was

11   deprived; (2) that the local government entity had a policy; (3) that this policy

12   amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that

13   the policy is the moving force behind the constitutional violation. *Dougherty v. City

14   of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  Absent an official policy, *Monell*

15   liability of a local governing body may attach when an officer or employee of the

16   local governing entity commits a constitutional violation pursuant to a

17   "longstanding practice or custom," (*Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir.

18   2003)) that was "so permanent and well-settled as to constitute an unspoken custom

19   or usage with the force of law." *Monell,* 436 U.S. at 691.

20       Inadequate training may also give rise to Monell liability under § 1983, but

21   only "where the failure to train amounts to deliberate indifference to the rights of

22   person with whom the [municipal employees] come into contact." *See City of

23   Canton v. Harris*, 489 U.S. 378, 388 (1989). To show "deliberate indifference," a

24   plaintiff must prove that "the need for more or different training is so obvious, and

25   the inadequacy so likely to result in the violation of constitutional rights, that the

26   policymakers of the city can reasonably be said to have been deliberately

27   indifferent to the need." *Id*. at 390.

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-8051-6203 v1                    - 16 -                    2:17-CV-01076-DSF-AS
                                                                   BORN, COOLEY, CITY MSJ

**B.**     **Plaintiff Does Not Have Evidence of an Unlawful Government Policy, Official Decision, Long-Standing Custom or Practice Which Led to the Alleged Violation of His Rights**

Plaintiff's Second Amended Complaint does not name any specific City of Los Angeles policy or decision which he alleges is unlawful, and is nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statement," which is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  *See* SAC at ¶ 205-208.

In discovery, Plaintiff claimed that the City does not teach its officers to differentiate between juveniles and adults in how they interrogate suspects, and the Department has inadequate policies and procedures for ensuring that exculpatory evidence is turned over.  Plaintiff does not have evidence to support his allegations, and instead, Plaintiff's *Monell* claim is contradicted by the undisputed evidence.

**1.**     **The City Has Policies, Practices, Customs, and Training with Respect to Juveniles and Interrogations**

It is undisputed the City has a Juvenile Division, which is a specialized unit where the Los Angeles Police Department ("Department) has personnel assigned to investigate crimes involving and relating to children. (SUF #27.)  The Juvenile Division is responsible for providing Department-wide training to personnel on issues related to juvenile policies and procedures, such as conducting interviews of juvenile victims and interviews/interrogations of juvenile suspects.   The Juvenile Division also provides the Department consultation on various juvenile matters as a whole. (SUF #28.)   During the operative time period of the complaint, the Department maintained the Manual of Juvenile Procedures (hereinafter referred to as the "Juvenile Manual"), which contains policies and procedures relating to juveniles.  Officers receive training on these policies and procedures, and are required to follow the Juvenile Manual.  (SIF #29.)

Specifically, Chapter Seven of the Juvenile Manual addresses the policies

1  and procedures pertaining to juvenile arrests.  These policies and procedures

2  include, but are not limited to the admonition of rights, juveniles' request for

3  attorney services, *Gladys R*. Statements for arrestees under the age of 14, and

4  notification of parents. (SUF #30.)   On June 21, 2011, the Department also issued

5  Special Order 14. This memoranda issued by the Office of the Chief of Police

6  stated, in part, "The purpose of this Order is to update and educate Department

7  personnel on Department procedures for the custodial interrogation of adult and

8  juvenile suspects and the Admonition of Constitutional Rights for juveniles taken

9  into custody per Section 625 of the California Welfare and Institutions Code

10  (WIC)."  Special Order 14 went into effect in June 2011. (SUF #31.)

11  According to the policies and procedures in the Juvenile Manual and Special

12  Order 14, the Department requires officers to read the *Miranda* admonition to

13  juveniles regardless of whether or not the officer intends to interrogate the juvenile.

14  (SUF #32.)  After the *Miranda* admonition is given, officers are trained to ask

15  juveniles if they waive their *Miranda* rights.  The Department teaches and explains

16  to officers that they should use words that are age-appropriate to make sure

17  juveniles understand *Miranda* and the waiver of their *Miranda* rights.  For example,

18  an officer could ask an alternative question of a juvenile to determine if they waive

19  their *Miranda* rights such as "Do you want to talk to us?" or "Would you like to

20  talk about what happened?"   (SUF #33.)

