Arthur C. Preciado (SBN 112303)
art.preciado@gphlawyers.com
Calvin R. House (SBN 134902)
calvin.house@gphlawyers.com
Paul M. DiPietro (SBN 287296)
paul.dipietro@gphlawyers.com
GUTIERREZ, PRECIADO & HOUSE, LLP
3020 East Colorado Boulevard
Pasadena, California 91107
(626) 449-2300

Attorneys for Defendant
L.A. School Police Officer Daniel East

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART TOBIAS,<br><br>             Plaintiff,<br><br>     v.<br><br>CITY OF LOS ANGELES; SGT. SANCHEZ, #25339; DETECTIVE MICHAEL ARTEAGA, #32722; DETECTIVE JEFF CORTINA, #35632; DETECTIVE J. MOTTO, #25429; DETECTIVE JULIAN PERE, #27434; OFFICER MARSHALL COOLEY, #38940; OFFICER BORN, #38351; L.A. SCHOOL POLICE OFFICER DANIEL EAST, #959; and UNIDENTIFIED EMPLOYEES of the CITY OF LOS ANGELES,<br><br>             Defendants. | CASE NO. 2:17-cv-1076-DSF-AS<br>Assigned to Hon. Dale S. Fisher<br>Assigned Magistrate Hon.<br><br>**Defendant L.A. School Police Officer Daniel East's Notice of Motion and Motion for Summary Judgment Or, Alternatively, for Summary Adjudication**<br><br>**[FRCP 56]**<br><br>Date:       August 6, 2018<br>Time:      1:30 p.m.<br>Courtroom: First Street Courthouse, 350 West 1st Street, Courtroom 7D, Los Angeles, California<br><br>[Separate Statement of Uncontroverted Facts and Conclusions of Law; Declarations and Exhibits; [Proposed] Order; [Proposed] Judgment filed concurrently herewith] |

PLEASE TAKE NOTICE that on August 6, 2018, at 1:30 p.m., or as soon

thereafter as the matter may be heard in Courtroom 7D of the above-entitled court

located at 350 West 1st Street, Los Angeles, California, Defendant L.A. School

Police Officer Daniel East ("East") will move this Court, pursuant to Rule 56 of the

N:\LAUSD\TOBIAS\MSJ_directory\MSJ with Documents Under Seal\MSJ 2.wpd

1

**Defendant L.A. School Police Officer Daniel East's Notice of Motion and Motion for Summary Judgment Or, Alternatively, for Partial Summary Judgment**

Federal Rules of Civil Procedure, for an Order as follows:

    1.    For summary judgment on Plaintiff's Complaint in favor of this Defendant, and against Plaintiff, on the grounds that the Complaint has no merit and that there is no triable issue of material fact as to this Defendant.

    2.    Alternatively, if for any reason summary judgment cannot be issued, then for an order adjudicating the following issues in this action as established without substantial controversy as against Plaintiff, that no further proof thereof shall be required at the trial of this action, and that final judgment on this action shall, in addition to any matters determined at trial, be based upon the issues as so established:

**Issue One**: Plaintiff's first cause of action for violation of his Fifth and Fourteenth Amendment rights against self-incrimination and his right to counsel pursuant to 42 USC section 1983 must fail because East never entered into any conspiracy and because he was not involved in Plaintiff's interrogation, wherein such rights were allegedly violated.

**Issue Two**: Plaintiff's second cause of action for violation of Plaintiff's due process rights pursuant to 42 USC section 1983 must fail because East never entered into any conspiracy and because there is no evidence that he violated Plaintiff's right to due process.

**Issue Three**: Plaintiff's third cause of action for violation of his Fifth and Fourteenth Amendment rights to due process and a fair trial pursuant to 42 USC section 1983 must fail because East never entered into any conspiracy and because he was not involved in Plaintiff's interrogation or prosecution, wherein such rights were allegedly violated.

**Issue Four**: Plaintiff's fourth cause of action for malicious prosecution pursuant to 42 USC section 1983 lacks merit because East never entered into any conspiracy, East did not direct or initiate the

1    criminal prosecution against the Plaintiff, and there was probable

2    cause to arrest Plaintiff.

3    **Issue Five**:    Plaintiff's fifth cause of action for failure to intervene pursuant to

4    42 USC section 1983 must fail because East never was aware of

5    any conspiracy and because he was not involved in Plaintiff's

6    interrogation or prosecution, wherein such rights were allegedly

7    violated.

8    **Issue Six**:    By Plaintiff's own admission, Plaintiff's sixth cause of action for

9    *Brady* violations does not apply to East.

10   **Issue Seven**:    Plaintiff's seventh cause of action must fail because *Monell* claims

11   do not apply to individuals.

12       This motion will be based upon this Notice, the attached Memorandum of

13   Points and Authorities, the Proposed Judgment, the Separate Statement of Undisputed

14   Material Facts, and exhibits thereto, the Declarations of Paul DiPietro, Daniel East,

15   Rosa Trujillo, Detective Jeffery Cortina, and Roger Negroe in support thereof, the

16   complete records and files of this action, and on such further evidence as may be

17   presented prior to or at the hearing of this motion.

18       This motion is made following the conference of counsel required under L.R.

19   7-3, which took place on May 11, 2018.

20

21   DATE:   June 29, 2018                **GUTIERREZ, PRECIADO & HOUSE, LLP**

22

23                           By:   /S/ Arthur C. Preciado
                                    _____
24                                  Arthur C. Preciado
                                    Paul M. DiPietro
25                                  Attorneys for Defendant School Police
                                    Officer Daniel East
26

27

28

N:\LAUSD\TOBIAS\MSJ_directory\MSJ with Documents Under Seal\MSJ 2.wpd          3

# Table of Contents

Page No.

