Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohshlaw.com
**ORBACH HUFF SUAREZ & HENDERSON LLP**
1901 Harrison Street, Suite 1630
Oakland, CA 94612
Telephone: 510.999.7908
Facsimile: 510.999.7918

Attorney for Defendants
DETECTIVES MICHAEL ARTEAGA, JEFF CORTINA,
JOHN MOTTO and JULIAN PERE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART TOBIAS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES; SGT. SANCHEZ, #25339; DETECTIVE MICHAEL ARTEAGA, #32722; DETECTIVE JEFF CORTINA, #35632; DETECTIVE J. MOTTO, #25429; DETECTIVE JULIAN PERE, #27434; OFFICER MARSHALL COOLEY, #38940; OFFICER BORN, #38351; L.A. SCHOOL POLICE OFFICER DANIEL EAST, #959; and UNIDENTIFIED EMPLOYEES of the CITY OF LOS ANGELES,<br><br>Defendants. | Case No. 17-cv-01076-DSF-AS<br><br>**DEFENDANTS DETECTIVES MICHAEL ARTEAGA, JEFF CORTINA, JOHN MOTTO AND JULIAN PERE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE: August 6, 2018<br>TIME: 1:30 p.m.<br>DEPT: Courtroom 7D<br>JUDGE: Hon. Dale S. Fischer |

ORBACH HUFF SUAREZ & HENDERSON LLP

# TABLE OF CONTENTS

Page(s)

NOTICE OF MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 4

I.     INTRODUCTION ............................................................................................ 4

II.    FACTUAL BACKGROUND ........................................................................... 4

       A.   The Castaneda Murder ......................................................................... 4
       B.   Plaintiff's Interrogation, Part I ............................................................ 6
       C.   Plaintiff's Mother Identifies Plaintiff as the Shooter in the Video ..... 7
       D.   Plaintiff's Interrogation, Part II ........................................................... 7
       E.   Plaintiff's Passing Reference of an Attorney ....................................... 8
       F.   Criminal Prosecution ........................................................................... 9

III.   LEGAL ARGUMENT .................................................................................... 10

       A.   Legal Standard for Motion for Summary Judgment ......................... 10
       B.   Team Liability is Inappropriate ......................................................... 11
       C.   Probable Cause to Detain/Arrest ........................................................ 12
       D.   Plaintiff's Allegations that the Detectives Fabricated Evidence
            are Without Merit ............................................................................... 14
       E.   Plaintiff's Passing Reference to an "Attorney" is Not Actionable ..... 18
       F.   The Detectives Are Entitled to Qualified Immunity .......................... 20
       G.   Plaintiff Cannot Prove a Brady Violation as All Information Was
            Disclosed and the Detectives' Actions were Reasonable .................. 21
       H.   Plaintiff's Unsupported Claims of a Conspiracy Fail ........................ 23
       I.   Failure to Intervene ............................................................................ 24
       J.   The Individual Detectives Are Entitled to Qualified Immunity ........ 24

IV.    CONCLUSION ............................................................................................... 25

Detective Defs' Notice of Motion & Motion for Summary Judgment; Memo of P&A [17-cv-01076-DSF-AS]

ORBACH HUFF SUAREZ & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Act Up!/ Portland v. Bagley*,
  988 F.2d 868 (9th Cir. 1993) ....................................................... 24

*Amaya-Ruiz v. Stewart*,
  121 F.3d 486 (9th Cir.1997) ........................................................ 17

*Anderson v. Creighton*,
  483 U.S. 635 (1987) .................................................................... 20

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................... 11

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) .......................................................... 2, 20, 25

*Baker v. McCollan*,
  443 U.S. 137 (1979) .................................................................... 13

*Beck v. City of Upland*,
  527 F.3d 853 (9th Cir. 2008) ...................................................... 13

*Blankenhorn v. City of Orange*,
  485 F.3d 463, n. 12 (9th Cir. 2007) ............................................ 12

*Brady v. Maryland*,
  373 U.S. 83 (1963) ................................................................. passim

*Cabrera v. City of Huntington Park*,
  159 F.3d 374 (9th Cir. 1998) ................................................... 1, 12

*Chavez v. Martinez*,
  538 U.S. 760 (2003) .................................................................... 15

*Chuman v. Wright*,
  76 F.3d 292 (1996) ...................................................................... 12

*Clark v. Murphy*,
  331 F.3d 1062, 1071 (9th Cir. 2003) ...................................... 18-19

*County of Sacramento v. Lewis*,
  523 U.S. 833 (1998) .................................................................... 22

ORBACH HUFF SUAREZ & HENDERSON LLP

Detective Defs' Notice of Motion & Motion for Summary Judgment; Memo of P&A [17-cv-01076-DSF-AS]

# TABLE OF AUTHORITIES

**Page(s)**

*Cunningham v. City of Wenatchee*,
345 F.3d 802 (9th Cir. 2003) .................................................................... 15, 16, 17

*Davis v. United States*,
512 U.S. 452 (1994) .................................................................................. 18, 19

*De Souz v. Barber*,
263 F.2d 470 (9th Cir. 1959) ......................................................................... 17

*Devereaux v. Abbey*,
263 F.3d 1070 (9th Cir. 2001) ................................................................ 2, 15, 16

*Franklin v. Fox*,
312 F.3d 423 (9th Cir. 2002) ................................................................. 2, 23, 24

*Frazier v. Cupp*,
394 U.S. 731, 22 L. Ed. 2d 684, 89 S. Ct. 1420 (1969) ........................................ 16-17

*Frederick S. Wyle Professional Corp. v. Texaco, Inc.*,
764 F.2d 604 (9th Cir. 1985) .......................................................................... 11

*Freeman v. City of Santa Ana*,
68 F.3d 1180 (9th Cir. 1995) .......................................................................... 14

*Gausvik v. Perez*,
345 F.3d 813 (9th Cir. 2003) .......................................................................... 16

*Groh v. Ramirez*,
540 U.S. 551 (2004) ................................................................................... 20

*Harlow v. Fitzgerald*,
457 U.S. 800, 102 S.Ct. 2727 (1982) .................................................................. 24

*Hart v. Parks*,
450 F.3d 1059 (9th Cir.2006) .......................................................................... 24

*Hawkins v. Lynaugh*,
844 F.2d 1132 (5th Cir. 1988) ......................................................................... 15

*Haynes v. Washington*,
373 U.S. 503 (1963) ................................................................................ 16, 17

*Henkle v. City of Clarksburg*,
81 F.3d 416 (4th Cir. 1996) ........................................................................... 23

Detective Defs' Notice of Motion & Motion for Summary Judgment; Memo of P&A [17-cv-01076-DSF-AS]

ORBACH HUFF SUAREZ & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Hope v. Pelzer,*
 536 U.S. 730 (2002) ................................................................ 20

*Hunter v. Bryant,*
 502 U.S. 224 (1991) (per curiam) ......................................... 25

*Illinois v. Gates,*
 462 U.S. 213 (1983) ............................................................... 13

*Jones v. Williams,*
 297 F.3d 930 (9th Cir. 2002) ...................................... 1, 11, 12

*Krause v. Bennett,*
 887 F.2d 362 (2d Cir. 1989) .................................................. 14

*Kyles v. Whitley,*
 514 U.S. 419 (1995) ............................................................... 21

*Luparello v. Consolidated Freightways, Inc., et al.,*
 921 F.2d 280 (9th Cir. 1990) ................................................. 11

*Malley v. Briggs,*
 475 U.S. 335 (1986) ......................................................... 20, 25

*McCall v. Dutton,*
 863 F.2d 454 (6th Cir. 1988) ................................................. 15

