Susan E. Coleman (SBN 171832)
E-mail: scoleman@bwslaw.com
Lillian Kae Yoo (SBN 261239)
E-mail: lyoo@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA 90071-2953
Tel: 213.236.0600   Fax: 213.236.2700

Attorneys for Defendants
CITY OF LOS ANGELES, BORN and COOLEY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART TOBIAS, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF LOS ANGELES; SGT. SANCHEZ, #25339; DETECTIVE MICHAEL ARTEAGA, #32722; DETECTIVE JEFF CORTINA, #35632; DETECTIVE J. MOTTO, #25429; DETECTIVE JULIAN PERE, #27434; OFFICER MARSHALL COOLEY, #38940; OFFICER BORN, #38351; L.A. SCHOOL POLICE OFFICER DANIEL EAST, #959; and UNIDENTIFIED EMPLOYEES of the CITY OF LOS ANGELES, <br><br> Defendants. | Case No. 2:17-cv-01076-DSF-AS <br><br> **DEFENDANTS CITY OF LOS ANGELES, BORN, AND COOLEY'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** <br><br> Date:  August 27, 2018 <br> Time:  1:30 p.m. <br> Ctrm.:  7D <br><br> Judge:  Hon. Dale S. Fischer |

///
///
///
///
///
///
///

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4812-4742-1807 v1

2:17-CV-01076-DSF-AS
BORN, COOLEY, CITY REPLY MSJ

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. II

II. PLAINTIFF CANNOT ESTABLISH BORN OR COOLEY VIOLATED HIS CONSTITITUTIONAL RIGHTS ........................................ 1

    A. Plaintiff Has No Evidence the Identification Was Fabricated ............. 1

    B. Plaintiff Cannot Establish A Malicious Prosecution Claim ................ 4

III. PLAINTIFF HAS NO EVIDENCE OF FAILURE TO INTERVENE OR CONSPIRACY ........................................................................................... 5

    A. Plaintiff Cannot Establish a Failure to Intervene ................................ 5

    B. Plaintiff Cannot Establish a Conspiracy Claim ................................... 6

IV. BORN AND COOLEY ARE ENTITLED TO QUALIFIED IMMUNITY ...................................................................................................... 7

V. PLAINTIFF CANNOT ESTABLISH MONELL LIABILITY ...................... 8

    A. Plaintiff's Evolving Monell Claim ....................................................... 8

    B. Plaintiff Cannot Show the City was Deliberately Indifferent and a Lack of Policy, Procedure, or Training Caused a Violation .............. 9

VI. CONCLUSION ................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
    69 F.3d 337 (9th Cir. 1995) ............................................................................... 7

*Bd. of Cnty. Comm'rs v. Brown*,
    520 U.S. 397 (1997) .......................................................................................... 9

*Black v. Montgomery County*,
    835 F.3d 358 (3d Cir. 2016) .............................................................................. 4

*Blankenhorn v. City of Orange*,
    485 F.3d 463 (9th Cir. 2007) ............................................................................. 6

*Connick v. Thompson*,
    563 U.S. 51 (2011) ............................................................................................ 9

*Costanich v. Dep't of Soc. & Health Servs.*,
    *627 F.3d 1101* (9th Cir. 2010) .......................................................................... 4

*Daniels v. Williams*,
    474 U.S. 327 (1981) .......................................................................................... 8

*Devereaux v. Abbey*,
    263 F.3d 1070 (9th Cir. 2001) (en banc) ...................................................... 1, 4

*Gausvik v. Perez*,
    345 F.3d 813 (9th Cir. 2003) ......................................................................... 4, 8

*Gibson v. County of Washoe*,
    290 F.3d 1175 (9th Cir.2002) ............................................................................ 9

*Milstein v. Cooley*,
    208 F. Supp. 2d 1116 ........................................................................................ 2

*Monell v. Dept. of Social Services*,
    436 U.S. 658 ....................................................................................... 1, 8, 9, 12

*Newman v. County of Orange*,
    457 F.3d 991 (9th Cir. 2006) ............................................................................. 4

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

LA #4812-4742-1807 v1      - ii -      2:17-CV-01076-DSF-AS
BORN, COOLEY, CITY REPLY MSJ

*Oviatt v. Pearce*,
   954 F.2d 1470 (9th Cir.1992) ................................................................................ 9

*Radcliff v. Rainbow Constr. Co.*,
   254 F.3d 772 (9th Cir. 2001) ................................................................................. 7

