Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohshlaw.com
**ORBACH HUFF SUAREZ & HENDERSON LLP**
1901 Harrison Street, Suite 1630
Oakland, CA  94612
Telephone:  510.999.7908
Facsimile:   510.999.7918

Attorney for Defendants
DETECTIVES MICHAEL ARTEAGA, JEFF CORTINA,
JOHN MOTTO and JULIAN PERE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART TOBIAS,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES; SGT. SANCHEZ, #25339; DETECTIVE MICHAEL ARTEAGA, #32722; DETECTIVE JEFF CORTINA, #35632; DETECTIVE J. MOTTO, #25429; DETECTIVE JULIAN PERE, #27434; OFFICER MARSHALL COOLEY, #38940; OFFICER BORN, #38351; L.A. SCHOOL POLICE OFFICER DANIEL EAST, #959; and UNIDENTIFIED EMPLOYEES of the CITY OF LOS ANGELES,<br><br>                    Defendants. | Case No.  17-cv-01076-DSF-AS<br><br>**DEFENDANTS DETECTIVES MICHAEL ARTEAGA, JEFF CORTINA, JOHN MOTTO AND JULIAN PERE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>DATE:         August 27, 2018<br>TIME:         1:30 p.m.<br>DEPT:         Courtroom 7D<br>JUDGE:       Hon. Dale S. Fischer |

*ORBACH HUFF SUAREZ & HENDERSON LLP*

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................1

II.   PLAINTIFF'S OPPOSITION IS DEFICIENT AND LACKS FACTUAL
SUPPORT ..........................................................................................................2

    A.    The Detectives' Interrogation of Plaintiff Was Lawful and Appropriate .......4

        1.    The individual actions by each Defendant Detective were
appropriate ..........................................................................4

        2.    All of the interrogation tactics utilized by the Detective
Defendants have been deemed lawful and appropriate .......................6

        3.    Whether Plaintiff's lone reference to legal counsel constituted
an unequivocal request for counsel was not clearly defined ...............9

    B.    Plaintiff's Claims of *Brady* Violations Are Unsupported ...........................10

    C.    Plaintiff's Claims of Fabrication of Evidence Fail .......................................12

    D.    Defendants are Entitled to Qualified Immunity ...........................................15

III.  CONCLUSION.................................................................................................15

ORBACH HUFF SUAREZ & HENDERSON LLP

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

# TABLE OF AUTHORITIES

**Page(s)**

**Supreme Court Cases**

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................ 2

*Chavez v. Martinez*,
   538 U.S. 760 (2003) ................................................................................ 5

*City and County of San Francisco v. Sheehan*,
   135 S.Ct. 1765 (2015) ............................................................................ 6

*County of Sacramento v. Lewis*,
   523 U.S. 833 (1998) .............................................................................. 12

*Davis v. Scherer*,
   468 U.S. 183 (1984) ................................................................................ 3

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) .............................................................................. 15

*Kisela v. Hughes*,
   138 S.Ct. 1148 (U.S. Apr. 2, 2018) ............................................... 6, 7, 10

*Kyles v. Whitley*,
   514 U.S. 419 (1995) .............................................................................. 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................................................ 3

*Mullenix v. Luna*,
   136 S.Ct. 305 (2015) .............................................................................. 6

*Plumhoff v. Rickard*,
   134 S.Ct. 2012 (2014) ............................................................................ 6

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974) .............................................................................. 15

ORBACH HUFF SUAREZ & HENDERSON LLP

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

# TABLE OF AUTHORITIES

**Page(s)**

*White v. Pauly*,
580 U. S. ___, ___, 137 S.Ct. 548 (2017) .............................................................. 6, 15

**Federal Court Cases**

*Barker v. Fleming*,
423 F.3d 1085 (9th Cir. 2005) ....................................................................... 11

*British Airways Board v. Boeing Co.*,
585 F.2d 946 (9th Cir. 1978) ........................................................................... 2

*Caldwell v. City & County of San Francisco*,
899 F.3d 1105 (9th Cir. 2018) ................................................................... 13, 14

*Collazo v. Estelle*,
940 F.2d 411 (9th Cir. 1991) ......................................................................... 10

*Cooper v. Dupnik*,
963 F.2d 1220 (9th Cir. 1992) ......................................................................... 5

*Costanich v. Dep't of Soc. & Health Servs.*,
627 F.3d 1101 (9th Cir. 2010) ....................................................................... 13

*Crowe v. County of San Diego*,
608 F.3d 406 (9th Cir. 2010) ........................................................................... 5

*Devereaux v. Abbey*,
263 F.3d 1070 (9th Cir. 2001) .................................................................... 1, 12

*Gausvik v. Perez*,
345 F.3d 813 (2003) ..................................................................................... 13

*Glass v. Intel Corp., No. CV-06-1404-PHX*,
2009 WL 649787 (D. Ariz. March 11, 2009) ............................................... 3, 14

*Jones v. Williams*,
297 F.3d 930 (9th Cir. 2002) ....................................................................... 4, 5

