David B. Owens, Cal. Bar No. 275030
david@loevy.com
Anand Swaminathan*
*Attorney for Plaintiff, Art Tobias*
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
*admitted pro hac vice

Charles Snyder
csnyder@kbkfirm.com
KENDALL BRILL KELLY
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067
(310) 556-2700

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ART TOBIAS,<br><br>           Plaintiff,<br>   v.<br><br>CITY OF LOS ANGELES, et al.<br><br>           Defendants. | Case No. 2:17-cv-1076-DSF-AS<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* (#2) CONCERNING PRIOR BAD ACTS**<br><br>Date:         October 29, 2018<br>Time:        3:00 p.m.<br>Courtroom: 7D<br>Judge:       Hon. Dale S. Fischer |

i

# TABLE OF CONTENTS

I. Introduction .......................................................................................... 1

II. Legal Standards ................................................................................... 2

III. Bifurcating the *Monell* Claim Would Extend the Length of the Trial and Prejudice Plaintiff, and Should be Rejected .......................... 3

IV. Defendants Have Not Offered any Legitimate Justification For Bifurcating Punitive Damages ............................................................ 12

# TABLE OF CONTENTS

*Afshar v. Sacramento*, 2007 WL 779748 (E.D. Cal. Mar. 14, 2007) ............. 2

*Aoki v. Gilbert*, 2015 WL 5734626 (E.D. Cal. Sept. 29, 2015).................. 2, 3

*Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) ....................... 6

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) .................................. 4, 5

*Dickerson v. United States,* 530 U.S. 428 (2000) ............................................ 4

*Dubria v. Smith*, 224 F.3d 995 (9th Cir. 2000)............................................... 12

*Estate of Alderman v. City of Bakersfield*, 2018 WL 4156740
    (E.D. Cal. Aug. 28, 2018)............................................... passim

*Fairley v. Luman*, 281 F.3d 913 (9th Cir. 2002)............................................... 5

*Gibson v. Cty. of Washoe*, 290 F.3d 1175 (9th Cir. 2002) ............................. 6

*Hirst v. Gertzen*, 676 F.2d 1252 (9th Cir.1982).............................................. 2

*Jimenez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013) ............................. 8

*Johnson v. Hawe*, 388 F.3d 676 (9th Cir. 2004)........................................... 10

*Kimbro v. Miranda*, 2015 WL 7353927 (E.D. Cal. Nov. 20, 2015)............. 11

*M.H. v. Cty. of Alameda*, 62 F. Supp. 3d 1049 (N.D. Cal. 2014).................... 5

*Martinez v. City of Oxnard*, CV 98–9313, 2005 WL 1525102
    (C.D. Cal. June 23, 2005) ................................................................. 9

*Mellen v. Winn*, 900 F.3d 1085 (9th Cir. 2018).................................. 8, 9, 10

*Miller v. Am. Bonding Co.*, 257 U.S. 304, 307 (1921) .................................. 2

*Nicomedes v. Clift*, 2009 WL 426608 (W.D. Wash. Feb. 19, 2009) .......... 2, 3

*Reed v. Lieurance*, 863 F.3d 1196 (9th Cir. 2017) ........................................ 10

*Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776 (9th Cir. 2018).................. 12

*Ryan v. City of Salem*, 2017 WL 2426868
	(D. Or. June 5, 2017) ................................................................ 8, 9, 10

*Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010) .............  5

*United States v. Preston*, 751 F.3d 1008 (9th Cir. 2014)................................ 4

*Velazquez v. City of Long Beach*, 793 F.3d 1010 (9th Cir. 2015) ................ 12

