# EXHIBIT 4

**TO PLAITNIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE*
NUMBER 2, SEEKING EXCLUSION OF EXPERT TESTIMONY**

Dr. Richard A. Leo, Ph.D., J.D.
**JUSTICE RESEARCH & CONSULTING, INC.**
15 Ashbury Terrace
San Francisco, CA 94117

_____

(415) 661-0162 (Phone)
(415) 422-6433 (FAX)
Email: rleo@usfca.edu

July 15, 2018

David Owens,
Attorney at Law
Loevy and Loevy
311 N. Aberdeen Street, 3rd Floor
Chicago, IL

Re:     *Art Tobias v. City of Los Angeles, et al.*  Case No: 17-cv-01076 DSF-AS

Dear Mr. Owens:

This report supplements my prior reports in the above-referenced case of *Art Tobias v. City of Los Angeles, et al.*

Since my last report, I have reviewed the deposition of Plaintiff Art Tobias. My conclusions about the interrogation techniques employed in Mr. Tobias' interrogation remain unchanged.

Tobias's deposition, in fact, provides further support for my conclusions, including but not limited to the following testimony:

*Requests for Mother*

- Mr. Tobias is asked why he asked to speak with his mother and replied "think it's safe to say in general I was asking about her because I feel like I needed her" (P.345).

*Why he Confessed*

- Mr. Tobias is asked "why did you confess to being involved in the shooting on Alvarado Terrace" and responds: "Because Detective Arteaga said I will be a cold-blooded fucking killer and that I'd get more time." (P. 211).

David Owens
Attorney at Law
July 15, 2018
Page 2

- Mr. Tobias affirms that he said something similar to his mother after the interrogation and added that he had confessed "because they forced me to." (P. 213-14).

*Threats and Promises*

- Mr. Tobias was asked whether he told his mother that he confessed. "I'm going to tell you straight up I was wasn't there. They told me that if I – that if I didn't say that I did it, that I'm a cold-blooded killer and I'm going to get more time." (P. 213)

- Mr. Tobias was asked "did they make any threats to you," responded "yes they did" and elaborated: "That if I didn't say the truth that they'd tell the judge and that I'd get a lot of fucking time, and they threw pieces -- bits and pieces about my dad, my mom. They made false things that made me feel like shit." (P. 214).

- Mr. Tobias further elaborated: "Like talking to my -- talking to me about my dad, how he's schizophrenic, my three sisters, how my mom supposedly pointed me out in the video. They didn't let me talk to my mom and she was there the whole time. (P. 214).

- "Threatening me that I'm going to get more time if I don't admit to whatever they were talking about." (P. 273)

- Responding to a question about whether the officers told him something to the effect of "tell us this and you'll get off scot free and nothing will happen" and responding: "Not exactly what you said, but they used kind of that kind of context in what they were telling me saying that if I told them the truth, whatever that was to them, that it would help me at and that they just wanted to help me, the judge would be more compassionate and that – you know, it would be a lot better for myself." (P. 288).

- Concerning what the detectives said about the "judge's decision as to what happens with the case," Mr. Tobias testified "I believe they – they briefly told me that kind of whatever they say or however they type up the report would make a difference." (P. 288-89).

- How confessing would help him: "Well, If I told them their version of the truth, which was what they really wanted, that the judge would see me as a kid who needed help and I wouldn't get as much time, rather than me not telling them the truth and he would see me as a cold-blooded killer and not giving a fuck, and I would get a lot of time." (P. 290).

*Invocation Issues*

- Q: You were talking to the officers voluntarily, weren't you? A: If I was, the entire time it wasn't willingly. I felt like I was forced to." (P. 296).

David Owens
Attorney at Law
July 15, 2018
Page 3

- Q: At any time during your interrogation, did you tell the officers you did not want to speak to them or words to that effect?" … "It was when Detective Pere showed me the surveillance video of the shooting and he told me that it was me, and when I asked who it was I said, 'No, wait, that's not me, can I have an attorney, because that's not me in the video,' and he said, "No, but don't—you'll have the opportunity later,' just like that. (P. 297).

- Q: How did you tell the officers that you wanted to remain silent? A: I said, 'Could I have an attorney, because that's not me in the video." (P. 298).

- Mr. Tobias understood his request for his mother as an invocation of his *Miranda* rights, given his age. (P. 298-99).

*Psychological Coercion.*

In my report and at my deposition I described the process over psychological coercion and interrogation being meant to make a suspect feel that they have no other option but to confess. Mr. Tobias's deposition is consistent with the empirical social science research literature and my prior reports on this point. For example:

- Mr. Tobias was asked why he confessed: "Because Detective Arteaga said I will be a cold-blooded fucking killer and that I'd get more time." (P. 211)

- Mr. Tobias was asked how the interrogation made him feel and responded: felt – "at the moment, I felt helpless. I still do. At the moment, I feel helpless, useless, like a piece of shit." (P. 215).

*Physical Presence and Intimidation*

- Tobias was asked about physical injury or bodily harm, and testified that, while he was not verbally threatened with physical injury the detectives used their "scooting of their he chairs," and "getting up close and personal." (P. 272-73).

- "I know they had guns out in the open. And they were up close and personal." (P. 274).

- Mr. Tobias is asked about the officer's guns and in the course of responding testified: "The way I was approached, the way I was being talked to, screamed, put down, they were in my face. I felt cornered, trapped by the way they were approaching me. And the guns and their demeanor, they didn't – it didn't help me, or I feel I was –it was not right in any way." (P. 275-76).

David Owens
Attorney at Law
July 15, 2018
Page 4

- Referring to guns, "He got up close and personal with me and it was like right in my face. Not – not literally, but it was close enough to, you know, make me nervous." (P. 276).

*False Evidence Ploys*

- Mr. Tobias states that during the interrogation the detectives "mad false things that made me feel like shit "and when asked what, he replies, "how my mom supposedly pointed me out in the video. (P. 214).

- "They told me that my mom pointed me out, when she didn't" (P. 273).

- "I believe that officers do have the right to use ruses, but I believe that the ones that were used against me were more than what should be allowed and they -- you know, they used their batons, they rubbed up on me with their guns and their holsters, they had business cards on the table, and stuff like that." (P. 273).

The opinions I express in this report are based on my training, knowledge, research, and publications; research and publications in the field; my experience in the field; and the case-specific information and evidence that has been provided to me. I reserve the right to supplement and/or modify any opinions expressed herein should additional information or evidence come to light.

If you have any questions, please do not hesitate to contact me.

Sincerely yours,

*[signature]*

Richard A. Leo, Ph.D., J.D.
Hamill Family Professor of Law and
Social Psychology
University of San Francisco