David B. Owens, Cal. Bar No. 275030
Anand Swaminathan, *pro hac vice*
david@loevy.com
anand@loevy.com
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

Charles J. Snyder, Cal Bar No. 287246
csnyder@kbkfirm.com
KENDALL BRILL KELLY
10100 Santa Monica Boulevard, Suite 1725
Los Angeles, California 90067
(310) 556-2700
*Attorneys for Plaintiff, Art Tobias*

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ART TOBIAS,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF LOS ANGELES, et al.<br><br>    Defendants. | Case No. 2:17-cv-1076-DSF-AS<br><br>**PLAINTIFF'S SUPPLEMENT IN SUPPORT OF MOTION *IN LIMINE* NO. 5 TO BAR REFERENCE TO THE CRUZ HOMICIDE**<br><br>DATE:     November 19, 2018<br>TIME:     2:00 p.m.<br>DEPT:     Courtroom 7D<br>JUDGE:   Hon. Dale S. Fischer |

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## Introduction

The Court indicated at the pretrial conference that it was likely to bifurcate the trial into liability and damages phases, and that it would not permit evidence regarding the Cruz homicide during a liability phase of the trial, but that it might permit such evidence during a damages phase. Defendants presented arguments challenging this ruling. Because these arguments were presented at the very end of the hearing, Plaintiff did not have an opportunity to respond. Plaintiff therefore responds briefly to those arguments as follows.

1. In addition to arguments raised in Plaintiff's motion *in limine* No. 5 and his reply in support of that motion (Dkt. 193, 232), Plaintiff provides this brief supplement to address the new argument Defendants raised at the pretrial conference seeking to admit the highly inflammatory Cruz shooting in the liability phase: that Plaintiff was (or thought he was) confessing to the Cruz homicide.

2. This argument is unsupported by the record. Indeed, as Plaintiff noted in his reply brief (Dkt. 232 at 3-5, 10), a fundamental problem with Defendants' arguments for the admission of other acts evidence is that they are unsupported and untrue. They make arguments premised on certain factual bases; but those factual bases are stated without citation. The same is true of the most recent argument that Plaintiff was (or thought he was) confessing to Cruz, not Castaneda. Defendants deposed Plaintiff for more than seven hours over two days; nowhere in that deposition did Defendants obtain testimony that, by falsely agreeing that he was the the person depicted in the video of the Castaneda shooting, Plaintiff's inculpatory statements were for the Cruz case. In fact, the evidence in

this case confirms the opposite: that Plaintiff was confessing, falsely, to the Castaneda homicide.

3. As an initial matter, despite Defendants' efforts to paint Plaintiff as some sort of "bad" 13-year old, it bears emphasizing that before one fateful night in August of 2012, Plaintiff had *no* criminal record. He had never been arrested for anything, let alone something as serious as a homicide, and had absolutely *zero* prior adjudications or convictions. Dkt. 138-1 (Affirmative Statement of Fact) at ¶140; Dkt. 132-48 (Pere Dep.: "So you knew at the time. . . that Mr. Tobias had no juvenile sustained petitions and no prior active convictions or other pending cases, correct? A. Correct."). Tobias did find himself at the scene of a shooting on Leeward Avenue that evening, himself a victim of older gang members trying to prey on the impressionable youth who live in tough neighborhoods of Los Angeles where gangs falsely offer a "way out," especially to kids looking for a father figure. He did not shoot anyone; and he did not know that a shooting was going to occur. He was in a car with a baby and an older gang member, who committed a homicide that Plaintiff was involuntarily wrapped up in, as the charge against him confirms. *See generally* Dkt. 146-3 (Plaintiff's proffer statement) at PS1681-82, PS1688-1692 (under seal)

4. Turning to Defendants' argument about Plaintiff purportedly confessing to Cruz, Plaintiff could not have thought he was confessing to Cruz, since the facts of the Castaneda and Cruz shootings are very different. As the Court knows, the Castaneda shooting involved two perpetrators walking up to a group of people near the corner of Alvarado Terrace and shooting into a crowd indiscriminately. One of those shooters is depicted in surveillance footage walking

down the sidewalk firing his weapon. The Cruz shooting, by contrast, involved a single adult shooting into a house on Leeward Avenue, something that Plaintiff did not even observe because he was around the corner in an alley. Indeed, Plaintiff was so "shocked" by the fact of the shooting he had to be roused by the other teenager with them that day. *See generally* Dkt. 146-3 (Plaintiff's proffer statement) (under seal) at PS1691; Ex. 1 (Tobias Dep.) at 185-86. Moreover, Plaintiff could not have been confessing to Cruz when the facts he was falsely agreeing to— having a gun in his hand, walking along a sidewalk, and shooting at members of the 18th Street gang —were *not* things he even did when he was around the corner from an adult shooting into a home in the Cruz case.

