# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART TOBIAS,<br>          Plaintiff,<br><br>          v.<br><br>CITY OF LOS ANGELES, et al.,<br>          Defendants. | CV 17-1076 DSF (ASx)<br><br>Order GRANTING in Part and DENYING in Part Motions in Limine (Dkts. 180-183; 190-194) |

Before the Court are motions *in limine* filed by Plaintiff Art Tobias and Defendants Officer Born, Officer Cooley, Officer East, Detective Arteaga, Detective Cortina, Detective Motto, Detective Pere (together, Individual Defendants) and the City of Los Angeles (City), (together, with the Individual Defendants, Defendants). [1]

## I.     DEFENDANTS' MOTIONS

Motion in Limine No. 1 to Exclude Plaintiff's Experts

Defendants challenge the admissibility of testimony from two of Plaintiff's expert witnesses, Dr. Richard A. Leo and

---

[1] All rulings on motions *in limine* are tentative.  The issues may be raised again during trial—outside the presence of the jury—if circumstances change.

Timothy T. Williams, Jr., and Plaintiff's rebuttal expert, Dr. Stephanie Marcy.  Defendants' Motion in Limine No. 1 is denied.

## A.  Dr. Richard A. Leo

### 1. Reliability

Defendants contend Dr. Leo's proffered testimony concerning coerced confessions and interrogation methods should be excluded because it is not based on reliable principles and methodologies as required by Federal Rule of Evidence 702(c), <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993) and <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137 (1999). [2]

District courts act as the gatekeeper for expert testimony by applying Federal Rule of Evidence 702 to ensure evidence is "not only relevant, but reliable." <u>Daubert</u>, 509 U.S. at 589; <u>Kumho Tire</u>, 526 U.S. at 147 (<u>Daubert</u> imposed a special "gatekeeping obligation" on trial judges for all expert testimony).  An expert witness may testify if:

    (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b)  the testimony is based on sufficient facts or data;

    (c)  the testimony is the product of reliable principles and methods; and

---

[2] Defendants also contend that Dr. Leo's proffered testimony is not credible. Credibility of an expert witness is a determination for the jury.  <u>See</u> <u>City of Pomona v. SQM N. Am. Corp.</u>, 750 F.3d 1036, 1053 (9th Cir. 2014) ("Expert testimony may be excluded by a trial court under Rule 702 of the Federal Rules of Evidence only when it is either irrelevant or unreliable.  Facts casting doubt on the credibility of an expert witness and contested facts regarding the strength of a particular scientific method are questions reserved for the fact finder.").

(d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The proponent of evidence bears the burden of proving the proffered testimony satisfies Rule 702.  See Cooper v. Brown, 510 F.3d 870, 880 (9th Cir. 2007).  In determining whether to allow expert testimony, the trial judge "must strike the appropriate balance between admitting reliable, helpful expert testimony and excluding misleading or confusing testimony to achieve the flexible approach outlined in Daubert."  U.S. v. Rincon, 28 F.3d 921, 926 (9th Cir. 1996).

The Court is given broad discretion to decide how to test an expert's reliability.  United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).  "The Daubert factors were not intended to be exhaustive nor to apply in every case."  Id. (citing Kumho Tire, 526 U.S. at 156).  "Whether Daubert's suggested indicia of reliability apply to any given testimony depends on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony.  It is a fact-specific inquiry."  Id. (quoting Skidmore v. Precision Printing & Packaging Inc., 188 F.3d 606, 618 (5th Cir. 1999)).

When the reliability of expert testimony depends heavily on the knowledge and experience of the expert, the Daubert factors of peer review, publication, potential error rate, etc. are not applicable.  See id. at 1169; Kumho Tire, 526 U.S. at 150. ("Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases. . . . In other cases, the relevant reliability concerns may focus upon personal knowledge or experience.").  "[I]n considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally."  Id. at 1168.

3

The Court finds Plaintiff has met his burden of showing that Dr. Leo's testimony is reliable.  Given the nature of the testimony, the relevant reliability concerns for Dr. Leo's testimony favor personal knowledge and experience.  Plaintiff has provided sufficient evidence of Dr. Leo's credentials and experience, including his education, work experience, publications, and awards in the field.  Dr. Leo has also reviewed the recording and transcript of Plaintiff's interrogation.

## 2. Qualified

Defendants contend Dr. Leo is not qualified as an expert on coerced confessions because he is not a licensed psychologist or psychiatrist and has not personally met with Plaintiff or conducted a personal evaluation.  Defendants' interpretation of the relevant qualifications is too narrow.

