# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART TOBIAS,<br>　　　Plaintiff,<br><br>　　　　v.<br><br>CITY OF LOS ANGELES, et al.,<br>　　　Defendants. | CV 17-1076 DSF (ASx)<br><br>Order GRANTING IN PART and DENYING IN PART Summary Judgment to Defendant Daniel East Based on Qualified Immunity |

　　The Court previously denied Defendant Daniel East's motion for summary judgment. On remand from the Court of Appeals, this Court was instructed to review the claims against East on a claim-by-claim basis to determine whether qualified immunity applies. The Court ordered briefing from East and from Plaintiff on the qualified immunity issues. After review of the record and the briefing, the Court finds that summary judgment is appropriate as to all but one claim.[1]

## I. Facts

　　Alex Castaneda was shot and killed in the early morning hours of August 18, 2012. The investigation revealed a security camera on an adjacent building, which had captured one of the two suspects in the act of shooting. Based on identifications by two Los Angeles Police Department gang enforcement officers – Defendants Born and Cooley – LAPD detectives suspected that Plaintiff had committed the murder.

---

[1] Plaintiff has dropped claims 1, 2, and 7 against East, so the Court will analyze only the remaining claims for falsification of evidence, malicious prosecution, failure to intervene, and conspiracy.

On August 20, 2012, Defendant Detectives Motto and Arteaga visited Plaintiff's school to see if anyone could identify him from the surveillance video. The principal recommended Officer Daniel East of the Los Angeles Unified School District, and Assistant Dean Roger Negroe. Before showing him the surveillance video, Detectives told East they believed the suspect was a current student. East watched the video several times before identifying Plaintiff:

> Officer East: I have a hard time IDing that person.
>
> Detective Motto: Okay. No problem.
>
> Officer East: I mean, the full head of hair is throwing me off a little bit.
>
> Detective Motto: Okay.
>
> Officer East: Unless he shaved it and he did have more hair last week.
>
> Detective Motto: Who are you thinking of?
>
> Officer East: The guy that I was thinking is a lot smaller in stature, though.
>
> Detective Motto: Okay.
>
> Officer East: It's Art Tobias.
>
> Detective Motto: That's who we think it is.
>
> Officer East: (Laughter.) But, I mean, God, he's so much smaller in real life.

East Interview Transcript at 10:14-11:5. East told Detectives that Plaintiff had "just recently" shaved his head. East Tr. at 11:8-10. East then watched the video again:

> Officer East: Yeah. The photo – The photo makes him look a little bit more bigger [sic] and stockier. But from that photo right there . . .

2

> Detective Motto: Let me run it all the way through again. Let's see what happens, and then you can watch the whole thing and see him move.
>
> Officer East: I guess it looks very deceiving probably.
>
> Detective Motto: Always.
>
> Detective Arteaga: Yes. What did you say was throwing you off, the hair?
>
> Officer East: No. I thought maybe he looked, like, taller and bulkier in the camera, which could be distorting through the mega pixels.

East Tr. at 14:16-15:3.

East left the room when Negroe was interviewed. Negroe, who was not aware that East had identified Plaintiff, viewed the surveillance video but could not identify anyone. After leaving the office, however, Negroe saw Plaintiff, whom he believed to be the individual in the video, and informed Detectives. Detectives then detained Plaintiff with East's assistance and drove him to an LAPD station. East was not involved in Plaintiff's subsequent interrogation.

Detectives asked East to prepare a written statement, which he did on either August 20 or 21. East stated he watched the surveillance video "several times," was "fairly sure" the suspect was Plaintiff, and "[t]he Person in the video had a distinct walk and stature which is similar to that of Art Tobias." East Statement.

After August 20, 2012, East did not speak with any other Defendant aside from Detective Cortina. East testified at Plaintiff's trial as to Plaintiff's alleged truancy, but not to his identification of Plaintiff in the surveillance video.

Plaintiff was convicted of the first-degree murder of Alex Castaneda and two counts of attempted murder. On February 11, 2015, the California Court of Appeal overturned Plaintiff's conviction and ordered a new trial. However, Plaintiff was never re-tried.

3

## II. Qualified Immunity Standards

"[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018). On summary judgment, the qualified immunity analysis is done viewing the facts in the light most favorable to the plaintiff. Tolan v. Cotton, 572 U.S. 650, 655–56 (2014).

## III. Analysis

### A. Falsification of Evidence

It is clearly established that a law enforcement officer cannot falsely identify a person as having committed a crime. See Spencer v. Peters, 857 F.3d 789, 793 (9th Cir. 2017). The alleged falsehood in question is East's written statement that he was "fairly sure" that the person in the video was Plaintiff. This assessment was notably more certain that East's identification during the interview with the detectives where East stated that he was having "a hard time IDing that person" and noted several significant apparent differences between Plaintiff and the person in the video. It is certainly possible – and perhaps likely – that East had subjectively convinced himself that the person in the video was Plaintiff by the time he prepared his written statement. However, the evidence also supports an inference that East intentionally exaggerated his certainty in order to assist the LAPD detectives after East became aware that the detectives were committed to proving that Plaintiff had committed the murder. Given that the qualified immunity and summary judgment standards require the facts and possible inferences to be viewed in the light most favorable to Plaintiff, judgment cannot be entered in East's favor on this claim.

