1  | **Arthur C. Preciado** (SBN 112303)
   | art.preciado@gphlawyers.com
2  | **Calvin House** (SBN 134902)
   | calvin.house@gphlawyers.com
3  | GUTIERREZ, PRECIADO & HOUSE, LLP
   | 3020 E. Colorado Boulevard
4  | Pasadena, CA 91107
   | Tel: 626-449-2300 | Fax: 626-449-2330
5  | Attorneys for Defendant
   | L.A. School Police Officer Daniel East

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

11 | ART TOBIAS,                           No. 2:17-cv-01076-DSF-AS

12 |              Plaintiff,               **Defendant East's Response to Plaintiff's**
                                          **Separate Statement of Material Facts**
13 |       v.                             **(Dkt. 298)**

14 | CITY OF LOS ANGELES; SGT.             Date: January 24, 2022
   | SANCHEZ, #25339; DETECTIVE            Time: 1:30 p.m.
15 | MICHAEL ARTEAGA, #32722;
   | DETECTIVE JEFF CORTINA,
16 | #35632; DETECTIVE J. MOTTO,
   | #25429; DETECTIVE JULIAN
17 | PERE, #27434; OFFICER
   | MARSHALL COOLEY, #38940;
18 | OFFICER BORN, #38351; L.A.
   | SCHOOL POLICE OFFICER
19 | DANIEL EAST, #959; and
   | UNIDENTIFIED EMPLOYEES of
20 | the CITY OF LOS ANGELES,

21 |              Defendant.

