# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ART TOBIAS,<br>　　　Plaintiff,<br><br>　　　　　v.<br><br>CITY OF LOS ANGELES, et al.,<br>　　　Defendants. | CV 17-1076 DSF (ASx)<br><br>Order GRANTING Defendant<br>Daniel East's Motion for<br>Summary Judgment (Dkt. 293) |

Defendant Daniel East moves for summary judgment.  Dkt. 293 (Mot.).  Plaintiff Art Tobias opposes.  Dkt. 297 (Opp'n).  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  For the reasons stated below, East's motion is GRANTED.

## I. UNDISPUTED FACTS

Alex Castaneda was shot and killed on August 18, 2012.  UF ¶ 1.[1] Los Angeles Police Department Officer Marshall Cooley observed the

---

[1] Citations to UF refer to Plaintiff's Statement of Disputed Facts in Response to Defendant East's Statement of Uncontroverted Facts and Conclusions of Law, dkt. 299, which incorporates East's proposed uncontroverted facts and Tobias's responses to those facts.  Citations to AMF refer to Defendant East's Response to Plaintiff's Separate Statement of Material Facts, dkt. 303, which incorporates Tobias's proposed additional material facts and East's responses to those facts.  To the extent certain facts are not mentioned in this Order,

surveillance video of the shooting at the crime scene and identified the shooter in the video as Tobias based on a photo he had previously been provided.  Id. ¶¶ 7-8.  Officer Cooley then called LAPD Officer Dora Born to the crime scene to review the surveillance video, and she stated she believed the shooter was Tobias.  Id. ¶¶ 9, 13.

In the afternoon on August 20, 2012, LAPD detectives Michael Arteaga and John Motto went to Berendo Middle School for the purpose of obtaining an identification of Tobias.  Id. ¶ 15.  There Arteaga and Motto interviewed East, who was a police officer for the Los Angeles School Police Department, and showed him the surveillance video of the shooting.  Id. ¶¶ 16-17.  East did not identify the shooter as Tobias, stating he found the person to be too large to be a middle school student, as Tobias was at the time.  Id. ¶ 18.  East watched the video several times before mentioning Tobias:

> Officer East:  I have a hard time IDing that person.
>
> Detective Motto:  Okay.  No problem.
>
> Officer East:  I mean, the full head of hair is throwing me off a little bit.
>
> Detective Motto:  Okay.
>
> Officer East:  Unless he shaved it and he did have more hair last week.
>
> Detective Motto:  Who are you thinking of?
>
> Officer East:  The guy that I was thinking is a lot smaller in stature, though.
>
> Detective Motto:  Okay.

---

the Court has not relied on those facts in reaching its decision.  To the extent the Court cites to a disputed fact, the Court has found the dispute was not valid or was irrelevant, unless otherwise indicated.  The Court has independently considered the admissibility of the evidence and has not considered facts that are irrelevant or based on inadmissible evidence.

> Officer East:  It's Art Tobias.
>
> Detective Motto:  That's who we think it is.
>
> Officer East:  (Laughter.)  But, I mean, God, he's so much smaller in real life.

Id. ¶ 18; Dkt. 293-3 (Interview Transcript) at 10:14-11:5.  East told Arteaga and Motto that Tobias had "just recently" shaved his head. Interview Transcript at 11:8-10.  East then watched the video again:

> Officer East:  Yeah.  The photo – The photo makes him look a little bit more bigger [sic] and stockier.  But from that photo right there . . .
>
> Detective Motto:  Let me run it all the way through again. Let's see what happens, and then you can watch the whole thing and see him move.
>
> Officer East:  I guess it looks very deceiving probably.
>
> Detective Motto:  Always.
>
> Detective Arteaga:  Yes.  What did you say was throwing you off, the hair?
>
> Officer East:  No.  I thought maybe he looked, like, taller and bulkier in the camera, which could be distorting through the mega pixels.

Id. at 14:13-15:3.

During their interview of East, Motto stated, "We're going to try to rope his mother into this" and "somebody's going to have to frickin pay," and Arteaga stated to Motto, "I just put he watched the video several times, indicated he looks like Art Tobias.  Said he looked taller in the video.  Came to school today with a shaved head."  Id. at 17:21-22, 18:5, 19:6-9.

