David B. Owens, Cal. Bar No. 275030
david@loevy.com
Anand Swaminathan*
Megan Pierce
*Attorney for Plaintiff, Art Tobias*
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
*admitted pro hac vice

Michael D. Seplow, Cal. Bar No. 150183
SCHONBRUN, SEPLOW, HARRIS, HOFFMAN & ZELDES, LLP
9415 Culver Boulevard, #115
Culver City, CA 90232
(310) 396-0731
mseplow@sshhzlaw.com
*Local counsel for Plaintiff, Art Tobias*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ART TOBIAS,<br><br>       Plaintiff,<br>v.<br>CITY OF LOS ANGELES, *et al.*,<br><br>       Defendants. | Case No. 2:17-cv-1076-DSF-AS<br><br>**MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS IN THEIR POSSESSION THAT THE PARTIES INTEND TO USE AT TRIAL**<br><br>Hearing Date: March 4, 2024<br>Hearing Time: 1:30 p.m.<br>Courtroom: 7D (Hon. Dale S. Fischer) |

1

Motion to Compel
2:17-cv-1076-DSF-AS

COMES NOW Plaintiff ART TOBIAS, by and through his attorneys, to compel Defendants to produce documents in their possession that the parties intend to use at trial, stating in support as follows:

## INTRODUCTION

At the parties' 2018 Final Pretrial Conference in this matter, the Court made clear that there would be consequences for any attempt to ambush the other party at trial. Ex. 1 (Tr. of Oct. 29, 2018 Final Pretrial Conference), at 25 (if evidence "is a surprise, they should not be admitted."). Yet today, Plaintiff remains in the dark on several key pieces of evidence. The reason is that Defendants simply refuse to respond, and thus have prevented both impasse and resolution. Plaintiff cannot wait any longer, and thus moves this Court to compel Defendants to produce evidence it should have produced long-ago, consistent with its continuing obligation under Rule 26(e) to produce relevant evidence.

## ARGUMENT

### A. Internal Affairs Recordings of Defendant Officers

Once Plaintiff's conviction was thrown out by the California Courts of Appeal, and after notice of claim was filed, the Los Angeles Police Department conducted an Internal Affairs investigation into the conduct of three of the Detective Defendants—Pere, Arteaga and Cortina. They gave recorded interviews about his conduct in the underlying investigation. *See* Ex. 2 (Internal Affairs File, Redacted) at LAPD1994 n.3, 1996 n4, & 1996 n.5, However, while the Defendants have produced (very brief) written summaries of those interviews, *id.*, they have failed to produce the recordings of the actual interviews themselves.

Plaintiff has requested these recordings numerous times. *See* Ex. 3 (Emails).

During discovery Defendants never indicated that they *would not* produce the recordings; they just never did. Plaintiff did not file a motion to compel because he did not believe there was a genuine dispute over the Detectives' own recorded statements about this very case. How could Defendants possibly *refuse* to produce such recordings? They are party admissions and obviously highly relevant and directly responsive to Plaintiff's document requests. Ex. 4 (*E.g.*, Plaintiff's First Request For Production) ¶¶6, 14 ("6. All Documents relating to any internal investigation (e.g., internal affairs . . ., etc.) undertaken in connection with the events described in Plaintiff's Complaint."; "14. All transcripts, video recordings, *tape recordings* . . . relating to the Castaneda Homicide Investigation or the subjects described in Plaintiff's Complaint.").

To this day, Defendants have never asserted any burden or relevance objection to the production of the recordings (nor could they), or any other justification for refusing to produce them. They just have not done it. And they refuse to respond to Plaintiff's repeated attempts to follow up. Most recently, on October 24, 2023, during the parties' conferral in advance of the (second) Final Pretrial Conference, Plaintiff raised the Internal Affairs recordings again; Defendants indicated they would get back to Plaintiff the next day. Ex. 3 at 1, (Emails). Defendants did not respond, and Plaintiff followed up again on November 4, at which time counsel for the City of Los Angeles finally responded by indicating that she would search for the recordings. Ex. 3 at 2 (Emails) ("Not positive I have the IA recordings, let me check."). At the Pretrial Conference on November 6, 2023, this issue was discussed and the Court instructed the parties to confer. Ex. 5 (Nov. 6, 2023 Tr.) at 8-9. On November 8, Plaintiff emailed

Defendants reiterating his request to produce the documents or make clear if they were refusing to so he could file a motion; and when he got no response, Plaintiff followed up again on November 16, 2023. Ex. 3 at 3 (Emails). To date, Defendants still have not responded, necessitating this motion.