21  Department policies also require that officers conduct a *Gladys R*. assessment

22  for children under the age of 14 who are suspected of committing a crime.  The

23  purpose of the *Gladys R*. assessment is to determine whether the child understands

24  the difference between right or wrong.  (SUF #34.)  In the spirit of *Gladys R*.,

25  officers are trained to consider a juvenile's age, maturity level, background, and

26  sophistication level (such as whether the juvenile has been involved in gang

27  activity), to make sure that the juvenile understands their questions throughout the

28  duration of the interrogation and to determine whether a juvenile is waiving his or

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-8051-6203 v1                          - 18 -                          2:17-CV-01076-DSF-AS
BORN, COOLEY, CITY MSJ

her rights.  (SUF #35.)  Officers are trained to speak to juveniles in such a way that is at their age level.  If an officer is not sure if the juvenile is understands something, the officer is trained to ask the juvenile if there is anything that is being said that the juvenile does not understand so that it can be explained in another way that he or she can understand. (SUF #36.)

Officers are also trained to follow *Miranda* obligations.  During the police academy, the Department provides officers training in conducting interrogations and *Miranda*.  There is a discussion about the law and what is permissible and allowable under the law and what is impermissible.  Homicide detectives also receive further training regarding interrogations and *Miranda* at homicide and detective schools. (SUF #50.)  Department Policy 202.10 lays out the Department's procedures for conducting a custodial interrogation.  (SUF #51.)

According to Department policy, questioning shall cease when a subject unequivocally invokes his right against self-incrimination (not to talk) and/or his right to an attorney.  If the suspect does not unequivocally invoke his right to silence and/or an attorney, the investigating officer may conduct a non-coercive interrogation. (SUF #39.)  Additionally, according to Department policy, if a juvenile asks to speak to his or her parent, an officer is required to ascertain the intent of why he wants to speak to the parent so the officer can ascertain whether it is something that may pertain to the waiver of understanding of *Miranda* rights; for example, if the juvenile wants his parent to find an attorney. (SUF #40.)

Officers receive training about the cognitive interview technique.  In basic terms, this involves allowing someone to go through their statement, and then going back to specific facts to obtain additional information. (SUF #53.)  They are also trained to obtain evidence corroborating information that they are being told by a suspect to determine the veracity of the person's statement. (SUF 54.)  Finally, officers are trained that the purpose of an interrogation is to get the truth.  Officers are trained not to use techniques that would make an innocent person confess to

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-8051-6203 v1                        - 19 -                    2:17-CV-01076-DSF-AS
                                                                      BORN, COOLEY, CITY MSJ

1    something that did not happen. (SUF #55.)

2          **2.**      **The City Has Policies, Practices, Customs, and Training**

3                      **with Respect to *Brady* Discovery Obligations**

4    During the operative time period, the Department had the Department

5    Manual, the Detective's Operation Manual, the Homicide Manual, and the Manual

6    of Juvenile Procedures.  Detectives conducting a homicide investigation were

7    required to follow all four manuals, as well as follow general orders, special orders,

8    and training bulletins. The Department creates their manuals and training lesson

9    plans regarding discovery obligations (such as *Brady*) and interrogation procedures

10   to be consistent with POST standards and guidelines as required by the Penal Code.

11   (SUF #44.)

12   All LAPD officers, including homicide detectives, are trained to turn over

13   any and all exculpatory evidence during criminal investigations.  It is against LAPD

14   policy to conceal exculpatory and/or material evidence.  The *Brady* requirement is a

15   Department-wide policy which all officers are obligated to follow. (SUF #45.)

16   Homicide detectives receive additional *Brady* instruction during detective school

17   and homicide school.  Officers also receive ongoing training through regular

18   instructional blocks. (SUF #46.)

19   LAPD detectives are trained and instructed to provide reciprocal and

20   informal discovery through the prosecutor's office.  Detectives are also trained to

21   respond to formal discovery requests, and provide all relevant reports to the

22   prosecutor's office, whether exculpatory or inculpatory.  (SUF #47.)  In 2008, it

23   was clarified that if any evidence was exculpatory, officers not only had to supply

24   the information in the file, officers also had an obligation to make sure that the

25   prosecutor was aware of that information. Thereafter, the Department issued a

26   notice about these obligations. (SUF #48.)

27   Specifically, during a homicide investigation, files and discovery are kept in

28   the murder book, which is maintained by the investigating officer.  It is LAPD

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-8051-6203 v1                    - 20 -                    2:17-CV-01076-DSF-AS
BORN, COOLEY, CITY MSJ

1  policy to hand over everything that is contained within the Murder Book to the

2  District Attorney, who then provides it to defense attorneys, except sealed

3  documents. (SUF #49.)   Department policy requires that officers disclose

4  exculpatory evidence and comply with discovery obligations whether an individual

5  is a juvenile or adult. (SUF #43.)