MEMORANDUM OF POINTS AND AUTHORITIES.......................... 1

Prefatory Statement............................................................. 1

Undisputed Material Facts..................................................... 2

Argument........................................................................... 6
    1.    Summary judgment standard. .................................... 6
    2.    Plaintiff's Counts I-IV must fail because there is no evidence that East entered into a conspiracy to deprive Plaintiff of his Constitutional rights 8
        A.    There is no evidence of a conspiracy........................ 9
        B.    There is no evidence supporting an overt act in *furtherance* of a conspiracy.......................................... 10
        C.    Plaintiff's proffered evidence to support a conspiracy are without merit
                .................................................... 12
    3.    Plaintiff's Counts I-IV also must fail because Plaintiff cannot prove the elements of 42 U.S.C. section 1983 because (1) East was not acting under color of state law, (2) East did not deprive Plaintiff of his Constitutional rights; and (3) Plaintiff's alleged injury was not proximately caused by East's conduct
        ................................................ 15
    4.    Individually, Plaintiff's Counts I-IV each fail for lack of evidentiary support.................................................. 17
        A.    Count I lacks any evidentiary support. ................... 18
        B.    Count II lacks any evidentiary support. .................. 19
        C.    Count III lacks any evidentiary support................... 19
        D.    Count IV lacks any evidentiary support................... 20
    5.    Count IV also fails because there was probable cause to arrest and prosecute Plaintiff............................................ 22
    6.    Count V lacks any evidentiary support. ........................ 22
    7.    Count VI does not apply to East.............................. 23
    8.    Count VII lacks any evidentiary support or legal foundation. ........ 23

Conclusion....................................................................... 23

**Defendant L.A. School Police Officer Daniel East's Notice of Motion and Motion for Summary Judgment Or,
Alternatively, for Partial Summary Judgment**

# TABLE OF AUTHORITIES

**Cases** Page No.

*American International Group, Inc. v. American International Bank*, 926 F.2d 829 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Anderson v. Liberty Lobby*, 477 U.S. 242. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004). . . . . . . . . . . . . . . . . 22

*Beck v. Ohio*, 379 U.S. 89 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Briscoe v. Lahue* 460 U.S. 325 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Franklin v. Terr*,201 F.3d 1098 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Freeman v. City of Santa Ana*, 68 F.3d 1180 (9th Cir. 1995). . . . . . . . . . . . . . . . 22

*Gausvik v. Perez*, 345 F.3d 813 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Gilkey v. Sheahan* 1995 U.S. Dist. LEXIS 16211 (N.D. Ill. 1995) . . . . . . . . . . . . 8

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992). . . . . . . . . . . . . . . . . 7

*Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 17

*Hart v. Parks*, 450 F.3d 1059 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Holt v. Castaneda*, 832 F.2d 123 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . 11

*Jernigan v. Elliott*, 576 Fed. Appx. 695 (D. Ariz. 2014) . . . . . . . . . . . . . . . . . . . 15

*Jernigan v. Richard*, 907 F. Supp. 2d 998 (D. Ariz. 2012). . . . . . . . . . . . . . . . . . 15

*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . 7

*Malley v. Briggs*, 475 U.S. 335 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Meade v. Cedarapids, Inc.*, 164 F.3d 1218 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . 7

*Monell v. Dept of Soc. Servs.*, 436 U.S. 658 (1978). . . . . . . . . . . . . . . . . . . . . . . 23

*Phillips v. Allen*, 668 F.3d 912 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Scherer v. Balkema*, 840 F.2d 437 (7th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . 8

*Summers v. Teichert & Son, Inc.*, 127 F.3d 1150 (9th Cir. 1997). . . . . . . . . . . . . . 8

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987).7

---

**Defendant L.A. School Police Officer Daniel East's Notice of Motion and Motion for Summary Judgment Or,
Alternatively, for Partial Summary Judgment**

*United States v. Nazemian,* 948 F.2d 522 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . .   10

**Statutes**

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15, 22

Fed.R.Civ.Proc. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6, 7

**Defendant L.A. School Police Officer Daniel East's Notice of Motion and Motion for Summary Judgment Or, Alternatively, for Partial Summary Judgment**

# MEMORANDUM OF POINTS AND AUTHORITIES

## Prefatory Statement

On August 8, 2012, the Los Angeles Police Department ("LAPD") began an investigation into the murder of Alex Castaneda ("Castaneda Murder"). Defendant L.A. School Police Officer Daniel East ("East") is not part of the LAPD. East's purported liability in this matter arises out of an alleged conspiracy between East and the other defendants (members of the LAPD) to falsely identify Plaintiff as the suspect in a surveillance video of the Castaneda Murder.

There is no evidence of a conspiracy. Plaintiff would have the court believe that East and the co-defendants entered into an agreement to falsely identify Plaintiff *after* East had already independently identified Plaintiff! Plaintiff admits there is no evidence that East and the other defendants ever communicated prior to August 20, 2012, when two detectives approached East to ask if he could provide an identification of the suspect in the video. During the interview, East identified Plaintiff. The entirety of the interview (including minutes before the detectives even spoke with East) was audio recorded. Nowhere in the recording is there a communication regarding falsely identifying Plaintiff. Plaintiff even admits he has no personal knowledge of any conspiracy or agreement between East and the other defendants. Nor can Plaintiff present any evidence of a conspiracy.

That same day, August 20, 2012, Plaintiff was arrested and confessed to the murder. East neither arrested Plaintiff nor was East involved in the interrogation of Plaintiff.

There is also no evidence of a conspiracy after August 20, 2012. East's subsequent involvement in Plaintiff's arrest and prosecution was limited to: (1) a few communications (starting on August 24, 2012–two days after Plaintiff's confession) with a single detective to provide a written statement, (2) providing the written statement, and (3) testifying at trial. East's written statement could not have been the source of Plaintiff's injuries as it was produced *15 days after* Plaintiff's confession.

1  Further, the content in the statement mirrors East's statements on August 20, 2012,

2  and a previous truancy stop of Plaintiff–the account of which Plaintiff admits is

3  factually correct. Further, East is immune for the purposes of his testimony at

4  Plaintiff's criminal trial.

5  Finally, East's actions in no way harmed Plaintiff: Plaintiff admits he was

6  convicted solely because of his confession–a confession East had no involvement in

7  procuring.