*McConkie v. Nichols,*
 446 F.3d 258 (1st Cir. 2006) ................................................. 16

*Michigan v. DeFillippo,*
 443 U.S. 31 (1979) ................................................................. 14

*Mincey v. Arizona,*
 437 U.S. 385 (1978) ........................................................... 15-16

*O'Neill v. Krzeminski,*
 839 F.2d 9 (2d Cir.1988) ..................................................... 2, 24

*Pearson v. Callahan,*
 555 U.S. 223 (2009) ......................................................... 20, 25

*Radcliff v. Rainbow Constr. Co.,*
 254 F.3d 772 (9th Cir. 2001) ................................................. 23

ORBACH HUFF SUAREZ & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Schedelbower v. Estelle,*
　885 F.2d 570 (9th Cir. 1989) ....................................................... 17

*Schertz v. Waupaca County,*
　875 F.2d 578 (7th Cir. 1989) ..................................................... 12-13

*Seagrave v. Lake County,*
　1995 WL 251282 *2 (N.D. Cal. 1995) ........................................ 22

*Sloman v. Tadlock,*
　21 F.3d 1462 (9th Cir. 1994) ....................................................... 14

*Smiddy v. Varney,*
　665 F.2d 261 (9th Cir. 1981) ....................................................... 13

*Stanton v. Sims,*
　571 U.S. _____, 134 S.Ct., 4-5 (2013) ....................................... 20

*Stoot v. City of Everett,*
　582 F.3d 910 (9th Cir. 2009) ................................................. passim

*Strickler v. Greene,*
　527 U.S. 263 (1999) ...................................................................... 21

*Tennison v. City & County of San Francisco,*
　570 F.3d 1078 (9th Cir. 2009) ..................................................... 22

*U.S. v. Buckner,*
　179 F.3d 834 (9th Cir. 1999) ....................................................... 13

*U.S. v. Dupuy,*
　760 F.2d 1492 (9th Cir. 1985) ..................................................... 21

*U.S. v. Garza,*
　980 F.2d 546 (9th Cir. 1992) ....................................................... 13

*U.S. v. Griggs,*
　713 F.2d 672 (11th Cir. 1983) .................................................. 21-22

*United States v. Bautista-Avila,*
　6 F.3d 1360 (9th Cir.1993) .......................................................... 17

*United States v. Doe,*
　60 F.3d 544 (9th Cir. 1995) ......................................................... 19

ORBACH HUFF SUAREZ & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Fouche,*
    776 F.2d 1398 (9th Cir. 1985) .................................................................... 19

*United States v. Leon Guerrero,*
    847 F. 2d 1363 (9th Cir. 1988) ................................................................... 16

*United States v. Mayo,*
    394 F.3d 1271 (9th Cir. 2005) .................................................................... 13

*United States v. Miller,*
    984 F.2d 1028 (9th Cir. 1993) .................................................................... 17

*United States v. Okafor,*
    285 F.3d 842 (9th Cir. 2002) ...................................................................... 16

*United States v. Petary,*
    857 F.2d 458 (8th Cir. 1988) ...................................................................... 15

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
    865 F.2d 1539 (9th Cir. 1989) .................................................................... 23

*White v. Pauly,*
    _____U.S. _____, 137 S.Ct. 548 (2017) ............................................... 20, 25

*Van Asdale v. International Game Tech.,*
    577 F.3d 989 (9th Cir. 2009) ...................................................................... 11

*Yarris v. County of Delaware,*
    465 F.3d 129 (3d Cir. 2006) ....................................................................... 16

**State Cases**

*In re Art T,*
    234 Cal.App.4th 335 (2015) ................................................................ 4, 9, 21

*In re Gladys R.,*
    1 Cal.3d 855 (1970) ..................................................................................... 7

*Lujano v. County of Santa Barbara,*
    190 Cal.App.4th 801 (2010) ....................................................................... 24

*People v. Bacon,*
    50 Cal.4th 1082, 1105 (2010) ..................................................................... 19

ORBACH HUFF SUAREZ & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*People v. Roquemore,*
131 Cal.App.4th 11 (2005) ..................................................... 19

*People v. Sauceda-Contreras,*
55 Cal.4th 203 (2012) ............................................................ 19

*People v. Simons,*
155 Cal.App.4th 948 (2007) .................................................. 19

*Sommer v. U.S.,*
2011 WL 4592788 at *7 (S.D. CA 2011) .............................. 22

**Federal Statutes**

42 U.S.C. § 1983 ............................................................. passim

Federal Rules of Civil Procedure, Rule 56 ................................ 10

Local Rule 7-3 ....................................................................... 3

ORBACH HUFF SUAREZ & HENDERSON LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Detective Defs' Notice of Motion & Motion for Summary Judgment; Memo of P&A [17-cv-01076-DSF-AS]

# NOTICE OF MOTION

TO PLAINTIFF AND TO HIS ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on Monday, August 6, 2018 at 1:30 a.m., or as soon thereafter as the matter may be heard before the Honorable Dale S. Fischer, United States District Court Judge, in Courtroom 7D of the above-entitled Court, Defendants DETECTIVES MICHAEL ARTEAGA, JEFF CORTINA, JOHN MOTTO and JULIAN PERE (hereinafter "Defendants" or "Detectives") will and hereby do move this Court for Summary Judgment or, in the alternative, Partial Summary Judgment. The specific issues for adjudication include the following:

1.  Are Plaintiff's claims of team liability as against the Detectives inappropriate especially given each of the Detectives' limited role in investigating Plaintiff for murder? *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002);

2.  Did the Detectives have probable cause to detain and arrest Plaintiff based upon: i) the video depicting him shooting and killing Alex Castaneda; ii) Plaintiff's identification as the shooter depicted on the video of the murder by five separate individuals – one of which was his own mother; iii) Plaintiff's admission of being an MS-13 gang member coupled with the witness statements that the shooter made a statement about MS-13; iv) Plaintiff's public posts on Facebook of "going on a mission" and seeking revenge for the then-recent killing of a fellow gang member; and v) Plaintiff's mother's report of Plaintiff's potential involvement in a shooting incident and affiliation as a gang member? *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998);

///
///
///
///

ORBACH HUFF SUAREZ & HENDERSON LLP

- 1 -

3.   Do Plaintiff's claims of fabrication of evidence fail as the Detectives' actions during the criminal investigation and interrogation complied with well-established principles especially given the lack of any threats and the limited duration of the questioning? *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001); *Stoot v. City of Everett*, 582 F.3d 910 (9th Cir. 2009);

4.   Was Plaintiff's sole reference to legal counsel in a passing statement of "Can I have an attorney, because that's not me" an unequivocal request for counsel; if so, was the state of the law clearly established at the time of Plaintiff's interrogation on August 20, 2012 such that a reasonable officer would have understood it to constitute an unequivocal request for legal counsel? *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011);

5.   Was the disclosure of reports to Plaintiff's criminal defense team of a police report identifying a possible person of interest sufficient to satisfy any *Brady* obligations to disclose potentially exculpatory information? *Brady v. Maryland*, 373 U.S. 83 (1963);

6.   Is the lack of any wrongdoing by any of the Detectives and/or the lack of any facts to suggest any type of agreement to violate Plaintiff's civil rights fatal to Plaintiff's conspiracy claims? *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002);

7.   Does the lack of any constitutional violation by any of the Detectives preclude Plaintiff's claim of failure to intervene? *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir.1988); and

8.   Were the Detectives' actions objectively reasonable such that they are entitled to qualified immunity? *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

///

///

ORBACH HUFF SUAREZ & HENDERSON LLP

Detective Defs' Notice of Motion & Motion for Summary Judgment; Memo of P&A [17-cv-01076-DSF-AS]

In advance of filing this Motion, the parties engaged in extensive meet-and-confer discussions in compliance with Local Rule 7-3, which have been ongoing through the duration of this case and culminated at an in-person exchange on June 6, 2018.  Despite those amicable discussions, the parties were unable to resolve the pending disputes, thereby requiring the Court to adjudicate the outstanding issues.