*Tsao v. Desert Palace, Inc.*,
   698 F.3d 1128 (2012) .................................................................................... 11, 12

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F. 3d 1054 (9th Cir. 2002) .............................................................................. 7

*Walsh v. Nev. Dep't of Human Res.*,
   471 F.3d 1033 (9th Cir. 2006) ............................................................................... 8

## I. INTRODUCTION

Plaintiff's consolidated Opposition improperly conflates Defendants together in attempt to establish liability, and is wholly based on unfounded speculation and dubious citations to the record. The reality is that Officers Born and Cooley had limited involvement in the investigation of the Castaneda murder, and there is no evidence they fabricated evidence or participated in a conspiracy.

Plaintiff's *Monell* claims against the City of Los Angeles ("the City") are equally untenable. Although Plaintiff argues that the City did not have policies, practices, or training to treat juvenile suspects differently than adult suspects, his argument is belied by all of the facts he does not dispute. The City has an entire division devoted to dealing with and providing training pertaining to juveniles, and has policies and procedures relating to juvenile interrogations. Plaintiff therefore cannot show that the City was deliberately indifferent to the rights of juveniles.

## II. PLAINTIFF CANNOT ESTABLISH BORN OR COOLEY VIOLATED HIS CONSTITITUTIONAL RIGHTS

### A. Plaintiff Has No Evidence the Identification Was Fabricated

Plaintiff claims Officers Born and Cooley directly fabricated evidence by writing reports falsely identifying him as the shooter in the Castaneda murder. (Pl.'s Opp. at 40.) Plaintiff does not have evidence to create a genuine dispute of material fact and he cannot overcome Defendants' Motion for several reasons.

First, Plaintiff's contention that Officer Born and Cooley's identifications are "utter nonsense," "simply made up," and "incredible" (Pl.'s Opp. at 42) is based on nothing more than speculation. Courts have stated: "the lesson of *Devereaux* is that the plaintiff cannot support his fabrication of evidence claim by mere allegations and speculation. The plaintiff has the burden of producing some evidence that either the defendants deliberately fabricated evidence against him in violation of his due process rights by continuing their investigation despite the fact that they knew or should have known that he was innocent, or using investigative techniques that

were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Milstein v. Cooley*, 208 F. Supp. 2d 1116, 1125 at fn 6 (C.D. Cal. 2002) (internal citations omitted).   Plaintiff has not met his burden of providing evidence to show the identifications were fabricated.

Officers Born and Cooley provided plausible explanations as to how they identified Plaintiff.  It is undisputed Plaintiff's mother, Helen Contreras, had shown Officer Cooley pictures of Plaintiff and reported him missing just hours before Officer Cooley was called out to review the surveillance video of the Castaneda murder.  Officer Cooley believed the picture Ms. Contreras showed him resembled the individual on the surveillance video because both individuals had the same hairline, had glasses, similar facial shape, and appeared the same age. (SUF #3, 8.)  Meanwhile, Officer Born made an identification based on pictures she had seen on Facebook, a photo taken by a patrol officer, and three Field Identification cards she input which had physical descriptions of Plaintiff. (SUF #18-19.)   Plaintiff may argue the surveillance video was not good quality and assert his *opinion* he does not look like the individual in the surveillance video.  However, this does not amount to evidence of fabrication.  Moreover, in 2012, Plaintiff called one of his friends named "Chucks" and said: "they showed me the video, I'm busted, **they have a fool that has glasses that looks just like me**, what the fuck do I tell them when they have that?" (Exh. I, Investigative Action/Statement Form, emphasis added.)

Without evidence of fabrication, Plaintiff cherry-picks facts to argue there is circumstantial evidence of fabrication.  However, Plaintiff's attempts to undermine Officers Cooley and Born's identifications are unpersuasive.  For example, Plaintiff makes much of the fact that Officers Born and Cooley had never met Plaintiff before making their identification.  However, neither officer claimed they had in their respective reports and both explained in their reports, as noted above, how they made their identifications based on pictures they had previously seen of Plaintiff. (SUF #23.)  Therefore, the fact that neither officer had personally met