ORBACH HUFF SUAREZ & HENDERSON LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

# TABLE OF AUTHORITIES

**Page(s)**

*Maddox v. City of Los Angeles,*
    792 F.2d 1408 (9th Cir. 1986) ....................................................................... 3

*Mann v. Thalacker,*
    246 F.3d 1092 (8th Cir. 2001) ...................................................................... 7

*Mincey v. Davis,*
    2015 U.S. Dist. LEXIS 78042 (C.D.Cal. 2015) ................................... 1, 13

*Morris v. California,*
    2013 U.S. Dist. LEXIS 98616 (E.D.Cal. 2013) ................................... 1, 13

*National Union Fire Ins. Co. v. Argonaut Ins. Co.,*
    701 F.2d 95 (9th Cir. 1983) ........................................................................ 2

*Ortiz v. Uribe,*
    671 F.3d 863 (9th Cir. 2011) ...................................................................... 8

*Raley v. Yist,*
    470 F.3d 792 (9th Cir. 2006) .................................................................... 11

*Rhoades v. Henry,*
    598 F.3d 495 (9th Cir. 2010) .................................................................... 11

*Roe v. City of Spokane,*
    2008 U.S. Dist. LEXIS 52212 (E.D.Wash. 2008) ..................................... 1

*Seagrave v. Lake County,*
    1995 WL 251282 *2 (N.D. Cal. 1995) .................................................... 12

*Silva v. Brown,*
    416 F.3d 980 (9th Cir. 2005) .................................................................... 11

*Tennison v. City & County of San Francisco,*
    570 F.3d 1078 (9th Cir. 2009) .................................................................. 12

*Tennison v. City of San Francisco,*
    548 F.3d 1293 (9th Cir. 2009) .................................................................... 1

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

ORBACH HUFF SUAREZ & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Thorsted v. Kelly*,
  858 F.2d 571 (9th Cir. 1988).................................................................. 15

*U.S. v. Coleman*,
  208 F.3d 786 (9th Cir. 2000)................................................................... 7

*United States v. Khoa Dang Vu Hoang*,
  238 F.Supp.3d 775 (E.D.Va. 2017)......................................................... 8

*United States v. Mitchell*,
  514 F.App'x 319 (4th Cir. 2013).............................................................. 8

*United States v. Pelton*,
  835 F.2d 1067 (4th Cir. 1987)................................................................. 8

*United States v. Preston*,
  751 F.3d 1008 (9th Cir. 2014)................................................................. 7

*Villiarimo v. Aloha Island Air, Inc.*,
  281 F.3d 1054 (9th Cir. 2002)............................................................ 3, 14

**State Court Cases**

*In re Art T*,
  234 Cal.App.4th 335 (2015).................................................................. 10

*Lehto v. City of Oxnard*,
  171 Cal.App.3d 285 (1985)..................................................................... 3

*People v. Nation*,
  26 Cal.3d 169 (1980)............................................................................ 11

*People v. Nelson*,
  53 Cal.4th 367 (January 12, 2012) ...................................................... 8, 9

ORBACH HUFF SUAREZ & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Statutes/Rules**

42 U.S.C. section 1983 ................................................................................................. 1, 5

Fed. R. Civ. P. 56(e) ....................................................................................................... 2

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

ORBACH HUFF SUAREZ & HENDERSON LLP

# I.      INTRODUCTION

At its foundation, Plaintiff's claims are premised on arguments that the investigation into the murder of Alex Castaneda was inadequate and biased. Yet Plaintiff offers no admissible evidence in support of his contentions. Instead, he attempts to distort the facts and ignore established case law while challenging certain actions in isolation. For example, he claims to have repeatedly advised the Detective Defendants that he wanted to remain silent, yet not a single occasion where he makes such a statement is contained anywhere in his proffered evidence or even the actual video of his interrogation. Even accepting Plaintiff's unsupported arguments as true, his opposition does not paint a picture of deliberate indifference or reckless disregard for the truth, as is necessary to avoid summary judgment. *Tennison v. City of San Francisco*, 548 F.3d 1293 (9th Cir. 2009). Nor does Plaintiff's opposition depict the deliberate manufacture of evidence by any of the Detective Defendants. *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001).

Rather, Plaintiff has constructed a series of alleged police missteps, all of which are predicated upon speculation and conjecture, in an attempt to demonstrate an imperfect investigation which contradicted his claims of innocence. However, Plaintiff's guilt or innocence for the murder of Castaneda is not relevant to his civil claims. Instead, the pending issues are whether the Detective Defendants' actions in investigating the murder and interrogating Plaintiff were in compliance with clearly established laws.

Significantly, there is no right to a perfect police investigation; in fact, individuals do not possess a right to an adequate police investigation, nor a fair and reasonable one. *Mincey v. Davis*, 2015 U.S. Dist. LEXIS 78042 (C.D.Cal. 2015); *Morris v. California*, 2013 U.S. Dist. LEXIS 98616 (E.D.Cal. 2013). Absent evidence that a police investigation has infringed upon another constitutionally protected right, a section 1983 claim premised on an inadequate investigation will not lie. *Roe v. City of Spokane*, 2008 U.S. Dist. LEXIS 52212 (E.D.Wash. 2008). Since Plaintiff can do no more than reconstruct how the investigation could have been handled years after the fact, his claims

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

fail since he cannot allege any separate constitutional violations.