**STATUTES**

FED. R. CIV. P. 42(b) ........................................................................................ 2

## I. Introduction

Defendants' motion is full of proclamations and scary scenarios: Prejudice! Inefficiency! But a quick glance at Defendants' motion reveals that there is no substance to those claims. By way of example, Defendants assert that if *Monell* is not bifurcated, there will be "untold additional witnesses" that have to be called. (Dkt. 183 at 3.) Who? Defendants don't say. In reality, Plaintiff is not aware of a single "*Monell*-only" witness, that is, someone who would be called in a *Monell* phase but not in an individual liability phase. To the contrary, because a *Monell* trial is inevitable, and because there are numerous "hybrid" witnesses that would need to be called in an individual phase and then again in a *Monell* phase, bifurcation can serve only to extend the length of the trial, and increase the costs. And again, conclusory proclamations of prejudice aside, Defendants do not identify what specific *Monell* evidence they expect to be introduced that would cause the individual officers to suffer prejudice. Plaintiff is not aware of any.

Ultimately, because Defendants' motion is devoid of specifics, there is no reasoned debate or resolution to be had. And accordingly, Defendants cannot sustain their burden of demonstrating that exceptional circumstances exist such that bifurcation is warranted on the facts of this case.

## II. Legal Standards

"Absent some experience demonstrating the worth of bifurcation, separation of issues for trial is not to be routinely ordered." *Estate of Alderman v. City of Bakersfield*, 2018 WL 4156740, at *1 (E.D. Cal. Aug. 28, 2018) (citing *Afshar v. City of Sacramento*, 2007 WL 779748, at *1 (E.D. Cal. Mar. 14, 2007)). "Generally, the presumption is that all claims in a case will be resolved in a single trial, and it is only in exceptional circumstances where there are special and persuasive reasons for departing from this practice that distinct causes of action asserted in the same case may be made the subject of separate trials." *Nicomedes v. Clift*, No. C05-1154-JCC, 2009 WL 426608, at *1–2 (W.D. Wash. Feb. 19, 2009) (quoting *Miller v. Am. Bonding Co.*, 257 U.S. 304, 307, 42 S.Ct. 98, 66 L.Ed. 250 (1921)) (internal quotations and citations omitted).

Motions for bifurcation are governed by Rule 42 of the Federal Rules of Civil Procedure. "Courts may consider several factors in determining whether bifurcation is appropriate, including whether the issues are clearly separable, and whether bifurcation would increase convenience and judicial economy, reduce the risk of jury confusion, and avoid prejudice to the parties." *Aoki v. Gilbert*, 2015 WL 5734626, at *4 (E.D. Cal. Sept. 29, 2015) (citing *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir.1982)); *Nicomedes*, 2009 WL 426608, at *1–2 (citing FED. R. CIV. P. 42(b)).

Defendants bear the burden of proving, with evidence as opposed to speculation and conclusory assertions, that the factors above favor bifurcation. *See Aoki*, 2015 WL 5734626, at *4 (E.D. Cal. Sept. 29, 2015); *Nicomedes*, 2009 WL 426608, at *1–2 ("A defendant seeking bifurcation has the burden of presenting evidence that a separate trial is proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties." (citing *McCrae v. Pittsburgh Corning Corp.*, 97 F.R.D. 490, 492 (D.C. Pa. 1983)).

### III. Bifurcating the *Monell* Claim Would Extend the Length of the Trial and Prejudice Plaintiff, and Should be Rejected

When one considers the actual facts of *this* case, it becomes clear that bifurcation would not shorten the trial but actually extend it. Defendants claim to the contrary—that judicial efficiency would be promoted by splitting individual and *Monell* liability into separate phases, since a single trial would require calling "untold additional witnesses," (Dkt. 183 at 3)—but their argument is unsupported, and rests on two false premises. First, that if the individual defendants prevail at the first trial, then no additional trial on the *Monell* claim is necessary. Second, that there are a number of witnesses whose testimony is only related to Plaintiff's *Monell* claims, and so bifurcation creates the opportunity to reduce the length of the trial if Defendants prevail on individual liability. Both premises are wrong.