    5.    Indeed, after *Mirandizing* Plaintiff, Defendants immediately showed him a video of the Castaneda shooting and confronted him by saying that he was the person in video, making abundantly clear that they were accusing him of a crime at a different location and with different circumstances than Cruz. Dkt. 132-14 (Tr. of Interrogation) at 21-22, 26-27 (filed under seal). Making it even more clear, very quickly after showing him the video the Defendants told him the time of the shooting ("after midnight"), and the exact location of the shooting they were accusing him of ("Alvarado Terrace"), *i.e.*, details about the Castaneda shooting (and not Cruz). *Id.* at 27-30 (filed under seal). Plaintiff was fed these details, and specifically stated that the time and the location clearly revealed that it was not him. *Id.* So, from the very outset it was completely clear that they were accusing Plaintiff of the Castaneda homicide, and Plaintiff repeatedly denied it.

    6.    Further, after Plaintiff initially relented in the face of Defendant Arteaga's questions and began falsely confessing to the Castaneda homicide,

3

Plaintiff's Supplement In support of Motion to Certify
2:17-cv-1076-DSF-AS

1 Defendant Pere came back into the room and continued obtaining false inculpatory
2 statements. Most signficiantly, Defendant Pere got Plaintiff to falsely confirm that
3 he was the person depicted in the surveillance video he had shown Tobias earlier;
4 that is, the video footage of the Castaneda shooting. 132-14 (Tr. of Interrogation)
5 at 74-75.[1]

6     7.    Put simply, it was clear, from beginning to end, that Plaintiff was
7 being interrogated about and made to confess to the Castaneda homicide. The
8 evidence does not  support Defendants' brand new assertion that Plaintiff was
9 confessing to the Cruz case.  Accordingly, for that, and all of the other reasons set
10 forth in Plaintiff's brief and reply, the Cruz homicide should be barred altogether,
11 including in particular from a trial on liability.

12     8.    Finally, Plaintiff recognizes that the Court gave preliminary indication
13 that although it would not admit evidence related to the Cruz homicide in a liability
14 phase, that it believed such evidence may be relevant to damages (and therefore
15 admissible in that phase). Cruz is not admissible for damages because Defendants'
16 argument rests on a premise that is just wrong. Plaintiff emphasizes that, despite
17 Defendants' uncited argument that Plaintiff received "time served" for Castaneda,
18 that is not true. These are two different cases, with different judges and entirely
19 different circumstances. For pleading to *involuntary* manslaughter in Cruz,
20 Plaintiff received probation, as he stated at his deposition and as his attorney who
21 handled the Cruz plea will testify at trial. No evidence has ever been disclosed to
22 suggest that Plaintiff received "time served" for Cruz, and indeed Defendnats do

---

[1] This is contrary to counsel's insinuation that Arteaga was the only one involved in obtaining the the confession statement, which was incorrect. *See* Dkt. 132-14 (Tr. of Interrogation) at 75:11-14 (filed under seal).

4

Plaintiff's Supplement In support of Motion to Certify
2:17-cv-1076-DSF-AS

not cite any. The argument might have some appeal if there was any evidence to support it, but there is not. Thus, and given that Defendants have articulated no other arguments on this point, the fact that plaintiff was at most present during the Cruz incident is not relevant to damages.[2]

Respectfully submitted,

**ART TOBIAS**

Dated:   November 2, 2018            By:   /s/ Anand Swaminathan_____

       David B. Owens, Cal. Bar No. 275030
       Anand Swaminathan
       anand@loevy.com
       LOEVY & LOEVY
       311 N. Aberdeen Street, 3rd Floor
       Chicago, Illinois 60607
       (312) 243-5900

---

[2] Even if Defendants could come up with additional aruguments now, they would need to be rooted in *evidence*. Their arguments to date, however, are theoretical and speculative, and for that reason properly excluded under Rule 403. In addition, any arguments that Cruz is relevant to damages would also have to satisfy Rule 404. After all, simply invoking relevance to damages is not enough, since in many cases the relevance to damages is simply by way of improperly impugning charater: Plaintiff does X, in turn X means plaintiff is a person of bad character, in turn plaintiff should be awarded smaller damages. This is prohibited by Rule 404. *See, e.g.*, *Contreras v. City of Los Angeles*, 2012 WL 12893417, at *3 (C.D. Cal. Sept. 11, 2012) (barring criminal history other than felony conviction because it "raises a substantial risk that the jury will decide damages on the basis of Plaintiff's prior acts and associations, not the compensation owed").