"The issue of qualifications is governed by Federal Rule of Evidence 702 which contemplates a broad conception of expert qualifications.  As the terms of the rule state, an expert may be qualified either by 'knowledge, skill, experience, training, or education.'  Moreover, the advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert." Thomas v. Newton Int'l Enters., 42 F.3d 1266, 1269 (9th Cir. 1994).

Plaintiff points to Dr. Leo's credentials and experience to support admission.  In addition to the qualifications discussed above, Dr. Leo earned a J.D. and a Ph.D in Jurisprudence and Social Policy with a specialization in Criminology and Social Psychology.  He currently is a professor and Dean's Circle Research Scholar at the University of San Francisco, and a Fellow at the Institute for Legal Research Criminal Justice Studies Program at the University of California, Berkeley.  Dr. Leo has worked in the area of interrogation methods and false confessions

for nearly two decades.  He has authored many publications concerning police interrogation practices, coercive interrogation techniques, and false confessions, and is a nationally recognized authority in those topics.  Dr. Leo has also taught courses on false confession and techniques for obtaining reliable confessions.  At the time of his expert report, Dr. Leo had qualified and testified as an expert concerning interrogation methods and false confessions approximately 350 times in federal, state, and military courts.  His publications have been cited by the Ninth Circuit.  E.g., United States v. Preston, 751 F.3d 1008, 1022, 1027 (9th Cir. 2014).  Dr. Leo has reviewed many of the parties' depositions, as well as Plaintiff's interrogation tape and video.

Dr. Leo is qualified to testify as an expert in interrogation methods and false confessions.

### 3. Admissibility

Defendants contend Dr. Leo will testify as to an ultimate issue, and the testimony will be prejudicial.  They also argue that Dr. Leo's testimony will confuse the jury by suggesting there is a proper interrogation standard.  Plaintiff states that Dr. Leo will not testify that Plaintiff's confession was coerced.  Rather, the testimony will concern why false confessions occur and when they are likely to happen.

"Expert testimony is admissible under [Rule] 702 if it addresses an issue 'beyond the common knowledge of the average layperson.'"  United States v Hanna, 293 F.3d 1080, 1096 (9th Cir. 2002) (quoting United States v. Morales, 108 F.3d 1031, 1039 (9th Cir. 1997)).

The Court finds Dr. Leo's testimony may be helpful to the trier of fact in determining whether the interrogation was coercive without invading the province of the jury.  See Fed. R. Evid.

704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").

The Court does have some concerns about Dr. Leo's testimony, however.  For example, the portion of Dr. Leo's opinion about the Detectives' intent is beyond his expertise – and is not admissible.  Counsel should meet and confer to identify such portions of the report and his opinions and advise him not to testify about issues beyond his expertise.

## B.  Dr. Leo and Timothy T. Williams, Jr.

Defendants seek to exclude Dr. Leo and Timothy T. Williams, Jr.'s testimony concerning the Los Angeles Police Department's and other various police departments' procedures and policies.  Defendants contend that compliance with internal polices or national procedural standards is irrelevant to whether the Individual Defendants' conduct violated Plaintiff's statutory or constitutional rights.  Defendants also argue that the testimony is not relevant because it is not based on federal standards.  Plaintiff argues the testimony may assist the trier of fact in determining whether official conduct was reasonable, or demonstrated deliberate indifference or reckless disregard, which is necessary for Plaintiff's Brady claims and claim for punitive damages.

"Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401; see also Fed. R. Evid. 702(a) (expert evidence may be admissible to "help the trier of fact . . . to determine a fact in issue.").  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." Primiano v. Cook, 598 F.3d 558, 565 (9th Cir. 2010) (quoting U.S. v. Sandoval-Mendoza, 472 F.3d 654, 655 (9th Cir. 2006)).

Violation of an internal police policy or regulation alone is insufficient for § 1983 liability.  <u>Case v. Kitsap Cty. Sheriff's Dept.</u>, 249 F.3d 921, 929 (9th Cir. 2001).  It does not follow, however, that testimony regarding conformity with standard police procedures is irrelevant.  <u>See</u> <u>Mellen v. Winn</u>, 900 F.3d 1085, 1104 (9th Cir. 2018) ("The [police practices expert] report should have been admitted to assist the trier of fact in determining whether [defendant's] conduct deviated so far from institutional norms that the jury could conclude that [defendant] was reckless or deliberately indifferent to [plaintiff's] constitutional rights.").

Whether the Individual Defendants complied with the Los Angeles Police Department's internal polices and whether those policies deviate from national standards is relevant, but not dispositive, to the inquiry of whether the Individual Defendants' conduct violated Plaintiff's constitutional or statutory rights.

## C. Dr. Stephanie Marcy

Defendants seek to preclude the testimony from Plaintiff's rebuttal expert witness because Plaintiff failed to disclose her as required by Federal Rule of Civil Procedure 26(a)(2)(B), Plaintiff failed to produce her for deposition as required by Rule 26(b)(2)(4), and she is not a true rebuttal expert.