"In a § 1983 action, the plaintiff must demonstrate that the defendant's conduct was the actionable cause of the claimed injury. To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." Spencer v. Peters, 857

4

F.3d 789, 800 (9th Cir. 2017) (quoting Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008)).

As with the constitutional injury component of the claim, the weight of the evidence arguably favors East, but not so conclusively that a jury could not conclude that East's alleged constitutional violation caused Plaintiff harm. While the detectives' interrogation and other actions, if improper, almost certainly caused more injury to Plaintiff, East's allegedly false statements could have contributed to Plaintiff's harm. East's testimony could have been important to the chain of events in several ways. For example, unlike the LAPD witnesses, East was a witness outside of the investigating agency who was familiar with Plaintiff prior to the investigation. Because of this, East's identification could have carried more weight with a judge or a prosecutor than an identification by LAPD officers.

Because there is sufficient evidence in the record to support a conclusion that East violated Plaintiff's rights by providing false testimony and that the testimony harmed Plaintiff, summary judgment cannot be granted on the false testimony claim.

### B.   Malicious Prosecution

Plaintiff's claim against East for malicious prosecution fails because there is no evidence that East had any involvement in the decision to bring charges against Plaintiff other than by identifying Plaintiff as the person in the video. East's behavior must have been "actively instrumental in causing the initiation of legal proceedings." Awabdy v. City of Adelanto, 368 F.3d 1062, 1066–67 (9th Cir. 2004).

Taking the evidence in the light most favorable to Plaintiff, there is no evidence that East's statement played any instrumental role in causing charges to be brought. The evidence in the record shows, at most, that East made a false statement to the LAPD in support of the LAPD investigation. There is no evidence that East himself pushed for prosecution of Plaintiff in any way or even interacted with the prosecutor at all during the consideration of charges against Plaintiff.

## C.   Failure to Intervene

Plaintiff's failure to intervene claim against East fails for at least two reasons. First, it is not clearly established that a law enforcement officer violates a person's constitutional rights by failing to intervene in another law enforcement agency's investigation where it might appear to the officer that the other agency is acting to violate the person's rights. The cases cited by Plaintiff involve immediate situations where the non-intervening officer had reason to know the entire situation. This is very different from intervening in an ongoing investigation into a crime, where an outside officer is very unlikely to understand the entirety of the situation and be expected to act.

But even if such a duty to intervene were clearly established in a situation where the officer knew for certain that a person's rights were being violated, there is no evidence in the record to show that East had any reason to know that the LAPD detectives were in the process of violating Plaintiff's rights. There is no evidence that East had any knowledge of the investigation and what it had uncovered at the time of his identifying statements other than that the detectives suspected Plaintiff of the murder. Nothing in the record suggests that East had any reason to believe that the detectives' suspicion was based on bad faith or even insufficient evidence. In this context, East had no reason to intervene even if he had been theoretically required to by the Constitution if he had full knowledge of the situation.

## D.   Conspiracy

The conspiracy question is somewhat closer, but the Court nonetheless finds that East is entitled to summary judgment viewing the evidence in the light most favorable to Plaintiff. A conspiracy claim requires the conspirators to have "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999).

There is no evidence in the record to support a conclusion that East and the LAPD detectives reached any kind of "unity of purpose" or

"meeting of the minds" to violate Plaintiff's civil rights. At best, the evidence suggests that East may have falsified his identification of Plaintiff, or greatly exaggerated his confidence in his identification, in order to assist the LAPD detectives. There is no evidence that East and the detectives agreed that East would do this. Undoubtably, the detectives wanted East to identify Plaintiff as the person in the video, and arguably East wanted to assist, but that is not the same as agreeing to a common purpose to engage in the violation of Plaintiff's civil rights. An eager or cooperative witness does not conspire with law enforcement officers merely by providing information that the officers might like to hear.[2]

### IV. Conclusion

Summary judgment is DENIED with respect to the evidence falsification claim against East. Summary judgment is GRANTED to East on all other claims.

IT IS SO ORDERED.

Date: July 20, 2020

Dale S. Fischer
United States District Judge

---

[2] In this respect, it is notable that East named Plaintiff as possibly the person in the video *before* the detectives named Plaintiff. The detectives' suspicion may have caused East to put aside his own reservations about the identification, but the record directly contradicts the idea that East and the detectives planned to identify Plaintiff falsely.