| Uncontroverted Material Facts | Officer East's Response |
| --- | --- |

1

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 49. Plaintiff Art Tobias was wrongfully charged, prosecuted, and ultimately convicted of shooting Alex Castaneda and two others in August 2012. Plaintiff had nothing to do with the Castaneda homicide shooting and was completely innocent. Plaintiff spent three years and five months—from ages 13 to 17—incarcerated for a crime he did not commit, causing him unimaginable damages. | 49. Undisputed for purposes of this motion. |
| 50. On August 18, 2012, about forty minutes after midnight, Alex Castaneda was shot and killed on the 1400 block of Alvarado Terrace in Los Angeles, California. At the time of the shooting, Castaneda was with a group of friends, two of whom were also shot but whose injuries were not fatal. | 50. Undisputed for purposes of this motion. |
| 51. Two perpetrators fired guns at the group; one in dark clothing on the far side of the street and one in a white shirt closer to the group. The perpetrators fled the scene in a reddish car, possibly a Hyundai. | 51. Undisputed for purposes of this motion. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 52. The perpetrator in a white shirt closer to the victims was described by several witnesses who were present at the scene of the shooting. They uniformly described the shooter as an adult. In particular, witness Ricky Mora described the white shirt shooter as "male Hispanic 20-30 years old, wearing a white muscle shirt with a pistol in his hand." Witness Kevin Soria described the shooter as "male Hispanic 18-19 years old about 6 ft, 190-200 lbs. wearing a white shirt." | 52. Undisputed for purposes of this motion. |
| 53. The perpetrators were also reported to have yelled "MS" or "Mara Salvatrucha" before shooting, indicating their gang affiliation. | 53. Undisputed for purposes of this motion. |
| 54. Art Tobias did not match the description of the shooter in the slightest. At the time of the shooting, he was 13 years old, and was 4'11" and 110 pounds, and wore dark rimmed glasses. | 54. Undisputed for purposes of this motion. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 55. Tobias also was not a member of the MS gang believed to be responsible for the shooting. This information was known to the LAPD, both to gang enforcement officers and as told to the detectives that interrogated Tobias. | 55. Undisputed for purposes of this motion. |
| 56. None of the eyewitnesses to the crime provided any information implicating Plaintiff. The eyewitness also never identified anyone. Indeed, none of the eyewitnesses was ever shown a photo array or in-person lineup of potential suspects to attempt to identify the shooter. | 56. Undisputed for purposes of this motion. |
| 57. Surveillance video from the scene of the Castaneda murder captured the white shirted perpetrator in the act of shooting. | 57. Undisputed for purposes of this motion. |
| 58. The shooter depicted in the video did not look like Tobias in the slightest. The person depicted in the video was much bigger, clearly heavyset, and much older than Tobias. The shooter in the video also did not appear to be wearing glasses. | 58. Undisputed for purposes of this motion. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 59. Nevertheless, despite no resemblance to the witnesses' descriptions of the perpetrator or to the person depicted in the video, Defendants made Tobias a suspect in the Castaneda homicide. | 59. Undisputed for purposes of this motion. |
| 60. In fact, Tobias could not have committed the crime. He was at home when the shooting happened. His mother saw him at home and spoke to him at 12:42am, which she remembers because she showed him the time on her phone. Tobias was wearing a black Scooby Doo t-shirt (not a white shirt like the one the Castaneda shooter was wearing). | 60. Undisputed for purposes of this motion. |
| 61. Detectives Cortina, Pere, Motto and Arteaga were all Rampart division homicide detectives at the time (collectively, the "Detective Defendants"). | 61. Undisputed. |
| 62. Motto and Arteaga interviewed Defendant LAUSD Officer Daniel East. | 62. Undisputed. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 63. This Court has already concluded that a reasonable jury can find that Defendants Cooley and Born fabricated evidence against Tobias, claiming they "identified" him from the surveillance video despite the fact neither one had met Tobias; despite the obvious differences between the perpetrator and Tobias; and other record evidence. As with East, Tobias's claim against Born and Cooley includes not only their written reports but also their fabrications in agreeing to falsely claim they had honestly "identified" Tobias from the video. | 63. Undisputed for purposes of this motion. |
| 64. On the afternoon of August 20, 2012, Arteaga and Motto went to Berendo Middle School, Tobias' school, with the purpose of trying to obtaining "identifications" of Tobias. | 64. Undisputed. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 65. They met at the school with Defendant Daniel East. East is a Los Angeles Unified School District officer. His duties also involved conducting criminal investigations at school and working with other law enforcement agencies at times, including LAPD. East learned the detectives were coming. | 65. Undisputed. |
| 66. East was told by the detectives that they had a suspect in mind and that the person was a current Berendo student. He was told that he was going to watch a video, and be asked to make an identification. | 66. Undisputed. |
| 67. When East first watched the video of the Castaneda shooting, he immediately recognized that the suspect was too large to be a middle school student; and too large to be a 13 or 14 year-old. | 67. Undisputed for purposes of this motion. |