After they interviewed East, Arteaga and Motto showed the surveillance video to Roger Negroe, an assistant dean at Berendo Middle School.  UF ¶ 19.  Negroe could not identify the shooter in the

surveillance video when initially shown the video.  Id.; see also Interview Transcript at 21:19-21 ("And you said he's a Berendo student?  I can't picture anybody like that right now."), 22:23-24 ("But if I – You know.  He's chubby, I can tell you that.  But . . . .").  After the interview, Negroe and East had a conversation in which they discussed that they both viewed the video.  AMF ¶ 78.  East testified that he "may have mentioned" to Negroe that the suspect was a student at the school, but East did not mention Tobias.  Dkt. 293-5 (East Dep.) at 41-42.  Negroe then pointed out Tobias to Arteaga and Motto.  UF ¶ 21; dkt. 293-6 ¶ 8.

At some point after East was interviewed by Arteaga and Motto, East prepared a written statement in which he stated, "I watched the video several times and stated that I was fairly sure that the suspect in the video is Art Tobias (Student/Berendo Middle School) and stated that the video made the person look slightly taller and thicker.  The Person in the video had a distinct walk and stature which is similar to that of Art Tobias."  UF ¶¶ 30-31.

Arteaga and Motto arrested Tobias around 3:40 pm that day.  Id. ¶ 24. Arteaga and Motto later interrogated Tobias, and Tobias falsely confessed to the murder.  Id. ¶¶ 26, 28.  East had no involvement in the interrogation.  Id. ¶ 27.

After Tobias confessed, Detective Jeff Cortina filled out a Probable Cause Declaration, which states it was approved by Motto.  Id. ¶ 33, Dkt. 295-3 (Probable Cause Declaration).  The Probable Cause Declaration does not specifically refer to East or his written statement, but states "The video depicting the shooting was downloaded and shown to (2) LAPD Officers and (1) LAUSD Police Officer.  Officers identified one of the shooters as being Art Tobias."  Probable Cause Declaration at 1.  The Probable Cause Declaration also stated that Plaintiff "confessed to the shooting."  Id.  The LAUSD Police Officer referred to in the Probable Cause Declaration was East.  UF ¶ 33.  The purpose of the Probable Cause Declaration was to provide information to determine whether there was sufficient probable cause to continue Tobias's detention.  Id. ¶ 34.

On August 22, 2012, Cortina presented the criminal investigation file to a Deputy District Attorney, who filed three counts against Tobias. Id. ¶ 35. The presentation to the Deputy District Attorney included the Probable Cause Declaration, the LAPD Murder Book, Tobias's confession, and the video of the murder. Id. ¶ 36. East testified at Tobias's trial, but did not mention his written statement. Id. ¶ 45.

East moves to dismiss Tobias's claim against him for falsification and withholding of evidence, in which Tobias claims East fabricated evidence purporting to identify Tobias as the shooter in the video. Dkt. 67 (SAC) ¶ 181.[2] Tobias claims East's fabricated identification "was what permitted Detectives to believe they could arrest Tobias, and thus set in motion the chain of events resulting in his prosecution and conviction," but not his incarceration after trial. Opp'n at 9, 18. Tobias's claim is based not only on East's written statement, but also on the alleged "antecedent fabrication" – East's alleged agreement during his interview with Arteaga and Motto to fabricate his identification of Tobias as the shooter. Id. at 6, 18.

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex

---

[2] East draws attention to Tobias's allegation in the operative complaint that the "only reason" he was prosecuted and convicted was his false confession. See Mot. at 10-11; SAC ¶¶ 170, 176. However, both this Court and the Ninth Circuit have considered the deliberate fabrication claim at issue here in the context of Tobias's false confession as well as East's oral and written statements. See dkt. 270 at 4-5; dkt. 283 at 2.