The Internal Affairs recordings could not be more relevant: they are interviews of Defendants regarding their actions during the homicide investigation at issue in this case, and in particular their conduct during the interrogation of Plaintiff at the center of this case. What Defendants said in these interviews is also relevant to impeaching the claims they have made in this case. For example, Plaintiff's position has been—and remains—that all the Detective Defendants can be liable for the entirety of the conduct in the interrogation, particularly given the constitutional standard is the totality of the circumstances. But, seeking to distance himself from the blatant violation of the right to counsel committed by Detectives Cortina and Pere while he looked on, Defendant Arteaga **now** stridently claims he did not watch the interrogation or see Plaintiff invoke his right to counsel. *See, e.g.*, Dkt. 111 at 19; Dkt. 111-2, ¶¶39-40. Defendants' own report belies this attempted maneuver, as it indicates the interrogation was watched directly by Arteaga. Dkt. 138-1, PSOF¶131 (and sources). Arteaga's new (self-serving) claims are different than what he said in the original criminal proceedings, where he admitted watching and even emphasized that it was the normal practice to watch others interrogate when working jointly. *Id.* Arteaga's present position is also different than what he told the IA investigators, when he claimed that he "could not recall" if he was monitoring the interrogation "via the video feed in another room or not." Ex. 2 (Internal Affairs File, Redacted) at 1997.

In addition, Detective Pere directly told Internal Affairs that "Arteaga had been monitoring the interview from another room and asked him if he could talk with Tobias," *Id.* at 1995. For his part, Cortina admitted that Artega finished the interrogation that they had started. *Id*. at 1996.

Tobias should be permitted to inquire, fully, as to why Arteaga's account shifted from, essentially (and paraphrasing): (1) "I watched and we normally watch the other part of the interrogation"; to (2) "I do not recall whether we watched"; and then changed again to (3) to "I do recall and I firmly deny watching."

All of this is obviously relevant and admissible to the liability of all the Detectives, both on whether they were involved in the interrogation even when they were not in the room as well as Plaintiff's "failure to intervene" claim. It is all too convenient for each one of them to claim they did not monitor an ongoing interrogation and their prior statements contradict their testimony in discovery.

Yet, while useful, the summaries are subject to potential challenges, a claim that the summary did not reflect perfectly what they said or what they meant. The recordings, however, are both clear and unequivocally direct party admissions that are admissible as substantive evidence. Fed. R. Evid. 801(d)(2). They are critical to the trial in this matter and should be produced. In fact, this Court previously noted the admissibility of these recordings in its prior motion *in limine* rulings. Dkt. 248 at 9 ("Certainly, some – if not all – statements by the Individual Defendants are admissible. Those statements can be introduced without specific reference to an internal affairs investigation.")

Moreover, Defendants have a continuing obligation to produce responsive information. Fed. R. Civ. P. 26(e) (requiring a party to "supplement or correct its

5

disclosure . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect"). By producing only summaries, Defendants' prior production is "incomplete" under a plain reading of Rule 26(e), and they have an obligation to correct that deficiency by producing the underlying recordings on which those summaries were based.

To the extent Defendants argue that they should not be required to produce the recordings because Plaintiff did not file a motion to compel and the fact discovery deadline has now passed, that argument should be rejected. Plaintiff did not file a motion to compel because he genuinely believed this issue would be resolved without the need to waste the Court's time. For example, just days before the Final Pretrial Conference Defendant Los Angeles' counsel indicated she would search for the recordings, an indication that there was no dispute and that the recordings would finally be produced. It just never happened. And after the Court directed the parties to confer on this issue at the (second) Final Pre-trial Conference, Defendants have not agreed to produce the documents, or refused to do so; they still just fail to respond. The lack of a response creates a lack of impasse, which is the reason Plaintiff did not feel it was appropriate to waste the Court's time by moving earlier. But at this point, Plaintiff simply cannot wait any longer.