6      Further, it is against LAPD policy to fabricate evidence or to file false police

7  reports.  It is against LAPD policy to knowingly or recklessly present false

8  evidence, and detectives and officers are not trained to do so. (SUF #56.)  It is also

9  against LAPD policy to violate the rights of citizens.  LAPD does not condone or

10  encourage officers to violate the rights of citizens. (SUF #57.)

11      **3.      Plaintiff Cannot Establish a Long-Standing Pattern or**

12      **Custom of Violation of Rights**

13      Finally, Plaintiff's claims primarily stem from allegations that the City had

14  improper training and customs.  However, municipal liability cannot be derived

15  from a single incident and here there is no evidence of a pattern of alleged problems

16  regarding juvenile custodial interrogations and turning over exculpatory evidence

17  that Plaintiff contends occurred in this case.

18      An agency is liable only where its policies or customs actually inflict a civil

19  rights injury, not merely as an employer vicariously responsible for employee

20  actions. *Monell*, 436 U.S. at 691. The custom must be "persistent and widespread,"

21  as opposed to being "predicated on isolated or sporadic incidents." *Trevino v.*

22  *Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (affirming summary judgment and holding

23  that "[l]iability for improper custom may not be predicated on isolated or sporadic

24  incidents; it must be founded upon practices of sufficient duration, frequency and

25  consistency that the conduct has become a traditional method of carrying out

26  policy."). "A plaintiff cannot prove the existence of a municipal policy or custom

27  based solely on the occurrence of a single incident or unconstitutional action by a

28  non-policymaking employee." *Davis v. City of Ellensburg*, 869 F .2d 1230, 1233

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4838-8051-6203 v1                    - 21 -                    2:17-CV-01076-DSF-AS
BORN, COOLEY, CITY MSJ

1   (9th Cir. 1989) (affirming summary judgment); *City of Oklahoma City v. Tuttle*,

2   471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional

3   activity is not sufficient to impose liability under Monell ...").

4        Plaintiff has no evidence of any other cases where there has been a finding of

5   coercion during a juvenile interrogation or suppression of *Brady* evidence in the

6   City of Los Angeles that are similar to the allegations in this case, which he needs

7   to establish a pattern or wide-spread practice of constitutional violations.  Although

8   Plaintiff's Second Amended Complaint initially identified various other cases to

9   show an alleged pattern and practice of "the City of Los Angeles' coerced

10  confession problem," as Plaintiff describes it, Plaintiff subsequently indicated in his

11  discovery responses that he is no longer basing his *Monell* claim on <u>any</u> of these

12  cases. (*See* Exh. N, Interrogatory Responses 3-9.)  Moreover, these cases are all

13  factually distinct from Plaintiff's case—as none of them involve juveniles and/or

14  the same time period as Plaintiff's complaint.  With respect to *Brady*, Plaintiff has

15  not identified any other cases to establish a widespread custom of failing to disclose

16  exculpatory evidence.

17       In sum, Plaintiff has no evidence that there were any policies, practices,

18  customs, or lack of training which allegedly were the "moving force of the

19  constitutional violation[s]" alleged, and his *Monell* claim should therefore be

20  dismissed.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-8051-6203 v1                    - 22 -                    2:17-CV-01076-DSF-AS
                                                                  BORN, COOLEY, CITY MSJ

1  **VIII.  <u>CONCLUSION</u>**

2        For the foregoing reasons, Defendants are entitled to summary judgment.

3  Plaintiff has no evidence to demonstrate that Officers Born or Cooley violated his

4  due process rights, failed to intervene, or conspired to violate his rights.  Further,

5  Officers Born and Cooley are entitled to qualified immunity in this case because

6  they reasonably believed that their actions in making an identification were lawful.

7  Finally, Plaintiff cannot establish *Monell* liability against the City.

8

9  Dated:  June 28, 2018                    BURKE, WILLIAMS & SORENSEN, LLP

10

11                                     By:  */s/ Susan E. Coleman*
                                            Susan E. Coleman
12
                                       Attorneys for Defendants
13                                     CITY OF LOS ANGELES,
                                       BORN AND COOLEY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

LA #4838-8051-6203 v1                      - 23 -                    2:17-CV-01076-DSF-AS
                                                                    BORN, COOLEY, CITY MSJ