8  **Undisputed Material Facts**

9  **Officer East**

10  East is an officer of the Los Angeles Unified School District ("LAUSD"); he

11  has no relation or affiliation to the LAPD or the officers and detectives that work for

12  the LAPD. [East's Statement of Uncontroverted Material Facts and Conclusions of

13  Law ("SUF") No. 2, filed concurrently herewith.]

14  **The Castaneda Murder And Investigation**

15  On August 18, 2012, Alex Castaneda was shot and killed in Los Angeles;

16  surveillance cameras captured the shooting. That day, at least two LAPD officers at

17  the scene of the crime identified Plaintiff as the suspect in the surveillance video.

18  [SUF, No. 3.]

19  The LAPD immediately opened an investigation into the Castaneda Murder.

20  [SUF, No. 3.] As part of the LAPD investigation, on August 20, 2012, LAPD

21  Detectives John Motto ("Motto") and Michael Arteaga ("Arteaga"), visited Plaintiff's

22  school, Berendo Middle School, where they spoke with Principal Rosa Trujillo

23  ("Trujillo"). [SUF, No. 4.] They advised her that they were looking for someone to

24  help make a possible identification of the suspect in the surveillance footage and

25  asked if she would be willing to look at the video. [SUF, No. 5.] Of her own accord,

26  she recommended they speak to East and Assistant Dean Roger Negroe ("Negroe")

27  because they had more interactions with the students that tended to have disciplinary

28  issues. [SUF, No. 6.]

The detectives never discussed any agreement with Trujillo, nor did they prompt her to recommend East and Negroe. [SUF, No. 7.] Trujillo radioed East and Negroe to have them report to East's office to speak with the detectives. This was the first time East ever had any conversation with anyone regarding the Castaneda Murder; he was unaware Motto and Arteaga were coming to the school to obtain an identification. [SUF, No. 8.]

The detectives showed East the surveillance video and asked him if he recognized the individual; they never mentioned Plaintiff was a suspect to East or to anyone at the school. East asked to view the video several times. [SUF, No. 9.] In the course of the interview, he made several statements to the effect of: (1) "I have a hard time ID'ing that person;" (2) "The guy I was thinking of–is a lot smaller in stature though–is Art Tobias;" and (3) "But I mean–god–he's so much smaller in real life." [SUF, No. 10.] East told the detectives that Plaintiff had arrived at school that day with a new, shorter haircut. [SUF, No. 11.]

East also told the detectives that he had previously stopped and cited Plaintiff for truancy on May 31, 2012. [SUF, No. 12.] During that stop, Plaintiff and East had a discussion about gangs in which Plaintiff spoke about  "tagging" and possibly joining a gang. East also searched Plaintiff's backpack at the time and found writings and drawings that appeared to depict graffiti. [SUF, No. 13.]

East then left the room when Negroe was interviewed. [SUF, No. 14.] East did not speak to Negroe about the video or why the detectives were seeking to interview him; nor did he otherwise attempt to influence Negroe's statements. [SUF, No. 15.] The detectives' interviews with East and Negroe were audio recorded without break, starting from the detectives' conversation with Principal Trujillo until after interviewing Negroe. The audio recording is void of any conversation regarding an agreement to falsely identify Plaintiff. [SUF, No. 16.]

East was not in the room while Negroe reviewed the surveillance video, but waited outside the office. [SUF, No. 17.] East did not tell Negroe that he had

identified Art Tobias as the man in the video. [SUF, No. 18.] Negroe initially stated to the detectives that he could not identify the suspect in the video. [SUF, No. 19.]

**Plaintiff's Arrest and Confession**

After reviewing the video, Negroe left the office and began walking down the hall away from the detectives and East. [SUF, No. 20.] After Negroe left, East and the detectives had a short conversation about East possibly preparing a statement and the detectives continuing their investigation. [SUF, No. 21.]

While walking, Negroe saw a student standing in front of the school that resembled the suspect in the video. He returned and pointed the student out to the detectives. That student was Plaintiff, who was with another student. [SUF, No. 20.] The detectives arrested Plaintiff; East detained the other student and drove him to the LAPD station, separate from Plaintiff and the detectives. [SUF, No. 22.] East left the LAPD station and did not participate in Plaintiff's interrogation. [SUF, No. 23.]

That same day, August 20, 2012, during his interrogation, Plaintiff confessed to the murder after his will was allegedly overborne by the interrogating officers. [SUF, No. 24.] Plaintiff was thirteen years old when he was arrested, barely five feet tall, and weighed about 115 lbs. [SUF, No. 25.]

On August 20, 2012, in his Probable Cause Determination, Detective Jeffery Cortina ("Cortina") relied on the identification by the two LAPD officers and East, as well as Plaintiff's confession. [SUF, No. 26.] On August 23, 2012, in his decree for necessitating Plaintiff's detention, Arteaga never mentions East's identification, but instead relies upon the other LAPD officers' identification and Plaintiff's confession. [SUF, No. 27.] Arteaga and Motto's notes and reports of the August 20, 2012 interviews of East and Negroe coincide with East and Negroe's statements. [SUF, No. 28.]

**East's Written Statement and Trial Testimony**

After August 20, 2012, East did not speak with any other defendant aside from Cortina. [SUF, No. 29.] Cortina emailed East on August 24, 2012. Cortina also called

1   East on August 29, 2014 and later left East a voice message on September 4, 2012.

2   Each communication concerned obtaining a written statement from East and Negroe.

3   Those were the last and only conversations East had with Cortina. [SUF, No. 30.]

4       East prepared his statement himself, without any assistance or input from

5   others. [SUF, No. 31.] East delivered Negroe's and his statements to Cortina on

6   September 4, 2012. He dropped the statements off at the LAPD Rampart station with

7   words to the effect, "Here's my report." He then left after documenting that he had

8   dropped off the reports. [SUF, No. 32.]

9       East's written statement recounted Plaintiff's truancy stop and East's interview

10  with the detectives. In the report, East states that he "was fairly sure that the Suspect

11  in the video [was Plaintiff]" and that the "video made the person look slightly taller

12  and thicker." East used the words "fairly sure" because he was not very confident due

13  to the quality and clarity of the video. [SUF, No. 33.] East also mentions that the man

14  in the video had a "distinct walk and stature which is similar to that of Art Tobias."