Said Motion will be based upon this Notice, the Memorandum of Points and Authorities, the Declarations of Roger Negro (Dkt 100-2), Daniel East (Dkt 100-2), Dora Born (Dkt 99-2), Marshall Cooley (Dkt 99-2) and Kevin Gilbert with the exhibits attached thereto, Defendants' Statement of Uncontroverted Facts and Conclusions of Law, the pleadings and papers on file herein and on such oral and written material as may be presented to the Court.

Dated:  July 9, 2018                      Respectfully submitted,

                                          ORBACH HUFF SUAREZ & HENDERSON LLP


                                          By:_____/s/  Kevin E. Gilbert_____
                                              Kevin E. Gilbert
                                              Attorney for Defendants
                                              DETECTIVES MICHAEL ARTEAGA,
                                              JEFF CORTINA, JOHN MOTTO
                                              and JULIAN PERE

ORBACH HUFF SUAREZ & HENDERSON LLP

Detective Defs' Notice of Motion & Motion for Summary Judgment; Memo of P&A [17-cv-01076-DSF-AS]

## MEMORANDUM OF POINTS AND AUTHORITIES

COMES NOW Defendants DETECTIVES MICHAEL ARTEAGA, JEFF CORTINA, JOHN MOTTO and JULIAN PERE (hereinafter "Defendants" or "Detectives") and submit the following Memorandum of Points and Authorities in support of their request for an Order granting Summary Judgment or, in the alternative, Partial Summary Judgment in favor of Defendants and against Plaintiff.

## I.    INTRODUCTION

The pending lawsuit arises secondary to Plaintiff Art Tobias' conviction for the murder of Alex Castaneda, which occurred in the early morning hours of August 18, 2012.  Detectives' Statement of Uncontroverted Facts and Conclusions of Law ("SUF") 1.  Through this lawsuit, Plaintiff claims that his confession of killing Castaneda was unintentional and that the Detectives' actions in eliciting said admission were improper.  After initially being convicted of murder, Plaintiff's conviction was set-aside by the Court of Appeal in a published decision which established a new legal standard for evaluating whether a minor had invoked their right to counsel.  *In re Art T*, 234 Cal.App.4th 335 (2015).  Contrary to Plaintiff's claims, well-established caselaw confirms that the entirety of the Detectives' actions were objectively reasonable, lawful and appropriate.

## II.    FACTUAL BACKGROUND

In order to fully understand the outstanding disputes and the significance of the asserted defenses, the facts giving rise to this litigation will be addressed in the order and manner that they were discovered by the Detectives.  By doing so, the limited and discrete roles that each of the Detectives played can be better understood.

### A.    The Castaneda Murder

At approximately 12:40 a.m. on August 18, 2012, Defendant Detectives Pere and Motto were notified of a gang shooting which had just occurred.  According to reports, two suspects approached and began shooting at a group of individuals who were standing on the side of the street at 1415 Alvarado Terrace.  Two victims were critically injured

- 4 -

ORBACH HUFF SUAREZ & HENDERSON LLP

with a third (Alex Castaneda) killed.  SUF 2.  Several LAPD officers (including homicide Detectives Pere and Motto) were dispatched to the scene to undertake an investigation.[1] During the initial investigation, the witnesses disclosed that one of the two assailants had made statements during the shooting of "Fuck 18th Street" and "Salvatrucha;" both comments were believed to be related to an ongoing gang feud between the local cliques of the Mara Salvatrucha ("MS-13") and 18th Street ("18th") gangs.[2]  SUF 3.  The investigation also revealed a security camera on an adjacent building which had captured one of the two suspects as he was shooting.  SUF 4.

Given the location of the incident within a gang neighborhood, the ongoing gang feuds and the comments from the witnesses of gang-related statements from the shooters, the Detectives requested Officer Cooley review the video; Officer Cooley was a local gang enforcement officer who was familiar with the gangs' operations and membership in that area.  SUF 5.  After reviewing the video, Officer Cooley stated that the shooter appeared to be Plaintiff Art Tobias.  SUF 6.

Officer Cooley's identification was based upon an interaction with Plaintiff's mother (Helen Contreras) only a few hours earlier wherein Ms. Contreras shared a photo of Plaintiff Tobias and reported him missing.  SUF 7.  Ms. Contreras was concerned that her son may have been involved in a shooting earlier that night (the Cruz murder[3]) based upon his Facebook post, which warned "I'm going to go on the most important mission of my life, don't know if I'm going to come back alive or dead or arrested."  SUF 8.

In hopes of gathering as much information as possible, the Detectives continued their investigation, including requesting a second gang officer – Officer Born – review the video.  SUF 12.  Significantly, Officer Born was a gang enforcement officer in the

---

[1] Defendant Detectives Cortina and Arteaga did not respond to the site of the incident and were not involved in that part of the investigation.

[2] Both MS-13 and 18th Street are transnational criminal organizations, which began as street gangs in the Rampart division of Los Angeles.

[3] Plaintiff was also involved in the murder of Edwin Cruz which occurred approximately two hours before the Castaneda murder.  Both murders appear to be gang-related; the Cruz murder was in retaliation for Plaintiff being punched earlier in the day.  Tobias 177:10-178:11. Plaintiff's conviction for the Cruz murder has not been challenged.

- 5 -

ORBACH HUFF SUAREZ & HENDERSON LLP

Olympic division (which neighbors the Rampart division where the murder had occurred) and was formally assigned to the MS-13 gang.  SUF 13.  After being shown the video, Officer Born independently identified the shooter as Plaintiff Tobias.  SUF 14.  Officer Born had become familiar with Plaintiff through her role as a gang enforcement officer, including reviewing his Facebook posts, photographs and contact cards prepared by other LAPD officers prior to the shooting which confirmed Tobias was a self-admitted MS-13 gang member.  SUF 15.[4]

Despite the evidence implicating Plaintiff in the Castaneda murder, the Detectives elected to continue their investigating, including meeting with two individuals at Berendo Middle School to inquire if they were able to provide an identification of the shooter. SUF 17.  On the afternoon of August 20, 2012, Defendant Detectives Arteaga and Motto met with LAUSD Police Officer East and School Dean Roger Negroe and showed them the portions of the video; Officer East identified Plaintiff Tobias in the interview, with the caveat that Plaintiff appeared heavier in the video than in person.  SUF 18.  By comparison, Dean Negroe was initially unable to identify the individual depicted in the video.  SUF 19.  After leaving the meeting, Dean Negroe departed the office wherein he observed Plaintiff Tobias, whom he believed to have been the individual depicted in the video. SUF 19.  He immediately notified the Detectives of his observations, which resulted in the Detectives confronting Plaintiff Tobias and transporting him to the police station pursuant to the open missing person's report filed by his mother (SUF 20) as well as for further questioning related to the Castaneda murder.

## B.    Plaintiff's Interrogation, Part I

Following arrival at the police station, Plaintiff was escorted into an interrogation room where he met with Detectives Pere and Cortina.  SUF 22.  Despite Plaintiff's allegations to the contrary, his interrogation was largely unremarkable, with the entirety

---

[4] The material gathered from Plaintiff's Facebook account is also remarkable.  In relevant portion, it discusses an incident which occurred a few weeks prior to the Castaneda murder wherein two of Plaintiff's fellow gang members were murdered.  Plaintiff responded by stating his desire to seek revenge for those murders.  SUF 16.