1 Plaintiff is not evidence that their identification was fabricated.

2       Plaintiff also asserts Officer Born's identification is a lie because her report
3 omits that she "saw a picture of Tobias before seeing the surveillance video,
4 tainting her purported identification." (Pl.'s Opp. at 43.)  Not only is this
5 unconvincing, it is also arguably misleading.  Phrased this way, Plaintiff seems to
6 insinuate Officer Born was shown a picture that was different than the surveillance
7 video and was somehow told it was Plaintiff, which made her identification
8 "tainted."  Indeed, in response to Defendants' SUF #9, whereby Defendants state
9 that Officer Cooley did not tell Officer Born the name, moniker or any other
10 potential information about the potential suspect, Plaintiff responds that Officer
11 Born was shown a picture of Plaintiff. (Doc. #131 [Pl.'s Response to SUF] at 6.)
12 This is a mischaracterization of the evidence.  The photo Officer Born saw was
13 simply a still shot of the surveillance video, not a separate picture.  There was no
14 information on the picture identifying Plaintiff, and no one told Officer Born that it
15 was Plaintiff when she saw the still photo.  Officer Born testified:

16/17     Q. And it was your understanding that the still photo you viewed was a snapshot in time, freeze frame of the surveillance video itself?

18     A. Yes.

19     …

20     Q: Once you were shown the still photo, what was told to you when you were handed the still photo?

21     A: I was just asked to look at the photo.

22     Q: Anything else that was said to you?

23     A: No.

24 (Born Depo. at 21:19-22:5, 27:17-28:7.)  Plaintiff does not explain how being
25 shown a still photo of the surveillance video—without more -- tainted Officer
26 Born's identification or shows that Officer Born fabricated her identification.
27 Plaintiff therefore does not have evidence to create a dispute of fact.  Even
28 assuming Officers Cooley and Born's identifications were mistaken (which they do

not concede), Plaintiff has no evidence this was intentional. The Fourteenth Amendment prohibits <u>deliberate</u> fabrication of evidence by a state official. *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc). Plaintiff cites to *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010), whereby the court held that "an investigator who **purposefully** reports that she has interviewed witnesses, when she has only attempted to make contact with them, deliberately fabricates evidence." (Emphasis added.) Plaintiff does not have evidence Officer Coley or Born deliberately or purposefully misidentified him in their reports, and therefore even drawing inferences in favor of Plaintiff, he cannot establish a constitutional violation. As the courts have held, not all inaccuracies in an investigative report give rise to a constitutional claim. *See, e.g., Black v. Montgomery County*, 835 F.3d 358, 372 (3d Cir. 2016), *cert. denied*, 2017 WL 1540522 (U.S. May 1, 2017) (No. 16-846). Mere "careless[ness]" is insufficient, *Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003).

### B. <u>Plaintiff Cannot Establish A Malicious Prosecution Claim</u>

Plaintiff's malicious prosecution claim fails because Plaintiff does not have any evidence to rebut the presumption that the prosecutor exercised independent judgment in determining whether there was probable cause to arrest Plaintiff. *Newman v. County of Orange*, 457 F.3d 991, 993-95 (9th Cir. 2006) (plaintiff bears the burden of producing evidence to rebut such presumption).

Plaintiff groups all Defendants together to argue that false information tainted any probable cause determination. (Pl.'s Opp. at 52). However, Plaintiff has failed to show Officers Born or Cooley were involved in either the interrogation of Plaintiff or Officer East's identification. Plaintiff's malicious prosecution claim against Officer Born and Cooley, therefore, can relate only to their identifications. As described more fully in Sec. II, Plaintiff does not have evidence that Officer Born or Cooley falsified their identifications. Nor does Plaintiff have any evidence Officers Born or Cooley concealed any information from the prosecutor or

pressured the prosecutor at all. Finally, their identifications were not used at trial.[1]

Therefore, Plaintiff cannot establish that Officer Born or Cooley caused Plaintiff to be prosecuted with malice and without probable cause, or that they did so in order to violate Plaintiff's constitutional rights.

## III. PLAINTIFF HAS NO EVIDENCE OF FAILURE TO INTERVENE OR CONSPIRACY

### A. Plaintiff Cannot Establish a Failure to Intervene

Plaintiff argues that each defendant had a "duty to intercede when their fellow officers violate[d] the constitutional rights of" Plaintiff, citing *Cunningham v. Gates,* 229 F.3d 1271, 1289 (2000) (internal citations omitted.) (Pl.'s Opp. at 69.) Plaintiff omits the next line of the *Cunningham* case, which states, "Importantly, however, officers can be held liable for failing to intercede *only if they had an opportunity to intercede*." *Id*. (holding that officers who were not present at the time of the shooting could not intercede to prevent their fellow officers from shooting at plaintiffs; internal citation omitted, emphasis added.)