Finally, Plaintiff's allegations of being denied legal counsel are not actionable, especially given the lack of any clearly defined legal standards related to the invocation of his right to legal counsel after previously waiving said rights. Accordingly, Defendants are entitled to qualified immunity as there was no clearly established law regarding the contours of Plaintiff's allegations. Therefore, Defendants' Motion for Summary Judgment must be granted in its entirety.

## II. PLAINTIFF'S OPPOSITION IS DEFICIENT AND LACKS FACTUAL SUPPORT[1]

In opposing a motion for summary judgment, a plaintiff is required to put forth substantial evidence demonstrating the existence of a triable issue of material fact with respect to an issue on which he bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Id.* at 322. Speculation or challenges to a witness' credibility are not a substitute for bringing forth substantial responsive evidence. *Fed. R. Civ. P. 56(e)*; *National Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). Similarly, Plaintiff's speculation and conjecture is not evidence at the summary judgment stage. *British Airways Board v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978).

---

[1] At the outset, Defendants object to Plaintiff's opposition as it is both untimely and violates the Court's standing orders, each of which has substantially prejudiced Defendants in their ability to meaningfully respond. After having been granted a three-week extension to respond (until August 6, 2018; Dkt. 120 at 2), Plaintiff still failed to timely oppose Defendants' Motion. Instead, his opposition papers were not filed until August 7. Plaintiff's opposition is further improper as it grossly exceeds the allowable page length; in general, all memoranda shall not exceed 25 pages. L.R. 11-6, Judge Fischer's Standing Order at 7, ¶ 7.c. Plaintiff has not sought leave to exceed the page limitations, nor has Plaintiff demonstrated any good cause for such allowance. As such, Plaintiff's 83-page brief is wholly improper. Significantly, the majority of the response (approximately 63 of the 72 pages in Plaintiff's opposition (Dkt. 138)), is directed at the Detective Defendants. Given that Plaintiff's response grossly exceeds the limitation at 72 pages as well as the belated filing, Plaintiff's opposition brief must be stricken, especially given the resulting prejudice to Defendants in attempting to respond to such a voluminous submission within the parameters of the local rules. L.R. 7-13, 11-9 and 83-7.

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

ORBACH HUFF SUAREZ & HENDERSON LLP

Plaintiff has failed to carry his burden, instead misdirecting the argument, misrepresenting the material evidence and injecting his opinions as to how the evidence should be interpreted.  This does not meet Plaintiff's burden.  The opinions and speculation offered by Plaintiff in opposition to this Motion are precisely the kind of speculation and conjecture "that courts have held will not defeat a motion for summary judgment."  *Glass v. Intel Corp.*, No. CV-06-1404-PHX, 2009 WL 649787, at *7 (D. Ariz. March 11, 2009)*; see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That is precisely the situation here, thereby confirming summary judgment is proper.  Moreover, Plaintiff improperly attempts to distract from the actual legal issues by focusing his arguments on alleged violations of the City and its police department's policies.  However, a police department's internal policies and regulations do not create the legal standard of care in a civil case.  While departmental or municipal policy directives may prescribe what conduct is expected of police personnel under particular circumstances, such policy directives cannot and do not create a duty to individual citizens.  *Lehto v. City of Oxnard*, 171 Cal.App.3d 285, 294-95 (1985); *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986); *Davis v. Scherer*, 468 U.S. 183, 194 (1984).

A careful reading of Plaintiff's opposition confirms that he does not dispute any of Defendants' proffered facts, only the interpretation thereof.  For example, Plaintiff argues that the Detectives lacked probable cause for his arrest due to the purported absence of the Facebook page within the Murderbook where he boasted of "going on a mission" before the Castaneda and Cruz murders.  Yet Plaintiff ignores his own mother's testimony that she did, in fact, tell the officers exactly that.  See Det. Defendants' Statement of Uncontroverted Facts ("SUF") at Dkt. 111-2, No. 8 and Cooley Declaration. Moreover, the referenced page is actually contained within the Murderbook and which

- 3 -

ORBACH HUFF SUAREZ & HENDERSON LLP

was produced to Plaintiff's criminal defense team in advance of the criminal trial.

Nevertheless, it is not Plaintiff's subjective interpretation of the facts which controls, but rather the Court's neutral evaluation of the undisputed facts supported by admissible evidence, coupled with what a reasonable officer would have believed at the time of the incident. Those undisputed and admissible facts confirm that the Detective Defendants' actions were objectively reasonable, thereby confirming the necessity of granting this Motion.