*First*, even if all of the individual Defendants were to prevail on all claims in an individual liability trial, there would still need to be a *Monell* phase against the

3

City of Los Angeles. Indeed, the jury will be asked to evaluate the actions of each Defendant individually. A jury could conclude, with regard to the coerced confession claim for example, that (1) Plaintiff's constitutional rights were violated because the interrogation was coercive under the Fifth Amendment under the "totality of the circumstances," but (2) that no particular Detective Defendant committed enough misconduct, on his own, to warrant liability. *Cf. United States v. Preston*, 751 F.3d 1008, 1016 (9th Cir. 2014) (en banc) (fifth amendment involves an "an inquiry that 'takes into consideration the totality of all the surrounding circumstances—*both* the characteristics of the accused *and* the details of the interrogation'") (quoting *Dickerson v. United States,* 530 U.S. 428, 434 (2000)). Especially where, as here, the interrogation was conducted by different Detectives at different times. So, a jury could conclude that that while neither Detectives Cortina and Pere, on one hand, or Detective Arteaga, on the other, should be liable individually, that Plaintiff's constitutional rights were nonetheless violated in the totality of the circumstances.[1]

As another example, a jury might find that Plaintiff's interrogation was unconstitutionally coercive, but that the primary cause was the City's

---

[1] This fact, of course, distinguishes the circumstances here from those found in *City of Los Angeles v. Heller*, 475 U.S. 796 (1986). What *Heller* requires is an underlying constitutional *violation*, not individual *liability* for that constitutional violation. In an excessive force case, like *Heller*, the constitutional violation and individual liability, essentially, rise and fall together. Not so here.

unconstitutional policy that failed to distinguish between juvenile and adult interrogations, which at the same time reduced the culpability of the individual Defendants since they were not trained on or expected to follow such a distinction. *See, e.g., Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) (*Monell* liability without individual liability possible where jury could find the defendants lacked requisite intent because of inadequate policies).[2] Because the facts of this case are amenable to a number of scenarios in which there could be *Monell* liability even without a finding against any individual Defendants, a *Monell* trial will be required no matter what. *See Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) (distinguishing *Heller*, and stating, "If a plaintiff establishes he suffered a constitutional injury by the City, the fact that individual officers are exonerated is immaterial to liability under § 1983."); *Estate of Alderman v. City of Bakersfield*, 2018 WL 4156740, at *2–3 (E.D. Cal. Aug. 28, 2018) ("In this case, the court cannot conclude that plaintiff's *Monell* claims are solely premised on a theory that first require a finding of liability on the part of defendant officers."); *M.H. v. Cty. of Alameda*, 62 F. Supp. 3d 1049, 1082 (N.D. Cal. 2014); *see also Thomas*, 604 F.3d at 305; *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1196, 1198 (9th Cir. 2002), *overruled on other grounds* (in § 1983 case with element of deliberate indifference,

---

[2] Contrary to Defendants' cries of prejudice, discussed below, this dynamic is one in which the individual Defendants might actually *benefit* from introduction of evidence about the City's policies, or lack thereof.

affirming denial of summary judgment on *Monell* claims while affirming grant of summary judgment on individual claims). Accordingly, there are no judicial efficiencies to be gained by bifurcating *Monell*.

To the contrary, bifurcating *Monell* will only extend the length of the trial, regardless of whether the Court accepts the premise above or not. *Estate of Alderman*, 2018 WL 4156740, at *3 ("Without assurance that resolution of the first phase of the trial could be dispositive of the entire case, bifurcating the *Monell* claims from the individual claims appears to have no purpose other than resulting in duplicative proceedings undermining judicial economy.").