Dr. Marcy was disclosed by the rebuttal expert deadline, but Defendants argue she should have been designated as an expert witness.  Plaintiff does not intend to have Dr. Marcy testify during Plaintiff's case-in-chief, and he will not be permitted to do so.  Improper rebuttal testimony will be excluded.  Dr. Marcy cannot introduce new legal theories through her testimony, testify beyond directly challenging testimony offered by Defendants, or provide testimony that should more properly have been provided in the initial disclosures.

The motion is denied, but Dr. Marcy's testimony will be limited in scope to that of a rebuttal expert.

## Motion in Limine No. 2 to Exclude Any Reference to Other Claims, Lawsuits, or Complaints Against Any Defendant

The parties are ordered to meet and confer in an attempt to resolve these issues as there does not appear to be significant disagreement.  If they cannot agree entirely, they may present specific claims, references, etc. to the Court for resolution.

## Motion in Limine No. 3 to Exclude Evidence of Any Post-Conviction Investigation, Interviews, or Opinions

Defendants move to exclude any evidence relating to any post-conviction administrative proceedings, reviews, internal affairs reviews or investigations, findings or reports, including the basis for the appellate opinion overturning Plaintiff's conviction.[3] Defendants contend that such evidence should be excluded as subsequent remedial measures under Rule 407 of the Federal Rules of Evidence, irrelevant, privileged, and unduly prejudicial.

The parties agree that the basis for the appellate opinion overruling the conviction is not relevant.  It will be excluded.

While subsequent remedial measures will likely be inadmissible, Rule 407 is not broad enough to encompass every administrative proceeding, review, or investigation that occurred after Plaintiff's interrogation and conviction.  Defendants do not identify specific evidence of remedial measures they seek to exclude; the Court has no basis to conduct the analysis required under Rule 407.

---

[3] Defendants do not move to exclude evidence that Plaintiff's conviction was overturned.

Defendants move to exclude internal reviews, administrative proceedings, reports, and findings, based on privilege and relevancy.  Defendants do not provide any relevant authority for their assertion that internal reviews, reports, and findings are privileged.  Certainly, some – if not all – statements by the Individual Defendants are admissible.  Those statements can be introduced without specific reference to an internal affairs investigation.  Post-conviction internal investigations, post-administrative proceedings, reviews, findings, and reports are likely relevant to Plaintiff's <u>Monell</u> claims.  Statements and interviews of persons having a role or contact with this case may also be relevant to Plaintiff's <u>Monell</u> claims.

The challenged documents will likely be excluded depending on the evidence presented at trial.  Because neither party has pointed to any specific documents, no determination can be made at this time.  Counsel must seek permission from the Court before submitting any of the challenged evidence.

<u>Motion in Limine No. 4 to Bifurcate Liability and Damages from Monell and Punitive Damages</u>

Defendants move to bifurcate this trial into two phases:  (1) liability of the Individual Defendants and compensatory damages and (2) the <u>Monell</u> claim against the City and punitive damages, if any.

Pursuant to Rule 42(b), a district court has broad discretion to split a trial to permit deferral of costly and unnecessary proceedings pending resolution of potentially dispositive preliminary issues.  <u>See</u> Fed. R. Civ. P. 42(b); <u>Hangarter v. Provident Life & Acc. Ins. Co.</u>, 373 F.3d 998, 1021 (9th Cir. 2004).

The Court tentatively determines that trial will be trifurcated as follows:  (1) Individual Defendants' liability; (2) compensatory damages, availability and amount of punitive

damages, and (3) <u>Monell</u> liability.  Related evidence, including evidence of the Individual Defendants' financial condition, is to be presented only in the punitive damages phase.

## II.   PLAINTIFF'S MOTIONS

<u>Motion in Limine No. 1 to Exclude New and/or Undisclosed Evidence and Witnesses and Sanction the Refusal to Produce Evidence (Dkt. 190)</u>

Plaintiff seeks to exclude newly disclosed witnesses and undisclosed impeachment evidence, and requests sanctions in the form of an adverse inference as to certain evidence.

### A. Witnesses

Plaintiff seeks to exclude the testimony of Jherome Higuera, Jackie Lacey, Jason Clouse, Cheryl Gains, Eric Martinez, and Elda Rocha.  Rule 26(a)(1)(A)(i) requires disclosure of "the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Disclosure requirements are designed to "encourage parties to try cases on the merits, not by surprise, and not by ambush."  <u>Ollier v. Sweetwater Union High Sch. Dist.</u>, 768 F.3d 843, 862 (9th Cir. 2014).