| 68. When East watched the video a second time, he did not identify Plaintiff or anyone. Instead, he confirmed that he could not make an identification based upon the video. | 68. Undisputed for purposes of this motion. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 69. Although East could not make an identification, he told the detectives he was "thinking of" a person too small to be the person in the video; someone who was "a lot smaller in statute" than the person in the video. | 69. Objection. "Although East could not make an identification" is argumentative and not supported by the cited evidence. |
| 70. Despite knowing that the person was too large to be a middle student, despite not being able to make an identification from the video, and despite knowing that Plaintiff was too small in stature to be the person in the video, East told the detectives he had been "thinking of" Art Tobias. | 70. Objection. "Despite knowing …" is argumentative and not supported by the cited evidence. |
| 71. Even though East knew the person in the video was too big to be Tobias, and East could not identify a person from the video, the detectives explicitly informed East that they believed Tobias was the shooter, saying "that's who we think it is." | 71. Objection. "Even though  East knew …" is argumentative and not supported by the cited evidence. |
| 72. East knew that Plaintiff was too small to be the person in the video, and laughed out loud when he was told that the detectives suspected Plaintiff was the shooter. | 72. Objection. The statement "East knew that Plaintiff was too small to be the person in the video" is not supported by the cited evidence. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 73. Nonetheless, East agreed to assist the detectives in implicating Plaintiff in the crime. After finding out that Plaintiff was the suspect, East was shown a picture of Tobias. Then, East attempted to help the Detectives by pulling up additional photographs of Plaintiff, which East had in his school files. In the course of this meeting, East and the Detectives discussed what East's statement should be. | 73. Objection. The statements that "East agreed to assist the detectives in implicating Plaintiff in the crime" and that "East and the Detectives discussed what East's statement should be" are not supported by the cited evidence. |
| 74. East agreed to claim that he had identified plaintiff when he had not and to assist in the investigation. East agreed to attempt to pull "Field Interview" ("FI") cards of Plaintiff; East knew that someone had died from the Castaneda shooting; and East knew that the Detectives did not have enough evidence to inculpate Plaintiff; and East even knew that, without a "cold turkey" identification, the Detectives planned to "try to rope [Plaintiff']s mother" into the investigation. | 74. Objection. The factual assertions are not supported by the cited evidence. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 75. East understood that the video of the Castaneda shooting did not depict Plaintiff, and that the detectives were going to try to get identifications from additional people, including Mr. Negroe and Plaintiff's mother. | 75. Objection. The factual assertions are not supported by the cited evidence. |
| 76. In fact, Detective Motto put it in no uncertain terms: If the detectives did not get positive identifications from "everybody, including [Plaintiff's] mother," then they would "have a hard time proving what you [East] just saw. So somebody's going to have to frickin pay." | 76. Objection. The first sentence is argumentative. Undisputed as to the balance. |
| 77. Arteaga and Motto then proceeded to show the video to Roger Negroe, an assistant Dean at the school. Negroe made no identification. Negroe was able to tell the detectives, from reviewing the video, that the suspect is "chubby." | 77. Undisputed. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 78. When Negroe left the room after making no identification from the surveillance video, he had a conversation with East in which they discussed that they both viewed the video and that the Detectives' suspect was a Berendo student. | 78. Undisputed. |
| 79. After Negroe did not make an identification, East met with Arteaga and Motto again. This meeting was not recorded. East knew that Negroe had not made an identification and discussed with them that he would be writing a report claiming to have identified Tobias, knowing it would be used to help prosecute Plaintiff for the Castaneda homicide. | 79. Objection. The statement that East "discussed with them that he would be writing a report claiming to have identified Tobias, knowing it would be used to help prosecute Plaintiff for the Castaneda homicide is not supported by the cited evidence. |
| 80. With the benefit of East's agreement to falsely claim that the person in the video was Tobias, Detectives Motto and Arteaga arrested Tobias for the Castaneda Homicide at 3:30 pm at Berendo Middle School. | 80. Objection. The factual assertions are not supported by the cited evidence. |
| 81. East was present when Plaintiff was arrested and even drove another student to the Rampart station. | 81. Undisputed. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 82. East wrote his statement and delivered it to Detective Cortina at Rampart station the same day. | 82. Objection. The factual assertions are not supported by the cited evidence. |
| 83. In the recorded meeting with the detectives, East never once stated he was "fairly sure that the suspect in the video is Art Tobias." | 83. Undisputed. |
| 84. In the recorded meeting with the detectives, East never once stated the person in the video "is Art Tobias." | 84. Undisputed. |
| 85. Yet, East's report includes the false claim that after watching the video East stated he was "fairly sure that the Suspect in the video is Art Tobias." In watching the video multiple times East never said that phrase, or that the person "looks like Tobias," and instead stated the person was too big to be a middle school student and that he could not identify someone from the video. | 85. Undisputed for purposes of this motion. |