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Rather, if the moving party
satisfies this burden, the party opposing the motion must set forth
specific facts, through affidavits or admissible discovery materials,
showing that there exists a genuine issue for trial.  Id. at 323-24; Fed.
R. Civ. P. 56(c)(1).  "When the nonmoving party has the burden of proof
at trial, the moving party need only point out that there is an absence
of evidence to support the nonmoving party's case."  Devereaux v.
Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (cleaned up).  A non-moving
party who bears the burden of proof at trial as to an element essential
to his case must make a showing sufficient to establish a genuine
dispute of fact with respect to the existence of that element of the case
or be subject to summary judgment.  See Celotex Corp., 477 U.S. at
322.

The "mere existence of *some* alleged factual dispute between the
parties will not defeat an otherwise properly supported motion for
summary judgment; the requirement is that there be no *genuine* issue
of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48
(1986).  An issue of fact is a genuine issue if it reasonably can be
resolved in favor of either party.  Id. at 250-51.  "The mere existence of
a scintilla of evidence in support of the [non-movant's] position will be
insufficient; there must be evidence on which the jury . . . could find by
a preponderance of the evidence that the [non-movant] is entitled to a
verdict . . . ."  Id. at 252.  "Only disputes over facts that might affect the
outcome of the suit under the governing law will properly preclude the
entry of summary judgment."  Id. at 248.

"[A] district court is not entitled to weigh the evidence and
resolve disputed underlying factual issues."  Chevron Corp. v. Pennzoil
Co., 974 F.2d 1156, 1161 (9th Cir. 1992).  Summary judgment is
improper 'where divergent ultimate inferences may reasonably be
drawn from the undisputed facts.'"  Fresno Motors v. Mercedes Benz
USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014).  Instead, "the
inferences to be drawn from the underlying facts must be viewed in the
light most favorable to the party opposing the motion."  Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)
(internal quotation marks and ellipsis omitted).

### III. DISCUSSION

On November 9, 2021, the Ninth Circuit remanded this matter with instructions to apply the correct standard for determining causation – that articulated in Spencer v. Peters, 857 F.3d 789 (9th Cir. 2017).  Dkt. 283 at 3.[3]

"To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty."  Spencer, 857 F.3d at 798 (citation omitted).  To establish causation, Tobias must show that "(a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question."  Id. (citing Whitlock v. Brueggemann, 682 F.3d 567, 582-83 (7th Cir. 2012)).  "Like in any proximate cause analysis, an intervening event may break the chain of causation between the allegedly wrongful act and the plaintiff's injury."

Tobias argues that in cases involving multiple tortfeasors, the requisite causal connection can be established if their actions were substantial or motivating factors in the plaintiff's injury.  Dkt. 305 (Plaintiff's Supp. Brief) at 11.  In support of this position, Tobias cites Pacific Shores Properties, LLC v. City of Newport Beach, a Fair Housing Act case in which the Ninth Circuit held that "plaintiffs can demonstrate causation by proving that the defendant's wrongful conduct was a 'substantial factor' in bringing about the harm in question."  730 F.3d 1142, 1168 (9th Cir. 2013).  However, Pacific Shores was decided before Spencer, and neither the Ninth Circuit nor any district courts have opined as to whether the more lenient approach in Pacific Shores applies to deliberate fabrication claims.  In

---

[3] After this case was remanded, East submitted a new motion for summary judgment and included additional evidence.  See Mot.; see also dkt. 288 (parties' stipulation for East's motion for summary judgment).

the absence of further guidance from the Ninth Circuit, and considering the Ninth Circuit's clear directions on remand to apply the standard in Spencer, the Court declines to adopt the approach set out in Pacific Shores.

The Court considers whether East has satisfied his burden of demonstrating that there is an absence of evidence to establish the causation element of Tobias's fabrication claim. Then, if East has met his burden, the Court considers whether Tobias has raised a triable issue of material fact.

## A.    Arrest

East presents evidence that his statements were not the cause of Tobias's arrest because Arteaga and Motto arrested Tobias immediately after they concluded their interviews with East and Negroe based on Negroe's identification of Tobias, the officers' own perception that the individual pointed out by Negroe was the individual in the surveillance video, and East's comments while he watched the video. Mot. at 9. It is undisputed that prior to Tobias's arrest, East had not orally identified Tobias as the shooter: the most East had said was that the person in the video was too large to be a middle school student, he had a "hard time IDing that person," and while he was "thinking of" Art Tobias, he thought Tobias was "so much smaller in real life" than the person in the video. UF ¶ 18. Tobias also does not dispute that East did not submit his written statement until after Tobias was arrested, see id. ¶ 30, and therefore Arteaga and Motto could not have relied on it to arrest Tobias. East has met his burden by establishing there is no evidence that Tobias would not have been arrested but for East's statements.