Moreover, that the fact discovery deadline has passed does not obviate Defendants' obligation to produce these recordings. Defendants' obligation to supplement continues past the fact discovery deadline. *See, e.g., Huynh v. J.P. Morgan Chase & Co.*, No. CIV 06-0001-PHX-RCB, 2008 WL 2789532, at *25 (D. Ariz. July 17, 2008) (characterizing as "somewhat disingenuous a party's

argument that it had no duty to supplement after the close of discovery); *Cory v. Whisman, Grygiel & Giordano, P.A.*, 2012 WL 1632729 at *6 (D. Md. May 8, 2012) (parties' obligation to supplement discovery responses "as necessary to ensure that their responses are complete and accurate ... does not end at the close of discovery"); *see also Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1230 (10th Cir. 2001) (duty to supplement extends until the notice of appeal filed); *Rodowicz v. Mass. Mut. Life Insurance Co.*, 279 F.3d 36, 44–45 (1st Cir. 2002); *Reinsdorf v. Skechers U.S.A., Inc.*, No. CV 10-7181 DDP (SSX), 2013 WL 12116416, at *8 (C.D. Cal. Sept. 9, 2013); *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 77 (W.D.N.Y. 2011); *Huynh v. J.P. Morgan Chase & Co.*, No. CIV 06-0001, 2008 WL 2789532, at *25 (D. Ariz. July 17, 2008); *Iweala v. Operational Techs. Servs., Inc.*, No. CV 04-02067, 2010 WL 11583114, at *1 (D.D.C. Apr. 13, 2010); *Pizza Pub. Co. v. Tricon Glob. Restaurants, Inc.*, No. 99 CIV. 12056, 2000 WL 1457010, at *1 (S.D.N.Y. Sept. 29, 2000); *Episcopo v. Gen. Motors Corp.*, No. 02 C 8675, 2004 WL 628243, at *7 (N.D. Ill. Mar. 29, 2004). Indeed, this obligation "is consistent with the spirit behind the discovery rules, which is to promote a liberal discovery process in an effort to narrow the issues for trial and to prevent unfair surprise." *Episcopo*, 2004 WL 628243, at *7.

Put simply, these records should have been produced long-ago. They should be produced now, before trial, in order to ensure highly relevant and admissible information is available to all parties—as a simple matter of fairness—before trial.

### B. Audio or Video Recordings of Purported Other "Bad" Acts by Plaintiff that Defendants Intend to Use at Trial

During the parties' pre-trial conferrals in preparing the Final Pre-Trial Order and exhibits lists, Defendants referenced the existence of purported recordings of

7

Plaintiff involved in "tagging," or spray-painting. No such recordings have ever been produced to Plaintiff, nor was Plaintiff ever made aware of their existence at any point during fact discovery. What made it particularly surprising is any alleged "other acts" evidence is clearly responsive to Plaintiff's discovery requests, *see* Ex. 4 (Plaintiff's First Request for Production) ¶¶12, 41, 45, and thus should have been produced long ago. At the (second) Final Pretrial Conference, the Court directed the parties to confer further about this issue. Ex. 5 (Nov. 6, 2023 Tr.) at 8-9. As with the Internal Affairs recordings, on November 8, Plaintiff emailed Defendants reiterating his request to produce the documents or make clear if they were refusing to so he could file a motion and followed up again on November 16, 2023. Ex. 3 at 3 (Emails). To date, Defendants still have not responded, necessitating this motion.

      The Defendants' only basis for refusing to produce in discovery evidence that it intends to use at trial is that it is for impeachment only, and thus it has no obligation to produce it. That may be true as a general matter under Rule 26(a), but this statement is not correct when the evidence at issue is separately requested, and *directly responsive to*, *Plaintiff's written discovery requests*. In other words, a party cannot refuse to produce documents or information in its possession that are responsive to the opposing party's discovery requests by simply declaring that it is for impeachment purposes. Such a rule would be ripe for abuse, and wholly subvert the truth-seeking function of the Federal Rules, and the legion of cases that make clear that trial should not be by ambush. Defendants should have produced this evidence long-ago, and they have a continuing obligation to do so now, *see* Part A, *supra*.