15  East had not mentioned Plaintiff's gait during his interview, but had recalled it later

16  after mulling over what he had seen on the video. He included it without

17  encouragement from anyone else. [SUF, No. 34.] East's statement was never intended

18  to be used as part of a conspiracy to deprive Plaintiff of his constitutional rights.

19  [SUF, No. 35.]

20      Negroe's statement also recounted his identification of Plaintiff. [SUF, No. 36.]

21  At no point did East ever attempt to induce Negroe to provide false information to

22  anyone, including the LAPD. Nor did East ever attempt to influence any statement or

23  testimony Negroe might give to the LAPD or the prosecution regarding Plaintiff's

24  case. [SUF, No. 37.]

25      Some time after, the district attorney subpoenaed East to testify at Plaintiff's

26  trial. In preparation for his trial testimony, East only discussed his written statement,

27  his identification, and the truancy stop with the district attorney. [SUF, No. 38.] East

28  was unaware that there was a possible match of the murder weapon to someone other

than Plaintiff. [SUF, No. 39.]  At trial, East only testified as to Plaintiff's truancy stop, not his identification of Plaintiff. [SUF, No. 40.] Negroe also testified at trial that Plaintiff attended Negroe's school and was occasionally disruptive in class. [SUF, No. 41.]

At no point did East enter into any agreement with the other defendants. He did not ever intend to act in any way that would deprive Plaintiff of his constitutional rights. Nor was he aware of any conspiracy to do so. [SUF, No. 42.]

**Plaintiff's Conviction and Appeal**

Plaintiff was convicted for the Castaneda Murder. [SUF, No. 43.] But for his confession, Plaintiff would not have been convicted. [SUF, No. 44.] His conviction was overturned on appeal. [SUF, No. 45.] The district attorney then dismissed the charges against Plaintiff. [SUF, No. 46.] Plaintiff filed this suit, claiming East engaged in a conspiracy with the other Defendants to falsely identify Plaintiff as the suspect in the surveillance video of the Castaneda Murder. [SUF, No. 47.] Plaintiff has conducted extensive discovery in this matter, including propounding several sets of discovery requests, serving several subpoenas, and taking multiple depositions of the defendants and other persons. Over nine thousand pages of documents have been produced by the parties or otherwise subpoenaed. [SUF, No. 48.]

**Plaintiff's Deposition**

At his deposition, Plaintiff admitted that he has no personal knowledge of any conspiracy between East and the other defendants. [SUF, No. 42.]

Argument

**1.    Summary judgment standard.**

A court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Proc. 56(c). A defendant need not affirmatively disprove the plaintiff's case: "The burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the non-moving

party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This can be established through consideration of the "pleadings, depositions, answers to interrogatories, and admissions on file..." Fed.R.Civ.P. 56(c).

Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(c) and (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.") In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *Celotex Corp.*, *supra*, 477 U.S. at 322.

"An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting). An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc*., 164 F.3d 1218, 1225 (9th Cir. 1999); *see also  Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) ("Nor may a party rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.") The Court must assume the truth of direct evidence set forth by the opposing party. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).

However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *Anderson*, *supra*, 477 U.S. at 249-250; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987).  Although the party opposing summary judgment is

entitled to the benefit of all *reasonable* inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group*, *supra*, 926 F.2d at 836-37.  In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

Plaintiff's Second Amended Complaint ("SAC")[Dkt. No. 67] states seven (7) causes of action: (i) Violation of Fifth and Fourteenth Amendments (Self-Incrimination, Right to Counsel); (ii) Violation of Fourteenth Amendment (Due Process); (iii)  Violation of Fifth and Fourteenth Amendments (Due Process, Fair Trial); (iv) Malicious Prosecution; (v) Failure to Intervene; (vi) Conspiracy to Deprive of Constitutional Rights; and (vii) *Monell* Policy Claims. Each cause of action fails either as completely inapplicable to East or because there is no evidence of any conspiracy between East and the other defendants.

**2.    Plaintiff's Counts I-IV must fail because there is no evidence that East entered into a conspiracy to deprive Plaintiff of his Constitutional rights.**

In a nutshell, Plaintiff alleges in Causes of Action I-IV that on August 20, 2012, East entered into a conspiracy with the other defendants to provide a false identification of Plaintiff as the suspect in the video and to thereafter write a false report and testify against Plaintiff in support of that conspiracy. [SAC, ¶¶ 50-56; 119-125]. "[T]o establish a prima facie case of civil conspiracy, the plaintiff is required to show an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights, and actual deprivations of those rights in the form of *overt acts in furtherance* of the agreement." *Gilkey v. Sheahan* 1995 U.S. Dist. LEXIS 16211, *16 (N.D. Ill. 1995) (emphasis added) (quoting *Scherer v. Balkema*, 840 F.2d 437, 441-442 (7th Cir. 1988), *cert. denied*, 486 U.S. 1043, 100 L. Ed. 2d 620, 108 S.

1    Ct. 2035 (1988)).

2    **A.    There is no evidence of a conspiracy.**

3    East works for the LAUSD, not the LAPD; he has no affiliation with the LAPD

4    or its officers and detectives.  [SUF, No. 2.] East never was aware of any conspiracy,

5    nor did he enter into any conspiracy with the other defendants.  [SUF, No. 42.]

6    There is no evidence that East ever spoke to the other defendants prior to

7    meeting the detectives on August 20, 2012. Trujillo chose East to speak to Motto and

8    Arteaga. [SUF, No. 6.] East's entire conversation with the detectives leading up to his

9    identification of Plaintiff as the suspect in the surveillance video is audio recorded.

10    [SUF, Nos. 8, 16.] The audio recording is void of any communications regarding an

11    agreement to falsely identify Plaintiff. [SUF, No. 16.] The other defendants had no

12    need to involve East in their conspiracy to falsely identify Plaintiff when East already

13    had identified Plaintiff of his own accord. What remains is Plaintiff's absurd, if not

14    inventive narrative: having already obtained the identification they wanted, the

15    detectives then conspired with East retroactively.