ORBACH HUFF SUAREZ & HENDERSON LLP

of his interactions recorded on video and submitted here to the Court for review.[5]  SUF
24.  Overall, the interrogation lasted approximately ninety minutes in total, including the
break taken approximately half-way through.  SUF 25.

The first portion of his interrogation was completed by Detectives Pere and
Cortina, with Pere leading the questioning.  SUF 26.  As can be seen on the video of the
interrogation, the Detectives' initial focus was on determining whether Plaintiff was
sufficiently mature to appreciate right from wrong, as required by the California Supreme
Court's holding in *In re Gladys R.*, 1 Cal.3d 855 (1970).  SUF 26.  Thereafter, the
Detectives provided Plaintiff with the *Miranda* admonition before questioning him about
the murder.  SUF 27.  After approximately fifty minutes, Detectives Pere and Cortina
cease their questioning and depart the interrogation room.  SUF 28.

### C.    Plaintiff's Mother Identifies Plaintiff as the Shooter in the Video

While Plaintiff was being interrogated by Detectives Pere and Cortina, Detective
Arteaga was in a separate room meeting with Plaintiff's mother, Helen Contreras.  SUF
29.  After an initial discussion of the circumstances surrounding Ms. Contreras' missing
persons report of Plaintiff Tobias, Det. Arteaga shows her a screen-shot from the video of
the shooting while asking "that's your son right there, right?" to which Ms. Contreras
responds "Yes."  Contreras 91:4-8.  SUF 30.  The first session of Plaintiff's interrogation
and the interview of Plaintiff's mother ceased at roughly the same time.[6]

### D.    Plaintiff's Interrogation, Part II

After learning that Detectives Pere and Cortina's interrogation had stalled, Det.
Arteaga elected to question Plaintiff, including employing different interrogation
techniques to those utilized by Pere and Cortina.  SUF 31.  For example, Det. Arteaga
attempted to mirror Plaintiff's language (including profanity) while sharing discrete
details of the Castaneda murder which he believed would result in Plaintiff "filling in the
blanks." SUF 32.  This ultimately led to Plaintiff confessing to the murder of Castaneda,

---

[5] Plaintiff has conceded that the videos accurately depict the interrogation.  Tobias 272:7-19.
[6] After learning that her son was implicated in inappropriate conduct, Ms. Contreras recanted her
identification of Plaintiff as the shooter in the video.

ORBACH HUFF SUAREZ & HENDERSON LLP

including providing details that were not otherwise known or openly discussed.  SUF 33.
Only after Plaintiff confessed to the murder was he placed under arrest for the murder of
Alex Castaneda.  SUF 42.

Despite Plaintiff's claims that he was denied his *Miranda* warnings, was physically
intimidated, threatened, lied to and subjected to "other improper tactics" during his
interrogation (SAC at ¶¶ 108-112) his deposition testimony is to the contrary.  In fact,
Plaintiff admits that he was provided the *Miranda* admonition; was advised of his right to
remain silent; was never physically threatened; was never physically touched nor was
there any threatening actions or gestures; and was even provided snacks during his
interrogation.  SUF 34.  Moreover, Plaintiff was never promised immunity in exchange
for his testimony.  Instead, the Detectives consistently confirmed that any potential
criminal sentence would be up to the discretion of the assigned judge.  SUF 35.

### E.    Plaintiff's Passing Reference of an Attorney

Over the approximately ninety-minute span of his interrogation, Plaintiff never
exercised his right to remain silent.  SUF 36.  However, there is a dispute as to whether
Plaintiff requested legal counsel.[7]  At approximately thirty-two minutes into the
interview, Plaintiff states "Could I have an attorney, because that's not me."  That one
passing comment is the only time Plaintiff ever references or alludes to a request for an
attorney. SUF 37.  Detective Pere interpreted Plaintiff's passing comment as a
conditional statement, which was insufficient to constitute an invocation of a right to
legal counsel.  SUF 38.  Notably, only Detectives Pere and Cortina were present and
heard Plaintiff's statement.  SUF 39, 40.

Apparently realizing the significance of his confession, Plaintiff later changed his
position and argued that his passing statement constituted an unequivocal request for
counsel and justified suppression of his confession.  After reviewing the material, the
criminal court concluded that Plaintiff had **not** invoked his right to counsel, stating in
relevant part as follows:

---

[7]The referenced statement from Plaintiff can be viewed on the video at time-stamp 17:06.

Detective Defs' Notice of Motion & Motion for Summary Judgment; Memo of P&A [17-cv-01076-DSF-AS]

ORBACH HUFF SUAREZ & HENDERSON LLP

> What basically I have is a statement in passing. Well, if that's not me—'That's not me. I want a lawyer,' whether that constitutes a revocation of his waiver to speak to the police. I mean, if you want a tentative based on what I have now, I just don't think that's sufficient.

*In re Art T.*, 234 Cal.App.4th at 344.  SUF 43.  The criminal trial court's ruling appears to have been based not only upon the lack of unequivocal language, but also upon the apparent maturity of Plaintiff.  Contrary to Plaintiff's suggestions, he was anything but a typical 13-year old.  In fact, Plaintiff was already consuming alcohol, smoking marijuana, was claiming membership in the criminal street gang MS-13; was claiming to have killed a member of a rival gang for "taxing his bike" and made public postings on social media leading up to the Castaneda and Cruz murders that he was "going on a mission" and may not come back.[8]  SUF 44.

### F.    Criminal Prosecution

On August 22, 2012, Detective Cortina met with the intake District Attorney to present the criminal investigation file, which was accepted by the D.A. and criminal charges filed immediately thereafter.  SUF 47.   As the criminal case progressed the Detectives continued to assure that any and all information gathered or learned was promptly turned over to the D.A. for disclosure to Plaintiff's criminal defense team.  In fact, Detective Cortina personally assured that any and all information in LAPD's possession was duplicated and disclosed.  SUF 48.

Despite Detective Cortina's disclosure of all information, Plaintiff claims that certain information related to a person-of-interest was not turned over.  Specifically, one of the two guns used to kill Castaneda was discovered a few days later in a vehicle being driven by fellow gang member Eric Martinez.  Plaintiff alleges that Mr. Martinez's identity was not provided to him during the course of his criminal trial.  SUF 49.  However, Plaintiff's production of records in this litigation (and the undisputed testimony from Det. Cortina above) tell a different story.  Included within Plaintiff's production was

---

[8] Plaintiff's public postings on social media (i.e., Facebook) were reviewed by the Detectives as part of the murder investigation prior to Plaintiff's arrest.  SUF 45.

ORBACH HUFF SUAREZ & HENDERSON LLP

several documents produced to his criminal defense team prior to his conviction which expressly identify Mr. Martinez and even confirm the NIBIN[9] result matching the weapon found in Mr. Martinez's possession to the Castaneda shooting.  SUF 50.

Notwithstanding Plaintiff's receipt of the subject police report and related records identifying Mr. Martinez and the NIBIN match prior to this criminal conviction, the subject evidence is of little, if any significance.  The fact that one of the two weapons was found in Mr. Martinez's vehicle days later does not prove Plaintiff was not involved, especially as there were two shooters, with Plaintiff captured on video.  Moreover, Plaintiff readily admits that members of his gang would borrow weapons from other gang members for shootings.  In fact, Plaintiff confirmed that the gun used to kill Cruz only a few hours before Castaneda was killed was borrowed from a fellow gang member then returned immediately after Cruz was killed.  SUF 51.