Plaintiff asserts that Officers Born and Cooley "stood by" while the other detectives used and relied upon their false reports, and that they could have "halted the unconstitutional interrogation of Plaintiff." (Pl.'s Opp. at 70.) However, like the officers in *Cunningham*, Officers Born and Cooley did not have an opportunity to intercede in any alleged constitutional violation. Plaintiff does not dispute that Officer Born and Cooley were not present nor did they even knew about the questioning of Plaintiff; rather, he simply argues that this is 'immaterial." (Pl.'s Opp. at 69.) This information is material because, as Defendants pointed out in their motion for summary judgment, the courts have repeatedly rejected team or

---

[1] Though Cooley may have assumed he was only testifying at the gang enhancement stage because he was not asked about his identification, this was a reasonable error given procedural differences in juvenile proceedings. It does not change that Cooley's identification was not used during trial and he only testified about MS-13.

group liability. *Blankenhorn v. City of Orange*, 485 F.3d 463, 481. N.12 (9th Cir. 2007). Plaintiff fails to respond to any of these arguments in his Opposition.

### B. <u>Plaintiff Cannot Establish a Conspiracy Claim</u>

Plaintiff's conspiracy claim is also premised on speculation. Plaintiff argues there is evidence to allow a reasonable jury to conclude that all of the individual defendants agreed to falsely implicate him in the Castaneda homicide. (Pl.'s Opp. at 68.) Plaintiff fails to cite to <u>any</u> evidence in his brief, and his attempts to proffer "evidence" of a conspiracy in his statement of facts are misleading.

In attempt to make it appear that there was a conspiracy linking Defendants together, Plaintiff's ASOF #96 states: "Born and Cooley prepared their statement forms documenting their false identifications of Tobias at the instruction of the Defendant Detectives," and cites Officer Cooley's deposition. (Doc. #138-1 at 12.) However, Officer Cooley never stated that any Defendant Detectives told him to prepare a <u>false</u> identification. Rather, the deposition testimony which Plaintiff cites to is Officer Cooley explaining when he fills out a statement form. In relevant part:

> Q: Are you supposed to fill out a statement form for any time you are assisting in an investigation or do you sort of pick and choose when you do it?
>
> A. When a detective asks us to fill out a statement form.
>
> Q: Why did you fill out a statement form?
>
> A. Because the detective asked me to.
>
> Q. So what detective asked you to?
>
> A. Whichever detective I was talking to at the scene.

(Pl.'s Exh. 26, Cooley Dep. at 39:13-18; 110:16-21.) The fact that a report was requested is hardly evidence of a conspiracy to falsify information against Plaintiff.

As another example, Plaintiff assumes there must be a conspiracy because Officers Born and Cooley "cannot get their story straight." (Pl.'s Opp. at 68.) Plaintiff argues that Officer Born testified that she watched the surveillance video on the street, whereas Officer Cooley testified that she viewed the surveillance

video in the apartment manager's office. The fact that the officers could not remember exactly where Officer Born watched a surveillance video over five years after the incident is hardly evidence of a conspiracy. Indeed, Plaintiff may have argued that it was a conspiracy if their stories lined up exactly.

While it is true a conspiracy may be inferred from circumstantial evidence, a plaintiff is still required to "produce concrete evidence" of any agreement or meeting of the minds to violate the plaintiff's constitutional rights. *Radcliff v. Rainbow Constr. Co.*, 254 F.3d 772, 782 (9th Cir. 2001). Instead of concrete evidence, Plaintiff only has misleading citations and conjecture. Plaintiff's conspiracy claim should be dismissed because there is no evidence Officers Born and Cooley shared a "common objective" to falsely implicate Plaintiff.

### IV. BORN AND COOLEY ARE ENTITLED TO QUALIFIED IMMUNITY

Plaintiff argues that Officer Born and Cooley's request for qualified immunity should be denied because their Motion is based on disputed facts and inferences in the movant's own favor. (Pl.'s Opp. at 70.) While it is true that the <u>evidence</u> is viewed in the light most favorable to the non-moving party, the problem with Plaintiff's argument is that a fact is not disputed simply because Plaintiff says it is. *See Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). Further, the Court need not draw all possible inferences in the non-moving party's favor, only reasonable inferences. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F. 3d 1054 (9th Cir. 2002).