## A.    The Detectives' Interrogation of Plaintiff Was Lawful and Appropriate

Plaintiff's opposition appears to focus upon his contention that his interrogation was inappropriate either because: 1) the Detective Defendants' cumulative conduct was coercive, and/or 2) because Detective Pere did not interpret Plaintiff's passing reference of legal counsel as an unequivocal request for an attorney. Each of these issues is addressed in turn.

### 1.    The individual actions by each Defendant Detective were appropriate

Plaintiff's opposition impermissibly attempts to "create" liability by indirectly arguing that each of the Detective Defendants is liable for the cumulative actions of all Defendants. However, liability may not be premised on "team liability" or a "team effort." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002). Perhaps the most glaring example of this is Plaintiff's claims related to his interrogation, which were completed in two separate sessions. During the first session, Detectives Pere and Cortina questioned Plaintiff, with their interrogation ceasing without Plaintiff ever having provided any incriminating testimony or admissions. It was only in the second session of the interrogation that Plaintiff ultimately admitted to killing Alex Castaneda. Notably, the second session of Plaintiff's interrogation was completed only by Detective Arteaga.

Since Detectives Pere, Cortina and Motto had no role in the second session of Plaintiff's interrogation, nor did they obtain any evidence or testimony used to convict

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

ORBACH HUFF SUAREZ & HENDERSON LLP

Plaintiff, they cannot be held liable.  This is confirmed by the Supreme Court's opinion in *Chavez v. Martinez*, 538 U.S. 760 (2003), wherein it held that mere coercion does not create a cause of action under section 1983 for a violation of the Self-Incrimination Clause, absent use of the compelled statement in a criminal case.  *Crowe v. County of San Diego*, 608 F.3d 406, 427 (9th Cir. 2010).  In fact, investigators cannot be held civilly liable for coercive questioning in violation of *Miranda* and the Fifth Amendment where the compelled statements were never used against the suspect in a criminal case.  *Id.* Prior to *Chavez*, the rule in the Ninth Circuit was that a section 1983 cause of action for a violation of the Fifth Amendment's Self-Incrimination Clause arose as soon as police employed coercive means to compel a statement.  *See Cooper v. Dupnik*, 963 F.2d 1220, 1242 (9th Cir. 1992).  But the Supreme Court's decision abrogated that notion.

Rather than acknowledge the precedent established by the Supreme Court, Plaintiff attempts to circumvent the law by relying on a team liability theory.  Yet such arguments are expressly contrary to established law.  *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) – team liability allegations inappropriate in support of civil rights claims.  As confirmed by *all* of the proffered evidence, only Detective Arteaga was able to obtain evidence and testimony from Plaintiff which was admitted during his criminal trial.  Yet Detective Arteaga was unaware of any alleged request for legal counsel by Plaintiff, which was made only to Detective Pere.  SUF No. 40.  Notably, Detective Arteaga was unaware of Plaintiff's purported request for counsel as he was questioning Plaintiff's mother in a separate room when Plaintiff made his sole comment related to an attorney.  SUF Nos. 29, 40.  By comparison, Detectives Cortina, Motto and Pere never obtained any evidence or testimony from Plaintiff during their interrogation of him which was used during his criminal prosecution.

Since Detective Arteaga was unaware of any purported request for legal counsel, he cannot be found to have violated any claimed right.  Similarly, Detectives Cortina, Motto and Pere never obtained any incriminating testimony from Plaintiff which was utilized in obtaining Plaintiff's conviction.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORBACH HUFF SUAREZ & HENDERSON LLP

### 2.    All of the interrogation tactics utilized by the Detective Defendants have been deemed lawful and appropriate

Plaintiff next argues that his interrogation by Detective Arteaga was coercive based upon the cumulative effect of various approved and lawful interrogation tactics[2] as well as his age at the time.  While it is true that a claim of coercion is evaluated based upon the totality of an interrogation, any analysis must be reflective of the fact that liability can only attach if the Detective Defendants' conduct violated "clearly established" laws. This principle is especially apt where Plaintiff claims that the combination of approved and lawful tactics resulted in an unlawful practice.  In other words, it is virtually impossible for any reasonable officer to conclusively know what combination of lawful interrogation practices crosses the line for civil liability.

As recently explained by the High Court, "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S.Ct. 1148 (U.S. Apr. 2, 2018), citing *White v. Pauly*, 580 U. S. ___, ___, 137 S.Ct. 548 (2017) (per curiam).  For a right to be "clearly established," existing precedent must have placed the constitutional or statutory right beyond debate.  Unless existing precedent "squarely governs" the specific facts at issue in an excessive force case, police officers are entitled to qualified immunity.  *Mullenix v. Luna*, 136 S.Ct. 305 (2015).  These principles were emphasized only recently in *Kisela*, where the court added that it had repeatedly told courts, "the Ninth Circuit in particular," not to define clearly established law at a high level of generality.  *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765 (2015). Citing *Plumhoff v. Rickard* (134 S.Ct. 2012 (2014)), the *Kisela* Court observed that "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes

---

[2] The lawfulness of each of the interrogation tactics employed during Plaintiff's questioning is addressed in detail within the Detective Defendants' moving papers, including the established case law confirming the appropriateness of all of the complained of actions.