*Second*, as it concerns these "untold additional witnesses," Defendants have not identified any witnesses they believe would be "*Monell* only *i.e.*, who would be called only in a *Monell* phase after an individual liability phase. Plaintiff's primary witnesses in support of his claims—Plaintiff, the City's 30(b)(6) designees, the Defendants themselves, and Plaintiff's experts—will certainly be called in Plaintiff's individual case. Defendants superficial and conclusory assertions aside, when one delves into the details it becomes clear that there is most likely *not a single witness* that could be considered "*Monell*-only," *i.e.*, who would be called only in the *Monell* phase. At least not so far as Plaintiff can tell, and again Defendants have not offered any specificity to meet their burden of showing that the extraordinary step of bifurcating the trial would be appropriate here. . In other

words, Defendants have not put forth any basis, as they must to even have a chance at sustaining their burden on the present motion. It should be denied on that basis alone.

As a further consequence of Defendants' evidentiary failure, Plaintiff can only guess at what Defendants' argument would be. And Plaintiff's best guess is that Defendants would argue that its four 30(b)(6) designees are *Monell*-only witnesses. If that is their argument, it is wrong. Two of the 30(b)(6) witnesses, Jenks and Castillo, were designated as to policies and procedures related to homicide investigations, and as to juvenile interrogations, respectively; they will certainly be called as part of Plaintiff's case on the individual claims. One of the witnesses, Balani, assisted in translating and understanding the City's dispatch notes and emergency communications related to the Castaneda homicide; her testimony is clearly related to the individual case. The remaining 30(b)(6) witness, Grimes, may not be called at all, but if he is, his testimony would likely be offered to rebut or impeach the officers' testimony as it relates to their liability.

By way of example, focusing on the coerced confession, that claim requires consideration of the totality of the circumstances. (Dkt. 170 (Summary Judgment Opinion) at 12.) Whether the individual Defendants violated LAPD policies during the interrogation is of course relevant to their mental state, *e.g.*, whether they acted knowingly, deliberately, or recklessly, and the overall reasonableness of their

actions *See Mellen v. Winn*, 900 F.3d 1085, 1104 (9th Cir. 2018) (citing *Jimenez v. City of Chicago*, 732 F.3d 710, 721-22 (7th Cir. 2013)). An example may be instructive: Castillo explains that LAPD policy requires that a juvenile's request for a parent be treated as a request for an attorney, requiring the officer to cease all questioning. Ex. 1 (Castillo Dep.) at 34:11-37:12. If this policy was ignored (as it unquestionably was, based on the videotaped interrogation), it makes it "more . . . probable than it would be without the evidence," Federal Rule of Evidence 401, that Defendants' conduct was intentional. *See Ryan v. City of Salem*, 2017 WL 2426868, at *2 (D. Or. June 5, 2017) (denying bifurcation of *Monell* because the "evidence of what [defendant officer] did in this case and what the City's policy allowed are . . . closely intertwined.").

The only other set of witnesses Plaintiff can think of that Defendants would argue are "*Monell*-only" are the police practices and false confession experts. But that argument would be wrong. Plaintiff's police practices expert, Mr. Williams, opines primarily about whether Defendants complied with generally accepted police practices and LAPD policies, all testimony that is squarely relevant to Plaintiff's individual claims, for the reasons set forth above and in response to Defendants' motion *in limine* No. 1. He also offers opinions about Plaintiff's *Brady* claims, also an individual liability issue. Plaintiff's false confessions expert, Dr. Richard Leo, opines about the phenomenon of false confessions, and the

various factors and indicators associated with false confessions. This testimony is highly relevant to both Plaintiff's coerced confession claim, and his *Monell* theory about the City's interrogation policies.

So, all of these witnesses would testify in Plaintiff's individual case. As such, there is no possibility of shortening the trial, and instead bifurcation only creates the possibility of *extending* the trial because all of these "hybrid" witnesses—30(b)(6) designees and experts—would have to be called again in a second *Monell* phase. *Ryan v. City of Salem*, No. 3:16-CV-0565-AC, 2017 WL 2426868, at *2 (D. Or. June 5, 2017) (denying bifurcation and noting that bifurcated trials on *Monell* claims consume more judicial resources if the jury finds a constitutional violation in the first trial, citing *Martinez v. City of Oxnard*, CV 98–9313, 2005 WL 1525102 (C.D. Cal. June 23, 2005)); *Nicomedes*, 2009 WL 426608, at *1–2 (W.D. Wash. Feb. 19, 2009) (denying *Monell* bifurcation because "extensive overlap in witness testimony does not further Rule 42(b)'s goals of efficiency and convenience"). Accordingly, judicial efficiency favors a single, non-bifurcated trial.