Under Rule 37(c)(1) a party is forbidden from using any information at trial not properly disclosed under Rule 26(a). <u>Goodman v. Staples The Office Superstore, LLC</u>, 644 F.3d 817, 827 (9th Cir. 2011).  This sanction is "self-executing," "automatic," and its only exception is if the non-compliant party can show that "the failure to disclose is substantially justified or harmless."  <u>Id.</u>

### 1. Deputy District Attorneys Jason Clouse, Cheryl Gains, and Jackie Lacey

Defendants contend Jackie Lacey (now the Los Angeles County District Attorney) and Deputy District Attorneys Jason Clouse and Cheryl Gains were not included in their initial disclosures because the individuals were not known to Defendants at the time, and that Defendants did not timely supplement their disclosures due to inadvertence. Although it is possible Defendants were not aware of the identities of these "individual[s] likely to have discoverable information" by the time initial disclosures were due, the bare claim of inadvertence to justify the failure to supplement is insufficient to meet the burden of substantial justification.

Nor is the failure to disclose harmless. Defendants argue Plaintiff knew the identities of these witnesses because their names appeared in documents in Plaintiff's possession concerning the Castaneda murder investigation. A party is not required under Rule 26(e) to supplement information "that has been otherwise made known to the parties in writing or during the discovery process." See Fed. R. Civ. P. 26, 1993 Amendment Advisory Committee Note.

That these individuals are identified in voluminous documents possessed by Plaintiff does not establish that Plaintiff was aware of the substance of their possible testimony. See Ollier, 768 F.3d at 863 ("[A] passing reference in a deposition to a person with knowledge or responsibilities who could conceivably be a witness does not satisfy a party's disclosure requirements."); Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp., 2014 WL 12586105, at *17-18 (C.D. Cal. Jan. 3, 2018) (failure to disclose witnesses was not harmless when the witnesses were disclosed in documents with many other names and the context was not always clear due to pages missing;

witnesses identified as "primary investigators" in documents produced during discovery were not properly disclosed because they were listed among 65 other people named "primary investigators"); <u>Shimozono v. May Dep't Stores Co.</u>, 2002 WL 34373490, at *18 (C.D. Cal. Nov. 20, 2002) ("The court is inclined to reject Defendant's argument that because a document or two among many alerted [plaintiff] to the existence of a person, this complied with the rules of disclosure of potential witness.")

Here, the witnesses were listed in a murder book with multiple names, and Defendants do not cite to any other documents, declarations, or depositions in which they were identified in a way that would make it clear that they were likely to be called at trial.

Defendants did, however, identify a "Prosecuting Deputy District Attorney, to be identified" in their Initial Disclosures, and referred to records from the criminal prosecution for the current contact information. Plaintiff had at least equal access to the identity of the person described. To the extent one of these named witnesses was the "prosecuting deputy district attorney," he/she will be permitted to testify.

Plaintiff's motion is otherwise granted as to Jason Clouse, Cheryl Gains, and Jackie Lacey.

### 2. Jherome Higuera and Elda Rocha

Defendants intend to have Jherome Higuera and Elda Rocha testify about their involvement with Plaintiff on the night of the Cruz and Castaneda murders, contending the testimony is relevant to damages, impeachment, and credibility.

It is undisputed that Plaintiff was aware of Higuera and Rocha's identities – as they apparently participated in a homicide with him. To the extent the Cruz homicide is relevant (see below)

and not more prejudicial than probative, Plaintiff may be questioned about it.  If he denies involvement or the details of his involvement, it is likely the testimony of Higuera and Rocha will be admissible impeachment evidence.[4]

### 3. Eric Martinez

Defendants seek to have Eric Martinez testify to refute Plaintiff's allegation that Martinez was the shooter in the Castaneda homicide. [5]

The parties were aware of Martinez's identity before the close of discovery.  Plaintiff's reliance on Martinez in his <u>Brady</u> claim indicates his awareness that Martinez is a likely witness at trial.  The failure to disclose was harmless.

Plaintiff's motion is denied as to Eric Martinez.

### 4. Plaintiff's Witnesses

Defendants argue that three of Plaintiff's witnesses, Seth Eklund, Melissa Muir, and Jose Manual Soria, were not listed in Plaintiff's initial disclosures or in any supplemental disclosure. Plaintiff concedes the point.[6]

---

[4] Witnesses testifying solely for impeachment purposes are not required to be identified in initial disclosures.  Fed. R. Civ. Pro. 26(a).  As discussed in Plaintiff's Motion in Limine No. 5, however, evidence of juvenile adjudications may not be used to impeach a person's <u>character for truthfulness</u>.  Fed. R. Evid. 609(d).

[6] This is not a negotiation with the Court.  Plaintiff apparently agrees that he failed to designate these witnesses and states that he would not have listed them if he had realized this error.