| Uncontroverted Material Facts | Officer East's Response |
| --- | --- |
| 86. East's report also includes the false claim that "the person in the video had a distinct walk and stature which is similar to that of Art Tobias," when in fact he had said the opposite – that the shooter's stature was too big to be a middle school student – when he viewed the video. | 86. Undisputed for purposes of this motion. |
| 87. East included this statement in an attempt to bolster his false claim that he had identified Plaintiff, when he had not, because East knew that Negroe had not identified Plaintiff and they would have trouble proving the case against Tobias based upon his false reporting alone. | 87. Undisputed for purposes of this motion. |
| 88. Detective Cortina memorialized East's fabrication in the chronological record for the Murder Book the same day as well, falsely stating that when he initially watched the video East said the perpetrator "Looks like Art Tobias." | 88. Objection. The factual assertions are not supported by the cited evidence. |
| 89. In the recorded meeting with the detectives, East never once stated the perpetrator "Looks like Art Tobias" but actually stated the person was too big to be a middle school student and that he could not ID someone from the video. | 89. Undisputed. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 90. The Chronology, the initial Arrest Report, East's report, the Detectives' handwritten notes, Arteaga's typed report about the interview, and all other police reports concerning the interactions between East and the detectives at the middle school omit the fact that (1) East was told who the suspect was; (2) East was shown a picture of Plaintiff; (3) East pulled up multiple pictures of Plaintiff; (4) East was told that unless people made identifications they "would have trouble proving what [East] just saw"; (5) that they were going to try to "rope" Plaintiff's mother into the investigation; (6) that if they failed in those efforts somebody was going to have to "frickin pay." | 90. Undisputed for purposes of this motion. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 91. At the Rampart station, as they had discussed with East, Defendants conducted an interview of Helen Contreras, Tobias's mother, and an interrogation of Plaintiff. The goal was to obtain a confession from Plaintiff, as well as an identification of Tobias from the video by his mother. | 91. Undisputed for purposes of this motion. |
| 92. As Detective Motto had told East, the plan was to attempt to "rope" Tobias's mother (Contreras) into the investigation by trying to get her to falsely "identify" Plaintiff. Detective Arteaga showed Contreras a still image of the shooter. He did not show Contreras the video. Contreras immediately stated "that's not him. That's not what he was | 92. Undisputed for purposes of this motion. |