It is unclear from Tobias's briefs whether he is asserting a fabrication claim against East based on his arrest, rather than the events following his arrest. Tobias claims East agreed during his interview with Arteaga and Motto to fabricate his identification of Tobias as the shooter in the surveillance video, and Tobias appears to argue that this "antecedent fabrication" led to Tobias's arrest. Opp'n at

8

3-4.  However, it is undisputed that Arteaga and Motto did not arrest Tobias until after Negroe identified Tobias, whom Arteaga and Motto determined (incorrectly) was the shooter in the surveillance video. UF ¶¶ 23-24.  Tobias therefore fails to raise a triable issue as to causation based on East's alleged oral identification or purported agreement to fabricate the identification.

## B.      Probable Cause to Detain

East next argues his written statement did not support the finding of probable cause to detain Tobias because Cortina signed the Probable Cause Declaration on August 20, 2012, but East did not submit his written statement to the LAPD until September 4 – regardless of whether he wrote the statement on August 20.  Mot. at 9 (citing UF ¶ 39).

Tobias argues a jury could reasonably find that East submitted his statement to the LAPD on August 20, 2012 – the day of Tobias's arrest, or the following day.  See UF ¶ 39.  In support of this position, Tobias cites East's deposition testimony that he submitted his written statement to the LAPD "within a few days of August 20th."  East Dep. 75:5-21.  Tobias argues that this statement, made in East's February 20, 2018 deposition, conflicts with East's later statement in his June 22, 2018 declaration that he did not deliver his statement until September 4, 2012.  See Dkt. 293-4 (East Decl.) ¶ 16.  Tobias puts forth no evidence that East actually submitted his written statement on August 20, and relies on mere speculation that East submitted the written statement *before* Tobias falsely confessed to Castaneda's murder.  See UF ¶ 30.  Instead, there is documentary evidence that East submitted his statement *after* August 20, 2012.  The Probable Cause Declaration, which Cortina submitted, refers to an identification of Tobias by a "LAUSD Police Officer," Probable Cause Declaration at 2, which the parties do not dispute refers to East, UF ¶ 33.  However, the Probable Cause Declaration does not refer to East's written statement, because East either had not yet submitted it or Cortina did not yet have it.  Cortina declared that he emailed East on August 24, 2012 and contacted East again on August 29, and September 4, 2012 to

request a written statement from him, and that East provided the
statement to Cortina on September 4, 2012.  Dkt. 293-7 (Cortina
Decl.) ¶¶ 3-4.  The Chronological Record of the investigation contained
in the Murder Book documents these communications.  Dkt. 291-1 at 4-
5.  There is no evidence that these entries were somehow falsified – nor
would there have been any reason at the time the Murder Book was
prepared to do so.  In any event, Tobias's implied suggestion that the
judicial officer reviewing the Probable Cause Declaration would not
have found probable cause (a relatively low standard) to detain him in
the absence of East's written statement (which neither Cortina nor the
judicial officer had) is pure speculation.  No reasonable jury could find
that the judicial officer would not have signed the Probable Cause
Declaration in the absence of East's written statement.

## C.    Filing of Charges

East contends there is no evidence that the Deputy District
Attorney relied on his written statement in deciding to file charges.
Mot. at 9-10.[4]  East argues that while his written statement appears in
the version of the Murder Book that was produced in discovery in this
action, UF ¶ 40, there is no evidence that the statement was included
in the copy presented to the Deputy District Attorney before charges
were filed because (1) declarations from East and Cortina and
documentation of the LAPD investigation attest that the statement was
not delivered to the LAPD until September 4, 2012, and (2) the copy of
the Murder Book produced in discovery includes information that could
not have existed in the record on August 22, 2012, such as events
occurring as late as April 2015.  Id.