Plaintiff will be severely prejudiced if Defendants were permitted in the middle of trial—and presumably in the middle of the cross-examination of Plaintiff while he is on the stand—to call a sidebar to disclose recordings it has had in its possession for years. It would give Plaintiff hardly any chance to present arguments about the clear Rule 403 and 404(b) issues that would obviously be implicated, and prevent the Court from being able to thoughtfully consider the issues of prejudice and balancing that are required to resolve such disputes. *See* Fed. R. Evid. 403, 404(b). It would all be happening on the fly, in a way that would be unfair to all parties, and create the risk of appeal issues and reversible error. The only fair and just approach, consistent with Rule 1—which requires a fair and *just* disposition of matters—is for Defendants to produce this evidence they intend to introduce at trial so Plaintiff has an opportunity to consider it. *See* FED. R. CIV. P. 1 ("This rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

### C. Other "Bad" Acts Evidence Concerning the Individual Defendants Referenced in Defendants' Recently Filed Motion *In Limine* No. 5

Following the same theme, Defendants recently referenced the existence of potentially admissible other acts evidence involving the individual Defendants that they have not produced to Plaintiff. On October 16, 2023, shortly before the (second) Final Pretrial Conference, Defendants filed a motion *in limine* seeking to bar Plaintiff from relying on evidence concerning allegations or acts of misconduct by the individual Defendants since Plaintiff's conviction for the Castaneda murder. Dkt. 315. The problem is, Defendants' motion did not identify the actual other-acts evidence they are seeking to bar, and Plaintiff has never been provided with such

evidence to be able to assess whether there is a basis for its admission at trial. Accordingly, Plaintiff filed a short response explaining that he was hopeful the parties could reach agreement on the motion, but that he needed to be able to consider the evidence at issue before he could blindly agree to preclude potentially admissible evidence. Dkt. 327.

Again, Plaintiff followed up with Defendants about this issue before (second) Final Pretrial Conference but got no response. Ex. 3 (Emails). Plaintiff raised the issue at the Final Pretrial Conference, at which time the Court directed the parties to confer about the issue and provided some guidance that general allegations may not be subject to discovery now but that other evidence likely would be. Ex. 5 (Nov. 6, 2023 Tr.), at 21-22. Once again, on November 8, 2023 Plaintiff followed up with Defendants and made clear that, consistent with the Court's direction, he was *not* seeking any and all generalized allegations of misconduct of any kind, but instead is focused on conduct involving the individual Defendants that fits into the following narrow categories: (a) sustained findings of misconduct by the Los Angeles Police Department's own disciplinary agencies, (b) evidence of dishonesty or lack of truthfulness, and (c) evidence of misconduct during the course of witness or suspect interrogations. Ex. 3 at 3 (Emails). Plaintiff followed up again on November 16, but to date still has not received any response.

As an initial matter, Plaintiff is not seeking any and all disciplinary records for Defendants; instead, he is seeking the narrow subset of such records that is most likely to contain admissible evidence. The purpose of his request is so he can evaluate whether there is particular evidence that he believes is admissible at trial. If there is not—and Plaintiff appreciates and is keenly aware of the strictures

imposed by Rule 403 and 404(b), and the Court's prior rulings on other- acts evidence in this case—he will not oppose Defendants' motion *in limine* No. 5 and inform the Court as such. But Plaintiff needs the evidence to be able to make that assessment.

There is no basis to withhold it. As with the other issues above, the information is plainly relevant to Plaintiff's discovery requests and should have been produced long ago. Ex. 4 (Plaintiff's First Request for Production) ¶8 (seeking all personnel files and internal affairs files regarding each individual Defendant). And, it should be produced now consistent with Defendants' continuing obligation under Fed. R. Civ. P. 26(e) to "supplement or correct its disclosure." *See* Part A, *supra*.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court compel Defendants to produce (1) recordings of any Internal Affairs interviews of the Detective Defendants regarding the Castaneda homicide investigation at issue in this case, (2) recordings of any bad acts evidence Defendants intend to use at trial that it has not previously produced, and (3) bad acts evidence against the individual Defendants that falls within the narrowed categories set forth in Part C, *supra*.

Dated: January 29, 2024

**Respectfully submitted,**

**ART TOBIAS**

By: /s/ David B. Owens
David B. Owens, Cal. Bar No. 275030
Attorney for Plaintiff ART TOBIAS