16    Thereafter, East had no communications with any other defendant save Cortina.

17    [SUF, No. 29.]. East received an email and two phone calls from Cortina in which

18    Cortina asked East for a written statement. [SUF, No. 30.] East provided a written

19    statement describing Plaintiff's truancy stop and his identification of Plaintiff on

20    August 20, 2012. [SUF, Nos. 31-33.] East had no further communications with the

21    other Defendants regarding Plaintiff. [SUF, Nos. 29-30.] East did not draft his

22    statement as part of a conspiracy. [SUF, No. 35.]

23    Evidence of the conspiracy is nonexistent, because the conspiracy never

24    occurred. Plaintiff admits he is unaware of any conspiracy. [SUF No. 42.] Plaintiff

25    merely grasps at straws while ignoring the actual evidence and *audio recording* of

26    East's conversation with the detectives.

27    ///

28    ///

**B.    There is no evidence supporting an overt act in *furtherance* of a conspiracy.**

To survive summary judgment, Plaintiff must demonstrate an *overt act in furtherance* of a conspiracy. "Mere conversations between co-conspirators, *or merely narrative declarations* among them, are not made 'in furtherance' of a conspiracy. To be 'in furtherance,' the statements must further the common objectives of the conspiracy....When inquiring whether a statement was made 'in furtherance of' a conspiracy, we do not focus on its actual effect in advancing the goals of the conspiracy, but on the *declarant's intent* in making the statement." *United States v. Nazemian,* 948 F.2d 522, 529 (9th Cir. 1991), citations omitted, emphasis added.

East's actions cannot be said to have been made in furtherance of a conspiracy. East never intended for any of his actions to be part of a conspiracy. In fact, he was never aware of any conspiracy against Plaintiff. [SUF, Nos. 35, 42.]

East's identification of Plaintiff, on August 20, 2012, was hesitant and could not have aided the conspiracy. In his interview with Motto and Arteaga, East had to review the video several times and stated he had a "hard time ID'ing that person." Even then, he stated that although he thought the suspect in the video looked like Plaintiff, Plaintiff was smaller than depicted. [SUF, Nos. 9-10.] If East had intended for his identification to further the conspiracy, then he would have given an unequivocal identification, not one that was tentative and laden with doubt. Moreover, Plaintiff admits East's statements regarding the suspect's size in the video were true and accurate. [SUF, Nos. 10, 25, 50.]

East did not make any attempt to influence Negroe's identification of the suspect in the video.  [SUF, No. 15] Negroe, independently, identified Plaintiff as the suspect after seeing Plaintiff outside the school.  [SUF, No. 20.]

Nor can East's written statement constitute the requisite overt act. Such narrative declarations are not in furtherance of a conspiracy. *United States v. Nazemian, supra*, 948 F.2d at 529. East's written statement discusses two things: (1)

Plaintiff's truancy stop; and (2) East's identification of Plaintiff on August 20, 2012. As to the truancy stop, Plaintiff admits that he discussed gang membership and "tagging" with East and that East found drawings in Plaintiff's backpack. [SUF, No. 13.] As to the August 20, 2012 identification, the report matches the audio recording and Plaintiff's admissions. [SUF, Nos. 10, 33.] There is no falsity or evidence of an act in furtherance of a conspiracy. East merely recorded his recollection of events for a criminal investigation.

Finally, East's trial testimony was not an act in furtherance of a conspiracy. In response to a duly served subpoena, East testified as to the events of Plaintiff's truancy stop, not his August 20, 2012 identification. [SUF, Nos. 38, 40.]. This is not surprising, given the tentativeness of the identification. East's statements were truthful and concur with Plaintiff's admissions of the events. [SUF, Nos. 12-13, 40.] Further, even if East's testimony was false, he is immune from liability for it. *See Holt v. Castaneda*, 832 F.2d 123, 124 (9th Cir. 1987); *see also Franklin v. Terr*,201 F.3d 1098, 1099 (9th Cir. 2000) (witness immune from conspiracy to give false testimony).

Plaintiff's "proof" of a conspiracy rests solely on the fact that East is a peace officer, although not a member of the LAPD. Negroe committed the same acts as East, i.e. identifying Plaintiff, providing a written statement, and testifying at trial. In fact, Negroe actually directed the detectives to the front of the school where they arrested Plaintiff. [SUF, Nos. 20, 22, 36, 41.] Yet, Negroe is conspicuously not an alleged member of the conspiracy. What act did East perform that Mr. Negroe did not? He wore a uniform. Understandably, Plaintiff has soured to law enforcement, but his skepticism for peace officers is not actual evidence that East conspired against him. As Plaintiff even admits, he is unaware of any such conspiracy. [SUF, No. 42.]

Under Plaintiff's theory, any witness who identifies a suspect, provides a written statement, and then testifies at trial would be part of a conspiracy to deprive an individual of their constitutional rights. This stance is contrary to public policy as

it would deter any witness from ever aiding a criminal investigation. *See Briscoe v. Lahue* 460 U.S. 325, 332-333 (1983) ("[T]he claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible.")

### C.    Plaintiff's proffered evidence to support a conspiracy are without merit.

In his responses to East's interrogatories, Plaintiff lists a set of documents that he alleges prove a conspiracy: (1) the chronology in the LAPD "murderbook" (LAPD 2159-214), (2) the initial arrest report (PLA 179, 199-206),[1] (3) the supplemental arrest report (LAPD 2275-2280), (4) East's statement/report (LAPD 2636), (5) the audio recording of East's identification, (6) East's deposition, and (7) East's trial testimony. [SUF, No. 49.] None of these documents prove a conspiracy; they merely chronicle East's limited involvement in the LAPD's investigation. Plaintiff further states that East spoke to Arteaga and Motto for "an extended period of time" and agreed to join their conspiracy. Yet, none of the evidence supports that contention.