Plaintiff Art Tobias was ultimately convicted of first degree murder, two counts of attempted murder along with firearm enhancements.  SUF 52.

## III.    LEGAL ARGUMENT

Despite Plaintiff's claims of a laundry-list of alleged violations, the actual facts confirm that the Detectives' actions were entirely lawful and consistent with well-established legal principles.  Moreover, the Detectives are absolutely entitled to the protections afforded each of them through the qualified immunity doctrine as their actions – both individually and cumulatively – were objectively reasonable.

### A.    Legal Standard for Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Unlike the pleading stage, a blanket claim that a document/its contents were deliberately "falsified" or "fabricated," as opposed to merely negligently inaccurate, without actual admissible evidence is an

---

[9] NIBIN is a national database of digital images of spent bullets and cartridge cases that were found at crime scenes or test-fired from confiscated weapons.

Detective Defs' Notice of Motion & Motion for Summary Judgment; Memo of P&A [17-cv-01076-DSF-AS]

ORBACH HUFF SUAREZ & HENDERSON LLP

argumentative assertion unable to defeat summary judgment.  *Luparello v. Consolidated Freightways, Inc., et al.*, 921 F.2d 280, 282 (9th Cir. 1990).  Moreover, Plaintiff cannot create an issue of fact by a declaration contradicting deposition testimony.  *Van Asdale v. International Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).  Nor can a party opposing summary judgment defeat it by merely questioning the moving party's witnesses' credibility.  *Frederick S. Wyle Professional Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985).  "Material" facts are those that, under applicable law, may affect case's outcome.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Unless the nonmoving party brings forth sufficient admissible and relevant evidence to demonstrate the existence of genuine issues for trial, summary judgment is appropriate.  *Liberty Lobby*, 477 U.S. at 249-50.

## B.    Team Liability is Inappropriate

Although Plaintiff has not asserted a specific claim of "team liability," his allegations and claims consistently lump the four Defendant Detectives together, without specifying the alleged wrongful conduct attributed to each individual Detective.  The inappropriateness of this principle is easily understood given the limited role that each Detective had in the criminal investigation and interrogation of Plaintiff.  For example, Detective Arteaga was not present in the interrogation room when Plaintiff claims to have made his lone request for legal counsel, nor was Det. Arteaga aware of said statement when he began his interrogation which resulted in Plaintiff's confession.  Arteaga 392:18-25, 115:10-19.  Similarly, Detectives Cortina, Pere and Motto were not present and had no involvement in Det. Arteaga's interrogation of Plaintiff which resulted in his confession.  Yet Plaintiff attempts to hold each Detective liable for their cumulative actions.

Such allegations are wholly inappropriate and cannot overcome summary judgment.  Indeed, liability under 42 U.S.C. § 1983 may not be premised on "team liability" or a "team effort."  *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002).  Thus, Plaintiff must "establish the 'integral participation' of <u>each</u> of the Detectives in the

ORBACH HUFF SUAREZ & HENDERSON LLP

alleged constitutional violation." *Jones*, 297 F.3d at 935. Integral participation requires "some fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, n. 12 (9th Cir. 2007) – dispensing with the team liability concept. Team liability, such as that alleged by Plaintiff herein, "is an improper alternative grounds [sic] for liability. It removes individual liability as the issue and allows a jury to find a defendant liable on the ground that even if the defendant had no role in the unlawful conduct, he would nonetheless be guilty if the conduct was the result of a 'team effort.'" *Chuman v. Wright*, 76 F.3d 292, 295 (1996).

### C.    Probable Cause to Detain/Arrest[10]

Next and despite the volumes of evidence implicating Plaintiff in the Castaneda murder, he boldly claims that the Detectives lacked probable cause for his arrest, underpinning his claim for Malicious Prosecution. In doing so, he ignores that there was probable cause to arrest based upon his admitted confession, his incriminating phone calls wherein he again admitted to the killing, his Facebook posts from the week prior that he was "going on a mission," his statements of being a MS-13 gang member (coupled with the statements from the victims that the shooter had made a statement about MS-13), and the identification of him as the shooter by several independent witnesses (including his own mother). According to Plaintiff's own testimony, he was placed under arrest only *after* confessing to the murder of Castaneda. Tobias 293:5-19. Once the case was presented to the District Attorney's office, they made an independent determination of whether to prosecute. The Court also bound Tobias over for trial and then found him "delinquent," validating his incarceration.

Probable cause bars a 42 U.S.C. § 1983 false arrest, false imprisonment and/or malicious prosecution claim in its entirety. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998); *see also*, *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th

---

[10] The specific claims asserted by Plaintiff through his SAC are extremely vague, referencing only general principles (i.e., "Due Process" as alleged in both the Second and Third Counts). In hopes of assuring that all of Plaintiff's claims are fully addressed, Defendants' Motion tracks the allegations from Plaintiff's SAC as well as his opposition to Defendants' earlier Motion to Dismiss. Dkt 27.

- 12 -

ORBACH HUFF SUAREZ & HENDERSON LLP

Cir. 1989) ("the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution."). "Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime." *U.S. v. Buckner*, 179 F.3d 834, 837 (9th Cir. 1999), quoting *U.S. v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992).

Although the Court must examine the evidence in the light most favorable to Plaintiff, such examination must still be reasonable, i.e., within the confines of the law and not willfully blind. Probable cause does not require certainty that an offense has been committed. "[O]nly the probability, and not a prima facie showing, of criminal activity, is the standard of probable cause." *Illinois v. Gates*, 462 U.S. 213, 235-236 (1983). Similarly, an exhaustive investigation of every potential claim of innocence is not necessary. In fact, federal courts consistently confirm that officers are not obligated to investigate or accept a suspect's versions of the facts if they otherwise have reasonable suspicion or probable cause based on other facts known to them. *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979) (noting that police are not required, in effecting an arrest pursuant to probable cause, "to investigate independently every claim of innocence," including claims based on mistaken identity.); *United States v. Mayo*, 394 F.3d 1271, 1276 (9th Cir. 2005).

The decision by the District Attorney to prosecute the criminal case against Plaintiff further insulates the Detectives from Plaintiff's claim. The Ninth Circuit has long recognized that "[f]iling a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981), overruled on other grounds by *Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008). Contrary to Plaintiff's arguments, a plaintiff's account of the incident in question,

ORBACH HUFF SUAREZ & HENDERSON LLP

- 13 -

Detective Defs' Notice of Motion & Motion for Summary Judgment; Memo of P&A [17-cv-01076-DSF-AS]

by itself, does not overcome the presumption of independent judgment.  *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994).

Further, subsequent post-arrest happenings, the possible existence of a defense to the offense, and/or Plaintiff's conviction being overturned are irrelevant and do not vitiate a finding of probable cause.  Where probable cause exists at the time of an arrest, the arrest does not violate the Constitution even if charges are later dropped or the person arrested is subsequently acquitted.  *See Michigan v. DeFillippo*, 443 U.S. 31, 36-37 (1979); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) ("[T]he mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause."); *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) ("It bears repeating that probable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful. 'It is therefore of no consequence that a more thorough or more probing investigation might have cast doubt upon' the situation. [Citation] ... It would be unreasonable and impractical to require that every innocent explanation for activity that suggests criminal behavior be proved wrong, or even contradicted, before an arrest warrant could be issued without impunity.").

Undeniably, there was probable cause for Plaintiff's arrest, especially given the significant volume of verifiable evidence linking him to the Castaneda murder – none of which can be disputed by Plaintiff.