Here, Officer Born and Cooley are entitled to qualified immunity because they would not be on notice that making an identification based on video surveillance and comparing it with their recollection of photos they had seen of Plaintiff in the past would be unconstitutional. While Plaintiff may argue that these were intentionally falsified, he has not provided evidence to raise a genuine issue of fact or to draw an inference in his favor. At most, Plaintiff can only dispute

whether these identifications were mistaken or careless, which is insufficient to defeat qualified immunity as there was no clearly established law that a mistaken identification rose to the level of falsification. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1981) ("The Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property."); *Gausvik v. Perez*, 345 F.3d at 817.   Qualified immunity should apply.

## V.   PLAINTIFF CANNOT ESTABLISH MONELL LIABILITY

### A.   Plaintiff's Evolving *Monell* Claim

Plaintiff's *Monell* Claim continues to be a moving target.  Even with constantly changing theories, Plaintiff fails to provide evidence that there was an "action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell v. Dept. of Social Services*, 436 U.S. 658, 691.

Initially, Plaintiff's SAC alleges "[t]he actions of LAPD Defendant Officers were undertaken pursuant to policies and practices of the Department…which were ratified by policymakers for the City of Los Angeles with final policymaking authority." (SAC at ¶ 205.) Plaintiff's SAC did not name any specific City policy or decision which he alleges is unlawful. (*See generally*, SAC.)  Then, in discovery, Plaintiff claimed the City does not teach its officers to differentiate between juveniles in how they interrogate suspects, and the Department has inadequate policies and procedures for ensuring that exculpatory evidence is turned over.

Now, it appears Plaintiff 1) abandoned his *Monell* claim based on *Brady*, as Plaintiff does not respond to the City's argument that it has policies, practices, customs, and training with respect to *Brady* discovery obligations (*see Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (failure to address issue in opposition deemed waiver)), and 2) changed his theory regarding interrogations to add that the <u>lack of</u> policies, procedures, and training caused the alleged constitutional violations. (Pl.'s Opp. at 30-31.)  However, Plaintiff's current iteration of his *Monell* claim fails.

### B. Plaintiff Cannot Show the City was Deliberately Indifferent and a Lack of Policy, Procedure, or Training Caused a Violation

To establish there is a policy based on a failure to preserve constitutional rights, plaintiff must show, in addition to a constitutional violation, "that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right[,] *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992) (quoting *City of Canton v. Harrison*, 489 U.S. 378, 389 (1989)), and that the policy caused the violation, "in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir.2002). To show deliberate indifference, a plaintiff must demonstrate "that [the City] was on actual or constructive notice that its omission would likely result in a constitutional violation." *Id.* (*citing Farmer*, 511 U.S. at 841, 114 S.Ct. 1970). Only then does the omission become "the functional equivalent of a decision by [the City] itself to violate the Constitution." *Connick v. Thompson*, 563 U.S. 51 (2011).

The Supreme Court has explained these heightened requirements for establishing responsibility for a policy of omission are necessary to avoid imposing *respondeat superior* liability, which would run afoul of *Monell*. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997). When a municipal employee commits a constitutional tort, it could always be alleged the city failed to enact a policy that would have prevented the tort. Without the rigorous state of mind requirements set out in *Canton* and subsequent cases, there would be nothing left of *Monell's* rule against *respondeat superior* liability. *See Connick*, 563 U.S. at 51. *Canton's* standards thus ensure that, even if the alleged defect in the city's policy is one of omission, the acts of constitutional tortfeasors can still "fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs*, 520 U.S. at 404, 117 S.Ct. 1382.

Plaintiff's *Monell* claim is based on the broad proposition that the constitutionality of interrogation techniques is judged by a higher standard when police interrogate a minor. (Pl.'s Opp. at 29.) Contrary to Plaintiff's argument, the

City did "get the memo." As articulated more fully in the Motion for Summary Judgment, the City does differentiate between adults and juveniles and had several procedural safeguards for juvenile interrogations. Amongst the many facts Plaintiff does not dispute are:

- The City has a Juvenile Division that provides Department-wide training on issues related to juvenile policies and procedures, i.e. interviewing juvenile victims and interviews/interrogations of juvenile suspects. (SUF ##27-28.)
- Chapter Seven of the Juvenile Manual includes policies and procedures such as admonition of rights, juveniles' request for attorney, *Gladys R*. Statements for arrestees under the age of 14, and notification of parents. (SUF #30.)
- The Department issued a Special Order in 2011 to update/educate personnel on procedures for custodial interrogation of juvenile suspects. (SUF #31.)
- The Department requires officers to read *Miranda* admonitions to juveniles regardless of whether they intend to interrogate the juvenile. (SUF #32.)
- The Department policies require that officers conduct a *Gladys R*. assessment for children under the age of 14 who are suspected of committing a crime. The purpose of the *Gladys R*. assessment is to determine whether the child understands the difference between right or wrong. (SUF #34.)
- Department policy indicates if a juvenile asks to speak to his or her parent, an officer is required to ascertain the intent of why he wants to speak to the parent so the officer can ascertain whether it is something that may pertain to the waiver of understanding of *Miranda* rights; for example, if the juvenile wants his parent to find an attorney. (SUF #40.)