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

would have understood that he was violating it."  Significantly, the *Kisela* court found the Ninth Circuit did not implement this portion of the standard correctly.  Yet Plaintiff's arguments mimic and rely upon the very cases that *Kisela* found were improper.

Continuing on, Plaintiff attempts to liken his claims to those of *Preston* in the Ninth Circuit's decision in *United States v. Preston* (751 F.3d 1008, 1027-28 (9th Cir. 2014)) in which the court considered the "suggestive questioning that provided details of the alleged crime" in holding that a defendant's statement was involuntary.  *Preston* is both inapposite and unpersuasive.  In *Preston*, there were a number of other factors the Ninth Circuit relied on that are not present here, including that the criminal defendant had a "severe intellectual impairment" and the police (i) used "repetitive questioning and [ ] threats that [the questioning] would continue without end," (ii) pressured the defendant to adopt certain answers, (iii) used "alternative questions that assumed [the defendant's] culpability," (iv) engaged in "multiple deceptions about how the statement would be used," and (v) made "false promises of leniency and confidentiality."  *Id.*

Those circumstances are not present here, and thus *Preston* is inapposite and unpersuasive.  In contrast, Plaintiff's interrogation was relatively short, lasting approximately 90 minutes in total with the interrogation being largely unremarkable. SUF No. 25.  And contrary to Plaintiff's arguments and misrepresented evidence, not once does he ever request to remain silent.[3]  Despite Plaintiff's unsupported arguments, the video confirms that he was never threatened, nor was he ever promised leniency.[4]  As a result, Plaintiff's argument that the Detective Defendants' alleged suggestive questioning was improper fails.  See *Mann v. Thalacker*, 246 F.3d 1092, 1100 (8th Cir. 2001) ("[W]e are not persuaded that [defendant] was coerced into dictating and signing a detailed confession simply because he was interrogated on little sleep by an officer who

---

[3] See, for example, Plaintiff's ASOF, ¶¶ 141, 149 and 168 which are completely devoid of any evidence supporting such contentions.

[4] Notwithstanding, police officers may employ tactics such as deception or even comments about talking to a prosecutor about potential criminal sentences to induce a confession.  *U.S. v. Coleman*, 208 F.3d 786, 791 (9th Cir. 2000) (agents' promise that they could "tell the prosecutor to give [the suspect] little or no time" did not establish involuntariness); *U.S. v. Preston*, 751 F.3d 1008, 1032 (9th Cir. 2014).

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

ORBACH HUFF SUAREZ & HENDERSON LLP

used some leading questions and sometimes prodded him to be more forthcoming"); *see also, United States v. Khoa Dang Vu Hoang* (E.D.Va. 2017) 238 F.Supp.3d 775, 788.

Finally, the Detective Defendants' alleged references to Plaintiff's mother and any potential prison sentence based upon Plaintiff's crimes was neither improper, nor does it outweigh the other circumstances indicating that his admission was voluntary. *See United States v. Mitchell*, 514 F.App'x 319, 321-22 (4th Cir. 2013) (concluding that defendant's statements would not be involuntary even if the officers threatened that his refusal to claim responsibility for the crime would prompt "the Department of Social Services [to] take [his girlfriend's] children from [his girlfriend], possibly permanently"); *United States v. Pelton*, 835 F.2d 1067, 1072 (4th Cir. 1987) ("[A] law enforcement officer may properly tell the truth to the accused.")[5]  Plaintiff's claims that the interrogation was improper due to his request for his mother are also unavailing, especially given the California Supreme Court's opinion in *People v. Nelson* (53 Cal.4th 367 (January 12, 2012)) on that issue only a few months prior to Plaintiff's interrogation.  The facts presented in *Nelson* are similar to those here.  Fifteen-year-old Nelson was appealing his murder conviction based upon his contention that he was denied legal counsel during a custodial interrogation.  Nelson claimed that the officers violated his rights by not ceasing their interrogation when he requested to call his mother.  Despite Nelson's requests to the contrary, the Supreme Court confirmed that a request to call a parent was insufficient to require investigators to cease a custodial interrogation.

Regardless of how Plaintiff attempts to characterize the interrogation, the simple fact is that each of the Detectives participated in only a limited and severable part of his questioning.  Further, each and every one of the challenged actions has previously been deemed lawful and appropriate in well-established case law.  The admissible facts (including the video of the actual interrogation which has been provided to the Court for

---

[5] *See also Ortiz v. Uribe*, 671 F.3d 863, 872 (9th Cir. 2011), confirming that it is permissible for law enforcement officers to make psychological appeals to a defendant's conscience, including to his moral obligations to his family, which do not rise to the level of coercion.

ORBACH HUFF SUAREZ & HENDERSON LLP

1  review) confirms that the Detective Defendants' conduct was absolutely appropriate.

2  Should the Court conclude that the combination of multiple approved interrogation

3  tactics was improper, the Detective Defendants would still be entitled to qualified

4  immunity as no case or law has ever clearly established the confines of such rights.