*Prejudice*

Defendants invoke the specter of prejudice to the individual Defendants from *Monell* evidence, but as above, they don't say *how* they would suffer any prejudice. Indeed, they fail to identify what witnesses or evidence would actually

9

be prejudicial. To the extent they say anything at all, they make general reference to policies and training as potentially prejudicial. That argument is baseless.

As an initial matter, the notion that policies and training might be prejudicial is highly dubious. *Ryan*, 2017 WL 2426868, at *3 (in denying bifurcation of *Monell*, stating that "written policy documents are not the type of highly prejudicial evidence warranting bifurcation"). Indeed, the Ninth Circuit's repeated holding that policies and training are relevant circumstantial evidence of an officer's mental state should end the debate altogether. *See, e.g., Mellen v. Winn*, 900 F.3d 1085, 1104 (9th Cir. 2018); *Reed v. Lieurance*, 863 F.3d 1196, 1209 (9th Cir. 2017); *Johnson v. Hawe*, 388 F.3d 676, 686 (9th Cir. 2004).

Moreover, as discussed above, LAPD policies related to *Miranda* and parental notification are highly relevant to individual liability, and thus evidence about policies are probative far beyond any prejudicial effect. In addition, the other set of relevant policies are those relevant to Plaintiff's *Monell* theory, which centers around *failures* in LAPD's policies and training around juvenile interrogations, which are not enacted by the individual Defendants. It is hard to see how the *individual* Defendants would suffer prejudice from the *City's* failure to enact appropriate policies. If anything, the individual Defendants arguably stand to benefit: the City's failure to issue policies that juveniles should be interrogated differently may, in the jury's mind, lessen the culpability of the individual

Defendants for failing to adjust their tactics to account for Plaintiff's age. Indeed, *Monell* bifurcation based on prejudice is more common in cases where the *Monell* theory requires the admission of inflammatory evidence against the individual Defendants, like prior allegations of misconduct or discipline.[3] Here, Defendants do not even claim that the admission of such information is at issue, and so their arguments about prejudice fall flat. *Kimbro v. Miranda*, 2015 WL 7353927, at *3 (E.D. Cal. Nov. 20, 2015) (denying motion to bifurcate because claims of prejudice were "purely speculative").

To the extent the Court finds that there is some perceived prejudice to the individual Defendants from the introduction of evidence related to policies or training, that prejudice is best addressed through an instruction advising the jury of the limited purpose for which such evidence is being offered. *See Estate of Alderman v. City of Bakersfield*, No. 116CV00994DADJLT, 2018 WL 4156740, at *2 (E.D. Cal. Aug. 28, 2018) ("The use of limiting instructions has been recognized as an effective manner to prevent the jury's consideration of prejudicial evidence." (citing *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 806–07 (9th Cir. 2018))); *see also Velazquez v. City of Long Beach*, 793 F.3d 1010, 1028 (9th Cir.

---

[3] But even evidence as potentially prejudicial as prior officer-involved shootings may not warrant bifurcation, particularly when a limiting instruction is used. *See Estate of Alderman v. City of Bakersfield*, No. 116CV00994DADJLT, 2018 WL 4156740, at *2 (E.D. Cal. Aug. 28, 2018) ("The court finds that the potential prejudice of evidence of prior officer-involved shootings can be cured by limiting instructions and thus, this argument does not weigh in favor of bifurcation.").