## B. Non-disclosed Impeachment Evidence

Plaintiff moves to exclude undisclosed evidence Defendants intend to use solely for impeachment, arguing Defendants failed to properly supplement non-deposition discovery responses and failed to produce evidence responsive to discovery requests. Specifically, Plaintiff seeks to exclude an alleged video of Plaintiff spray painting (tagging). Defendants contend they are not required to disclose impeachment evidence. Plaintiff did not file a motion to compel responses to the discovery requests.

Rule 26(a)(3) exempts from the parties' otherwise mandatory automatic disclosures evidence that a party may present "at trial . . . solely for impeachment." Unlike Rule 26(a), Rule 26(b)(1) does not distinguish between substantive and impeachment evidence and therefore does not exempt from disclosure information to be used solely for impeachment. Under Rule 26(b)(1), "[i]nformation that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable." Houdini, Inc. v. Gabriel, No. CV 04-09574-GHK (SSx), 2005 WL 6070171, at *2 (quoting Commentary to Rule Changes, Court Rules, 192 F.R.D. 340, 389 (2000)); Paulsen v. Case Corp., 168 F.R.D. 285, 287 (C.D. Cal. 1996). Defendants' contention that impeachment evidence does not need to be disclosed pursuant to a discovery request ignores the plain language of Rule 26(b)(1).

Despite Defendants' failure to respond to Plaintiff's discovery requests, the Court will not categorically exclude undisclosed evidence used solely for impeachment, especially considering that Plaintiff did not file a motion to compel. Regarding the alleged video of Plaintiff spray painting, such evidence could be relevant if Plaintiff denies criminal activity or gang affiliation, which may be relevant during the damages phase. Counsel must seek permission from the Court outside the

presence of the jury before introducing the video, so the Court can
weigh its prejudicial effect.

Plaintiff's motion as it relates to undisclosed impeachment
evidence is denied.

## C. Adverse Inference

Plaintiff asks that an adverse inference instruction be given
relating to emails, text messages, and other correspondence
maintained by the Los Angeles Police Department concerning the
Castaneda homicide, which Plaintiff requested in discovery and
Defendants did not produce.

With respect to emails and text messages, the Individual
Defendants contend that no evidence was destroyed and that
despite a reasonable search of their computers, the relevant
correspondence was not found.  The City did not provide a
response.  With respect to the internal affairs interviews, the City
provided a summary of the audio recordings and stated it would
produce the audio recordings if compelled by Court order.
Plaintiff did not file a motion to compel.

The Court will not impose the harsh sanction of an adverse
inference instruction because Plaintiff has not demonstrated that
the emails, text messages, or the audio recordings of the internal
affairs interviews were destroyed, and also because he neglected
to file a motion to compel the production of the recording.  See
Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993) ("A federal
trial court has the inherent discretionary power to make
appropriate evidentiary rulings in response to the destruction or
spoliation of relevant evidence," including the power "to permit a
jury to draw an adverse inference from the destruction or
spoliation against the party or witness responsible for that
behavior." (emphasis added)).

Plaintiff's request for an adverse inference is denied.  The parties are to follow the instructions concerning supplemental information provided at the hearing on these motions.

### 5. Inability-to-Pay

Plaintiff seeks to preclude Defendants from raising an inability to pay defense as it relates to their liability for punitive damages because they refused to answer requests and interrogatories concerning their financial worth.  As the failure to respond to the discovery requests was likely improper, the Court is inclined to grant this request.  In the alternative, Plaintiff seeks to enter evidence that Defendants will be indemnified for any compensatory damages awarded against them if Defendants raise an inability to pay defense to punitive damages.

Defendants represent that they will not argue inability to pay punitive damages.  Evidence that Defendants will be indemnified for compensatory damages is therefore not relevant.  Should Defendants submit evidence or argument suggesting they don't have the ability to pay punitive damages, the Court will allow evidence that they will be indemnified for any compensatory damages that have been awarded.  See Lawson v. Trowbridge, 153 F.3d 379-80 (7th Cir. 1998).

Motion in Limine No. 2 to Exclude Certain Expert Testimony

Plaintiff seeks to exclude the testimony of five of Defendants' expert witnesses:  Michael Bumcrot, Wayne Caffrey, Moses Castillo, Dan Jenks, and Dr. James Rosenberg.

## A. Michael Bumcrot

### 1. Admissibility

Plaintiff seeks to preclude the testimony of Defendants' police policy expert witness, Michael Bumcrot, claiming his

opinions are legal conclusions inadmissible under 702 of the Federal Rules of Evidence.