| Uncontroverted Material Facts | Officer East's Response |
| --- | --- |
| 93. In the interview, Contreras repeatedly denied that her son was involved. She repeatedly informed Arteaga that her son was not the person depicted in the image he showed her from the shooting, that he had came home by 12:42am, and that he was wearing a black t-shirt with a cartoon character on it. She even recognized what was happening: "You're wrongfully accusing my son right now." | 93. Undisputed. |
| 94. Eventually, after asking for attorney, invoking his right to silence several times, asking for his mother at least three times, and denying involvement dozens of times, Tobias' will was finally overborne and he falsely confessed to a crime he did not commit. | 94. Undisputed. |
| 95. The confession was false and coerced, and a result of the improper tactics above. Tobias confessed because of the threats, promises, and other tactics used to overbear his will. | 95. Undisputed. |

| Uncontroverted Material Facts | Officer East's Response |
| --- | --- |
| 96. In addition, after the interrogation was over and the Detective Defendants had obtained a false confession, they allowed Tobias to finally speak with his mother, which was secretly recorded. The first thing Tobias told his mother is that he did not do it, and that "they forced me to" confess. He also told her that he only confessed because "they were going to tell the judge that I'm a cold blooded killer and I'm going to get more time." | 96. Undisputed. |
| 97. On the night of August 20, 2012, Defendant Cortina wrote out a Probable Cause Determination/Declaration, The information on the form was for the purpose of getting charges approved against Tobias. On the form, in support of probable cause Cortina wrote that the "facts establishing elements of offense" included an identification of Tobias by Defendant East. | 97. Undisputed. |
| 98. East's fabrications were memorialized in an August 20, 2012 entry in the chronological record for the Murder Book. | 98. Objection. The factual assertions are not supported by the cited evidence. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 99. At some point on August 20, 2012, East's fabrications were also memorialized in the "Arrest Report" for Tobias, including the statement that, after watching the video, "Officer East indicated the male in the video looked like Art Tobias," when he had not said this. | 99. Objection. The cited evidence does not support the factual assertion that Officer East had fabricated the statement attributed to him in the arrest report. |
| 100. Defendants Cortina and Pere met with the Deputy District Attorney Malene, on August 22, 2012 to present the case for charges | 100. Undisputed. |
| 101. The evidence the Detectives presented to the Deputy DA in seeking to charge Tobias with murder included chronology of the murder book as it existed at that time, the arrest report, the probable cause determination, Arteaga's notes and report, and East's statement, all of which included the false claim that East had identified Tobias, said the person in the video "is" or "looked like" Tobias, as described below. | 101. Objection. The cited evidence does not support the factual assertion that the version of the Murder Book presented to the deputy district attorney included East's written statement. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 102. Indeed, the presentation to Deputy District Attorney Malene included LAPD Detective Cortina's probable cause declaration, which cited the fabricated identification of Tobias by East. | 102. Objection. The cited evidence does not support the factual assertion that East's written statement was cited in LAPD Detective Cortina's probable cause declaration. |
| 103. The presentation to Deputy District Attorney Malene also included the LAPD Murder Book as it existed on August 22, 2012. The information contained in the Murder Book and presented to Deputy District Attorney Malene included the following references to East's fabricated identification:<br>- Cortina's probable cause declaration relying on East's fabricated identification<br>- Arteaga's handwritten note falsely stating that East had identified Tobias<br>- Cortina's August 20 chronological record entry summarizing the Detectives' interview of East and falsely stating that East had identified Tobias<br>- East's fabricated statement written and given to the detectives on August 20. | 103. Objection. The cited evidence does not support the factual assertion that Cortina relied on East's written statement, or that East gave his written statement to the detective on August 20, 2012. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 104. Based on the presentation to Deputy DA Malene, which included East's fabricated identification and fabricated written statement, Tobias was charged with murder. | 104. Objection. The factual assertions are not supported by the cited evidence. |
| 105. Between August 2012 and May 4, 2013, when the case went to trial, no additional evidence beyond what was presented to the D.A. suggesting Tobias was involved in the Castaneda homicide was generated (and, in fact, the Detectives suppressed exculpatory evidence in violation of Due Process). The only evidence used to detain Tobias after August 20, 2012 and before trial consisted of (1) East's fabrications (in various documents, as set forth above), (2) Born's fabrications, (3) Cooley's fabrications, and (4) the false and coerced confession. | 105. Objection. The cited evidence does not support the assertion that East's written statement was used to detain Tobias after August 20, 2012. |
| 106. East's fabrications, including his written report, were in the Murder Book and specifically provided to the prosecutor who was trying the case while Tobias was in pretrial detention and before trial. | 106. Objection. The cited evidence does not support the factual assertion that East's written statement was in the Murder Book provided to the prosecutor. |

| Uncontroverted Material Facts | Officer East's Response |
|---|---|
| 107. East testified at trial against Tobias, while Cooley and Born did not. In preparation for his trial testimony, East met with the deputy district attorney trying the case. In that meeting, East discussed his fabricated written statement with the deputy DA, which included his false identification of Tobias. | 107. Undisputed for purposes of this motion. |
| 108. Tobias was continually detained for more than 8 months, between August of 2012 and May of 2013, in pretrial detention until the when the case went to trial in May of 2013. | 108. Undisputed. |
| 46. [sic] Tobias was wrongfully convicted of Castaneda's murder on May 10, 2013. | 46. Undisputed for purposes of this motion. |
| 109. On February 11, 2015, the California Court of Appeal, Second Appellate District, overturned Plaintiff's conviction and ordered a new trial. The State did not re-try Tobias. | 109. Undisputed. |

Dated: December 20, 2021          GUTIERREZ, PRECIADO & HOUSE, LLP

                         By:    /s/ Calvin House
                                Calvin House
                                Attorneys for Defendant
                                L.A. School Police Officer Daniel East

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28