While East's deposition testimony arguably conflicts with his
later declaration regarding when he submitted his written statement to
the LAPD, East argues there is no evidence that he submitted his
statement prior to September 4, 2012, or at least prior to Cortina's
presentation of the case to the Deputy District Attorney on August 22,

---

[4] For reasons that are not explained, there was no civil discovery on this
issue.

2012.  Mot. at 9; <u>see also</u> UF ¶ 35.  While there may be some dispute as to whether East submitted his written testimony exactly on September 4, 2012, the existence of *some* alleged factual dispute does not defeat summary judgment.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 247-48.  As indicated above, there is no plausible reason that Cortina would have falsified three entries in the Chronological Record more than five years ago – or any evidence that he did so.  And if he did not, then East's statement was not delivered to the LAPD until September 4, 2012.  No reasonable jury could find otherwise.  The Court therefore finds East has met his burden of demonstrating that there is no triable issue as to whether the statement was in the record presented to the Deputy District Attorney on August 22, 2012 and was subsequently relied on.

Tobias has put forward no evidence that the LAPD or the prosecutor had a copy of his written statement on August 22, 2012, when Cortina presented Tobias's case to the prosecutor.  Tobias cites <u>Caldwell v. City & Cnty. of S.F.</u>, 889 F.3d 1105, 1117 (9th Cir. 2018), in which the Ninth Circuit affirmed a finding that a jury could reasonably conclude the prosecutor relied on a falsified statement in deciding to charge the plaintiff because the evidence was "part of the evidentiary record" presented to the prosecutor prior to the filing of charges.  But in <u>Caldwell</u>, there was "no dispute" that the fabricated identification was "a crucial piece of evidence" that the prosecutor considered.  <u>Id.</u> Tobias also cites district court cases denying summary judgment as to causation when there is a genuine dispute of material fact as to whether the existence of the fabricated evidence played a role in the prosecutor's decision to file criminal charges.  Opp'n at 10 (citing <u>Rodarte v. Skagit Cnty.</u>, 2021 WL 4969676, at *8 (W.D. Wash. Oct. 26, 2021) (finding triable issue as to causation because fabricated report "was made available to the prosecuting attorney before the decision was made to file charges against Plaintiff"); <u>Theodoropoulos v. Cnty. of Los Angeles</u>, 2020 WL 5239859, at *4 (C.D. Cal. July 17, 2020) (stating "fabrication of evidence is not a constitutional violation unless the fabricated evidence played a material role in the plaintiff's prosecution.").  But Tobias has not identified any evidence that the

11

prosecutor ever saw East's written testimony, or that East's oral statement played a crucial or material role in the prosecutor's decision to file charges against Tobias. Therefore, Tobias fails to raise a triable issue as to causation with respect to the prosecutor's decision to file charges against him.

## D. Conviction

Finally, East argues there is no evidence to support a finding that Tobias's conviction was based on his written statement because East did not refer to his written or oral statement when testifying at Tobias's trial,[5] and there is also no evidence that the judge presiding over Tobias's criminal trial relied on the written statement. Mot. at 10; UF ¶ 45. East has satisfied his burden.

Tobias does not argue in his Opposition or supplemental brief that his claim is based on his conviction, and does not address East's arguments except to state that East met with the prosecutor before trial to discuss his identification of Tobias and his written statement, Opp'n at 10, (citing AMF ¶ 107), and that this was a cause of his harm. East does not dispute that East discussed his written statement with the prosecutor in preparation for his trial testimony. AMF ¶ 107. However, Tobias does not put forth evidence that East's written statement was presented at trial, and he has not raised a triable issue as to whether the statement was a cause of his conviction.

## IV. CONCLUSION

The Court finds no reasonable jury could find East's alleged fabrications caused Tobias's arrest, pretrial detention prior to the filing of charges, the filing of charges, or his conviction. East's motion for summary judgment is GRANTED.

---

[5] East declares that he testified at trial only as to his truancy stop of Tobias, not as to his identification of Tobias on August 20, 2012. East Decl. ¶ 22.

12

IT IS SO ORDERED.


Date:  May 13, 2022

Dale S. Fischer
United States District Judge