The chronology in the LAPD "murderbook" notes that no communications were made to East prior to August 20, 2012. [SUF No., 8.] It notes that East stated that the person in the video "looks like Art Tobias," but that the "individual in the video looked a little thicker and taller." This is consistent with the audio recording. [SUF No., 10.] The chronology then notes that on August 24, Detective Cortina emailed East requesting a written statement from him and Negroe. On August 29, Cortina called East to follow up on the written statements, which East agreed to provide. On September 4, Cortina left a voicemail with East to again request a written statement. That day, East arrived at the station and provided Cortina with Negroe and his statements. This was the last contact with East noted in the chronology. [SUF,

---

[1] PLA 199-206 is the same as LAPD 2214-2219 (Ex. H). See Declaration of Paul DiPietro, ¶ 9.

Nos. 29-32.] Nothing in this chronology evidences the existence of a conspiracy or an overt act in furtherance of a conspiracy; it merely demonstrates East cooperating with detectives performing a murder investigation.

As for the initial and supplemental arrest reports, Plaintiff claims a discrepancy evidences the conspiracy. Yet, the initial report states that Motto and Arteaga met with East and Negroe separately, which was audio recorded. East reviewed the video "several times" and "indicated the male in the video looked like Art Tobias" and "indicated the male in the video looked a little taller and thicker than Tobias." This is consistent with the audio recording and East's statements.  [SUF, Nos. 9-10, 33.] The supplemental reports mirrors the same statements: "Both employees were interviewed separately," the interview was audio recorded, and East reviewed the video several times and "indicated the male in the video looked like Art Tobias" and "indicated the male in the video looked a little taller and thicker than Tobias." The only addition in the supplemental report was East's account of when he stopped Plaintiff for truancy. Again, these statements are all consistent with each other and the audio recording; they do not demonstrate a conspiracy.

As for East's written statement, it is consistent with the other accounts. East provides an account of Plaintiff's truancy stop, which is consistent with Plaintiff's admissions. [SUF, Nos. 13, 33.] East's account of his August 20, 2012 identification is consistent with the audio recording and other accounts. [SUF, Nos. 10, 33.] The only discrepancy is that East included in his written statement that the suspect in the video had a similar walk to Plaintiff. East included this statement after mulling over what he had seen on the video and without encouragement from anyone else. [SUF, No. 34.]

As for the audio recording and East's deposition transcript, the documents speak for themselves. In each, East qualifies his identification of Plaintiff as the man in the video, but states that the video made Plaintiff appear larger or that the person in the video appeared larger than Plaintiff. [SUF, Nos. 10, 33.] There is never a

discussion as to conspiracy. [SUF, Nos. 16, 42.]

As for East's trial testimony, he only testified as to Plaintiff's truancy stop. East's testimony is consistent with Plaintiff's version of events. [SUF, Nos. 13, 40.] Further, East cannot be liable for his trial testimony.

As to Plaintiff's contention that East spoke to Arteaga and Motto for "an extended period of time" and agreed to join their conspiracy, the evidence conclusively contradicts Plaintiff's speculation. East's identification of Plaintiff was audio recorded. The audio recording starts with Motto and Arteaga's initial conversations with Principal Trujillo and continues until after Negroe views the video. There is no conversation during the audio recording in which East agrees to identify Plaintiff. [SUF, No. 16.] There is no evidence of communications relating to Plaintiff between East and the other defendants prior to East identifying Plaintiff. [SUF, No. 8.] Since East had already identified Plaintiff as the suspect in the video, there was no need for the other defendants to invite East into their alleged conspiracy–East's part had already occurred.

Further, there is no "extended period of time" in which East could have spoken to the detectives. Shortly after Mr. Negroe left, he returned to notify the detectives that he identified a male, Plaintiff, outside of the school who resembled the suspect in the video. The detectives immediately followed Mr. Negroe to the front of the school where they arrested Plaintiff and transported him to jail. There was simply no time for an extended conversation between East, Arteaga, and Motto. [SUF, Nos. 20-21.] And Plaintiff can present no evidence of such a conversation aside from mere speculation.

Plaintiff will most likely point to the addition of his gait in East's written statement as evidence of a conspiracy. However, East added this statement only after mulling over what he had seen on the video. He included it of his own accord and without encouragement from anyone else. [SUF, No. 34.] Plaintiff cannot proffer evidence to the contrary, only speculation and conjecture. Further, any discrepancy in the written statement was harmless as to Plaintiff's injuries: by the time East provided

his written statement on September 4, Plaintiff had already confessed to the murder

on August 20. And as Plaintiff admits, his confession was the sole reason he was

convicted. [SUF, No. 44.]

Plaintiff will also argue that because Cortina listed East's identification in his

Probable Cause Determination, East must have been part of a conspiracy. Plaintiff

ignores the fact that East and Cortina had never even communicated by the time

Cortina executed the Probable Cause Determination on August 20, 2012; East had

only spoken to Arteaga and Motto. Plaintiff also ignores that East has no control over

what evidence Cortina chooses to rely upon for his Probable Cause Determination.

Most importantly, Plaintiff ignores that Cortina lists two other LAPD officers'

identifications and *Plaintiff's confession* as further evidence of probable cause, either

of which would have been enough in and of themselves.[2]

**3.    Plaintiff's Counts I-IV also must fail because Plaintiff cannot prove the**
**elements of 42 U.S.C. section 1983 because (1) East was not acting under**
**color of state law, (2) East did not deprive Plaintiff of his Constitutional**
**rights; and (3) Plaintiff's alleged injury was not proximately caused by**
**East's conduct.**

To establish liability under 42 U.S.C. section 1983, Plaintiff must prove: (1)

East was acting under color of state law; (2) East committed an act that deprived the

Plaintiff of some right, privilege or immunity protected by the Constitution; and (3)

Plaintiff's injury was proximately caused by East's conduct.

For the first element of 42 U.S.C. section 1983, East was not acting in his

---

[2] See *Jernigan v. Richard*, 907 F. Supp. 2d 998, 1041 (D. Ariz. 2012), reversed and remanded on other grounds in *Jernigan v. Elliott*, 576 Fed. Appx. 695, (D. Ariz. 2014) (Identification by two witnesses deemed probable cause.);  *Phillips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012) ("Identification by a single eyewitness who lacks an apparent grudge against the accused person supplies probable cause for arrest").

capacity as a peace officer. While East was on duty as a police officer on August 20, 2012, he was interviewed by Detective Motto and Arteaga as a witness, a private citizen. They did not ask him to perform any task that required him to act under color of state law. The only time East arguably acted under color of state law was when he detained the other student who was with Plaintiff and drove such student to the police department. [SUF, Nos. 22-23.] Such conduct did not affect or injure Plaintiff, who was arrested by Detectives Motto and Arteaga.