### D.  Plaintiff's Allegations that the Detectives Fabricated Evidence are Without Merit

Plaintiff further claims that the Detectives denied him a fair trial and/or due process by allegedly fabricating evidence, either in the form of his coerced confession or the identification of him as the shooter.  Turning first to the alleged identifications, Plaintiff has proffered no evidence to support his contentions, instead merely referring to his SAC.  Plaintiff's Responses to Request for Admission Set 2, No. 28, Ex. 17.  Moreover, the Declarations of Negroe, East, Cooley and Born all confirm that their

- 14 -

independent identifications were made of their own free will, without any influence by any of the Detectives.  SUF 21.[11]

A claim for fabrication of evidence requires Plaintiff to prove that the "detectives used investigative techniques that were so coercive and abusive that [they] knew or should have known those techniques would yield false information." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001).  A deliberate fabrication of evidence claim is analyzed under the Fourteenth Amendment.  *Cunningham v. City of Wenatchee*, 345 F.3d 802 (9th Cir. 2003).  As stated in *Chavez* (*Chavez v. Martinez*, 538 U.S. 760 (2003)) and *Stoot* (*Stoot v. City of Everett*, 582 F.3d 910 (9th Cir. 2009)), to prove an interrogation is coercive under the Fourteenth Amendment, it must "shock the conscious" by being the equivalent of torture and done with no justifiable government purpose.  *See Chavez*, 538 U.S. 760; *Stoot*, 582 F.3d at 928; *see also McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988) (holding habeas appellant's confession voluntary even though the police interrogation continued while the defendant was handcuffed, placed on the ground, and surrounded by numerous officers who yelled and pointed weapons at him.); *Hawkins v. Lynaugh*, 844 F.2d 1132 (5th Cir. 1988) (holding confession voluntary despite being given over eighteen-hour period, during which defendant had been questioned several times, by up to eleven different police officers between 11:30 a.m. and 6:00 a.m. the next morning.); *United States v. Petary*, 857 F.2d 458, 461 (8th Cir. 1988) (confession voluntary despite fact defendant had not slept for approximately twenty-four hours, had consumed beer but no food, four agents interrogated him for six to seven hours despite his expressed reluctance to talk, induced him to talk by lying to him about their interrogation of co-defendant and by promising him that if he cooperated it would be made known to the proper authorities.); *cf. Mincey v. Arizona*, 437 U.S. 385, 398-99, 57 L. Ed. 2d 290, 98 S.Ct. 2408 (1978) (concluding statement involuntary when obtained from a defendant who was in the hospital, in near coma condition, in great pain, while

---

[11] The Detectives join in and incorporate by reference the Motions for Summary Judgment filed by the other Defendants.  Dkts 99 and 100.

ORBACH HUFF SUAREZ & HENDERSON LLP

fastened to tubes, needles, and a breathing apparatus.); *Haynes v. Washington*, 373 U.S. 503, 511-12, 10 L. Ed. 2d 513, 83 S. Ct. 1336 (1963) (holding confession was involuntary where suspect was held for over five days and never advised of his rights.).

Plaintiff's claim that the Detectives[12] repeatedly told him to tell the truth is not coercive or abusive. "[Continuing to question a suspect after the suspect claims he is innocent does not constitute coercion and is often necessary to achieve the truth." *See Cunningham*, 345 F.3d at 810; *United States v. Leon Guerrero*, 847 F. 2d 1363, 1366-67 (9th Cir. 1988). Plaintiff claims he repeatedly denied any wrongdoing. Yet, officers cannot be held to have deliberately fabricated evidence if they disbelieve initial denials of wrongdoing and continue to question an individual. *Devereaux*, 263 F.3d at 1077. Similarly, the Detectives' threats to file murder charges against Plaintiff are not coercive. *Stoot*, 582 F.3d at 928-29; *United States v. Okafor*, 285 F.3d 842, 846-847 (9th Cir. 2002) (telling suspect he would be subject to 10-20 years in prison did not render confession involuntary.).

Further, Plaintiff's claim that Detective Arteaga (or any other Detective) aggressively suggested he was involved in the crime does not amount to deliberately fabricated evidence. *Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003). Nor does lying to a suspect in an interrogation amount to torture in violation of the Fourteenth Amendment. *McConkie v. Nichols*, 446 F.3d 258 (1st Cir. 2006) (concluding detective who lied to defendant about the confidentiality of his admission to sexual contact with a child did not shock the conscience.); *Yarris v. County of Delaware*, 465 F.3d 129, 143 (3d Cir. 2006) (holding detectives who used trickery or deceit to obtain false evidence did not support violation of constitutional rights.). Also, misrepresentations linking a suspect to a crime or statements which inflate the extent of evidence against a suspect do not necessarily render a confession involuntary. *Frazier v. Cupp*, 394 U.S. 731, 739, 22 L.

---

[12] It should again be noted that only Det. Arteaga was involved in the second session of Plaintiff's interrogation which resulted in his confession. Likewise, only Detectives Pere and Motto were present at the crime scene and obtained identifications from Officers Born and Cooley.

ORBACH HUFF SUAREZ & HENDERSON LLP

Ed. 2d 684, 89 S. Ct. 1420 (1969); *United States v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993); *see also Schedelbower v. Estelle*, 885 F.2d 570, 574 (9th Cir. 1989).

Given the ample caselaw confirming the appropriateness of the Detectives' actions, Plaintiff will presumably focus upon his age as a minor. However, a suspect's status as a minor does not preclude a finding of voluntariness. *De Souz v. Barber*, 263 F.2d 470 (9th Cir. 1959); *Stoot*, 582 F. 3d at 928-29 (rejecting petitioner's claim that the officer's interview of a developmentally delayed young boy which included promises and threats violated the Fourteenth Amendment.).

A coercive interrogation exists only when the totality of the circumstances shows that the officer's tactics were so extreme as to undermine the suspect's ability to exercise his free will. *Haynes v. Washington*, 373 U.S. 503, 513 (1963). Plaintiff fails to show evidence that he was subjected to such extraordinary extreme conduct/interrogation that undermined his ability to exercise his free will. *See Cunningham v. City of Wenatchee*, 345 F.3d 802, 810 (9th Cir. 2003) (suspect's eight (8) hour interrogation with "unsettling" questions not coercive because suspect not refused food/water, no use violence or the threat of violence, statement/threat that officer "has put people in prison" for the offense cannot be said to have "undermined a suspect's free will."). Further, officers are allowed to recite the sentence a suspect may receive if found guilty. *United States v. Bautista-Avila*, 6 F.3d 1360, 1365 (9th Cir.1993); *United States v. Sablotny*, 21 F.3d 747, 752-53 (7th Cir.1994) (officer may use fear of prison.). Even continuing to question a suspect after the suspect claims innocence does not constitute coercion and is often necessary to achieve the truth. *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 494 (9th Cir.1997) (stating officers' repeated insistence that the suspect tell the truth did not amount to coercion.).

Plaintiff's evidence in support of his claim his confession was coerced substantially mirrors the claims made and rejected by the Ninth Circuit in *Stoot*. If anything, Plaintiff Tobias is less sympathetic than the plaintiff in *Stoot*; although both were of a similar age, *Stoot* was developmentally delayed and had no evidence of any

- 17 -

ORBACH HUFF SUAREZ & HENDERSON LLP

prior contact with law enforcement.  By comparison, Plaintiff admits to having been a member of a ruthless street gang and had been engaging in conduct typically reserved for adults (drinking alcohol, smoking marijuana and threatening/assaulting others).