Officers are also trained to take the sophistication and maturity level of a suspect into consideration when conducting an interrogation, and ensure that the juvenile understands the question. (SUF #35.) While Plaintiff argues there are no separate training modules regarding juvenile interrogations on the defendants' training records, based on a summary list of titles, this did not mean this training

did not exist. The City's PMK testified that there was training, and per Plaintiff's evidence, Detective Arteaga testified he a 24-32 hour block of training regarding juvenile procedures. (Pl.'s Exh. 18 at 221:17-222:3.)

Plaintiff also tries to dispute whether the City had a policy prohibiting officers from making threats or promises of leniency (SUF #41), claiming the City has not produced evidence of a policy. This is untrue. Based on policy manuals the City produced, Plaintiff's expert Dr. Leo states: "The detectives were in violation of the [LAPD's] interrogation policies, which admonish them, 'Do not make promises or threats,' ([LAPD] Homicide Manual, P. 137, LAPD 00414). This admonition is so strong that elsewhere in the same manual, the LAPD instructs its interrogators to avoid even the appearance of making a promise of leniency: 'The detective must, however, be careful not to appear to be making a promise of leniency.'" (Pl.'s Exh. 19 [Doc. 132-21 at 88].) (*See also* Pl.'s Exh. 20 (Williams Report stating detectives violated LAPD Policy.) Plaintiff cannot have it both ways, saying that defendants violated policy and then arguing there was no policies about threats or leniency.

Plaintiff wants the Court to look at this case in a vacuum by arguing his claim is not about the City's policies and practices concerning providing juveniles *Miranda* warnings or addressing a juvenile's invocation of his right to an attorney. (Pl.'s Opp. at 26.) However, these policies, as well as the City's *Gladys R.* policies, which require an officer to determine whether a juvenile understands right from wrong, dispels Plaintiff's characterization the City was deliberately indifferent to the rights of juveniles by treating them exactly like adults.

Finally, Plaintiff does not allege or have evidence the City had actual notice of the purported flaw(s) in its lack of policies or training. In *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128 (2012), the Ninth Circuit affirmed the dismissal of *Monell claims* and held that in considering claims based on a failure to train, "a pattern of similar constitutional violations by untrained employees is `ordinarily necessary' to demonstrate deliberate indifference." *Id*. at 1145 (internal citation omitted). The

Ninth Circuit also held the absence of any evidence of a pattern makes it far less likely the plaintiff can prove the entity was on notice its policy would lead to constitutional violations. *Id.* (quoting *Farmer,* 511 U.S. at 841).

Here, there is no evidence that the City had a pattern of problems with handling juvenile interrogations[2] or that the courts had found the City's interrogation techniques unlawful. There is also no case law holding that it is unconstitutional to use techniques such as "ruses" with juveniles. Plaintiff does not have even have examples from any other agency in the country outlining what type of policies or training the City should have had but did not. Thus, Plaintiff cannot establish *Monell* liability because there is no evidence the City was on notice of any alleged problems with its policies or training.

## VI.     CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment. Plaintiff has no evidence that Officers Born or Cooley violated his rights or conspired to violate his rights, and they are entitled to qualified immunity. Plaintiff also does not have evidence to establish that the City had an unconstitutional policy, practice, or custom, a constitutionally deficient lack of training, or that it ratified unconstitutional actions.

Dated:  August 23, 2018

BURKE, WILLIAMS & SORENSEN, LLP

By: */s/ Susan E. Coleman*
        Susan E. Coleman

Attorneys for Defendants
CITY OF LOS ANGELES,
BORN and COOLEY

---

[2] Though Plaintiff's SAC initially identified other cases to show an alleged pattern of coerced confessions, Plaintiff states he is no longer basing his *Monell* claim on these cases. (*See* Exh. N, Rog Resp. 3-9.) These cases also do not deal with juveniles and/or the same time period.