### 3.    Whether Plaintiff's lone reference to legal counsel constituted an unequivocal request for counsel was not clearly defined

8       Given the inaccurate statements contained in Plaintiff's opposition, a review of the

9  actual facts is necessary.  Contrary to Plaintiff's arguments, only a single reference to

10  legal counsel was ever made by Plaintiff during his interrogation.  That passing comment

11  was uttered at approximately thirty-two minutes into Detectives Pere and Cortina's

12  interrogation (SUF Nos. 39, 40), with Plaintiff stating, "Could I have an attorney, because

13  that's not me."  At no time did Plaintiff ever reference or request legal counsel.  SUF No.

14  37.  Not once did Plaintiff ever state that he desired to remain silent.  Instead, the video of

15  his interrogation shows him freely conversing with the Detectives.

16       These facts fall squarely within the confines of qualified immunity, especially

17  given the unsettled state of the law regarding invocation of a request for legal counsel

18  following a prior waiver combined with the lack of a clear and unambiguous request for

19  legal counsel from Plaintiff.  Indeed, this Court's prior comments during earlier hearings

20  confirms the lack of clearly established legal standards regarding Plaintiff's purported

21  attempts to request counsel.  In relevant part, this Court concluded that "Neither the Ninth

22  Circuit nor the Supreme Court has held that age must be taken into consideration when

23  determining whether a juvenile, after waiving *Miranda* rights, has invoked his or her

24  right to an attorney."  Order at Dkt. 78, pg. 4, fn. 3, and that "these facts present a close

25  question because **there appears to be no case law determining whether the precise**

26  **question "Could I have an attorney? is equivocal**."  *Id*., pg. 5 of 7, emphasis added.

27  This Court continued on to state that, "Neither the Ninth Circuit nor the Supreme Court

28  has held that age must be taken into consideration when determining whether a juvenile,

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

ORBACH HUFF SUAREZ & HENDERSON LLP

1  after waiving Miranda rights, has invoked his or her right to an attorney."  Order, pg. 4,

2  fn. 3.  Yet Plaintiff's age was the primary reason that the California Court of Appeal

3  overturned his conviction and issued a published opinion establishing new law.  *In re Art*

4  *T*, 234 Cal.App.4th 335 (2015).

5      Plaintiff attempts to liken his claims to those asserted in *Collazo v. Estelle*, 940

6  F.2d 411 (9th Cir. 1991) (en banc).  However, *Collazo* is inapposite and any reliance

7  thereon is misplaced.  In *Collazo*, an in-custody suspect was provided his *Miranda*

8  warnings and questioned.  After initially waiving his rights, he then attempted to reinvoke

9  his right to counsel shortly into the interrogation.  After acknowledging Collazo's request

10  for counsel, the defendant detective continued to question the suspect, and suggested that

11  acquiring an attorney "might be worse for you" while attempting to dissuade the suspect

12  of his request for legal counsel.  *Id.* at 413-14.  No such events transpired here.  Instead,

13  Plaintiff made a single passing reference to an attorney, which did not constitute an

14  "unambiguous request" for legal counsel.

15      The foregoing facts clearly illustrate the lack of clarity as to whether Plaintiff's

16  passing reference to an attorney constituted an unequivocal request for counsel.

17  Accordingly, this Court should follow the *Kisela* Court's recent guidance and confirm

18  that the Detective Defendants are entitled to qualified immunity.

19      **B.    Plaintiff's Claims of *Brady* Violations Are Unsupported**

20      In his opposition, Plaintiff alleges that he was not provided with a copy of any and

21  all documents evidencing any investigations of suspect Eric Martinez[6] for unrelated

22  crimes.  As discussed in Defendants' moving papers, Martinez was found to be in

23  possession of one of the two weapons that was used during the Castaneda murder.

24  Notably, Plaintiff admits to receiving disclosures depicting Martinez's name, the fact that

25  he was arrested and in possession of a weapon linked to the Castaneda.  SUF No. 50.

ORBACH HUFF SUAREZ & HENDERSON LLP

[6] Despite suggesting that some 300 pages from the Murderbook were not timely disclosed (opposition at 57:19-58:2), the only piece of evidence that Plaintiff claims was withheld relate to supplemental investigative reports related to Eric Martinez. The difference in page numbers appears to be the product of Plaintiff's misunderstanding of what actually constitutes a Murderbook coupled with the addition of information after Plaintiff's conviction (such as the criminal charge sheet and transcripts).

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

To state a *Brady* violation, Plaintiff must show that undisclosed evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *Kyles v. Whitley,* 514 U.S. 419 (1995). He cannot do so especially given: 1) the fact that Martinez's identity and the facts of his arrest were properly disclosed; 2) that Martinez was not considered a suspect; and 3) Plaintiff's admission that the guns used during the related Cruz murder only a few hours earlier and for which he was convicted were "gang" guns that they borrowed on the night of the two murders. SUF No. 50.