2015) (district court's concern of permitting evidence implicating Rule 404(b) could "have been cured short of categorical exclusion by an appropriate limiting instruction."); *Dubria v. Smith*, 224 F.3d 995, 1002 (9th Cir. 2000) ("Ordinarily, a cautionary instruction is presumed to have cured prejudicial impact.").

Finally, considerations of prejudice actually favor a single trial. As discussed above, a second phase would inevitably be necessary, in which "hybrid" witnesses like Plaintiff's experts would need to be called again. As a result, the trial would be longer, and in turn more costly for Plaintiff, which includes a second round of expert costs for testimony, travel and lodging.

For all of these reasons, the Defendants cannot meet their burden, and the Court should deny Defendants' request to bifurcate the *Monell* claims into a second trial phase.

### IV. Defendants Have Not Offered any Legitimate Justification For Bifurcating Punitive Damages

Defendants' argument for bifurcating punitive damages is equally unconvincing. As an initial matter, Defendants indicate in their motion that they do not seek to bifurcate compensatory damages from liability because "witnesses in support of Plaintiff's compensatory damages will likely and largely be the same as the fact witnesses to liability," and so they admit "there is likely to be less judicial economy and less jury confusion saved by bifurcation." (Dkt. 183 at 5, n.1.) But this same argument applies to punitive damages—the witnesses in support of

12

punitive damages will "likely and largely be the same as fact witnesses to liability," *i.e.*, Plaintiff, the parties' experts, and the individual Defendants. For the same reason that Defendants concede compensatory damages should not be bifurcated, punitive damages also should not be bifurcated.[4]

Second, in assessing Plaintiff's individual claims, the jury will have to consider whether Defendants had the requisite intent. This includes, for example, consideration of whether they acted deliberately or recklessly (in the case of the coercion claims) and whether they acted with deliberate indifference or reckless disregard (in the case of the *Brady* claim). The analysis for punitive damages—whether Defendants acted maliciously, recklessly or oppressively—is nearly identical. So, the time for the jury to assess whether punitive damages are appropriate, and the amount, is when they are engaging in the overlapping assessment of Defendants' intent and overall culpability. Indeed, to artificially sever the analysis would introduce the risk of arbitrary and erroneous distinctions in the jury's deliberations and ultimately prejudice Plaintiff.

Third, because of the overlapping assessments of intent and deliberateness associated with individual liability and punitive damages, evidence on these issues would have to be presented twice, prolonging the trial.

---

[4] More likely, Defendants favor compensatory damages being tried with liability in the hope that damages provide a door through which they can introduce as much bad acts evidence against Plaintiff as they can.

Finally, Defendants' remaining argument to try to sustain their burden is another conclusory, but ultimately unsupported, one: that hearing punitive damages with liability will "inflame the jury" and create a risk that if one officer is found to have acted maliciously toward Plaintiff (warranting punitive damages), the jury "will likely be so upset by the outrageous conduct . . . that they will penalize . . . other officers . . . and find the other defendants liable regardless of whether those other officers had actually committed any violations." (Dkt. 183 at 6.) Defendants cite nothing in support of this assertion. Nor could they—the argument contradicts the entire method by which jury trials are conducted. Trials, and verdict forms, address claims against multiple defendants as a matter of course. In fact, if there was any validity to Defendants' argument that the jury's findings against one defendant would prejudice their findings against another defendant, the solution would not be to bifurcate punitive damages alone, but rather to bifurcate the claims against every Defendant, so that the claims against each Defendant were tried separately. Plaintiff is not aware of any civil trial in which that has been done, and Defendants cite none.

For all of these reasons, Defendants' motion to bifurcate punitive damages should also be rejected.

Conclusion

Defendants' motion *in limine* seeking bifurcation of *Monell* liability and punitive damages into a second trial phase should be denied.

By: /s/ Anand Swaminathan
*Attorneys for Plaintiff*

Anand Swaminathan*
David B. Owens, Cal. Bar No. 275030
anand@loevy.com
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
(312) 243-5902 (Fax)
*admitted pro hac vice