Bumcrot may not testify to legal conclusions, including whether there was probable cause to arrest Plaintiff, whether the interrogation of Plaintiff was coercive, or whether there was established law at the time regarding Plaintiff's request for an attorney during the interrogation.[7]  See e.g., Torres v. City of Los Angeles, 548 F.3d 1197, 1214 n.11 (9th Cir. 2008) (the district court abused its discretion when it denied a motion *in limine* seeking to preclude witnesses from testifying as to whether there was in fact probable cause for an arrest).  Bumcrot's testimony concerning whether Officer Born, Officer Cooley, and Officer East's conduct conformed with the Los Angeles Police Department's standards and accepted police practices will be permitted.

## 2. Reliability

Plaintiff contends Bumcrot's testimony should be precluded because it is unreliable and based on personal opinion.  As stated previously, certain expert testimony can be based on personal experience and knowledge rather than on scientific foundations.  After reviewing Bumcrot's report and CV, the Court concludes Defendants have met their burden of showing that Bumcrot's personal knowledge and experience in law enforcement and homicide investigations is sufficient for Bumcrot to reliably testify whether a homicide investigation was conducted in accordance with police standards.

---

[7] Defendants argue that Mr. Bumcrot's testimony is admissible under Rule 701 of the Federal Rules of Evidence.  Lay witnesses are also precluded from testifying to a legal conclusion.  See United States v. Crawford, 239 F.3d 1086, 1090 (9th Cir. 2001).

### B. Wayne Caffey, Moses Castillo, and Dan Jenks

#### 1. Wayne Caffey

Plaintiff seeks to exclude Wayne Caffey's expert testimony concerning general gang activity and operations, asserting that Defendants did not file an expert report, the testimony is not relevant, is prejudicial, and is improper character evidence. Defendants argue no expert report was required, and that the testimony is relevant to understanding the Individual Defendants' during the investigation, whether certain evidence was material, as well as the scope of Plaintiff's damages.

Any witness who is "retained or specially employed to provide expert testimony in the case" or who is an employee of the party "whose duties regularly involve giving expert testimony" is required to provide an expert report.  See Fed. R. Civ. P. 26(a)(2)(B).  Failure to timely disclose an expert report is grounds for exclusion under Rule 37(c)(1).

Plaintiff argues that Caffey is an employee of the City whose duty regularly involves giving expert testimony, and points to Caffey's CV, which indicates he has testified as a gang expert in more than two hundred cases.  The Court agrees.  See Torres, 548 F.3d at 1213 (finding that a witness whom Defendants called as a gang specialist and who testified that he was regularly employed to give expert opinions in court about gangs was required to provide an expert report under Fed. R. Civ. Pro. 26(a)(2)(B)). Defendants do not argue that the failure to provide an expert report was harmless or substantially justified and therefore have not met their burden of establishing that Caffey's testimony should not be excluded pursuant to Fed. R. Civ. Pro. 37(C)(1)).

If Defendants have additional information concerning Caffey's testimony, the Court will reconsider.  However, given the

highly prejudicial nature of gang evidence and the minimal relevance general gang affiliation appears to have to the issues in this case, the Court would likely also exclude Caffey's testimony (whether lay or expert) on the basis that its probative value is outweighed by its prejudicial effect.  Fed. R. Evid. 403.

### 2. Moses Castillo and Dan Jenks

Plaintiff seeks to limit the expert testimony of Moses Castillo and Dan Jenks because an expert report was not filed for either witness.  Based on the current record, neither witness was required to file an expert report because neither was "retained or specially employed to provide expert testimony in the case," and they are not employees of the City whose duties regularly involve giving expert testimony.  See Fed. R. Civ. P. 26(a)(2)(B).  After the witnesses were designated as experts, Plaintiff could have further deposed them on the topics of their expert testimony, but failed to do so.  Plaintiff also did not file a motion to compel Defendants to respond to Plaintiff's subpoena.  The Court declines to limit the testimony of Castillo or Jenks.

### 3. Dr. James Rosenberg

Plaintiff seeks to exclude the testimony of Dr. Rosenberg concerning Plaintiff's psychological disorders and state, past trauma, and drug and alcohol abuse.  Defendants claim the testimony will assist the trier of fact in assessing Plaintiff's claimed damages.  Plaintiff argues that because Plaintiff does not intend to offer psychotherapy records or a finding by a mental health expert, Dr. Rosenberg's testimony should be excluded.

If Plaintiff claims he suffered from emotional distress, or any other issue that implicates Dr. Rosenberg's testimony, Defendants may present evidence, through Dr. Rosenberg or otherwise, that there are alternate sources of stress that caused this damage.  See Conan v. City of Fontana, No. EDCV 16-1261-KK, 2017 WL

8941499, at *7 (C.D. Cal. Oct. 6, 2017); <u>Morris v. Long</u>, No. 1:08-cv-01422-AWI-MJS, 2012 WL 1498889, at *4 (E.D. Cal. Apr. 27, 2012) (denying motion in limine to exclude evidence of Plaintiff's mental health hospitalization and mental health unrelated to the incident and resulting damages).