If, *arguendo,* East was acting under color of law when he identified Plaintiff, provided a written statement, and testified at court, then he would be entitled to qualified immunity, which protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It is undisputed that East never spoke to anyone regarding the Castaneda Murder prior to August 20, 2012. [SUF, No. 8.] And the audio recording undisputedly demonstrates that East was not asked to falsely identify Plaintiff, asked to enter into any conspiracy, or even told that Plaintiff was a suspect. [SUF, Nos. 9, 16, 42.] The only conclusion, then, is that East acted alone and from his own recollection to identify Plaintiff. Even then, East qualified his identification by stating that the person in the video appeared much larger, taller, and thicker than Plaintiff. [SUF, No. 10.] East's subsequent written statement mirrors these facts. [SUF, No. 33.] East's trial testimony was also true, as Plaintiff admits. [SUF, Nos. 13, 40.] Therefore, it cannot be said that East acted incompetently or knowingly violated the law. As such, he is entitled to qualified immunity.

As to the second element, East did not deprive Plaintiff of his Constitutional rights. East's entire participation in Plaintiff's investigation and conviction was (1) providing a qualified, hesitant identification, (2) providing a written report of his identification and previous interaction with Plaintiff, and (3) testifying in court as to his previous interaction with Plaintiff. None of these actions deprived Plaintiff of his Constitutional rights. In fact, Plaintiff admits that the sole reason he was convicted

was because of his own confession [SUF, No. 44], which East in no way helped procure. [SUF, No. 23.]

Assuming *arguendo* that East's actions did deprive Plaintiff of his Constitutional rights, East is not liable because the information he provided was true and because East is immune. East's identification was not fabricated, but a truthful opinion. East's report reflects that honest opinion. [SUF, Nos. 10, 12-13, 31, 33-35.] Further, East's testimony is granted absolute immunity because he was not a complaining witness. *See Briscoe v. Lahue*, *supra*, 460 U.S. at 335-336; *Malley v. Briggs*, 475 U.S. 335, 340-341 (1986); *see also Harris v. Roderick*, 126 F.3d 1189, 1199 (9th Cir. 1997) (A complaining witness is defined as one who initiates the prosecution rather than being merely a witness.). East did not initiate the prosecution: the investigation and prosecution of Plaintiff began with the LAPD days before East was asked to provide an identification. Neither was East involved in investigating the Castaneda Murder; East solely acted as a witness. [SUF, No. 52.]

As to the third element, East's conduct never injured Plaintiff. Plaintiff's confession was the sole reason he was convicted. [SUF, No. 44.] East neither participated in Plaintiff's interrogation nor assisted in obtaining his confession. [SUF, No. 23.] East's identification and written statement were qualified and actually provided reasonable doubt to help Plaintiff's defense. Accordingly, at trial, East was only asked to testify as to his prior interaction with Plaintiff–a truancy stop–the substance of which Plaintiff admits is true. [SUF, Nos. 13, 40.]

**4.    Individually, Plaintiff's Counts I-IV each fail for lack of evidentiary support.**

For Counts I-IV, Plaintiff reincorporates prior allegations and makes new allegations. For the incorporated prior allegations, the only allegations concerning East are that he entered into an agreement on August 20, 2012 to falsely identify Plaintiff as the suspect in the video. As argued above, this is an impossibility: it is undisputed that by the time East makes his identification, no agreement had been

made between him and the other defendants. Further, Plaintiff admits he has no knowledge of any agreement. [SUF, No, 42.]

As to the new allegations for each Count, they are addressed as follows:

**A.    Count I lacks any evidentiary support.**

As to Count I, in paragraphs 167-170 of the SAC, Plaintiff alleges that:

"In the manner described more fully above, the Defendant Officers, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, forced Plaintiff to incriminate himself falsely and against his will, in violation of his rights secured by the Fifth and Fourteenth Amendments."

"As described more fully above, the Defendant Officers conducted an unconstitutional interrogation of Plaintiff, which caused Plaintiff to make involuntary statements implicating himself in the murder of Alex Castaneda, and attempted murder of two others."

"In the manner described more fully above, the Defendant Officers refused to provide Plaintiff with his legal guardian and an attorney when he asked to see his legal guardian and when he invoked his right to an attorney while being interrogated. In doing so, the Defendants violated their clearly established duty to terminate an interrogation once an individual subject to a custodial interrogation invokes their right to counsel."

"The false statements coerced by the Defendant Officers and made after Plaintiff asked to see his legal guardian and after Plaintiff invoked his right to counsel were used against Plaintiff to his detriment in a criminal case. These statements were the only reason that Plaintiff was prosecuted and convicted of the murder of Alex Castaneda and attempted murder of two others."

East was not involved in Plaintiff's interrogation and did not help force or coerce any false statements from Plaintiff. [SUF, No. 23.] As alleged, there is no evidence to support the claim that East violated Plaintiff's Fifth and Fourteenth

Amendment rights.

**B.    Count II lacks any evidentiary support.**

As to Count II, in paragraphs 174-176 of the SAC, Plaintiff alleges that:

"In the manner described more fully above, the Defendant Officers,
individually, jointly, and in conspiracy with one another, as well as under color of law
and within the scope of their employment, forced Plaintiff to incriminate himself
falsely and against his will, in violation of his rights secured by the Fourteenth
Amendment."

"As described more fully above, the Defendant Officers unconstitutional
interrogation of Plaintiff shocks the conscience and involved truly egregious and
unreasonable actions by defendants, which caused Plaintiff to make involuntary
statements implicating himself in the murder of Alex Castaneda and attempted
murder of two others."

"The false statements unconscionably obtained by the Defendant
Officers were used against Plaintiff to his detriment in a criminal case. These
statements were the only reason that Plaintiff was prosecuted and convicted of the
murder of Alex Castaneda."