Even assuming all of Plaintiff's allegations are true, the roughly ninety-minute interrogation during which he confessed did not amount to torture.  Plaintiff's evidence in support of his claim does not shock the conscience.  Moreover, there was a substantial government interest in investigating a gang-related homicide.  Without evidence that each of the Detectives "intended to injure [Plaintiff] in some way unjustifiable by any government interest" he cannot prove a violation of the Fourteenth Amendment.  *Stoot*, 582 F.3d at 929 (citations omitted).

## E.    Plaintiff's Passing Reference to an "Attorney" is Not Actionable

Plaintiff's opposition will presumably focus upon his claimed violation of the right to legal counsel.  However, such claims fail as a matter of law as Plaintiff's comment did not equate to an "unequivocal request for counsel."  Even if his lone reference to an "attorney" was sufficient, the state of the law was not clearly defined, such that the Detectives are entitled to qualified immunity.

In *Davis v. United States*, 512 U.S. 452 (1994), the United States Supreme Court held that once a suspect has waived his *Miranda* rights, any subsequent assertion of the right to counsel must be articulated "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."  Thus, the fundamental question is whether Plaintiff's comment "Could I have an attorney? Because that's not me" (SAC ¶ 101) constituted an unequivocal request for counsel. Given the state of the law at the time of Plaintiff's interrogation, a reasonable officer would not have perceived Plaintiff's passing statement as an unequivocal request for counsel.  In fact, virtually identical statements have consistently been found insufficient.[13]

---

[13] Some of the similar published opinions concluding Plaintiff's statement was not an "unequivocal request" are as follows:  "I think I would like to talk to a lawyer." *Clark v. Murphy*, 331 F.3d 1062,

ORBACH HUFF SUAREZ & HENDERSON LLP

ORBACH HUFF SUAREZ & HENDERSON LLP

1    This Court's own comments further confirm that there is no "clearly established"

2    legal standard on this issue.  On February 21, 2018, Defendants filed a Motion to Dismiss

3    Plaintiff's Second Amended Complaint.  Dkt 68.  In relevant part, the Court

4    acknowledged that whether Plaintiff's statement was sufficient to invoke his right to

5    counsel was "an extremely close call." (Trans. 16:18, Ex. 19) and that the Court was

6    "inclined to rule in favor of qualified immunity."  *Id.* at 18:8-9.  Even more significant is

7    this Court's own concession that "Neither the Ninth Circuit nor the Supreme Court has

8    held that age must be taken into consideration when determining whether a juvenile, after

9    waiving *Miranda* rights, has invoked his or her right to an attorney" (Order, pg. 4, fn. 3,

10   Dkt 78) and that "these facts present a close question because **there appears to be no**

11   **case law determining whether the precise question "Could I have an attorney? is**

12   **equivocal**."  Order, pg. 5 of 7, emphasis added.  However, the Court was desirous of

13   viewing the actual video of the interrogation, which is submitted as Exs. 9-10 in support

14   of the Detectives' Motion.

15       In its April 2, 2018 Order, the Court acknowledged that this precise state of facts

16   had no prior legal precedence:  "The Court concedes these facts present a close question

17   because there appears to be no case law determining whether the precise question "Could

18   I have an attorney?" is equivocal"  Order, pg. 5, and further held that:

19       "Neither the Ninth Circuit nor the Supreme Court has held that age must
20       be taken into consideration when determining whether a juvenile, after
21       waiving Miranda rights, has invoked his or her right to an attorney."
         Order, pg. 4, fn. 3.

22

23

24   1069, 1071 (9th Cir. 2003).  "Maybe I should talk to a lawyer."  *Davis v. United States*, 512 U.S. 452,
     458-59 (1994).  "I might want to talk to a lawyer."  *United States v. Fouche*, 776 F.2d 1398, 1405 (9th
25   Cir. 1985).  "Maybe I ought to see an attorney."  *United States v. Doe*, 60 F.3d 544, 546 (9th Cir. 1995).
     "If you can bring me a lawyer," then "that way I can tell you everything that I know and everything that
26   I need to tell you and someone to represent me."  *People v. Sauceda-Contreras*, 55 Cal.4th 203, 219
     (2012).  "Can I call a lawyer or my mom to talk to you?"  *People v. Roquemore*, 131 Cal.App.4th 11
27   (2005).  "How long would it take to get a lawyer?"  *People v. Simons*, 155 Cal.App.4th 948 (2007).  "I
     think it'd probably be a good idea for me to get an attorney."  *People v. Bacon*, 50 Cal.4th 1082, 1104,
28   1105 (2010).  "What time will I see a lawyer?"  *United States v. Doe*, 60 F.3d 544, 546 (9th Cir. 1995).

- 19 -

Given the struggles that three different Courts have faced in addressing this issue (the criminal trial court, the State Appellate Court and this Federal Trial Court) as well as the differing opinions and rational from each, there can be no dispute that this area of law is absolutely unsettled, thereby entitling the Detectives to qualified immunity.

### F.    The Detectives Are Entitled to Qualified Immunity

In the context of 42 U.S.C. § 1983 claims, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stanton v. Sims*, 571 U.S. _____, 134 S.Ct. 3, 4-5 (2013), quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011), quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004). The linchpin of qualified immunity is the reasonableness of the official's conduct evaluated in the particularized circumstances with which the official is confronted. *See Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987). Significantly, the U.S. Supreme Court has consistently reiterated that "clearly established law" must not be defined "at a high level of generality." *White v. Pauly*, _____ U.S. _____, 137 S.Ct. 548, 552 (2017). In fact, officials are entitled to "fair notice" or "fair warning" that their conduct violates a federally protected right. *See Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). Given this requirement, existing precedent must place the constitutional issue with respect to the official's conduct "beyond debate" in order to overcome application of the qualified immunity protections. *Ashcroft*, 563 U.S. at 741.

///

Detective Defs' Notice of Motion & Motion for Summary Judgment; Memo of P&A [17-cv-01076-DSF-AS]

There is no question that the contours of Plaintiff's subject rights were not clearly and unambiguously defined. Even the most well-versed judicial officers could not come to an agreement on whether Plaintiff's statement was an invocation of his right to counsel. As discussed in detail within the published opinion in this very matter (*In re Art T*, 234 Cal.App.4th 335 (2015)), the trial judge presiding over Plaintiff's murder trial concluded that Plaintiff's statement was ***not*** an unequivocal request for counsel. *In re Art T.*, 234 Cal.App.4th at 344. Coupled with this Court's own acknowledgment that this issue has not previously been clearly established, there is no question that the Detectives are entitled to qualified immunity.

### G.    Plaintiff Cannot Prove a *Brady* Violation as All Information Was Disclosed and the Detectives' Actions were Reasonable

As discussed above, Plaintiff's *Brady* claim is premised upon his contention that evidence of another potential suspect was not timely disclosed related to his prosecution for the Castaneda murder. SUF 49. According to Plaintiff, evidence that Eric Martinez was identified as a person of interest and had one of the two weapons used to kill Castaneda was intentionally withheld. However, Plaintiff's own admissions and production of documents in this matter belie his contentions.

Under *Brady*, a criminal defendant is denied his due process right to a fair trial and the government violates its constitutional duty to disclose material evidence where:  (1) the evidence in question is favorable to the accused in that it is exculpatory or impeachment evidence, (2) the government willfully or inadvertently suppresses this evidence and (3) prejudice ensues from the suppression (i.e., the evidence is "material"). *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).