It defies logic to believe that the single piece of information from the Murderbook was material within the meaning of *Brady*. For one, the report contained information already known and disclosed to Plaintiff's criminal defense team. As Plaintiff admits, he was timely provided with information outlining Martinez's name, arrest and the fact that he was arrested in possession of a weapon linked to the Castaneda murder. SUF No. 50. When the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence, the failure to provide information related to such facts does not constitute a *Brady* violation. *Raley v. Yist,* 470 F.3d 792, 804 (9th Cir. 2006); *Rhoades v. Henry,* 598 F.3d 495, 502 (9th Cir. 2010).

Similarly, the requirement of materiality is not satisfied if the alleged suppressed evidence was merely cumulative or duplicative of evidence already known to Plaintiff. *Silva v. Brown*, 416 F.3d 980 (9th Cir. 2005); *Barker v. Fleming*, 423 F.3d 1085, 1096 (9th Cir. 2005).[7] The identity of Eric Martinez and his possession of one of the two murder weapons several days later was already provided to Plaintiff in his criminal proceeding. As such, Plaintiff fails to meet his burden.

Even assuming Plaintiff could show that his timely receipt of the police report for Martinez's arrest did not satisfy the *Brady* requirements, his claims still fail due to a

_____

[7] See also *People v. Nation*, 26 Cal.3d 169, 175, 161 (1980) "the Constitution does not require the prosecution to make a complete and detailed accounting to the defendant of all police investigatory work on a case."

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

ORBACH HUFF SUAREZ & HENDERSON LLP

complete lack of any evidence to suggest the Detectives acted with deliberate indifference or reckless disregard for Plaintiff's rights.  *Tennison v. City & County of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009).  This is akin to the standard imposed on government officials in the substantive due process context – liability arises if those officials engage in conduct that "shocks the conscience."  *Id.*, quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).  "Neither negligence nor gross negligence will constitute deliberate indifference."  *Seagrave v. Lake County*, 1995 WL 251282 *2 (N.D. Cal. 1995).  Plaintiff has failed to proffer any such evidence in this case.  Instead, his only response is that "Tennison's 'deliberate indifference or reckless disregard' standard is consistent with Brady…"  Opposition at fn. 20.  Plaintiff's blind indifference to the established caselaw will not defeat summary judgment.  And the only admissible evidence is to the contrary; Detective Cortina has confirmed that the entire Murderbook was duplicated and turned over to the District Attorney's office as part of the Castaneda murder prosecution.  Pursuant thereto, Plaintiff's *Brady* claims are deficient as a matter of law and summary judgment must be granted.

### C.    Plaintiff's Claims of Fabrication of Evidence Fail

Contrary to Plaintiff's unsupported contentions, there is no admissible evidence that the Detective Defendants deliberately fabricated incriminating evidence. Applying the two prong *Deveraux* test (*Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)), Plaintiff cannot show that:  1) each Defendant continued his investigation despite the fact [he] knew or should have known that [plaintiff] was innocent, or 2) that each Defendant used investigative techniques that were so coercive and abusive that [he] knew or should have known those techniques would yield false information.

Plaintiff fails to demonstrate any issue of material fact as to the allegations that the Detective Defendants fabricated evidence.  As an initial note, Plaintiff does not dispute that the Declarations of Negroe, East, Cooley and Born all confirm that their independent identifications were made of their own free will.  Plaintiff's Resp. to Sep. Stm. (Dkt. 129)

at 11, SUF No. 21.[8]  Instead, Plaintiff is attempting to create a genuine issue of material fact where none exists.

Plaintiff focuses his criticism on his contention that this investigation was not perfect.  Yet, it was not required to be perfect.  *Mincey v. Davis*, 2015 U.S. Dist. LEXIS 78042 (C.D.Cal. 2015); *Morris v. California*, 2013 U.S. Dist. LEXIS 98616 (E.D.Cal. 2013).  Plaintiff's focus on his perception of inconsistencies is insignificant; whether an officer recalled a photo or a video of Tobias does not equate to a fabrication of evidence.[9]  Opp. at 43:1-3; *Gausvik v. Perez*, 345 F.3d 813, 817 (2003) (finding that while officer's probable cause affidavit "may have been careless or inaccurate, it does not satisfy *Devereaux*'s stringent test" for fabrication of evidence).  Not every recording error and misstatement in an investigative record rises to the level of a constitutional violation.  *Caldwell v. City & County of San Francisco*, 899 F.3d 1105, 1114 (9th Cir. 2018), *citing Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1112 (9th Cir. 2010).