<u>Motion in Limine No. 3 to Exclude Opinion Testimony by Lay or Fact Witnesses</u>

Plaintiff moves to preclude certain lay opinion testimony, legal conclusions, and character evidence. Dkt. 192, Plaintiff's Motion in Limine No. 3.

## A. Lay Testimony Regarding Plaintiff's Susceptibility

Plaintiff seeks to exclude the Individual Defendants' expected testimony as to their beliefs concerning Plaintiff's susceptibility to have his will overborne. At oral argument, the defense admitted the officers' subjective beliefs are not relevant outside of the punitive damages phase. Therefore, while the Individual Defendants may testify to the facts known to them at the time of the interrogation regarding Plaintiff, they may not testify as to their subjective belief, for example, that Plaintiff was a "hardened criminal." To the extent Plaintiff seeks to preclude the Individual Defendants from disclosing Plaintiff's gang affiliation at that time period, the parties are directed to the Court's discussion of Plaintiff's Motion in Limine No. 4 and 5. In addition, this ruling is subject to change depending on the testimony of Dr. Leo.

## B. Quality of Castaneda Homicide Investigation

Plaintiff does not move to exclude any specific evidence, and Defendants do not assert that they intend to introduce testimony through lay witnesses that the investigation conformed with standard police procedures. To the extent Plaintiff challenges

Defendants' proposed Special Jury Instructions #5, that issue is not properly raised though a motion in limine.

## C. State Trial Court Ruling

The juvenile court's ruling is excluded.  Whether the law was unsettled at the time for purposes of qualified immunity is a decision for the Court.

## D. Michael Bumcroft

The Court addressed the testimony of Michael Bumcrot in its discussion on Plaintiff's Motion in Limine No. 2.  Bumcrot may not testify to legal conclusions, including whether the investigation was reasonable.

## E.  Character Attacks of Plaintiff, Plaintiff's Family, and Plaintiff's Damages Witnesses

Plaintiff seeks to exclude unspecified opinion testimony about Plaintiff's purported character, or disparaging his family, friends, or relatives who may testify about Plaintiff and his damages.  Defendants state they do not intend to present such evidence.  The Court cannot rule on such a vague request.

Motion in Limine No. 4 and No. 5[8]

Plaintiff seeks to preclude the following types of evidence: (1) arrests and charges not leading to criminal convictions; (2) Plaintiff's conviction of or involvement in the Cruz homicide; (3) Plaintiff's gang affiliation; (4) Plaintiff's tattoos; (5) Plaintiff's drug use; (6) prison discipline; (7) certain text messages and social media posts known and unknown to Defendants at the time of the Castaneda investigation; and (8) evidence bolstering Defendants'

---

[8] Plaintiff's Motions in Limine Nos. 4 and No. 5 are discussed together as both seek to exclude evidence of Plaintiff's involvement in the Cruz homicide.

character.  Plaintiff contends such evidence should be excluded by Rules 404(b), 401, and 403 of the Federal Rules of Evidence.

As an initial matter, the Court concludes that all facts reasonably considered by the Defendants in determining that there was probable cause to arrest Plaintiff for the Castaneda murder, that Defendants did not act reasonably, and that any <u>Brady</u> violations caused Plaintiff's damages are admissible. Defendants' vague and generally unhelpful description of the evidence sought to be introduced and the specific purposes that evidence would serve make a definitive ruling on some of the issues impossible until the Court has further information.

## 1. Prior Arrests or Convictions

The parties do not identify any prior arrests or convictions (other than the Edward Cruz conviction).  The Court cannot properly evaluate this issue at this time.  If any party knows of an arrest or conviction other than those related to Castaneda and Cruz, that party is to advise the Court and opposing counsel of the details no later than December 2, 2018.  No testimony concerning any arrest or conviction is to be presented without seeking the Court's permission outside the presence of the jury.

## 2. Edward Cruz Conviction

Defendants seek to introduce at trial Plaintiff's involvement in the Cruz homicide. The Court will not hold a mini-trial on the Cruz homicide.

Evidence or reference to Plaintiff's conviction in the Cruz homicide, including the details underlying the conviction, may not be introduced during the liability phase for <u>any</u> purpose.  Fed. R.

Evid. 401, 403, 609(d).[9]  The parties may brief the issue of the admissibility of the efforts of Plaintiff's mother to solicit alibi witnesses relating to the Cruz murder.