Again, East was not involved in Plaintiff's interrogation and did not help force
or coerce any false statements from Plaintiff. [SUF, No. 23.] As alleged, there is no
evidence to support the claim that East violated Plaintiff's Fourteenth Amendment
rights.

**C.    Count III lacks any evidentiary support**.

As to Count III, in paragraphs 180-183 of the SAC, Plaintiff alleges that:

"As described more fully above, all of the Defendant Officers while acting
individually, jointly, and/or in conspiracy, as well as under color of law and within
the scope of their employment, deprived Plaintiff of his constitutional right to a fair
trial."

"In the manner described more fully above, the Defendant Officers and

individually, jointly, and/or in concert and in conspiracy, fabricated evidence—including but not limited to reports concerning Defendants' false claims purporting to "identify" Plaintiff, the substance of Plaintiff's oral confession, reports purporting to memorialize Plaintiff's confession—and/or deliberately withheld exculpatory evidence. In doing so, the Defendants violated their clearly established duty to report all material exculpatory and impeachment information."

"Absent Defendants' misconduct, the prosecution of Plaintiff could not and would not have been further prosecuted, and Plaintiff would not have been convicted."

"The Defendants' misconduct directly and proximately resulted in the unjust and wrongful criminal conviction of Plaintiff and his continuing wrongful imprisonment, thereby denying him his constitutional right to a fair trial, in violation of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution."

As East was not involved in Plaintiff's interrogation or investigation and had no duty to disclose exculpatory evidence, the only allegation herein that applies to East is that he fabricated evidence, i.e. his statement regarding his identification of Plaintiff and Plaintiff's truancy stop. However, there was no "fabrication." East's written statement truthfully recounts both the events of Plaintiff's truancy stop (which Plaintiff admits is true) and East's interview with the Detectives. [SUF, Nos. 9-13, 33.] More importantly, Plaintiff had already confessed *fifteen days before* East provided his statement. At that juncture, a fabricated statement serves no purpose to the alleged conspiracy.

### D. Count IV lacks any evidentiary support.

As to Count IV, in paragraphs 187-189 of the SAC, Plaintiff alleges that:

"The Defendant Officers accused Plaintiff of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence and to institute and continue the

judicial proceedings."

"The Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury."

"Statements of the Defendants regarding Plaintiff's alleged culpability were made with knowledge that said statements were false. The same is true of Defendants purported "identifications," which contradicted the surveillance camera. The Defendants also fabricated evidence through their "identifications" and through their efforts to obtain a false statement from Plaintiff, including their report purporting to memorialize that confession. The Defendants were aware that, as described more fully above, no true or reliable evidence implicated Plaintiff in the shooting."

It is undisputed that East did not arrest Plaintiff. It is also undisputed that East was not involved in Plaintiff's interrogation, Plaintiff's investigation, or providing evidence to the prosecutor. Nor did East direct or initiate the criminal prosecution against the Plaintiff.  [SUF, Nos. 22-23, 52.] Thus, the only allegation that applies to East is that he made false statements identifying Plaintiff as the individual in the video. But East's statements were not false. While East identified the man in the video as Plaintiff, he also noted that the man looked taller and larger than Plaintiff, which Plaintiff admits is true. [SUF, Nos. 10, 50.]

Further, East's written statement, or at least those portions concerning the identification of Plaintiff, was not used as probable cause for Plaintiff's arrest or prosecution. Plaintiff had already been arrested and had confessed (August 20) when East provided his written statement (Sept. 4). And at Plaintiff's trial, East only testified as to Plaintiff's prior truancy stop–not East's identification of Plaintiff. [SUF, No. 40.]

///

///

///

**5.      Count IV also fails because there was probable cause to arrest and prosecute Plaintiff.**

In order to prevail on a claim of malicious prosecution under 42 U.S.C. § 1983, Plaintiff must show that East prosecuted him with malice and without probable cause, and did so for the purpose of denying Plaintiff a specific constitutional right.  *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004), *citing Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).  Plaintiffs, who cannot show that probable cause was lacking, cannot sue for malicious prosecution. *See Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006). Probable cause arises when an officer has knowledge based on reasonably trustworthy information that the person arrested has committed a criminal offense." *Gausvik v. Perez*, 345 F.3d 813, 818 (9th Cir. 2003), *citing Beck v. Ohio*, 379 U.S. 89, 91 (1964).

There was probable cause to arrest Plaintiff. The suspect in the Castaneda Murder was filmed by surveillance cameras. Four separate individuals identified Plaintiff as the shooter in the surveillance video. [SUF, Nos. 3, 10, 20.] Even assuming Plaintiff's contention that the officers at the scene falsely identified him, East and Mr. Negroe independently identified Plaintiff. [SUF, Nos. 4-20.] And Mr. Negroe was not part of any conspiracy to falsely identify Plaintiff. [*Ibid.*] These two, independent identifications, combined with the surveillance video itself, were reasonably trustworthy enough to arrest Plaintiff.[3]

**6.      Count V lacks any evidentiary support.**

Plaintiff also claims that East failed to intervene and stop the other co-conspirators. SAC ¶¶ 193-194. East was not involved in Plaintiff's interrogation or prosecution, apart from testifying at trial (for which he is immune).  [SUF, Nos. 23, 40, 52.] Nor was he aware of any conspiracy among the other defendants to deprive Plaintiff of his constitutional rights.  [SUF, No. 42.] Therefore, East could not have

---

[3] See Footnote 2.

known he should have intervened, nor did he have the opportunity.

**7.     Count VI does not apply to East.**

Plaintiff admits this cause of action does not apply to East. [See Docket # 62.]

**8.     Count VII lacks any evidentiary support or legal foundation.**

A *Monell* claim applies to municipalities, not individuals. *See Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 701 (1978). Also, Plaintiff has no evidence supporting his *Monell* claims against East. [SUF, No. 51.]

### Conclusion

Defendant East respectfully requests that the Court grant his Motion.

DATE: June 26, 2018                         **GUTIERREZ, PRECIADO & HOUSE, LLP**

By:   S/Arthur C. Preciado
Arthur C. Preciado
Attorneys for Defendant
OFFICER DANIEL EAST