Significantly, there is no meaningful "suppression" within the meaning of *Brady* if the alleged evidence was actually provided to the defense or "if the means of obtaining the exculpatory evidence has been provided to the defense." *U.S. v. Dupuy*, 760 F.2d 1492, 1502 (9th Cir. 1985) (emphasis added); *U.S. v. Griggs*, 713 F.2d 672, 674 (11th

- 21 -

Cir. 1983) ("Where defendants...had within their knowledge the information by which they could have ascertained the supposed Brady material, there is no suppression by the government."); *Sommer v. U.S.*, 2011 WL 4592788 at *7 (S.D. CA 2011) ("Brady violation does not occur if the defendant knew or should have know[n] the essential facts permitting him to take advantage of any exculpatory information.") (Emphasis added.).

According to Plaintiff's own admissions, his criminal defense team was in possession of key documents which implicated Eric Martinez as Plaintiff's accomplice and the second shooter. For example, Plaintiff's criminal defense counsel was provided copies of the reports evidencing Eric Martinez's arrest, with that report also linking Martinez's arrest to the Castaneda murder. SUF 50; Plaintiff's Response to Arteaga's Request For Admission, Set Two, No. 28, Ex. 17; Plaintiff's Production of Documents at Tobias_PLA00193, 228-232, 257, Ex. 18.

Even assuming arguendo that Plaintiff was not provided the above-referenced disclosures, his *Brady* claim is still fatally flawed with regard to the required element of "deliberate indifference." It is not enough to show an officer failed to provide impeachment material to the prosecution. A plaintiff must also prove that the officer acted with "deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors." *Tennison v. City & County of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009). This is akin to the standard imposed on government officials in the substantive due process context - liability arises if those officials engage in conduct that "shocks the conscience." *Id.*, quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "Neither negligence nor gross negligence will constitute deliberate indifference." *Seagrave v. Lake County*, 1995 WL 251282 *2 (N.D. Cal. 1995). Plaintiff has failed to proffer any such evidence in this case. And the only admissible evidence is to the contrary; Detective Cortina has confirmed that the entire Murder Book was duplicated and turned over to the District Attorney's office as part of the Castaneda murder prosecution. Cortina 186:1-13.

///

ORBACH HUFF SUAREZ & HENDERSON LLP

There are no facts to suggest any evidence was withheld from Plaintiff, especially given that Plaintiff had in his possession documents that identified the second shooter as a suspect. Nor can Plaintiff proffer any evidence to suggest the Detectives acted with deliberate indifference. Accordingly, Plaintiff's *Brady* claim fails as a matter of law.

## H.    Plaintiff's Unsupported Claims of a Conspiracy Fail

Plaintiff contends there was a conspiracy among the Detectives to violate his civil rights simply because each of the Detectives independently concluded there was probable cause to arrest and prosecute Plaintiff for the Castaneda murder. To prove a conspiracy under 42 U.S.C. § 1983, a plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (quotations omitted). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989).

For purposes of summary judgment, this requires Plaintiff to "produce concrete evidence" of any agreement or meeting of the minds to violate his constitutional rights. *Radcliff v. Rainbow Constr. Co.*, 254 F.3d 772, 782 (9th Cir. 2001); *see also, Henkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996) (because a civil conspiracy is so easy to allege, plaintiffs have a weighty burden to prove it; it is not enough that conspiring officers know of an intended wrongful act, they had to agree to achieve it.).

No such evidence is present here. Indeed, Plaintiff's own discovery responses are completely devoid of any facts, instead referring to Plaintiff's SAC. Plaintiff's Responses to Arteaga's Amended Interrogatories, Nos. 22-23, Ex. 20. The SAC is similarly devoid of any facts, merely concluding that Defendants conspired with one another to "force[ ] Plaintiff to incriminate himself…" and declined to turn over exculpatory evidence. SAC ¶¶ 167, 174, 198, 199. As discussed above, the Detectives' actions in investigating and prosecuting Plaintiff for the Castaneda murder were entirely appropriate and lawful and did not violate his civil rights. *Franklin*, 312 F.3d at 441;

Detective Defs' Notice of Motion & Motion for Summary Judgment; Memo of P&A [17-cv-01076-DSF-AS]

*Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir.2006) (a valid conspiracy claim requires "an actual deprivation of constitutional rights.").

This evidence is insufficient to conclude there was a conspiracy to deny Plaintiff his civil rights. The fact that the Detectives worked in the same division and assisted one another does not provide a basis to conclude there was an agreement to fabricate evidence. In the alternative, qualified immunity should be granted because there is no clearly established law that assisting in another officer's investigation could subject them to civil liability.

## I.    Failure to Intervene

Finally, Plaintiff alleges that the Detectives failed to intervene in the alleged unlawful conduct by the other named Defendants. However, Plaintiff's claims fail due to the lack of any violation of his federal constitutional rights. *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir.1988). Moreover, a duty to intervene does not arise until a person's constitutional rights are being violated in the officer's presence, coupled with sufficient time and an opportunity to intervene. *Lujano v. County of Santa Barbara*, 190 Cal.App.4th 801, 809 (2010). Plaintiff has not offered any facts to support said claim.

## J.    The Individual Detectives Are Entitled to Qualified Immunity

Even if the Court should decide that Plaintiff has raised a triable issue of fact as to whether the officers violated Plaintiff's civil rights, this Motion must nevertheless be granted since the Detectives are unquestionably shielded by the Qualified Immunity Doctrine. Under the doctrine, a police officer is protected from liability if the conduct complained of "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).

In furtherance thereof, the Ninth Circuit has repeatedly held that a police officer is entitled to qualified immunity if a reasonable officer could have believed that the officer's actions were justified, so long as that conclusion is objectively reasonable. *Act Up!/ Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993); *Franklin*, 312 F.3d at 439.

ORBACH HUFF SUAREZ & HENDERSON LLP

- 24 -

"The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam), quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341, 89 L. Ed. 2d 271, 106 S.Ct. 1092 (1986).

The High Court only recently provided further guidance on the Qualified Immunity Doctrine, including criticizing the lower courts' reluctance to dispose of claims that were precluded by the doctrine. *White v. Pauly*, 137 S.Ct. 548, 551-552 (2017). Indeed, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In fact, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," such as whether deadly force is authorized in a given situation and applies to "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011).

As outlined in the discussion above, the Detectives' actions were objectively reasonable, especially given the information known to them and the state of the law at the time of the Castaneda murder and Plaintiff's interrogation. Accordingly, each of the Detectives is entitled to qualified immunity.

## IV.    CONCLUSION

Despite his prior admissions of having been directly involved in the murders of both Alex Castaneda and Erwin Cruz within a three-hour span in August of 2012 and only a few blocks apart, Plaintiff now claims to have only participated in the murder of Cruz. His amended testimony in hopes of avoiding a second murder conviction is insufficient to support his claims as against any of the Detectives. Simply put, the Detective Defendants' actions were lawful and appropriate, especially given the information known to them at the time of investigating Plaintiff. Moreover, each of the Detectives is entitled to qualified immunity as their actions were objectively reasonable, especially as the legal issues in dispute were not "clearly established" at the time.

- 25 -

ORBACH HUFF SUAREZ & HENDERSON LLP

Accordingly, Defendant Detectives Arteaga, Cortina, Motto and Pere respectfully request this Motion be granted in its entirety.

Dated:  July 9, 2018                Respectfully submitted,

                                    ORBACH HUFF SUAREZ & HENDERSON LLP


                                    By:_____/s/  Kevin E. Gilbert_____
                                          Kevin E. Gilbert
                                          Attorney for Defendants
                                          DETECTIVES MICHAEL ARTEAGA,
                                          JEFF CORTINA, JOHN MOTTO
                                          and JULIAN PERE

ORBACH HUFF SUAREZ & HENDERSON LLP

Detective Defs' Notice of Motion & Motion for Summary Judgment; Memo of P&A [17-cv-01076-DSF-AS]