In *Caldwell,* the court found the officer had deliberately fabricated evidence due to his report inserted statements that were never actually made by the defendant, nor were the statements corroborated by any other evidence.  *Caldwell,* 899 F.3d at 1114-15.  By

---

[8]  Plaintiff's response to SUF No. 21 states that the fact is "Undisputed that their declarations state as much, but dispute[d] in substance, as discussed *supra*."  Defendants are unaware of what argument Plaintiff's "*supra*" is referring.  Further, Plaintiff's response fails to refer to any evidence to contradict this fact and is another violation of this Court's standing order.  Judge Fischer's Standing Order at 10-11 ("The opposing party may dispute all or only a portion of the statement of fact.  If disputing only a portion, the statement of genuine disputes must clearly indicate what part is being disputed, followed by the opposing party's evidence controverting the fact. . . . Only good faith disputes should be included.  The Court will not wade through a document to determine whether a fact really is in dispute.  To demonstrate that a fact is disputed, the opposing party must briefly state why it disputes the moving party's asserted fact, cite to the relevant exhibit or other evidence, and describe what in that exhibit or evidence refutes the asserted fact.")  Plaintiff had over a month to properly respond to this evidence, yet failed to do so.

[9]  Similarly, Plaintiff misstates the testimony from Defendant East and Principal Negroe to imply these were fabricated, but a complete read of the transcripts does not evidence any inconsistencies.  That a witness may have had some hesitation in his identification, but later swore to and confirmed the identification does not make the statement inconsistent.  In fact, Defendant East clearly has Tobias in mind simply because he recognized Tobias' hair.  Plaintiff's Ex. 6 at 10:17-11:2 ("I mean, the full head of hair is throwing me off a little bit. . . . Unless he shaved it and he did have more hair last week. . . . Officer Motto: Who are you thinking of? . . . Officer East: It's Art Tobias.").

- 13 -

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

ORBACH HUFF SUAREZ & HENDERSON LLP

comparison, Plaintiff makes no showing of any evidence to suggest that the identifications were fabricated, other than mere conjecture and conclusory statements. Opp. at 42 "Cooley's claim is utter nonsense. . . . It is questionable whether *anyone* would be able to make a reliable suspect identification from the video . . . Cooley's identification was simply made up." The opinions and speculation offered by Plaintiff in opposition to this Motion are precisely the kind of speculation and conjecture "that courts have held will not defeat a motion for summary judgment." *Glass v. Intel Corp.*, No. CV-06-1404-PHX, 2009 WL 649787, at *7 (D. Ariz. March 11, 2009); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). Further, the Court need not draw all possible inferences in the nonmoving party's favor, but only all *reasonable* ones, and a reasonable inference is one based on more than mere speculation, conjecture, or fantasy. *Villiarimo*, 281 F.3d at 1065.

Moreover, none of Plaintiff's so-called evidence references any fabrication. At most the evidence of potential inconsistencies in the statements or that references in the report were "unsourced" is circumstantial. Notwithstanding the fact that the statements *are* consistent when read as a whole, because the evidence is circumstantial, Plaintiff must prove either: (1) [d]efendants continued their investigation . . . despite the fact that they knew or should have known that [the plaintiff] was innocent; or (2) [d]efendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information. *Caldwell,* 899 F.3d at 1112. Plaintiff has demonstrated neither of these with respect to the witness identifications or the police reports.[10] Accordingly, Defendants' Motion for Summary Judgment must be granted.

---

[10] Plaintiff's opposition also refers in passing to Arteaga's notes and reports concerning East and Arteaga's handwritten notes, but makes no specific allegations that these items were fabricated. To the extent Plaintiff implies that these further the fabrications of the identifications made by East, Born or Cooley, as stated above, Plaintiff has not demonstrated the identifications were fabricated, thus the notes or reports relying on them could not be said to be fabricated either.

Detective Defs' Reply in Support of Motion for Summary Judgment [17-cv-01076-DSF-AS]

ORBACH HUFF SUAREZ & HENDERSON LLP

ORBACH HUFF SUAREZ & HENDERSON LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### D.    Defendants are Entitled to Qualified Immunity

To the extent the Court finds that any of the actions undertaken by the individual Detective Defendants were inappropriate, it must still address the issue of qualified immunity.  Officers performing discretionary functions are entitled to qualified immunity from damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Thorsted v. Kelly*, 858 F.2d 571, 573 (9th Cir. 1988) [quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)].  Rather than acknowledge the guidance provided by the Supreme Court in *White v. Pauly* (137 S.Ct. 548 (2017)), Plaintiff blindly argues that the mere possibility of a civil rights violation automatically precludes application of the qualified immunity doctrine.  Not so.  The concept of immunity assumes that public officers may err. *Scheuer v. Rhodes*, 416 U.S. 232, 242 (1974).

As discussed hereinabove and in Defendants' moving papers, the entirety of the Detective Defendants' actions were objectively reasonable and were supported by clearly established law.

### III.    CONCLUSION

When viewing the facts in their entirety, there is no question that the actions by each of the individual Detective Defendants were lawful and appropriate.  Accordingly, Defendants Detectives Arteaga, Cortina, Motto and Pere respectfully request this Motion be granted in its entirety.

Dated:  August 27, 2018         Respectfully submitted,

ORBACH HUFF SUAREZ & HENDERSON LLP

By: _____ /s/  Kevin E. Gilbert _____
        Kevin E. Gilbert
        Attorney for Defendants
        DETECTIVES MICHAEL ARTEAGA,
        JEFF CORTINA, JOHN MOTTO
        and JULIAN PERE

- 15 -