Plaintiff asserts that he was placed on probation for his part in the Cruz homicide.  If Defendants have evidence that Plaintiff's time served for the Castaneda homicide applied to Plaintiff's sentence for the Cruz conviction, it may be introduced during the second phase of trial for the limited purpose of establishing the amount of damages.  Defendants must provide an offer of proof outside the presence of the jury before attempting to introduce any such evidence.

## F.  Prison Disciplinary History

Plaintiff's motion is granted as to prison disciplinary history.

## G. Gang Evidence

Defendants assert Plaintiff's gang affiliation is relevant to confirm that Plaintiff was a proper suspect for the Castaneda and Cruz murders and that it is relevant to whether Plaintiff's will was overborne during the interrogation.  Defendants also assert Plaintiff's association with a gang, along with his tattoos, Facebook posts, and text messages are probative of Plaintiff's untruthfulness.

---

[9] Evidence of juvenile adjudications is generally inadmissible to attack the credibility of a witness in a civil case.  Fed. R. Evid. 609(d); Powell v. Levitt, 640 F.2d 239, 241 (9th Cir. 1981) ("The trial court has no discretion to admit such evidence in a civil proceeding.")  Plaintiff's juvenile conviction may not be introduced to attack his credibility.

### 1. Substantive Claims

It is unlikely that evidence of Plaintiff's gang affiliation can be avoided even in the liability phase of the trial – as even Plaintiff seems to admit.  Nevertheless, Defendants should avoid the temptation to make gratuitous mention of alleged gang affiliation.  The parties should meet and confer to discuss the limited purposes for which the evidence may be admitted and ways to limit evidence of gang affiliation without hampering the defense presentation in the liability phase.  Such evidence may be relevant to damages, however.  Counsel must seek the Court's permission outside the presence of the jury before introducing post-arrest gang evidence for purposes of proving damages.

### 2. Impeachment

Counsel must seek the Court's permission outside the presence of the jury before introducing evidence of Plaintiff's gang membership or affiliation for impeachment purposes.  This includes evidence of Plaintiff's tattoos, Facebook posts, and text messages.

### 3. Credibility

"[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."  Fed. R. Evid. 608(b).  Defendants offer no argument or support for their assertion that Plaintiff's association with a gang, tattoos, Facebook posts, and text messages are probative of Plaintiff's untruthfulness.  The Court concludes they are not.  If evidence of these matters is permitted for a relevant purpose, Plaintiff may propose a limiting instruction.

## H. Tattoos

Plaintiff's tattoos do not appear relevant to any of the issues in the liability phase.  If Defendants must rely on Plaintiff's tattoos to establish the time period for photos they seek to enter for impeachment purposes, they should seek a stipulation from Plaintiff.  Otherwise, the issue can be raised outside the presence of the jury at the time the evidence is sought to be introduced.

## I.  Drug Use

Plaintiff seeks to exclude evidence of or reference to Plaintiff's drug use.  Defendants contend this evidence is relevant to whether Plaintiff's interrogation was coercive and Plaintiff's claims for damages.

### 1. Interrogation

The Court finds that whatever probative value evidence of Plaintiff's drug use prior to his interrogation might have, the danger of unfair prejudice it poses bars its admission under Rule 403.  Defendants assert, without pointing to facts in the record, that Plaintiff had been drinking alcohol and using drugs for several years prior to his interrogation.  Defendants do not offer evidence as to what, if any, impact that use had on Plaintiff during his interrogation.  Without some support for the suggestion that Plaintiff's drug or alcohol use related to his maturity and propensity to have his will overborne, the prejudicial effect of the evidence outweighs its probative value.

### 2. Damages

Defendants seek to admit Dr. Rosenberg's opinion that Plaintiff's illegal drug use has caused extensive emotional and psychological damage.  Defendants may introduce evidence of Plaintiff's past drug to rebut claims that Plaintiff suffered

emotional distress damages in the second phase of trial.  <u>See</u> <u>Conan</u>, 2017 WL 8941499, at *7; <u>Solis-Marrufo v. Bd. of Comm'rs</u>, No. CIV 11-0107 JB/KBM, 2013 WL 1658203, at *20 (D.N.M. March 28, 2013) (If a plaintiff in a § 1983 claim asserts at trial that he suffered emotional distress damages or pain and suffering damages at trial, the defendant could present evidence of the plaintiff's past drug use as evidence to rebut the extent of these damages).

## J. Social Media and Text Messages

Plaintiff is no longer pursuing an unlawful detention claim. The motion is granted as it relates to social media posts and text messages discovered by Defendants after Plaintiff's arrest.

## K.  Evidence of Defendants' Good Character

Plaintiff's unopposed request to exclude evidence of Defendants' good character unless their character is attacked is granted.  <u>See also</u> Fed. R. Evid. 404.

IT IS SO ORDERED.

Date: December 7, 2018

Dale S. Fischer
United States District Judge